IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2028 T

Judge Francis M. Allegra

(Consolidated with 04-907 T)

KENNETH C. KEENER,

Plaintiff

v.

THE UNITED STATES,

Defendant

MOTION OF THE UNITED STATES FOR PARTIAL DISMISSAL
OF PLAINTIFFS' COMPLAINTS

The United States moves for partial dismissal of the complaints of Kenneth C. Keener, and William P. Smith, Jr. and Anne D. Smith (hereinafter collectively "Smith") pursuant to RCFC 12(b)(1) on the grounds that the Court lacks subject matter jurisdiction pursuant to 26 U.S.C. § 7422(h) over the remaining active claims asserted therein.[1] This motion is accompanied by a

[1] Each of the two counts in Keener's complaint and three counts in Smith's complaint contains three general categories of allegations towards recovery of tax and/or interest: 1) allegations regarding the untimely assessment of tax attributable to partnership items; 2) allegations regarding the propriety of the assessment of tax motivated interest under former 26 U.S.C. § 6621(c); and 3) allegations regarding failure to abate the assessment of interest (including tax motivated interest under former 26 U.S.C. § 6621(c)) pursuant to

brief setting forth in detail the grounds for this motion and supporting argument.

Respectfully submitted,

s/Bart D. Jeffress

BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Acting Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*
ELLEN C. SPECKER
*Reviewer*

s/Steven I. Frahm
Of Counsel

November 4, 2005

---

26 U.S.C. § 6404(e)(1). The present motion moves to dismiss the first two categories. Pursuant to the Court's order, see Order [Doc. #18] at 2, further proceedings on the third category have been stayed pending the appeal in *John F. and Pamela F. Hinck v. United States, appeal docketed,* No. 05-5099 (Fed. Cir. Mar. 24, 2005).

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2028 T

Judge Francis M. Allegra

(Consolidated with 04-907 T)

KENNETH C. KEENER,

Plaintiff

v.

THE UNITED STATES,

Defendant

BRIEF FOR THE UNITED STATES
IN SUPPORT OF ITS MOTION FOR PARTIAL
DISMISSAL OF PLAINTIFFS' COMPLAINTS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF QUESTIONS INVOLVED . . . . . . . . . . . . . . . . vii

I. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . 1

A. Kenneth C. Keener . . . . . . . . . . . . . . . . . . . . 1

B. William P. Smith, Jr. and Anne D. Smith . . . . . . . . 5

II. RCFC 12(b)(1) STANDARD . . . . . . . . . . . . . . . . . . . . 9

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A. This Court lacks subject matter jurisdiction pursuant to 26 U.S.C. § 7422(h) over the portions of each count of Keener's and Smith's complaints contesting timeliness of the assessment of tax attributable to

partnership items and the propriety of the assessment of tax motivated interest under former 26 U.S.C. § 6621(c) . . . . . . . . . . . . . . . . . . . . . 10

1. Statutory/Regulatory Background . . . . . . . . 11

2. This Court lacks subject matter jurisdiction pursuant to 26 U.S.C. § 7422(h) over Keener's and Smith's allegations that assessments of tax attributable to partnership items were untimely because the period for such assessment expired prior to the issuance of a Notice of Final Partnership Administrative Adjustment to AVII, AVF, RGA, and DHV. . . . . . . . . . . . . . . . 16

3. This Court lacks subject matter jurisdiction pursuant to 26 U.S.C. § 7422(h) over Keener's and Smith's allegations that their underpayments of tax derived from loss deductions claimed by AVII, AVF, RGA, and DHV and disallowed by the Internal Revenue Service can not be attributed to tax motivated transactions as defined in former 26 U.S.C. § 6621(c)(3)(A)(v) . . . . . . . . . . 27

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 39

APPENDIX A:
Title 26, U.S.C.:[2]
§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 6222(a) . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 6223(a) . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 6226(a), (b), (c), (d), (f) . . . . . . . . . . . . . . 1
§ 6229(a), (d), (f)(1), (f)(2)(applicable to Smith not Keener) . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 6231(a)(3), (b)(1)(C) . . . . . . . . . . . . . . . . . 4
§ 7422(a), (h) . . . . . . . . . . . . . . . . . . . . . . 5
Treas. Regs., 26 C.F.R.:
§ 301.6229(f)-1T (applicable to Smith not Keener) . . . . 6
§ 301.6231(a)(3)-1(b) . . . . . . . . . . . . . . . . . . 6

APPENDIX B (under separate cover):

| Exhibit | Description |
|---|---|
| 1 | Certified Copy of Petition for Readjustment of |

[2] Statutory provisions set forth in Appendix A appear as in effect with respect to the facts of the present cases and not necessarily as currently codified.

| | | |
|---|---|---|
| | Partnership Items for AVII . . . . . . . . . . . | B1 |
| 2 | Certified Copy of Petition for Readjustment of Partnership Items for AVF . . . . . . . . . . . | B27 |
| 3 | Certified Copy of Decision in AVII . . . . . . . | B55 |
| 4 | Certified Copy of Decision in AVF . . . . . . . | B58 |
| 5 | Certified Copy of Petition for Readjustment of Partnership Items for RGA . . . . . . . . . . . | B61 |
| 6 | Certified Copy of Petition for Readjustment of Partnership Items for DHV . . . . . . . . . . . | B89 |
| 7 | Settlement Agreement of Smiths re DHV (Accompanied by Jeffress Declaration) . . . . . . . . . . | B114 |
| 8 | Certified Copy of Decision in RGA . . . . . . | B116 |
| 9 | Certified Copy of Decision in DHV . . . . . . | B119 |

APPENDIX C (under separate cover): Bates Stamped Exhibits of Complaint of Kenneth C. Keener

APPENDIX D (under separate cover): Bates Stamped Exhibits of Complaint of William P. Smith, Jr. and Anne D. Smith[3]


[3] The exhibits attached to plaintiffs' complaints are not internally numbered. To facilitate clarity of citation to a part of any such exhibit, therefore, the United States has numbered each set of exhibits internally and consecutively with bates stamps and attached each resulting set to this brief as an appendix.

## TABLE OF AUTHORITIES

**STATUTES:**

Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106 . . . . . . . . . . . . . . . . . . . . . . 29
Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 . . . . . . . . . . . . . . . . 11
Tax Reform Act of 1984, Pub. L. No. 98-369, 98 Stat. 494 . . 28
Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085 . 28
Title 26, U.S.C.:[4]
§ 183 . . . . . . . . . . . . . . . . . . . . . . . . 31
§ 701 . . . . . . . . . . . . . . . . . . . . . . . . 30
§ 702 . . . . . . . . . . . . . . . . . . . . . . . . 30
§ 6221 . . . . . . . . . . . . . . . . . . . . 11, 12, 30
§ 6222 . . . . . . . . . . . . . . . . . . . . . . 12, 30
§ 6223 . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 6224 . . . . . . . . . . . . . . . . . . . . . . 24, 26
§ 6225 . . . . . . . . . . . . . . . . . . . . . . . . 32
§ 6226 . . . . . . . . . . . . . . . . . . 13, 15, 32, 33
§ 6227 . . . . . . . . . . . . . . . . . . . . . . . . 17
§ 6228 . . . . . . . . . . . . . . . . . . . . 14, 17, 23
§ 6229 . 12, 13, 15, 16, 17, 18, 19, 20, 21, 26, 27, 32, 34
§ 6230 . . . . . . . . . . . . . . . . . . . . 14, 17, 23
§ 6231 . . . . . 12, 13, 14, 15, 17, 20, 23, 24, 26, 27, 30
. . . . . . . . . . . . . . . . . . . . . . 32, 33, 34, 38
§ 6501 . . . . . . . . . . . . . . . . . . 12, 13, 16, 17
§ 6601 . . . . . . . . . . . . . . . . . . . . . . . . 17
§ 6621 . . . 11, 17, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37
§ 7422 . . . . . 10, 14, 16, 17, 19, 21, 22, 23, 24, 25, 27
. . . . . . . . . . . . . . . . . . . . . . 29, 33, 35, 38

**REGULATIONS:**

Treas. Reg. § 301.6231(a)(3) (1986) . . . . . 20, 23, 24, 26, 30
Treas. Reg. § 301.6231(a)(6) (2001) . . . . . . . . . . . . . . 38
Temp. Treas. Reg. § 301.6231(a)(6)-1T . . . . . . . . . . . . . 38
Temp. Treas. Reg. § 301.6229(f)-1T (1999) (applicable to Smith not Keener) . . . . . . . . . 15, 27, 34
Temp. Treas. Reg. § 301.6621-2T (1984) . . . . . . . . . . 28, 37

**CASES:**

AD Global Fund, LLC v. United States, 67 Fed. Cl. 657 (2005) 12
Affiliated Equip. Leasing II v. Commissioner, 97 T.C. 575 (1991) . . . . . . . . . . . . . . . . . . 31, 32

---

[4] All statutory references to Title 26 of the United States Code are to the Internal Revenue Code of 1986, as in effect for the taxable year at issue or as in effect otherwise with respect to the facts of the present cases.

Badaracco v. Commissioner, 464 U.S. 386 (1984) . . . . . . . . 22
Barnes v. United States, No. 97-57-Civ-ORL-22, 1997 WL 732594 (M.D.Fla. July 25, 1997) . . . . . . . . . . . . . . . . . 18
Braunstein v. Commissioner, 374 U.S. 65 (1963) . . . . . . . . 22
Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 9
Chakales v. Commissioner, 79 F.3d 726 (8th Cir. 1996) . . 36, 37
Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995) 36, 37
Chimblo v. Commissioner, 177 F.3d 119 (2d Cir. 1999) . . 11, 14 . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21
Clark v. United States, 68 F. Supp. 2d 1333 (N.D.Ga. 1999) . 18
Copeland v. Commissioner, 290 F.3d 326 (5th Cir. 2002) . . . 37
Davenport Recycling Assocs. v. Commissioner, 220 F.3d 1255 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . 18, 21
Durrett v. Commissioner, 71 F.3d 515 (5th Cir. 1996) . . 36, 37
Field v. U.S., 328 F.3d 58 (2nd Cir. 2003) . . . . . . . . . 32
First Chicago Corp. v. Commissioner, 742 F.2d 1102 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . 22
First Chicago Corp. v. Commissioner, 80 T.C. 648 (1983) . . . 22
Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990) 35, 36, 37
Kaplan v. United States, 133 F.3d 469 (7th Cir. 1998) . . 11, 18 . . . . . . . . . . . . . . . . . . . 19, 20, 21, 23, 24, 25
Kraemer v. United States, No. CIV. H-00-2948, 2002 WL 575791 (S.D.Tex. Feb. 13, 2002) . . . . . . . . . . . . . . . 18
Lawinger v. Commissioner, 103 T.C. 428 (1994) . . . . . . . . 22
Lukens v. Commissioner, 945 F.2d 92 (5th Cir. 1991) . . . 36, 37
McCrary v. Commissioner, 92 T.C. 827 (1987) . . . . . . . . . 35
Monti v. United States, 223 F.3d 76 (2d Cir. 2000) . 24, 25, 26
Olson v. United States, 172 F.3d 1311 (Fed. Cir. 1999) . 23, 38
Olson v. United States, 37 Fed. Cl. 727 (1997) . . . . . . . 23
Patin v. Commissioner, 88 T.C. 1086, 1129 (1987) . . . . . . 37
Prochorenko v. United States, 243 F.3d 1359 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 24, 25, 26, 27
River City Ranches #1 LTD. v. Commissioner, 401 F.3d 1136 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . 30, 31
Rocovich v. United States, 933 F.2d 991 (Fed. Cir. 1991) . . 10
Rogers v. Commissioner, 60 T.C.M. (CCH) 1386 (1990) . . . . . 35
S. Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . 10
Schachter v. Commissioner, 67 T.C.M. (CCH) 3092 (1994) . . . 35
Slovacek v. United States, 36 Fed. Cl. 250 (1996) . . . . 18, 19 . . . . . . . . . . . . . . . . . . . . . 20, 21, 24, 26
Thomas v. United States, 166 F.3d 825 (6th Cir. 1999) . . 36, 37
Thomas v. United States, 967 F. Supp. 505 (N.D.Ga. 1997) . . 18
Thompson v. United States, 223 F.3d 1206 (10th Cir. 2000) 36, 37
Todd v. Commissioner, 862 F.2d 540 (5th Cir. 1988) . . . . . 35
Weiner v. United States, 389 F.3d 152 (5th Cir. 2004) . . 14, 18 . . . . . . . . . . . . . 19, 20, 21, 24, 26, 27, 33, 35, 36

Weiner v. United States, 255 F. Supp. 2d 624 (S.D.Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 18, 36, 37

**MISCELLANEOUS:**

64 Fed. Reg. 3837 (1999) . . . . . . . . . . . . . . . . . . . . 15
H.R. Conf. Rep. No. 98-861 (1984), reprinted in 1984-3 C.B. Vol. II . . . . . . . . . . . . . . . . . . . . . . . . 28
H.R. Conf. Rep. No. 99-841 (1986), reprinted in 1986-3 C.B. Vol. IV . . . . . . . . . . . . . . . . . . . . . . . . 28
Webster’s Third New International Dictionary, Unabridged (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATEMENT OF QUESTIONS INVOLVED

1. Whether the Court lacks subject matter jurisdiction pursuant to 26 U.S.C. § 7422(h) in this partner level proceeding to determine whether the period for assessing tax attributable to partnership items expired prior to the issuance of notices of final partnership administrative adjustment to the partnerships in which Keener and William P. Smith, Jr. were limited partners.

2. Whether the Court lacks subject matter jurisdiction pursuant to 26 U.S.C. § 7422(h) in this partner level proceeding to determine whether underpayments of tax derived from loss deductions claimed by partnerships in which Keener and William P. Smith, Jr. were limited partners and disallowed by the Internal Revenue Service can be attributed to tax motivated transactions as defined in former 26 U.S.C. § 6621(c)(3)(A)(v).

# I. FACTUAL BACKGROUND

## A. Kenneth C. Keener

Plaintiff Kenneth C. Keener ("Keener") was a partner in Agri Venture II, a California limited partnership, ("AVII") during the year 1984, see Compl. ¶ 6, and a partner in Agri Venture Fund, a California limited partnership, ("AVF") during the year 1985, see id. ¶ 16. For the taxable period ending on December 31, 1984, AVII reported ordinary loss deductions, see Ex. 1, App. B at B21, B23, of which Keener received a distributive share, see Compl. ¶¶ 5, 6, Ex. 1, App. C at C1, C10. Keener reported his distributive share of AVII loss on his 1984 individual income tax return and used it to reduce his 1984 taxable income. See id. For the taxable period ending on December 31, 1985, AVF reported ordinary loss deductions, see Ex. 2, App. B at B50-51, of which Keener received a distributive share, see Compl. ¶¶ 15, 16, Ex. 4, App. C at C26, C35. Keener reported his distributive share of AVF loss on his 1985 individual income tax return and used it to reduce his 1985 taxable income. See id..

On April 10, 1991, the Internal Revenue Service ("IRS") issued a notice of final partnership administrative adjustment ("FPAA") to AVII and to AVF, determining, among other things, that the ordinary loss deductions reported by AVII on its 1984 return of partnership income and by AVF on its 1985 return of partnership income were not allowable and accordingly adjusting

the reported deductions downward to zero. See Ex. 1, App. B at B18-26; Ex. 2, App. B at B46-54. In addition to other reasons, each FPAA stated that the deductions were not allowable because "[t]he partnership's activities constitute a series of sham transactions." See Ex. 1, App. B at B23; Ex. 2, App. B at B51.

On July 10, 1991, notice partners of AVII and of AVF filed in the United States Tax Court petitions for readjustment contesting the adjustments made in the FPAAs, respectively, *Agri-Venture-II, Lloyd T. And Mary Ann Whitaker, A Partner Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15048-91, ("*Agri-Venture-II*") and *Agri-Venture Fund, Donald Housman, A Partner Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15034-91 ("*Agri-Venture-Fund*"). See Exs. 1, 2, App. B. Each petition raised numerous challenges to the FPAA adjustments, including that the period for assessing tax attributable to the adjusted partnership items expired prior to issuance of the FPAA and that the IRS had erred in determining that the partnerships' activities constituted a series of sham transactions. See Ex. 1, App. B at B2-5; Ex. 2, App. B at B29-32.

While the *Agri-Venture-II* and *Agri-Venture-Fund* cases were proceeding in the Tax Court, the IRS and Keener entered into settlement agreements with respect to some of the FPAA

determinations of the partnership items of AVII for 1984 and of AVF for 1985. See Compl. ¶¶ 7, 12A, 12C, 12I, 17, 22A, 22C, 22I, Ex. 1, App. C at C8-11, Ex. 4, App. C at C33-36. The settlement agreements became effective on April 28, 1997 when accepted and counter-signed by the IRS. See Compl. Ex. 1, App. C at C8, Ex. 4, App. C at C33. The settlements were partial and did not reach an agreement with respect to every determination made in or related to the FPAAs, including that the IRS and Keener did not reach any agreement on the period of limitations challenge to the timeliness of the issuance of the FPAAs raised by the petitions for readjustment in the Tax Court or on the determinations of the FPAAs that AVII's and AVF's partnership activities from which the claimed loss deductions derived were sham transactions. See Compl. ¶¶ 7, 12A, 12C, 12I, 17, 22A, 22C, 22I, Ex. 1, App. C at C8-11, Ex. 4, App. C at C33-36.

In March 1998, the IRS assessed the additional tax and interest Keener was believed to owe as a result of the partial settlements. See id. ¶¶ 8, 18. In satisfaction of the assessments, the IRS applied advance remittances Keener had made in October 1995. See id. ¶¶ 9, 19. On November 19, 1999, Keener filed claims for refund of the additional tax and interest paid as a result of his partial settlement agreements of AVII's and AVF's partnership items. See Compl. ¶¶ 10, 20, Exs. 1, 2, 4, 5. The IRS denied the claims by letter dated August 30, 2001. See

Compl. ¶¶ 11, 21, Ex. 3.

Meanwhile, on July 19, 2001, pursuant to agreements between the IRS and the tax matters partners of AVII and AVF regarding the FPAA adjustments, the Tax Court issued substantially similar decisions in *Agri-Venture-II* and *Agri-Venture-Fund*, the former of which reads in pertinent part:

> It is ORDERED and DECIDED...
>
> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting;
>
> ...
>
> That the assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for the years 1984 and 1985 are not barred by the provisions of I.R.C. § 6229.

<u>See</u> Ex. 3, App. B at B55, B57.[5]

---

[5] The pertinent part of *Agri-Venture-Fund* reads:

> It is ORDERED and DECIDED...
>
> That the foregoing adjustments are attributable to the partnerships reporting of transactions, as described in former I.R.C. § 6621(c)(3)(A)(v), which lacked economic substance so as to result in a substantial distortion of partnership income under the partnership's cash receipts and disbursements method of accounting, as described at I.R.C. § 6621(c)(3)(A)(iv);
>
> ...
>
> That the assessment of any deficiencies in income tax

On September 2, 2003, Keener filed the present action.

**B. Willaim P. Smith, Jr. and Anne D. Smith**

Plaintiff William P. Smith, Jr. (“Smith”) was a partner in Richgrove Grape Associates, a California limited partnership, (“RGA”) during the year 1984, see Compl. ¶¶ 6, 16, and a partner in Desert Highland Vineyards, a California limited partnership, (“DHV”) during the year 1985, see id. ¶ 26. For the taxable period ending on December 31, 1984, RGA reported ordinary loss deductions, see Ex. 5, App. B at B83, B85, of which Smith received a distributive share, see Compl. ¶¶ 5, 6, Ex. A, App. D at D1, D10. Smith reported his distributive share of the RGA loss on his 1984 individual income tax return and used it to reduce his 1984 taxable income. See id.. Smith’s distributive share of 1984 RGA partnership items also permitted Smith via a carryback to reduce his 1981 taxable income. See id. ¶¶ 15, 16, Ex. A, App. D at D10, Ex. D, App. D at D24, D33-34. For the taxable period ending on December 31, 1985, DHV reported ordinary loss deductions, see Ex. 6, App. B at B108, B110, of which Smith received a distributive share, see Compl. ¶¶ 25, 26, Ex. F, App. D at D46, D54. Smith reported his distributive share of the DHV

---

> that are attributable to the adjustments to partnership items for the year 1985 are not barred by the provisions of I.R.C. § 6229.

See Ex. 4, App. B at B59-60.

loss on his 1985 individual income tax return and used it to reduce his 1985 taxable income. See id.

On April 10, 1991, the Internal Revenue Service ("IRS") issued a notice of final partnership administrative adjustment ("FPAA") to RGA and to DHV, determining, among other things, that the ordinary loss deductions reported by RGA on its 1984 return of partnership income and by DHV on its 1985 return of partnership income were not allowable and accordingly adjusting the reported deductions downward to zero. See Ex. 5, App. B at B80-88; Ex. 6, App. B at B105-113. In addition to other reasons, each FPAA stated that the deductions were not allowable because "[t]he partnership's activities constitute a series of sham transactions." See Ex. 5, App. B at B85; Ex. 6, App. B at B110.

On July 10, 1991, notice partners of RGA and of DHV filed in the United States Tax Court petitions for readjustment contesting the adjustments made in the FPAAs, respectively, *Richgrove Grape Associates, Charles W. And Martha C. Adair, Partners Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15044-91, ("*Richgrove*") and *Desert Highland Vineyards, Russell E. And Lois E. Hughes, A Partner Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15056-91 ("*Desert Highland*"). See Exs. 5, 6, App. B. Each petition raised numerous challenges to the FPAA adjustments, including

that the period for assessing tax attributable to the adjusted partnership items expired prior to the issuance of the FPAA and that the IRS had erred in determining that the partnerships' activities constituted a series of sham transactions. See Ex. 5, App. B at B63-65; Ex. 6, App. B at B90-93.

While the *Richgrove* and *Desert Highland* cases were proceeding in the Tax Court, the IRS and Smith (and Plaintiff Anne D. Smith) entered into settlement agreements with respect to some of the FPAA determinations of the partnership items of RGA for 1984 and of DHV for 1985. See Compl. ¶¶ 6, 12A, 12C, 12H, 16, 22A, 22C, 22H, 26, 32A, 32C, 32H, Ex. A, App. D at D9-10, Ex. D, App. D at D32-34; Ex. 7, App. B at B114-115. The settlement agreements became effective on April 9, 1999 when accepted and counter-signed by the IRS. See Compl. Ex. A, App. D at D9, Ex. D, App. D at D32; Ex. 7, App. B at B114. The settlements were partial and did not reach an agreement with respect to every determination made in or related to the FPAAs, including that the IRS and Smith (and Plaintiff Anne D. Smith) did not reach any agreement on the period of limitations challenge to the timeliness of the issuance of the FPAAs raised by the petitions for readjustment in the Tax Court or on the determinations of the FPAAs that RGA's and DHV's partnership activities from which the claimed loss deductions derived were sham transactions. See Compl. ¶¶ 6, 12A, 12C, 12H, 16, 22A, 22C, 22H, 26, 32A, 32C, 32H,

Ex. A, App. D at D9-10, Ex. D, App. D at D32-34; Ex. 7, App. B at B114-115. In March and April 2000, the IRS assessed the additional tax and interest Smith was believed to owe as a result of the partial settlements. See Compl. ¶¶ 8, 18, 28, Ex. A, App. D at D11-12, Ex. D, App. D at D35, Ex. F, App. D at D55-56. In satisfaction of the lion share of the assessments, the IRS applied advance remittances Smith had made in November 1995 and February 1999, and Smith supplied the shortfall with an additional payment in June 2000. See id. ¶¶ 9, 19, 29, Ex. A, App. D at D11-12, Ex. D, App. D at D35, Ex. F, App. D at D55-56.

On July 19, 2001, pursuant to agreements between the IRS and the tax matters partners of RGA and DHV regarding the FPAA adjustments, the Tax Court issued almost identical decisions in *Richgrove* and *Desert Highland*, the former of which reads in pertinent part:

> It is ORDERED and DECIDED...
>
> That the adjustments to partnership income and expense for the 1984 taxable year are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(V), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting;
>
> ...
>
> That the assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for the years 1984 and 1985 are not barred by the provisions of I.R.C. § 6229.

See Ex. 8, App. B at B116, B118.[6]

On March 8, 2002, the Smiths filed claims for refund of the additional tax and interest paid as a result of their partial settlement agreements of RGA's and DHV's partnership items. See Compl. ¶¶ 10, 20, 30, Exs. A, D, F. The IRS denied the claims by letter dated May 23, 2002. See Compl. ¶¶ 11, 21, 31, Ex. C. On May 24, 2004, the Smiths filed the present action.

## II. RCFC 12(b)(1) STANDARD

Jurisdictional challenge pursuant to RCFC 12(b)(1) takes two forms, legal/facial challenge to the assumed true factual jurisdictional allegations of the complaint and factual challenges to the jurisdictional facts alleged in it. See e.g. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 (Fed.

[6] The pertinent part of *Desert Highland* reads:

> It is ORDERED and DECIDED...
>
> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(V), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting;
>
> ...
>
> That the assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for the year 1985 are not barred by the provisions of I.R.C. § 6229.

See Ex. 9, App. B at B119-120.

Cir. 1993); S. Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). The former entitles the plaintiff to the assumption that alleged jurisdictional facts are true and correct and liberal construction of them in plaintiff's favor while the latter does not but permits the court to receive and weigh evidence to resolve disputed jurisdictional facts with the burden on the plaintiff to establish subject matter jurisdiction by a preponderance of evidence after opportunity to be heard. See e.g. Rocovich v. United States, 933 F.2d 991, 993-94 (Fed. Cir. 1991); Reynolds, 846 F.2d at 747-48.

The United States in the present motion essentially raises a legal challenge to the assumed true factual jurisdictional allegations and exhibits of Keener's and Smith's complaints. The United States has added factual material, documents filed in the Tax Court and Smith's settlement agreement with respect to DHV's 1985 partnership items, but does not anticipate that either Keener or Smith will dispute the facts for which the materials are cited as support. In the event either does do so, the United States submits to the Court for resolution any dispute raised by Keener or Smith over the factual materials supplied by the United States as is proper on a RCFC 12(b)(1) motion.

## III. ARGUMENT

### A. This Court lacks subject matter jurisdiction pursuant to 26 U.S.C. § 7422(h) over the portions of each count

**of Keener's and Smith's complaints contesting timeliness of the assessment of tax attributable to partnership items and the propriety of the assessment of tax motivated interest under former 26 U.S.C. § 6621(c).**

**1. Statutory/Regulatory Background**

In 1982, as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 402(a), 96 Stat. 324, 648-671, ("TEFRA"),[7] Congress enacted unified partnership audit examination and litigation provisions, now codified, as amended, at 26 U.S.C. §§ 6221-6234. "Prior to TEFRA's enactment, multiple proceedings were required to address the tax treatment of partnership issues, because partnerships are not separately taxable entities and partnership income and expense pass through to the individual partners." Chimblo v. Commissioner, 177 F.3d 119, 121 (2d Cir. 1999)(quotations omitted). "Through TEFRA, Congress sought to ensure equal treatment of partners by uniformly adjusting partners' tax liabilities and channeling any challenges to these adjustments into a single, unified proceeding. ... This system has the additional advantage of abating the administrative burden that would be wrought by multiple, duplicative audits and lawsuits involving numerous partners in a single partnership." Kaplan v. United States, 133 F.3d 469, 471 (7th Cir. 1998)(citation omitted).

[7] TEFRA is applicable to tax years beginning after September 3, 1982. Pub. L. No. 97-248, § 407.

Towards achieving TEFRA's dual goals, the tax treatment of partnership items is determined at the partnership level, see 26 U.S.C. § 6221, and a partner is required on the partner's return to treat a partnership item in a manner consistent with the treatment of such partnership item on the partnership return, see 26 U.S.C. § 6222. A "partnership item" is defined as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of [subtitle F], such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). If the IRS adjusts the treatment of partnership items on a partnership return, it must mail the partners a FPAA. 26 U.S.C. §§ 6223(a)(2), (d)(2). Generally, the IRS must mail the FPAA within three years after the later of the date on which the partnership return was filed or due or the period for assessing tax attributable to any partnership item related to the return will expire. See 26 U.S.C. §§ 6501(a), 6229(a), (d).[8] The tax matters partner

[8] As a technical matter not material to the outcome of this case, 26 U.S.C. § 6229(a) is not a period of limitations but rather holds open the period of limitations under 26 U.S.C. § 6501 for making an assessment of tax attributable to partnership items. See AD Global Fund, LLC v. United States, 67 Fed. Cl. 657 (2005)(exhaustively discussing whether 26 U.S.C. § 6229(a) and 26 U.S.C. § 6501(a) are two separate periods of limitation or rather the former merely serves to hold open or extend the later). For purposes of economy and

("TMP")[9] has 90 days after the day on which the FPAA is mailed to file a petition in the U.S. Tax Court, the U.S. Court of Federal Claims, or a U.S. district court, for readjustment of the adjusted partnership items. See 26 U.S.C. § 6226(a). If the TMP does not file such petition within the 90 day period, certain other partners or partner groups may do so within the next 60 days. See 26 U.S.C. § 6226(b). If a petition for readjustment is filed, each partner who was a partner at any time during the year of the adjusted partnership return is deemed a party to the readjustment action and is entitled to participate. See 26 U.S.C. § 6226(c). The period for assessment of tax attributable to any partnership item remains open during the 150 day statutory period within which a petition may be filed (and, if a petition is filed, until the decision of the court becomes final) and for one year thereafter. See 26 U.S.C. § 6229(d). A partner assessed tax as a result of a readjustment petition action or a FPAA determination may contest the tax liability by

consistency with some judicial opinions addressing claims substantially similar if not identical to Keener's and Smith's period of limitations claim, the period set forth in 26 U.S.C. § 6229(a) will sometimes be referred to as the "FPAA period of limitations" or a "period of limitations" or some similar phrase. The use of such language is not intended to suggest that such subsection is in fact a period of limitations separate from 26 U.S.C. § 6501.

[9] The tax matters partner generally is either the general partner designated as the tax matters partner under applicable regulations or the general partner having the largest profits interest in the partnership. See 26 U.S.C. § 6231(a)(7).

paying the assessment and filing a refund action in the Court of Federal Claims or United States District Court but must do so within the constraints of 26 U.S.C. § 7422(h):

> No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).

This statutory scheme ensures TEFRA's dual goals of consistency and economy by channeling into a single proceeding all partners' disputes over readjusted partnership items. See e.g. Chimblo, 177 F.3d at 121.

Settlements with respect to partnership items alter the general framework set forth above. As of the date the IRS enters into a settlement agreement with a partner with respect to partnership items, those partnership items convert to nonpartnership items. See 26 U.S.C. § 6231(b)(1)(C).[10] If, however, the settlement is a partial one and therefore covers only some partnership items, it is only the items settled that convert to nonpartnership items. See id. ("...partnership items of a partner ... shall become nonpartnership items as of the date the Secretary ... enters into a settlement agreement with the partner with respect to such items....")(emphasis added); Weiner

[10] A nonpartnership item is defined as "an item which is (or is treated as) not a partnership item." 26 U.S.C. § 6231(a)(4).

v. United States, 389 F.3d 152, 156 n.2 (5th Cir. 2004).[11] If the settlement is entered into during the pendency of a proceeding challenging the FPAA, the settling partner, after the day the settlement is entered by the IRS, is no longer treated as a party to the proceeding with respect to settled partnership items but remains a party to the proceeding with respect to unsettled partnership items. See 26 U.S.C. §§ 6226(c)(1), (d)(1)(A); 6231(b)(1)(C).[12]

---

[11] For partial settlements entered into after August 5, 1997 (Smith's but not Keener's), 26 U.S.C. § 6229(f)(2) clarifies that the period of limitations for assessing tax attributable to the settled items is measured by the period of limitations applicable to the last disputed and unsettled partnership item.

[12] Temporary regulations effective January 26, 1999 (applicable to Smith's but not Keener's settlement agreement) "clarif[ied] that the partner remains subject to the unified audit procedures regarding the nonsettled items." 64 Fed. Reg. 3837 (1999); see Temp. Treas. Reg. § 301.6229(f)-1T(b)(1999)("Pursuant to section 6226(c), a partner is a party to a partnership level judicial proceeding with respect to partnership items. When a partner settles partnership items, the settled partnership items convert to nonpartnership items under 6231(b)(1)(C) and will not be subject to any future or pending partnership level proceeding pursuant to section 6226(d)(1). The remaining unsettled partnership items, however, will remain subject to determination under partnership level administrative and judicial procedures. Consequently, any remaining unsettled items will be deemed to remain in dispute. Thus, the period for assessing settled items will be governed by the period for assessing the remaining unsettled items."). The Government agrees with the assessment that the temporary regulation merely clarified existing law. Otherwise, a partial settlement would have precluded the settling partner from litigating unsettled partnership items: The settling partner would have been removed from being a party to the partnership level judicial proceeding pursuant to 26 U.S.C. § 6226(d)(1) yet the unsettled items would not have converted to nonpartnership items, see 26 U.S.C. § 6231(b)(1)(C), thus leaving the settling partner

**2. This Court lacks subject matter jurisdiction pursuant to 26 U.S.C. § 7422(h) over Keener's and Smith's allegations that assessments of tax attributable to partnership items were untimely because the period for such assessment expired prior to the issuance of a Notice of Final Partnership Administrative Adjustment to AVII, AVF, RGA, and DHV.**

The sole ground alleged in Keener's and Smith's complaints for recovery of tax (and correspondingly interest) is that the the assessments of tax deriving from their settlement agreements were made and the FPAAs mailed to AVII, AVF, RGA, and DHV on April 10, 1991 were issued more than three years after the date on which AVII, AVF, RGA, and DHV each filed its partnership return, and therefore the assessments were untimely outside the period prescribed in 26 U.S.C. §§ 6501, 6229(a) for assessing tax attributable to the partnership items of those entities and such period was not suspended under 26 U.S.C. § 6229(d) by timely issued FPAAs. See Compl. (Keener) §12A, 12B, 22A, 22B; Compl. (Smith) §§ 12A, 12B, 22A, 22B, 32A, 32B. More concisely, Keener's and Smith's argument boils down to a challenge to the timeliness of the issuance of FPAAs to AVII, AVF, RGA, and DHV.[13]

---

barred by 26 U.S.C. § 7422(h) from litigating the unsettled and therefore unconverted partnership items in a separate refund suit. Accordingly, the United States views Smith's and Keener's settlement agreements as subject to the same substantive law in this regard.

[13] That Keener's and Smith's complaints cannot be read to assert any other attack on the timeliness of the assessment of tax against them is clear from indisputable facts. Assuming *arguendo* that, as Keener and Smith claim, the FPAAs mailed to

Keener's and Smith's period of limitations claim is barred by 26 U.S.C. § 7422(h), which provides:

> No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).[14]

Although not always relying on this provision, no less than four federal circuit courts of appeal and one decision of the Court of

---

each entity on April 10, 1991 were untimely issued, then the subsequent assessments of tax against Keener and Smith in respectively March 1998 and March/April 2000 were untimely under 26 U.S.C. §§ 6501, 6229. However, if the FPAAs were timely issued, then the period for assessing tax attributable to the partnership items of AVII, AVF, RGA, and DHV against Keener and Smith was held open at a minimum until one year after the items converted by settlement into non-partnership items. See 26 U.S.C. §§ 6229 (a), (d), (f)(1). Keener's settlement agreement became effective on April 28, 1997 and the corresponding tax was assessed within one year in March 1998. Smith's settlement agreement became effective April 9, 1999 and the corresponding tax was assessed within one year in March 2000. (The assessment of additional interest against Smith on April 17, 2000 was also timely. See 26 U.S.C. § 6601(g)). Moreover, if the FPAAs were timely issued and if, as the United States contends infra, 26 U.S.C. § 6229(a) or the nature of a partnership transaction for purposes of application of former 26 U.S.C. § 6621(c)(3)(A)(v) is a partnership item, then the period for assessing tax attributable to partnership items against Smith (and arguably also against Keener) was held open until one year after the decisions of the Tax Court entered July 19, 2001 regarding AVII, AVF, RGA, and DHV became final. See 26 U.S.C. §§ 6229(a), (d), (f)(2)(applicable to Smith's settlement not Keener's). Such date was obviously after the March 1998 and March/April 2000 assessments at issue here.

[14] 26 U.S.C. § 6228(b) pertains to administrative adjustment requests arising under 26 U.S.C. § 6227, and 26 U.S.C. § 6230 pertains to claims "arising out of erroneous computations." Keener's and Smith's complaints neither derive from an administrative adjustment request nor allege an erroneous computation. Thus, these two exceptions are inapplicable.

Federal Claims have concluded that a challenge to the timeliness of an assessment of tax attributable to partnership items on grounds of an FPAA being untimely issued outside the period prescribed in 26 U.S.C. § 6229(a) cannot be maintained in a partner level proceeding but must be brought in an entity level action challenging the adjustments to an FPAA. See Weiner v. United States, 389 F.3d 152, 155-59 (5th Cir. 2004); Davenport Recycling Assocs. v. Commissioner, 220 F.3d 1255, 1260-61 (11th Cir. 2000); Chimblo v. Commissioner, 177 F.3d 119, 125 (2nd Cir. 1999); Kaplan v. United States, 133 F.3d 469, 473-74 (7th Cir. 1998); Slovacek v. United States, 36 Fed. Cl. 250, 254-55 (1996).[15] Although one can discern from these authorities three different lines of reasoning towards reaching this result, the common thread that binds them together is the concern that a contrary conclusion would do violence to the dual purposes of economy and consistency underlying the enactment of unified audit examination and litigation provisions in TEFRA. The Second

[15] No federal circuit court of appeal has reached a contrary result. In addition, the only district court case known to the United States to reach a contrary result, see Weiner v. United States, 255 F. Supp. 2d 624, 632-36 (S.D.Tex. 2002), was reversed on that holding on appeal, see Weiner, 389 F.3d at 155-59. For other district court decisions in accord with the cited appellate authorities, see Kraemer v. United States, No. CIV. H-00-2948, 2002 WL 575791, at *7-11 (S.D.Tex. Feb. 13, 2002), rev'd in part on other grounds by Weiner, 389 F.3d 152; Clark v. United States, 68 F. Supp. 2d 1333, 1342-44 (N.D.Ga. 1999); Barnes v. United States, No. 97-57-Civ-ORL-22, 1997 WL 732594, at *2-4 (M.D.Fla. July 25, 1997); Thomas v. United States, 967 F. Supp. 505, 506 (N.D.Ga. 1997).

Circuit's statement in Chimblo is representative:

> Allowing individual taxpayers to raise a statue of limitations defense in multiple partner-level proceedings would undermine TEFRA's dual goals of centralizing the treatment of partnership items and ensuring the equal treatment of partners.

Chimblo, 177 F.3d at 125.[16]

As regards non-policy legal analysis, Weiner and Slovacek held that the FPAA period of limitations in 26 U.S.C. § 6229(a) is a partnership item and thus a refund claim based on a challenge to the timeliness of issuance of an FPAA is "attributable to partnership items" within the meaning of 26 U.S.C. § 7422(h) and cannot be litigated at the partner level. As recited above, partnership item is defined as

> any item required to be taken into account for the partnership's taxable year under any provision of subtitle A

[16] See also Weiner, 389 F.3d at 158 ("From a practical perspective, a finding of jurisdiction over the statute of limitations issue would create an absurd result that contravenes TEFRA. As was the case here, partners could settle with the IRS and thus eliminate their ability to participate in and be bound by the result of any partnership-level proceeding. But if, as here, the Tax Court decided the substantive statue of limitations issue against the partnership, the settling partners could simply bring individual partner-level suits in the district courts and attempt to obtain a different ruling on the statute of limitations issue. Thus, some partners would be required to pay the assessed deficiency, while others would not. The result advocated by the taxpayers here is at odds with TEFRA's goal of consolidating decisions that affect the partnership as a whole."); Kaplan, 133 F.3d at 473 ("If the Kaplans were to succeed in their claim, it would affect the tax liability of all of MCDA II's partners. This is precisely the type of challenge prohibited by TEFRA in light of Congress decision that such suits are better addressed in one fell swoop at the "partnership level" than in countless suits by individual partners.").

> to the extent regulations prescribed by the Secretary provide that, for the purposes of [subtitle F], such item is more appropriately determined at the partnership level than at the partner level.

26 U.S.C. § 6231(a)(3). Notwithstanding that 26 U.S.C. § 6229(a) is not in subtitle A but rather in subtitle F and that no treasury regulation explicitly refers to the period prescribed for timely issuance of an FPAA as a partnership item, Weiner and Slovacek nevertheless concluded that the statute of limitations is a partnership item. In addition to the policy grounds noted above, they reasoned that the FPAA period of limitations in 26 U.S.C. § 6229(a) is implicitly included within the statutory definition of "partnership item" by Treas. Reg. § 301.6231(a)(3)-(1)(b)(1986), which provides,

> The term 'partnership item' includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.

Treas. Reg. § 301.6231(a)(3)-(1)(b)(1986); see Slovacek, 36 Fed. Cl. at 255 ("Determining whether Mr. Nielsen extended the statue of limitations might be said to affect the amount, timing, and characterization of income, etc., (partnership items) at the partnership level, if only in a thumbs-up or thumbs-down manner."); see also Weiner, 389 F.3d at 157.

Kaplan focused on the ultimate goal of the taxpayer's refund suit, to recover deductions disallowed in an IRS FPAA, and, pointing out that disallowed deductions were a "prototypical

partnership item," therefore concluded that the refund claim fell within the "plain language" of 26 U.S.C. § 7422(h) as "attributable to partnership items." Kaplan, 133 F.3d at 473. Notably, the Seventh Circuit rejected the taxpayers' argument that 26 U.S.C. § 7422(h) was inapplicable simply because the refund action rested on a challenge to the timeliness of the FPAA, rather than to the underlying adjustments to partnership items of gain and loss. The Court responded, "[t]his argument cannot succeed because the underlying substantive claim concerns the propriety of the adjustments to the partnership's 1983 tax return." Id. (emphasis added). Thus, the Seventh Circuit's reasoning differs from Weiner and Slovacek because it did not hold that the period of limitations found in 26 U.S.C. § 6229(a) was a partnership item but rather that the taxpayer's refund suit was "attributable to partnership items," namely, disallowed deductions, and therefore the bar of 26 U.S.C. § 7422(h) applied.[17]

If the United States were writing on a clean slate, it would argue that the Kaplan case offers the better interpretation of

[17] Chimblo and Davenport represent a third line of reasoning, apparently holding that 26 U.S.C. § 6229(a) is an affirmative defense that "concerns a 'partnership item'," Chimblo, 177 F.3d at 125, and therefore must be litigated at the partnership level. The discussions are short, Davenport's essentially adopting Chimblo, and do not rely on the jurisdictional bar of 26 U.S.C. § 7422(h). The overwhelming emphasis is on protecting TEFRA's policy goals.

26 U.S.C. § 7422(h). Inquiry into the meaning of the phrase "attributable to partnership items" in 26 U.S.C. § 7422(h) requires statutory construction, necessitating "turn[ing] first to the language of the statute." Badaracco v. Commissioner, 464 U.S. 386, 392 (1984). Title 26 of the U.S. Code does not contain a definition of the phrase "attributable to." In a tax context, the Supreme Court has stated that the "ordinary meaning [of] the phrase 'attributable to' [is] caused or generated by," Braunstein v. Commissioner, 374 U.S. 65, 70 (1963), which tracks standard dictionary definitions, see e.g., Webster's Third New International Dictionary, Unabridged 141-142 (1986)("attributable" defined as "capable of being attributed"; verb "attribute" defined as "to explain as caused or brought about by: regard as occurring in consequence of or on account of").[18] Therefore, the plain language of 26 U.S.C. § 7422(h) means only that the taxpayer's refund suit is caused, generated,

---

[18] Opinions of the Tax Court have reached similar conclusions. See Lawinger v. Commissioner, 103 T.C. 428, 435 (1994)("Thus, the plain meaning of 'attributable to' is simply due to, caused by, or generated by."); First Chicago Corp. v. Commissioner, 80 T.C. 648, 665 and n.5 (1983)(Whitaker, J., dissenting)("...we are committed to the concept that a deficiency is "attributable to" a carryback if it can be traced to the carryback. ... If there were doubt as to the intendment of these words, one has but to look at the nearest dictionary. '2. To ascribe (to) as belonging or pertaining; specif: a By way of cause; as, a disease attributed to infection.' Webster's....")(Whitaker's dissenting opinion, with which four judges of an en banc court agreed, was adopted by Seventh Circuit Court of Appeals in First Chicago Corp. v. Commissioner, 742 F.2d 1102 (7th Cir. 1984).).

or brought about by a partnership item, and not that a partnership item is directly disputed by the claim. The Kaplan view comports with this plain meaning analysis and therefore does not suffer from having to squeeze a subtitle F period of limitations that does not explicitly appear in the relevant treasury regulation into the statutory definition of partnership item in 26 U.S.C. § 6231(a)(3) as a result of policy based considerations. As applied to this case, this analysis would simply recognize that Keener's and Smith's present refund suits seek recovery of (i.e. originate from/are brought about by) tax payments derived from disallowed partnership deductions, an obvious partnership item, see Treas. Reg. § 301.6231(a)(3)-1(a)(i)(1986), via a period of limitations argument and therefore are barred unless falling within the narrow exceptions outlined in 26 U.S.C. § 7422(h), which they do not, see supra note 14.[19]

---

[19] Keener's and Smith's settlement agreements do not affect this conclusion. Although the settlement agreements covered the disallowed deductions and therefore those partnership items generally converted to non-partnership items upon settlement, see 26 U.S.C. § 6231(b)(1)(C), the jurisdictional bar of 26 U.S.C. § 7422(h) specifically incorporates only the definition of partnership item from 26 U.S.C. § 6231(a)(3), contemplating a bar on suits attributable to items that were partnership items at any time irrespective of whether or not at the time of suit they had converted under subsection (b) of 26 U.S.C. § 6231. This interpretation of 26 U.S.C. § 7422(h) is demonstrated by the very exceptions listed therein, 26 U.S.C. §§ 6228(b), 6230(c), because both permit suits concerning partnership items that already converted to nonpartnership items at the time of suit and therefore reference to those sections in the jurisdictional bar statute would be completely superfluous if converted partnership items fell outside the scope of the bar. But see Olson v. United

However, a Kaplan type of analysis here is foreclosed by binding Federal Circuit precedent, Prochorenko v. United States, 243 F.3d 1359, 1362-63 (Fed. Cir. 2001)(2-1 decision). The Prochorenko majority followed the same type of analysis as Weiner and Slovacek, in analyzing, with citation to 26 U.S.C. §§ 6231(a)(3), 7422(h) and Treas. Reg. § 301.6231(a)(3)-1(a)(1986), whether a partner's right to a consistent settlement under 26 U.S.C. § 6224(c), a subtitle F provision, was a partnership item and therefore barred by 26 U.S.C. § 7422(h) from being litigated in a partner proceeding. In concluding that such right was not a partnership item, the Prochorenko majority, following the Second Circuit Court of Appeals' decision in Monti v. United States, 223 F.3d 76 (2d Cir. 2000), reasoned that a partner's right to settlement terms consistent with those granted to another partner concerns solely partner level determinations, comparisons of one partner's situation to another's and the partner's communications with the IRS, versus partnership level ones, for example, partnership communications with the IRS. See Prochorenko, 243 F.3d at 1363. The majority explicitly rejected the view that the Prochorenkos' refund claim was "attributable to partnership items" and therefore jurisdictionally barred because they were seeking a

---

States, 37 Fed. Cl. 727, 733-34 & n.8, 739-41 (1997)(rejecting statutory analysis made in this footnote), aff'd on other grounds, 172 F.3d 1311 (1999).

refund of taxes stemming from disallowed partnership losses:

> Construing the phrase "attributable to partnership items" so broadly as to cover claims that depend on the unique circumstances of an individual partner, and that only affect that partner, would be contrary to the system of separate treatment of partnership items and nonpartnership items established by Congress in enacting TEFRA. *Monti*, 223 F.3d at 82 (explaining that while, at some level of generality, most refund claims for partnership taxes can be characterized as a refund 'attributable to partnership items,' to treat claims that are entirely dependent on facts peculiar to an individual partner would blur the distinction between proceedings involving partnership items and those involving nonpartnership items, and would be contrary to the system established by Congress in enacting TEFRA).

Prochorenko v. United States, 243 F.3d 1359 at 1363.[20]

Thus, the Prochorenko majority teaches that application of the bar of 26 U.S.C. § 7422(h) focuses on whether a refund claim directly disputes a partnership item and that critical factors in determining whether an item is a partnership item are whether resolution of the item is "entirely dependent" on the refund claimant's "unique factual circumstances" and "has no effect on and is not affected by the tax liability of any of the other ... partners." Id. Where these factors are present, the item "is not the type of issue that is 'more appropriately determined at the partnership level.'" Id. at 1363 (citing

---

[20] In dissent, Judge Bryson disagreed with the majority's interpretation of 26 U.S.C. § 7422(h), arguing that Kaplan's interpretation of the statute was correct and Monti's incorrect and that the statute should apply where "tax liability, and thus ... right to a refund ... relates to the tax treatment of ... partnership items. The substance of the[] claim is therefore 'attributable to partnership items' in the ordinary sense of that phrase." Prochorenko, 243 F.3d at 1366 (Bryson, J., dissenting).

Treas. Reg. § 301.6231(a)(3)-(1)(a)(1986)). Notably absent from the Prochorenko majority's analysis is any reliance on the fact that a partner's right to a consistent settlement under 26 U.S.C. § 6224(c)(2) is found in subtitle F and not subtitle A. This is no mistake as the Prochorenko majority relies heavily on Monti and the subtitle location of the consistent settlement right was mentioned in the Monti opinion as support for the conclusion that the right was not a partnership item. See Monti, 223 F.3d at 82. As the Fifth Circuit observed, "the first and arguably most important factor considered in *Monti*" was the necessity of making partner specific factual determinations independent of partnership wide issues. See Weiner, 389 F.3d at 157.

The analysis of Weiner and Slovacek, discernable in Prochorenko, dooms Keener's and Smith's period of limitations claims. As those authorities concluded, it is imperative to hold that the FPAA period of limitations in 26 U.S.C. § 6229(a) is a partnership item within the meaning of 26 U.S.C. § 6231(a)(3), with the help of Treas. Reg. § 301.6231(a)(3)-(1)(b)(1986) if necessary, for, to do otherwise, would destroy Congress' purpose in enacting unified audit examination and litigation provisions for partnerships in TEFRA by promoting not preventing multiplicity of partner proceedings and attendant inconsistent determinations. This result is pointed to by Prochorenko. Both

Keener's and Smith's claims are not entirely dependent on their unique factual circumstances but concern the issuance of an FPAA, a global partnership matter, and a decision on the timeliness of the issuance of FPAAs to AVII, AVF, RGA, and DHV at the partnership level would affect the tax liability of every other partner. Accordingly, Prochorenko suggests that the period of limitations issue would be more appropriately determined at the partnership level and thus is a partnership item, and the United States respectfully requests the Court to hold that it lacks subject matter jurisdiction under 26 U.S.C. § 7422(h) to address Keener's and Smith's attack on the timeliness of the assessments of tax resulting from their settlements on grounds of untimely issued FPAAs.[21]

**3. This Court lacks subject matter jurisdiction pursuant to 26 U.S.C. § 7422(h) over Keener's and Smith's allegations that their underpayments of tax derived from loss deductions claimed by AVII, AVF, RGA, and DHV and disallowed by the Internal**

---

[21] To the extent the analysis set forth above supra in note 19 (converted partnership items are within the bar of 26 U.S.C. § 7422(h) unless specifically excepted) is not adopted, it is important here to recognize that Keener and Smith strenuously allege and the United States agrees that their settlements did not include any agreement on the period of limitations in 26 U.S.C. § 6229(a). Accordingly, such period never converted into a non-partnership item pursuant to 26 U.S.C. § 6231(b)(1)(C) such as to permit litigating the issue in a partner level proceeding. See Weiner, 389 F.3d at 156 n.2; see also 26 U.S.C. § 6229(f)(2)(effective with respect to Smith's but not Keener's settlement agreement); Temp. Treas. Reg. § 301.6229(f)-1T(b)(1999)(same).

**Revenue Service can not be attributed to tax motivated transactions as defined in former 26 U.S.C. § 6621(c)(3)(A)(v).**

Former 26 U.S.C. § 6621(c)(hereinafter simply "26 U.S.C. § 6621(c)") imposed an interest rate of 120% of the statutory rate on "any substantial underpayment attributable to tax motivated transactions." 26 U.S.C. § 6621(c)(1). "Tax motivated transaction" was defined to include five statutory and additional regulatory transactions, see 26 U.S.C. § 6621(c)(3)(A); Temp. Treas. Reg. § 301.6621-2T, Q-4, A-4 (1984), among which is the definition relevant to the present case, "any sham or fraudulent transaction." 26 U.S.C. § 6621(c)(3)(A)(v).[22]

---

[22] 26 U.S.C. § 6621(c) was originally enacted as part of the Tax Reform Act of 1984 as 26 U.S.C. § 6621(d), see Tax Reform Act of 1984, Pub. L. No. 98-369, § 144(a), 98 Stat. 494, 682-83 (1984), and made applicable to interest accruing after December 31, 1984, see id. at § 144(c). The enactment was expected to assist the Tax Court in managing its docket with respect to tax shelter cases and to assist the IRS in settling such cases. See H.R. Conf. Rep. No. 98-861, at 985 (1984), reprinted in 1984-3 C.B. Vol. II at 239. The Tax Reform Act of 1986 made three amendments to the section: 1) 26 U.S.C. § 6621(d) was re-designated as 26 U.S.C. § 6621(c), see Tax Reform Act of 1986, Pub. L. No. 99-514, § 1511(c)(1)(A), 100 Stat. 2085, 2744 (1986); 2) the wording of subsection (c)(1) was modified slightly, see id. at § 1511(c)(1)(B) & (C); and 3) there was added to subsection (c)(3)(A), which defines tax motivated transactions, the clause "(v) any sham or fraudulent transaction," see id. at § 1535(a). The amendments were intended to be in accord with the legislative intent in originally enacting 26 U.S.C. § 6621(d). See H.R. Conf. Rep. No. 99-841, Vol. II, at II-796 (1986), reprinted in 1986-3 C.B. Vol. IV at 796. The first two amendments were made applicable to interest accruing after December 31, 1986, see Tax Reform Act of 1986 at § 1511(b), and the third to interest accruing after December 31, 1984, see id.

Keener and Smith allege that the assessment of tax motivated interest against them was improper because their settlement agreements did not include any agreement that the deduction adjustments included therein (resulting in their underpayments) were "attributable to tax motivated transactions." They also reason that the FPAAs underlying the settlements do not establish that the disallowance of partnership loss deductions was attributable to a tax motivated transaction because only some of the FPAA determinations supporting disallowance would also support the attribution conclusion. In the alternative, Keener and Smith suggest they will demonstrate that the underpayments resulting from disallowance of their partnership loss deductions were not attributable to sham transactions. Their complaints hint that they may attempt to do so by evidence of their motivation for becoming limited partners in AVII, AVF, RGA, and DHV. See e.g. Compl. (Keener) ¶¶ 12C, 12E. As will become clear infra, common to each of these three theories is an attack on the FPAA determinations that the transactions underlying the disallowed loss deductions of AVII, AVF, RGA, and DHV were shams. Pursuant to 26 U.S.C. § 7422(h), the Court lacks subject matter

---

at § 1535(b). The third amendment was not to be applied to any underpayment with respect to which there was a final court decision before enactment of the act. See id.
26 U.S.C. § 6621(c) was repealed in 1989 for interest accruing after December 31, 1989. See Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, § 7721(b) & (d), 103 Stat. 2106, 2399-2400.

jurisdiction over Keener's and Smith's challenges to the assessment of tax motivated interest because the tax motivated nature of a partnership transaction for purposes of application of 26 U.S.C. §§ 6621(c)(1), (c)(3)(A)(v)(and therefore whether a disallowed deduction is attributable thereto) is a partnership item as defined in 26 U.S.C. § 6231(a)(3), see River City Ranches #1 LTD. v. Commissioner, 401 F.3d 1136, 1143-44 (9th Cir. 2005), and therefore, once determined in an FPAA (and not readjusted by judicial decision or altered by settlement), cannot be revisited in a partner level proceeding.

The nature of a partnership's transactions satisfies the criteria of 26 U.S.C. § 6231(a)(3): First, it is required to be taken into account for purposes of Subtitle A of the Internal Revenue Code because, a determination that a partnership transaction giving rise to loss deductions is a sham results in the disallowance of those deductions, a partnership item, see 26 U.S.C. §§ 701, 702; Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i)(1986), and correspondingly impacts the individual partners' taxes, see 26 U.S.C. §§ 701, 6221, 6222. Second, regulations prescribed by the Secretary provide that, for purposes of Subtitle F of the Internal Revenue Code, the nature of a partnership's transactions is more appropriately determined at the partnership level. See Treas. Reg. § 301.6231(a)(3)-1(b)(1986)("The term 'partnership item' includes the ... legal

and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of these determinations are: ... whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183...."). A sham determination with respect to partnership transactions, analogous to a determination that partnership activities were not engaged in with the intent to make a profit for purposes of 26 U.S.C. § 183, eliminates the items of loss deduction arising from such transactions. Finally, it is important to remember that permitting in partner level proceedings challenges to an FPAA determination that a partnership transaction was a sham would upend Congress' goal in TEFRA of establishing procedures for determining all partnership items uniformly in a single judicial proceeding by promoting repetitive resolution of the issue in numerous, individual partner-level proceedings at great cost to the courts and with the risk of inconsistent results (for example, with respect to disallowance of partnership deductions).[23]

---

[23] The decision of the Ninth Circuit Court of Appeals in River City and the conclusion that the sham nature of a partnership transaction for purposes of applying 26 U.S.C. §§ 6621(c)(1), (c)(3)(A)(v) is a partnership item are contrary to Tax Court authority, see e.g. Affiliated Equip. Leasing II v. Commissioner, 97 T.C. 575 (1991), which holds that there is no jurisdiction in a partnership level proceeding to determine whether FPAA adjustments are attributable to a tax motivated transaction under 26 U.S.C. § 6621(c) on the grounds

In light of the Statutory/Regulatory Background outlined above, see supra Part III.A.1., the conclusion that the sham nature of a partnership's transactions is a partnership item as defined in 26 U.S.C. § 6231(a)(3) precludes subject matter jurisdiction over Keener's and Smith's allegations as to the impropriety of the assessment of tax motivated interest. The FPAAs issued to AVII, AVF, RGA, and DHV, Keener's and Smith's partnerships, determined, among other things, that the transactions in which those partnerships had engaged constituted a series of sham transactions and therefore disallowed each partnership's corresponding reported ordinary loss deductions attributable to those transactions. As a matter of law, the FPAA determinations were valid and assessments of tax (and correspondingly interest) could be based on them unless readjusted by a court of competent jurisdiction or altered by settlement. See 26 U.S.C. §§ 6225(a), 6226(a), (f), 6229(d), 6231(b)(1)(C). As set forth above, however, the Tax Court did

---

that tax motivated interest in its entirety is not a partnership item but an affected item. See also Field v. U.S., 328 F.3d 58, 59-60 (2nd Cir. 2003)(per curiam)(holding that interest assessed under 26 U.S.C. § 6621(c) is not a partnership item but not addressing whether a determination may be made at the partnership level regarding the nature of a partnership transaction that in turn inputs into the partner level interest analysis). The United States urges the Court to conclude that Affiliated and progeny failed to recognize that partnership level determinations regarding the nature of a partnership transaction are partnership items that impact the tax motivated interest analysis notwithstanding that the provision for tax motivated interest in 26 U.S.C. § 6621(c) is not in its entirety a partnership item.

not readjust the FPAA sham determinations (but upheld them, concluding that the partnership transactions of AVF, AVII, RGA, and DHV were shams within the meaning of 26 U.S.C. § 6621(c)(3)(A)(v)) and Keener and Smith concede that their settlement agreements did not cover the FPAA determinations that their partnerships' activities were sham transactions. Keener's and Smith's attacks here on the tax motivated interest they were assessed seek to have this Court in the present partner level proceeding overturn FPAA sham determinations that have never been readjusted or settled, something this Court is forbidden to do under 26 U.S.C. § 7422(h).[24]

First, Keener and Smith allege that their settlement agreements did not cover whether their partnerships' disallowed deductions were attributable to sham transactions. This allegation is harmful, not helpful, to their cause for, by their own admission, therefore the FPAAs' sham determinations never converted to nonpartnership items, see 26 U.S.C. § 6231(b)(1)(C); Weiner, 389 F.3d at 156 n.2, (and in law Keener and Smith remained parties to the partnership proceedings in the Tax Court in which AVF, AVII, RGA, and DHV were contesting, among other things, those determinations, see 26 U.S.C. §§ 6226(c)(1),

[24] The United States reserves its right to make a res judicata argument should its jurisdictional one be rejected. The Tax Court's ultimate sham determination would be relevant to that legal theory.

(d)(1)(A); 6231(b)(1)(C); see also 26 U.S.C. § 6229(f)(2)(applicable to Smith's settlement agreement but not Keener's); Temp. Treas. Reg. § 301.6229(f)-1T(b)(1999)(same); supra note 12). Thus, Keener's and Smith's settlements had no effect on the FPAA sham determinations and such partnership item determinations remained a valid basis for assessment of tax motivated interest.

Second and similarly, Keener and Smith allege that the independent multiple FPAA determinations, only some of which support the conclusion that their partnerships' loss deductions were attributable to sham transactions, require concluding that whether such deductions were attributable to sham transactions has never been established. This claim misunderstands TEFRA's scheme for litigating partnership items. As just set forth, the FPAA sham determinations with respect to AVII, AVF, RGA, and DHV are all valid and remain operative unless readjusted by a court or altered by settlement, neither of which has occurred. Thus, it is of no moment that another valid FPAA determination would not support imposition of tax motivated interest pursuant to 26 U.S.C. § 6621(c) where at least one FPAA determination would and has not been readjusted. Keener and Smith concede their settlements did not cover the FPAA sham determinations and thus they cannot now in this partner level forum seek readjustment of the sham determination that supports the imposition of tax

motivated interest.[25]

Third, Keener and Smith may not be permitted to litigate here whether or not their underpayments were attributable to the sham activities of AVF, AVII, RGA, and DHV by presentation of evidence related to their motive for investing in those entities. Per above, the sham nature of a partnership transaction is a partnership item and therefore cannot therefore be litigated in a partner level proceeding pursuant to 26 U.S.C. § 7422(h). As recognized by the Sixth, Eighth, and Tenth Circuit Courts of Appeal, the sham analysis for purposes of 26 U.S.C. § 6621(c)(3)(A)(v) does not inquire into the investment motivation of an individual partner but rather focuses on the objective nature of the transaction (at least where a transaction has been determined or conceded as an objective matter to be a

[25] The Fifth Circuit Court of Appeals in Weiner, 389 F.3d at 159-63, accepted the taxpayer's argument on this point. This Court should decline to follow that decision. It does not address the jurisdictional issue here raised by the United States: that the sham nature of a partnership transaction is a partnership item that impacts the tax motivated interest analysis of 26 U.S.C. § 6621(c) and therefore cannot be resolved in a partner level proceeding but is determined in an FPAA unless readjusted by a court in a partnership level proceeding or altered by settlement. Accordingly, in the United States view, the decision fails to give due deference to an FPAA determination that is not changed by judicial decision or settlement. Not surprisingly, the cases on which the Fifth Circuit relied, Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), Todd v. Commissioner, 862 F.2d 540 (5th Cir. 1988), Schachter v. Commissioner, 67 T.C.M. (CCH) 3092 (1994), Rogers v. Commissioner, 60 T.C.M. (CCH) 1386 (1990), McCrary v. Commissioner, 92 T.C. 827 (1987), do not arise out of the context of a TEFRA partnership proceeding.

sham). See Thompson v. United States, 223 F.3d 1206, 1212-1213 (10th Cir. 2000); Thomas v. United States, 166 F.3d 825, 832-34 (6th Cir. 1999); Chakales v. Commissioner, 79 F.3d 726, 727-29 (8th Cir. 1996); see also Thomas, 166 F.3d at 834-35 (Boggs, J., concurring). The sensible basis for this conclusion is the recognition that the plain language of 26 U.S.C. §§ 6621(c)(1), (c)(3)(A)(v) defines "tax motivated transaction" as "any sham transaction" and this definition focuses on transactional events and does not provide any grounds for inquiry into an individual taxpayer's motivation. Here, the FPAA sham determinations (vis a vis the activities of AVF, AVII, RGA, and DHV) have never been readjusted by a court or altered by settlement. Therefore, the assessments of interest under 26 U.S.C. § 6621(c) against Keener and Smith cannot be affected as a matter of law by their individual motivation for becoming limited partners but only by an attack on the FPAA sham determinations, an attack on a partnership item that is not permitted here.[26]

[26] In circumstances substantially similar if not identical to the present case, the district court in Weiner v. United States, 255 F.Supp.2d 673, 678-88 (S.D.Tex. 2002), aff'd on other grounds by 389 F.3d 152, reached the opposite conclusion, relying on Durrett v. Commissioner, 71 F.3d 515, 517 (5th Cir. 1996), Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995), Lukens v. Commissioner, 945 F.2d 92 (5th Cir. 1991), and Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), to conclude that an individual's profit motive for investing in a partnership as a limited partner was relevant to the imposition of interest under 26 U.S.C. § 6621(c), notwithstanding a prior FPAA determination that the partnership's activities were sham transactions. The United States respectfully submits that the Weiner court's

analysis is flawed because the underlying case law on which it rests is unsound and does not arise from a TEFRA unified partnership proceeding context. First, none of Durrett, Chamberlain, Lukens, or Heasley construes the plain language of 26 U.S.C. § 6621 (c)(3)(A)(v)("sham transaction") and therefore all do not recognize as a matter of statutory construction that the language provides no basis for analysis of subjective investment motive. Second, Heasley held that the Tax Court should consider individual intent in the tax motivated interest analysis under 26 U.S.C. § 6621(c) based on an analysis of the meaning of Temp. Treas. Reg. § 301.6621-2T, Q-4 (1984), see Heasley, 902 F.2d at 385-86, which specifies a different type of tax motivated transaction than the one at issue here, 26 U.S.C. § 6621(c)(3)(A)(v), see Copeland v. Commissioner, 290 F.3d 326, 331-32 (5th Cir. 2002), and therefore the case should have been inapplicable to the Weiner district court's analysis. See Chakales, 79 F.3d at 728. Attendantly, Lukens suggests by citation to Heasley that intent is relevant to the analysis of "sham transaction" under 26 U.S.C. § 6621(c)(3)(A)(v), see Lukens, 945 F.2d at 99. Heasley, however, held no such thing. Third, Lukens, without any attempt at statutory analysis of 26 U.S.C. § 6621(c)(3)(A)(v), defined "sham transaction" by conflation of two tax motivated transaction definitions, 26 U.S.C. § 6621(c)(3)(A)(v) and Temp. Treas. Reg. § 301.6621-2T, Q-4 (1984): "a sham or fraudulent transaction includes transactions that were not entered into for profit and are without economic substance," Lukens, 945 F.2d at 99. The conflation is revealed by reference to the authority cited as the basis for the observation, Patin v. Commissioner, 88 T.C. 1086, 1129 (1987), which concluded that its having found the transactions under review to be economic shams satisfied two definitions of a tax motivated transaction, "sham transaction," 26 U.S.C. § 6621(c)(3)(A)(v), and "transaction not entered into for profit." Temp. Treas. Reg. § 301.6621-2T, Q-4 (1984). Chamberlain and Durrett in turn invoke the same flawed and conflated definition used in Lukens. Fourth, none of Heasley, Lukens, Chamberlain, or Durrett arose under TEFRA's unified procedures. This observation answers the Weiner district court's attempt to distinguish Thompson, 223 F.3d 1206 and Thomas, 166 F.3d 825 on the grounds that the partners in those cases conceded the relevant partnership transactions were shams, see Weiner, 255 F. Supp. 2d at 679 n.9, because an FPAA determination of sham transaction functions as the equivalent of a concession - both establish the transactions at issue as shams. Coupled with recognition that inquiry into individual intent is obviated under 26 U.S.C. § 6621(c)(3)(A)(v) at a minimum where a valid objective

This analysis does not intend to imply that the Court has no jurisdiction over tax motivated interest in a partner level proceeding. Rather, tax motivated interest as a whole may be an "affected item," a partner-level item that is affected by partnership items such as sham transaction determinations, see 26 U.S.C. § 6231(a)(5), or simply a computational adjustment, see 26 U.S.C. § 6231(a)(6); Temp. Treas. Reg. § 301.6231(a)(6)-1T(b)(1987)(applicable to Smith and Keener); Treas. Reg. § 301.6231(a)(6)-1(b)(applicable to partnership taxable years beginning on or after October 4, 2001); Olson v. United States, 172 F.3d 1311, 1318 (Fed. Cir. 1999). As relevant here, either characterization would permit the Court to address partner specific factual issues related to the assessment of tax motivated interest against a partner, for example, whether the partner's underpayment was "substantial" or whether the assessment was made within the prescribed period of time for assessing interest after conclusion of a partnership level proceeding. Keener and Smith raise no partner specific arguments, however, only ones directed toward overturning partnership item determinations, the result of which, if permitted, would have implications for every partner in AVF, AVII, RGA, and DHV. 26 U.S.C. § 7422(h) prohibits therefore

sham determination has been made, the TEFRA scheme thus precludes revisiting determination of that partnership item in a partner level proceeding.

consideration of Keener's and Smith's challenges.

## IV. CONCLUSION

For the foregoing reasons, the United States requests the Court dismiss all remaining active claims asserted in Keener's and Smiths' complaints.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-0508
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Acting Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*
ELLEN C. SPECKER
*Reviewer*

s/Steven I. Frahm
Of Counsel

November 4, 2005

# APPENDIX A

**Internal Revenue Code of 1986 (26 U.S.C.):**

## SEC. 6221. TAX TREATMENT DETERMINED AT PARTNERSHIP LEVEL

Except as otherwise provided in this subchapter, the tax treatment of any partnership item shall be determined at the partnership level.

## SEC. 6222(a). PARTNER'S RETURN MUST BE CONSISTENT WITH PARTNERSHIP RETURN....

**(a) In General.-** A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return.

## SEC. 6223(a). NOTICE TO PARTNERS OF PROCEEDINGS

**(a) Secretary Must Give Partners Notice of Beginning and Completion of Administrative Proceedings.-** The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of-

(1) the beginning of an administrative proceeding at the partnership level with respect to a partnership item, and

(2) the final partnership administrative adjustment resulting from any such proceeding.

A partner shall not be entitled to any notice under this subsection unless the Secretary has received (at least 30 days before it is mailed to the tax matters partner) sufficient information to enable the Secretary to determine that such partner is entitled to such notice and to provide such notice to such partner.

## SEC. 6226. JUDICIAL REVIEW OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENTS

**(a) Petition by Tax Matters Partner.**–Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable

year with–

(1) the Tax Court,

(2) the district court of the United States for the district in which the partnership's principal place of business is located, or

(3) the Claims Court.

**(b) Petition by Partner Other Than Tax Matters Partner.**-

(1) In General.–If the tax matters partner does not file a readjustment petition under subsection (a) with respect to any final partnership administrative adjustment, any notice partner (and any 5-percent group) may, within 60 days after the close of the 90-day period set forth in subsection (a), file a petition for a readjustment of the partnership items for the taxable year involved with any of the courts described in subsection (a).

* * * * *

**(c) Partners Treated as Parties.**–If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year–

(1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and

(2) the court having jurisdiction of such action shall allow each such person to participate in the action.

**(d) Partner Must Have Interest In Outcome.-**

(1) In Order To Be Party To Action.- Subsection (c) shall not apply to a partner after the day on which -

(A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events dexcribed in subsection (b) or section 6231, or

(B) the period within which any tax attributable to such partnership items may be assessed against that

partner expired.

* * * * *

**(f) Scope of Judicial Review.–** A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates and the proper allocation of such items among the partners.

* * * * *

**SEC. 6229. PERIOD OF LIMITATIONS FOR MAKING ASSESSMENTS.**

**(a) General Rule.**–Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of–

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for such year (determined without regard to extensions).

* * * * *

**(d) Suspension When Secretary Makes Administrative Adjustment.-** If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a)(as modified by other provisions of this section) shall be suspended-

(1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and

(2) for 1 year thereafter.

* * * * *

**(f) Special Rules.-**

(1) Items Becoming Nonpartnership Items.- If, before the expiration of the period otherwise provided in this section for assessing any tax imposed by subtitle A with respect to the partnership items of a partner for th partnership taxable year, such items become nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, the period for assessing any tax imposed by subtitle A which is attributable to such items (or any item affected by such items) shall not expire before the date with is 1 year after the date on which the items become nonpartnership items. The period described in the preceding sentence (including any extension period under this sentence) may be extended with respect to any partner by agreement entered into by the Secretary and such partner.

(2) Special Rule For Partial Settlement Agreements.- If a partner enters into a settlement agreement with the Secretary with respect to the treatment of some of the partnership items in dispute for a partnership taxable year but other partnership items for such year remain in dispute, the period of limitations for assessing any tax attributable to the settled items shall be determined as if such agreement had not been entered into.

* * * * *

**SEC. 6231. DEFINITIONS AND SPECIAL RULES.**

**(a) Definitions.–For purposes of this subchapter–**

* * * * *

(3) Partnership item.–The term “partnership item” means, with respect to a partnership, any item required to be taken into account for the partnership’s taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

* * * * *

**(b) Items Cease to be Partnership Items in Certain Cases.–**

(1) In General.–For purposes of this subchapter, the

partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date–

* * * * *

(C) the Secretary enters into a settlement agreement with the partner with respect to such items, or

* * * * *

**SEC. 7422. CIVIL ACTIONS FOR REFUND.**

* * * * *

**(a) No Suit Prior to Filing Claim for Refund.**–No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

* * * * *

**(h) Special Rule For Actions With Respect to Partnership Items.**–No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).

* * * * *

**TREASURY REGULATIONS ON INCOME TAX (26 C.F.R.)**

§ **301.6229(f)-1T. Special rule for partial settlement agreements (temporary).**

**(a)** ***In general*.** If a partner enters into a settlement agreement with the Service with respect to the treatment of some of the partnership items in dispute for a partnership taxable year, but other partnership items for such year remain in dispute, the period of limitations for assessing any tax attributable to the settled items shall be determined as if such agreement had not been entered into.

**(b)** ***Other items remaining in dispute.*** Pursuant to section 6226(c), a partner is a party to a partnership level judicial proceeding with respect to partnership items. When a partner settles partnership items, the settled partnership items convert to nonpartnership items under section 6231(b)(1)(C) and will not be subject to any future or pending partnership level proceeding pursuant to section 6226(d)(1). The remaining unsettled partnership items, however, will remain subject to determination under partnership level administrative and judicial procedures. Consequently, any remaining unsettled items will be deemed to remain in dispute. Thus, the period for assessing settled items will be governed by the period for assessing the remaining unsettled items. [T.D. 8808, 64 FR 3839, Jan. 26, 1999]

**§ 301.6231(a)(3)-1. Partnership items.**–

*    *    *    *    *

**(b)** ***Factors that affect the determination of partnership items.***–The term “partnership item” includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of these determinations are: The partnership’s method of accounting, taxable year, and inventory method; whether an election was made by the partnership; whether partnership property is a capital asset, section 1231 property, or inventory; whether an item is currently deductible or must be capitalized; whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183; and whether the partnership qualifies for the research and development credit under section 30.