**No. 03-2028 T**
Consolidated with 04-907 T
(Judge Francis M. Allegra)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

KENNETH C. KEENER,

PLAINTIFF

VS.

UNITED STATES OF AMERICA,

DEFENDANT

# PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT WITH RESPECT TO THEIR §6621(C) MOTION FOR PARTIAL SUMMARY JUDGMENT

THOMAS E. REDDING, Lead Attorney
TERESA J. WOMACK
SALLIE W. GLADNEY
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
Kenneth C. Keener and
William P. Smith, Jr. and Anne Smith

**Keener - Agri-Venture II for 1984**

1. In 1984, Plaintiff Kenneth C. Keener ("Keener") was a limited partner in Agri-Venture II, a California limited partnership ("AV2"). [PE:1 at B1].[1]

2. For 1984, AV2 reported an ordinary loss of Schedule F - Farming Expenses in the amount of $23,926,643.00 and Other Deductions of $416,189.00 on its Form 1065, U.S. Partnership Return of Income. [PE:2 at B6].

3. Keener invested $50,000.00 in AV2. [PE:1 at B1].

4. On his 1984 Form 1040, Keener recognized and reported his share of the AV2 losses, $151,142.00. [PE:3 at B14].

5. Keener's ratio of tax benefits to cash invested was only 3.02 to 1. ($151,142 ÷ $50,000).

6. Keener's taxable income, taking into account the AV2 deduction, was $124,006.30.[PE:3 at B13].

7. Keener's marginal tax rate was 50%. [PE:4]

8. Therefore, his initial tax savings from AV2 was approximately $75,571 ($151,142 x 50%), which is only $25,571.00 more than his cash investment in AV2 ($75,571 - $50,000).

9. As a consequence of his investment Keener was required to pick up and report in subsequent years "phantom income" in the amount of his 1984 AV2 loss in excess of his cash investment ($151,142 - $50,000 = $101,142). Over the years AV2 reported and Keener declared and paid tax on all $101,142 of that phantom income. [PE:5; PE:6 at B21; PE:7 at B25; PE:8 at

---

[1] References to [B**] are to specific numbered pages to Plaintiffs' Exhibits included in Appendix B to Plaintiffs' Motion for Partial Summary Judgment.

B29]. Consequently, Keener had no long-term net tax savings from the AV2 investment.

10. On April 10, 1991 the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") for AV2 for 1984 and 1985. [PE:2].

11. The FPAA stated it was the IRS's proposed "adjustments to the partnership return" and proposed to totally disallow all of the $23,926,643.00 Schedule F- Farming Expenses and all of the $416,189.00 in Other Deductions reported on the AV2 Form 1065 for 1984. [PE:2 at B3 and B6].

12. The FPAA made no adjustments to the 1985 phantom income reported on the AV2 Form 1065 for 1985. [PE:2 at B6-B7].

13. The four page "Explanation of Adjustments" to the FPAA asserted twenty different grounds for totally disallowing the partnerships' "Schedule F-Farm Expenses" and Other Deductions, including:

1. The partnership's activities constitute a series of sham transactions.
2. The partnership's activities lack economic substance.
3. The partnership did not engage in the trade or business of farming during the taxable periods.
4. The partnership has not substantiated any of the expenses it claimed it paid or incurred during the taxable periods.
5. The partnership did not pay or incur any bona fide trade or business expenses during the taxable periods.
6. If it is determined that the partnership did pay or incur expenses during the taxable periods, it has not been established that the expenses paid or incurred were ordinary and necessary trade or business expenses currently deductible under §162 of the Internal Revenue Code and the Regulations thereunder.
7. The partnership has not substantiated its claimed cost or other basis in the alleged qualified investment property.

> 8. The partnership has not clearly described which property it is claiming is qualified for the investment tax credit.
>
> 9. The partnership has not established that it acquired tangible personal property or other tangible property that qualifies for the investment credit, and that such property both was placed in service during the year in question and was used in a trade or business that year.
>
> [PE:2 at B8-B11]

14. On July 10, 1991 a partner other than the tax matters partner ("TMP") filed a §6226(b) partnership-level case in the Tax Court based on the AV2 1984 FPAA (Docket No. 15048-91). [PE:11].

15. Keener did not file an election to participate in that proceeding. [PE:11].

16. On September 28, 1995, Keener sent an advance remittance of $91,542.91 to be posted to his 1984 tax account. [PE:12 at B52 and PE:13 at B53].

17. On March 21, 1997, Keener offered to settle his disputed partnership items with the IRS by executing a Form 870-P(AD) for 1984. The IRS accepted that offer by countersigning the Form 870-P(AD) on April 28, 1997. [PE:14 at B54-B55].

18. Also on March 21, 1997, Keener offered to settle his disputed partnership items with the IRS by executing a Form 870-P(AD) for 1985 and 1986. The IRS accepted those offers by countersigning the Forms 870-P(AD) on April 28, 1997. [PE:15 at B56-B57 and PE:16 at B58-B59].

19. In the Forms 870-P(AD) for 1985 and 1986, the IRS asserted there would be no changes to AV2 partnership items for 1985 and 1986 – which included the "phantom income" reported from farming activities. [PE:15 at B57; PE:16 at B59].

20. The Form 870-P(AD) settlements state, in part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments. ...
>
> . . . .
>
> **If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact**; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.
>
> [PE:14 at B54; PE:15 at B56; and PE:16 at B58].

21. The Schedule of Adjustments to the 1984 Form 870-P(AD) proposes to disallow $8,614,381.00 of the Schedule F - Farming Expenses and $149,842.00 of the Other Deductions reported on the AV2 Form 1065 for 1984. [PE:14 at B55].

22. The Schedules of Adjustments to the 1985 and 1986 Forms 870-P(AD) propose no adjustments to the partnership items. Particularly there are no adjustment to AV2 income for 1985 and 1986. [PE:15 at B57 and PE:16 at B59].

23. The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each partnership item but do not identify or include any grounds or bases for the adjustments. [PE:14, PE:15, and PE:16].

24. On November 13, 1997, the IRS sent Keener a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1984 affected his individual income tax return. [PE:17 at B60]. The Form 4549 reflected an adjustment of $54,460.00 related to AV2 for 1984 that would be made to his taxable income, *i.e.*, $54,460.00 of the $151,142 reported on Keener's 1984 Form 1040 would be disallowed and that Keener would owe the resulting

additional tax of $27,231.00. [PE:17 at B61-B62 and B67].

25. As applied, the settlements allowed sixty-three percent (63%) of the AV2 related Schedule F - Farming Expenses and Other Deduction Keener originally claimed on his 1984 Form 1040 and which the IRS had originally proposed to totally disallow. ($151,142 - $54,460.00 = $96,682.00) ($96,682.00 ÷ $151,142 = .63967).

26. As a result, the IRS allowed deductions exceeding 193% of Keener's 1984 AV2 investment. ($96,682.00 ÷ $50,000.00 = 1.93).

27. On March 2, 1998, the IRS assessed tax against Keener of $27,231.00, plus interest computed at the §6621(c) penalty rate of $61,904.09 and issued a refund for the remaining balance of the advance remittance. [PE:13 at B53].

28. On November 18, 1999, Keener filed a Form 1040X and a Form 843 claiming a refund of $27,231.00 of tax and $86,730.51 of interest and §6621(c) penalty interest, or such amount as is legally refundable, assessed against him for 1984. [PE:18 at B68-B82 and PE:19 at B83-B94].

29. On August 30,2001, the IRS disallowed Keener's claims. [PE:20 at B95].

30. On September 2, 2003, Keener timely filed this refund suit.

**<u>Keener - Agri-Venture Fund for 1985</u>**

31. In 1985, Keener was a limited partner in Agri Venture Fund, a California limited partnership ("AVF"). [PE:21 at B97].

32. For 1985, AVF reported an ordinary loss of Schedule F - Farming Expenses in the amount of $27,605,580.00 and Other Deductions of $510,828.00 on its Form 1065, U.S. Partnership

Return of Income. [PE:22 at B101].

33. Keener invested $25,000.00 in AVF. [PE:21 at B97].

34. On his 1985 Form 1040, Keener recognized and reported his share of the AVF losses, $74,425.00. [PE:5 at B16 and PE:21 at B97].

35. Keener's ratio of tax benefits to cash invested was only 2.97 to 1. ($74,425 ÷ $50,000).

36. Keener's taxable income, taking into account the AVF deduction, was $61,019.89.

37. Keener's marginal tax rate was 50%. [PE:23 at B107].

38. Therefore, his initial tax savings from AVF was approximately $38,857.54, only $13,857.00 more than his cash investment in AVF ($38,857 - $25,000).

39. A consequence of Keener's investment was that he was required to pick up and report on subsequent tax returns "phantom income" in the amount of his 1985 AVF loss in excess of his cash investment ($74,425 - $25,000 = $49,425). Over the years AVF reported and Keener declared and paid tax on all $49,425 of that phantom income. [PE:6 at B21; PE:7 at B25; PE:8 at B29]. Therefore, Keener had no long-term net tax savings from the AVF investment.

40. On April 10, 1991 the IRS issued an FPAA for AVF for 1985. [PE:22].

41. The FPAA stated it was the IRS's proposed "adjustments to the partnership return" and proposed to totally disallow all of the $27,605,580.00 Schedule F- Farming Expenses and all of the $510,828.00 in Other Deductions reported on the AVF Form 1065 for 1985. [PE:22 at B98 and B101].

42. The four page "Explanation of Adjustments" to the FPAA asserted twenty-two different grounds for totally disallowing the partnerships' "Schedule F-Farm Expenses" and Other

Deductions, including:

1. The partnership's activities constitute a series of sham transactions.
2. The partnership's activities lack economic substance.
3. The partnership did not engage in the trade or business of farming during the taxable periods.
4. The partnership has not substantiated any of the expenses it claimed it paid or incurred during the taxable periods.
5. The partnership did not pay or incur any bona fide trade or business expenses during the taxable periods.
6. If it is determined that the partnership did pay or incur expenses during the taxable periods, it has not been established that the expenses paid or incurred were ordinary and necessary trade or business expenses currently deductible under §162 of the Internal Revenue Code and the Regulations thereunder.
7. The partnership has not substantiated its claimed cost or other basis in the alleged qualified investment property.
8. The partnership has not clearly described which property it is claiming is qualified for the investment tax credit.
9. The partnership has not established that it acquired tangible personal property or other tangible property that qualifies for the investment credit, and that such property both was placed in service during the year in question and was used in a trade or business that year.

[PE:22 at B103-B106].

43. On July 10, 1991 a partner other than the TMP filed a §6226(b) partnership-level case in the Tax Court based on the AVF 1985 FPAA (Docket No. 15034-91). [PE:24].

44. Keener did not file an election to participate in that proceeding. [PE:24 at B108-B137].

45. On September 28, 1995, Keener submitted an advance remittance of $52,361.21to be posted to his 1985 tax account. [PE:25 at B138 and PE:26 at B139].

46. On March 21, 1997, Keener offered to settle his disputed partnership items with the IRS by executing a Form 870-P(AD) for 1985. The IRS accepted that offer by countersigning the

Form 870-P(AD) on April 28, 1997. [PE:27 at B140-B141].

47. Also on March 21, 1997, Keener offered to settle his disputed partnership items with the IRS by executing a Form 870-P(AD) for 1986. The IRS accepted that offer by countersigning the Form 870-P(AD) on April 28, 1997. [PE:28 at B143-B144].

48. The Form 870-P(AD) settlements provide, in part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments. ...
>
> . . . .
>
> **If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact**; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.
> [PE:27 at B140 and PE:28 at B143].

49. The Schedule of Adjustments to the 1985 Form 870-P(AD) proposes to disallow $11,806,681.00 of the Schedule F - Farming Expenses and $218,477.00 of the Other Deductions reported on the AVF Form 1065 for 1985. [PE:27 at B141].

50. The Schedule of Adjustments to the 1986 Form 870-P(AD) proposes to no adjustments to partnership items. Particularly there are no adjustments to partnership income. The IRS made no adjustments to the 1986 phantom income reported by AVF and recognized and reported by Keener for later years. [PE:28 at B144; and PE:6 at B21; PE:7 at B25; PE:8 at B29].

51. The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each partnership item but do not identify or include any grounds or bases for the adjustments. [PE:27 and PE:28].

52. On November 13, 1997, the IRS sent Keener a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1985 affected his individual income tax return. [PE:29 at B145]. The Form 4549 reflected an adjustment of $27,814.00 related to AVF for 1985 that would be made to his taxable income, *i.e.*, $27,814.00 of the $74,425.00 reported on Keener's 1985 Form 1040 would be disallowed, and that Keener would owe the resulting additional tax of $13,384.00. [PE:29 at B146-B147 and B152].

53. As applied, the settlements allowed sixty-two percent (62%) of the AVF related Schedule F - Farming Expenses and Other Deduction Keener originally claimed on his 1985 Form 1040 and which the IRS had originally proposed to totally disallow. ($74,425 - $27,814.00 = $46,611.00) ($46,611.00 ÷ $74,425 = .6262).

54. As a result, the IRS allowed deductions exceeding 186% of Keener's 1985 AVF investment. ($46,611.00 ÷ $25,000.00 = 1.86).

55. On March 2, 1998, the IRS assessed tax against Keener of $13,384.00, plus interest computed at the §6621(c) penalty rate of $25,073.27 and issued a refund for the remaining balance of the advance remittance. [PE:26 at B139].

56. On November 18, 1999, Keener filed a Form 1040X and a Form 843 claiming a refund of $13,384.00 of tax and $36,728.91 of interest and §6621(c) penalty interest, or such amount as is legally refundable, assessed against him for 1985. [PE:30 at B153-B166 and PE:31 at B166-B176].

57. On August 30,2001, the IRS disallowed Keener's claims. PE:20 at B95].

58. On September 2, 2003, Keener timely filed this refund suit.

**Smith - Richgrove Grape Associates for 1984 and 1981**

59. In 1984, Plaintiff William P. Smith, Jr., ("Smith") was a limited partner in Richgrove Grape Associates, a California limited partnership ("RGA"). [PE:32 at B178].

60. For 1984, RGA reported an ordinary loss of Schedule F - Farming Expenses in the amount of $4,766,893.00 and Other Deductions of $121,027.00 on its Form 1065, U.S. Partnership Return of Income. [PE:33 at B183].

61. Smith invested $20,000.00 in RGA. [PE:32 at B178].

62. On their 1984 Form 1040, Plaintiffs William P. Smith, Jr., and Anne D. Smith (the "Smiths") recognized and reported Smith's share of the RGA losses, $44,377.00. [PE:34 at B192].

63. Smith's ratio of tax benefits to cash invested was only 2.21 to 1. ($44,377 ÷ $20,000).

64. Smith's taxable income, taking into account the RGA deduction, was -$1,557.00. [PE:34 at B190].

65. Smith's marginal tax rate was 48%. [PE:4 at B15].

66. Therefore, his initial tax savings from RGA was approximately $8,301.60, $11,698.40 ***less*** than his cash investment, and he had no immediate tax savings from his RGA investment.

67. A consequence of Smith's investment was that he was required to pick up and report on subsequent tax returns "phantom income" in the amount of his 1984 RGA loss in excess of his cash investment ($44,377 - $20,000 = $24,377). Over the years RGA reported and Smith declared and paid tax on all $24,377 of that phantom income. [PE:35 at B193; PE:36 at B198; PE:37 at B201; PE:38 at B205; PE:39 at B209; PE: 40 at B212; PE:41 at B215; PE:42 at B218; PE:43 at B221]. Therefore, Smith had no long-term net tax savings from the RGA

investment.

68. On April 10, 1991 the IRS issued an FPAA for RGA for 1984 and 1985. [PE:33].

69. The FPAA stated it was the IRS's proposed "adjustments to the partnership return" and proposed to totally disallow all of the $4,766,893.00 Schedule F- Farming Expenses and all of the $121,027.00 in Other Deductions reported on the RGA Form 1065 for 1984. [PE:33 at B180 and B183].

70. The IRS made no adjustments to the 1985 phantom income reported by RGA and recognized and reported by the Smiths for 1985 and later years. [PE:33 at B183-B184; and PE:35 at B193; PE:36 at B198; PE:37 at B201; PE:38 at B205; PE:39 at B209; PE: 40 at B212; PE:41 at B215; PE:42 at B218; PE:43 at B221].

71. The four page "Explanation of Adjustments" to the FPAA asserted twenty-three different grounds for totally disallowing the partnerships' "Schedule F-Farm Expenses" and Other Deductions, including:

1. The partnership's activities constitute a series of sham transactions.
2. The partnership's activities lack economic substance.
3. The partnership did not engage in the trade or business of farming during the taxable periods.
4. The partnership has not substantiated any of the expenses it claimed it paid or incurred during the taxable periods.
5. The partnership did not pay or incur any bona fide trade or business expenses during the taxable periods.
6. If it is determined that the partnership did pay or incur expenses during the taxable periods, it has not been established that the expenses paid or incurred were ordinary and necessary trade or business expenses currently deductible under §162 of the Internal Revenue Code and the Regulations thereunder.



R:\DOCS\TAXCONT.T\twws1106.ke1.wpd

7. The partnership has not substantiated its claimed cost or other basis in the alleged qualified investment property.

8. The partnership has not clearly described which property it is claiming is qualified for the investment tax credit.

9. The partnership has not established that it acquired tangible personal property or other tangible property that qualifies for the investment credit, and that such property both was placed in service during the year in question and was used in a trade or business that year.

[PE:33 at B185-B188].

72. On July 10, 1991 a partner other than the TMP filed a §6226(b) partnership-level case in the Tax Court based on the RGA 1984 FPAA (Docket No. 15044-91). [PE:44 at B222-B234].

73. On August 23, 1991, the Smiths filed an election to participate in that proceeding. [PE:44 at B224].

74. On November 2, 1995, the IRS posted the Smiths' advance remittance of $892.94 to their 1984 tax account. On February 23, 1999, the IRS posted the Smiths' advance remittance of $3,525.40 to their 1984 tax account. [PE:45 at B235-B236].

75. On February 1, 1999, the Smiths offered to settle the disputed partnership items with the IRS by executing Forms 870-P(AD), Consistent Settlement, for 1984, 1985, and 1986. The IRS accepted those offers by countersigning the Forms 870-P(AD) on April 9, 1999. [PE:46 at B237-B238; PE:47 at B239-B240; and PE:48 at B241-B242].

76. The Form 870-(AD) settlements provide, in part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments. ...
>
> . . . .
>
> **If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact**; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.
>
> [PE:46 at B237; PE:47 at B239; and PE:48 at B241].

77. The Schedule of Adjustments to the 1984 Form 870-P(AD) proposes to disallow $1,841,599 of the Schedule F - Farming Expenses and $46,757 of the Other Deductions reported on the RGA Form 1065 for 1984. [PE:46 at B238].

78. The IRS did not assert any adjustments to the 1985 and 1986 RGA partnership items on the respective Forms 870-P(AD) – which included the "phantom income" reported from farming activities for 1985 and later years. [PE:47 at B240 and PE: 48 at B242].

79. The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each partnership item but do not identify or include any grounds or bases for the adjustments. [PE:46, PE:47, and PE:48].

80. On November 9, 1999, the IRS sent the Smiths a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1984 affected the Smiths' income tax return. [PE:49 at B243]. The Form 4549 reflected an adjustment of $17,175.00 related to RGA for 1984 that would be made to their taxable income, *i.e.*, $17,175.00 of the $44,377 reported on the Smiths' 1984 Form 1040 would be disallowed, and that the Smith would owe

the resulting additional tax of $848.00. [PE:49 at B244-245 and B248].

81. Also on November 9, 1999, the IRS sent the Smiths a Form 4549 that explained how the adjustments agreed to in the 1984 Form 870-P(AD) affected the Smiths' income tax return for 1981. The Form 4549 reflected an adjustment of $1,247.00 related to an investment carryback from 1984 to their 1981 return, *i.e.*, $1,247.00 of the $3,035.00 reported on the Smiths' 1981 Form 1040 would be disallowed, and that the Smiths would owe the resulting additional tax of $1,247.00. [PE:50 at B251-253 and B256].

82. As applied, the settlements allowed sixty-one percent (61%) of the RGA related Schedule F - Farming Expenses and Other Deduction the Smiths originally claimed on their 1984 Form 1040 and which the IRS had originally proposed to totally disallow. ($44,377 - $17,175.00 = $27,202.00) ($27,202.00 ÷ $44,377 = .6129).

83. As a result, the IRS allowed deductions exceeding 136% of Smith's 1984 RGA investment. ($27,202.00 ÷ $20,000.00 = 1.36).

84. On March 16, 2000, the IRS made a "Quick Assessment" of tax against the Smiths of $848.00, plus interest computed at the §6621(c) penalty rate of $44.94 for 1984. On April 17, 2000, the IRS assessed additional interest of $1,981.55, which was also computed at the §6621(c) penalty rate. [PE:45 at B235-236].

85. The IRS offset the advance remittance against that previous advance remittance. In a series of transfers between 1981, 1984, and 1985, the remaining balance was paid in full. [PE:45 at B235-236].

86. On January 1, 2001, the IRS abated interest of $34,53 and issued a refund for that amount

to the Smiths. [PE:45 at B235-236].

87. On November 2, 1995, the Smiths made an advance remittance to their 1981 tax account. On February 23, 1999, the Smiths made a second advance remittance in the amount of $3,514.60 to their 1981 tax account. [PE:51 at B257].

88. On March 16, 2000, the IRS assessed additional tax of $1,247.00 and interest computed at the §6621(c) penalty rate of $3,698.16 against the Smiths for 1981. [PE:51 at B257].

89. The IRS applied the two advance remittances against the assessments and transferred the remaining balance to the Smiths' 1985 tax account. [PE:51 at B257].

90. On March 8, 2002, the Smiths filed a Form 1040X and a Form 843 claiming a refund of $848.00 of tax and $1,946.59 of interest and §6621(c) penalty interest assessed against them for 1984. [PE:52 at B258-B270 and PE:53 at B271-B280].

91. On March 8, 2002, the Smiths filed a Form 1040X and a Form 843 claiming a refund of $848.00 of tax, or such amount as is legally refundable, and $3,698.16 of interest and §6621(c) penalty interest assessed against them for 1981. [PE:54 at B281-B291 and PE:55 at B292-B301].

92. In a letter dated May 23,2002, but not mailed until June 6, 2002, the IRS disallowed the Smiths' claims. [PE:56 at B302].

93. On May 24, 2004, the Smiths timely filed this refund suit.

**Smith - Desert Highland Vinyard for 1985**

94. In 1985, Plaintiff William P. Smith, Jr., ("Smith") was a limited partner in Desert Highland Vineyard Associates, a California limited partnership ("DHV"). [PE:57 at B304].

95. For 1985, DHV reported an ordinary loss of Schedule F - Farming Expenses in the amount of $3,377,028.00 and Other Deductions of $92,085.00 on its Form 1065, U.S. Partnership Return of Income. [PE:58 at B309].

96. Smith invested $15,000.00 in DHV. [PE:57 at B304].

97. On their 1985 Form 1040, Plaintiffs William P. Smith, Jr., and Anne D. Smith (the "Smiths") recognized and reported Smith's share of the DHV losses, $31,764.00. [PE:35 at B195].

98. Smith's ratio of tax benefits to cash invested was only 2.11 to 1. ($31,764 ÷ $15,000).

99. Smith's taxable income, taking into account the DHV deduction, was $2,827.00. [PE:35 at B194].

100. Smith's marginal tax rate was 42%. [PE:23 at B107].

101. Therefore, his initial tax savings from DHV was approximately $8,085.64, $6,914.36 ***less*** than his cash investment, and he had no immediate tax savings from his DHV investment.

102. A consequence of Smith's investment was that he was required to pick up and report on subsequent tax returns "phantom income" in the amount of his 1985 DHV loss in excess of his cash investment ($31,764 - $15,000 = $16,764). Over the years DHV reported and Smith declared and paid tax on all $16,764 of that phantom income. [PE:36 at B198; PE:37 at B201; PE:38 at B205; PE:39 at B209; PE: 40 at B212; PE:41 at B215; PE:42 at B218; PE:43 at B221]. Therefore, Smith had no long-term net tax savings from the DHV investment.

103. On April 10, 1991 the IRS issued an FPAA for DHV for 1985.

104. The FPAA stated it was the IRS's proposed "adjustments to the partnership return" and proposed to totally disallow all of the $3,377,028.00 Schedule F- Farming Expenses and all

of the $92,085.00 in Other Deductions reported on the DHV Form 1065 for 1985. [PE:58 at B309].

105. The four page "Explanation of Adjustments" to the FPAA asserted twenty different grounds for totally disallowing the partnerships' "Schedule F-Farm Expenses" and Other Deductions, including:

1. The partnership's activities constitute a series of sham transactions.
2. The partnership's activities lack economic substance.
3. The partnership did not engage in the trade or business of farming during the taxable periods.
4. The partnership has not substantiated any of the expenses it claimed it paid or incurred during the taxable periods.
5. The partnership did not pay or incur any bona fide trade or business expenses during the taxable periods.
6. If it is determined that the partnership did pay or incur expenses during the taxable periods, it has not been established that the expenses paid or incurred were ordinary and necessary trade or business expenses currently deductible under §162 of the Internal Revenue Code and the Regulations thereunder.
7. The partnership has not substantiated its claimed cost or other basis in the alleged qualified investment property.
8. The partnership has not clearly described which property it is claiming is qualified for the investment tax credit.
9. The partnership has not established that it acquired tangible personal property or other tangible property that qualifies for the investment credit, and that such property both was placed in service during the year in question and was used in a trade or business that year.

[PE:58 at B311-314].

106. On July 10, 1991 a partner other than the TMP filed a §6226(b) partnership-level case in the Tax Court based on the DHV 1985 FPAA (Docket No. 15056-91). [PE:59 at B315-B328].

107. On August 23, 1991, the Smiths filed an election to participate in that proceeding. [PE:59

at B317].

108. On February 23, 1999, the IRS posted the Smiths' advance remittance of $3,960.00 to their 1985 tax account. [PE:60 at B329].

109. On February 1, 1999, the Smiths offered to settle the disputed partnership items with the IRS by executing Forms 870-P(AD) for 1985 and 1986. The IRS accepted those offers by countersigning the Forms 870-P(AD) on April 9, 1999. [PE:61 at B331-B332 and PE:62 at B333-B334].

110. The Form 870-P(AD) settlements provide, in part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments. ...
>
> . . . .
>
> **If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact**; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.
>
> [PE:61 at B331 and PE:62 at B333].

111. The Schedule of Adjustments to the 1985 Form 870-P(AD) proposes to disallow $1,423,734 of the Schedule F - Farming Expenses and $38,822 of the Other Deductions reported on the DHV Form 1065 for 1985. [PE:61 at B332].

112. The IRS did not assert any adjustments to the 1986 DHV partnership items on the respective Forms 870-P(AD) – which included the "phantom income" reported from farming activities for 1986 or for later years. [PE:62 at B334].

113. The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed

dollar amount disallowed for each partnership item but does not identify or include any grounds or bases for the adjustments. [PE:61 and PE:62].

114. On November 9, 1999, the IRS sent the Smiths a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1985 affected the Smiths' income tax return. [PE:63 at B335]. The Form 4549 reflected an adjustment of $13,406.00 related to DHV for 1985 that would be made to their taxable income, *i.e.*, $13,406.00 of the $31,764.00 reported on the Smiths' 1985 Form 1040 would be disallowed, and that the Smiths would owe the resulting additional tax of $2,174.00. [PE:63 at B337-B338 and B341].

115. As applied, the settlements allowed almost fifty-eight (58%) of the DHV related Schedule F - Farming Expenses and Other Deduction the Smiths originally claimed on their 1985 Form 1040 and which the IRS had originally proposed to totally disallow. ($31,764 - $13,406 = $18,358) ($18,358 ÷ $31,764 = .5779).

116. As a result, the IRS allowed deductions exceeding 122% of Smith's 1985 DHV investment. ($18,358.00 ÷ $15,000.00 = 1.22).

117. On March 16, 2000, the IRS assessed tax against the Smiths of $2,174.00, plus interest computed at the §6621(c) penalty rate of $6,352.70. On June 12, 2000, the IRS abated interest of $152.59. [PE:60 at B330].

118. The IRS offset the advance remittance against those assessments and in a series of transfers between the Smiths' 1981, 1984, and 1985 accounts, the remaining balance was paid in full.

119. On January 1, 2001, the IRS abated interest of $220.76 and issued a refund to the Smith's of $230.35. [PE:60 at B330].

120. On March 8, 2002, the Smiths filed a Form 1040X and a Form 843 claiming a refund of $2,124.00 of tax and $6,200.11 of interest and §6621(c) penalty interest assessed against them for 1985.[PE:64 at B342-B351 and PE:65 at B352-B360].

121. In a letter dated May 23, 2002, but not mailed until June 6, 2002, the IRS disallowed the Smiths' claims. [PE:56 at B302].

122. On May 24, 2004, the Smiths timely filed this refund suit.

Respectfully submitted,

/s/ Thomas E. Redding

Thomas E. Redding, Attorney of Record
Sallie W. Gladney
Teresa J. Womack
REDDING & ASSOCIATES, P.C.
P.O. Box 924328
Houston, Texas 77292-4328
(713) 965-9244
(713) 621-5227 Fax
Attorneys for Plaintiffs
Kenneth C. Keener and
William P. Smith, Jr. and Anne Smith