**No. 03-2028 T**
Consolidated with 04-907 T
(Judge Francis M. Allegra)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

KENNETH C. KEENER,

PLAINTIFF

VS.

UNITED STATES OF AMERICA,

DEFENDANT

---

**PLAINTIFF'S §6621(C) MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING BRIEF**

---

THOMAS E. REDDING, Lead Counsel
TERESA J. WOMACK
SALLIE W. GLADNEY
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
Kenneth C. Keener and
William P. Smith, Jr. and Anne Smith

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of Questions Involved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case and Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1. An Introduction to TEFRA's Partnership/Nonpartnership Item Structure . . . . . . . . . . . . . 4

a. "Partnership Item" is a Statutorily Defined Term of Art . . . . . . . . . . . . . . . . . . . . 7

b. TEFRA Distinguishes Partnership Items and Affected Items . . . . . . . . . . . . . . . . 8

c. Determinations of Partnership Items and Nonpartnership Items are Mutually Exclusive and Conclusive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2. Imposing §6621(c) Penalty Interest Was Improper as a Matter of Law . . . . . . . . . . . . . . 11

a. IRS Regulations Prove No Part of the Underpayments of Tax are "Attributable to" a TMT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i. The Formula Proves No Portion of the Taxpayers' Underpayment Was "Attributable To" a TMT . . . . . . . . . . . . . . . . . . . . 12

ii. Other Courts Have Used the Formula to Make Penalty Determinations . 15

iii. The Second Circuit and Other Circuits Rely on a "Separability" Approach that is Not Necessarily Contrary to the Formula . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

iv. Even Though the IRS Regulations Direct the Use of the Formula, the IRS Has Ignored It in Practice . . . . . . . . . . . 21

b. The Government is Precluded from Using this Forum to Establish a Basis for Imposing §6621(c) Penalty Interest . . . . . . . . . . . . . . . . 22

i. Legislative History Bars Post-Assessment Litigation Solely to Establish a Basis to Impose §6621(c) . . . . . . . . . . . . . . . . . . . . 22

ii. The Terms of the Settlement Preclude Re-Opening Partnership Items to Establish a Basis for Imposing §6621(c) and are Inconsistent with Sham Transaction Being the Basis for Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

iii. The TEFRA Jurisdictional Bifurcation Precludes Partnership Item Determinations Necessary to Establish or Disprove a Basis to Impose §6621(c) . . . . . . . . . . . . . . . . . . . . . . . . . 27



R:\DOCS\TAXCONT.T\twwm1106.ke1.wpd

c. Policy Favors the Plaintiffs . . . . . 28
i. Congress Intended to "Temper" IRS Imposition of Penalties and Repealed §6621(c) When Imposing It Became Too Routine and Automatic . . . . . 28
ii. The Settlement Served the Statute's Purpose . . . . . 29
iii. The Partnership-Level Transactions Were Outside the Limited Partners' Control . . . . . 30
Conclusion . . . . . 30

Appendix A (Bound Separately)

| Document | Description |
|---|---|
| 1 | 26 U.S.C. §6621(c), effective for tax year 1986 |
| 2 | Treas. Reg. §301.6621-2T, effective for tax year 1986 |
| 3 | 1992 Litigation Guideline Memorandum TL-68, August 12, 1992 |
| 4 | H.Conf.Rep. No. 98-861, June 23, 1984 |
| 5 | H.R. No. 101-247, September 20, 1989 |
| 6 | 135 Cong. Rec. S13893-07, Statement of Sen. Pryor, October 24, 1989 |
| 7 | I.R.S. Ltr. Rul. 199950008 |
| 8 | Form 870-L(AD), Sample |
| 9 | Form 906 Closing Agreement, Sample |
| 10 | Section 402.7, TEFRA and Electing-Large-Partnership Audit Procedures, Kleinrock Publishing (2002) |

Appendix B (Bound Separately)

| Document | Description |
|---|---|
| 1 | Schedule K-1 for Keener for Agri-Venture II ("AV2") for 1984 |
| 2 | FPAA for AV2 for 1984 and 1985 |
| 3 | Form 1040 excerpts for Keener for 1984 |
| 4 | Tax Rate Schedules for 1984 |
| 5 | Form 1040 excerpts for Keener for 1985 |
| 6 | Form 1040 excerpts for Keener for 1986 |
| 7 | Form 1040 excerpts for Keener for 1991 |
| 8 | Form 1040 excerpts for Keener for 1992 |
| 9 | Form 1040 excerpts for Keener for 1999 |
| 10 | Form 1040 excerpts for Keener for 2000 |
| 11 | Docket Sheet for *AV2 v. Commissioner*, Docket No. 15048-91 |
| 12 | Cash Bond Transmittal from Keener for 1984 |
| 13 | IRS Transcript of Account for Keener for 1984 |
| 14 | Form 870-P(AD) for AV2 for Keener for 1984 |
| 15 | Form 870-P(AD) for AV2 for Keener for 1985 |
| 16 | Form 870-P(AD) for AV2 for Keener for 1986 |
| 17 | Form 4549A-CG for Keener for AV2 for 1984 and 1985 |
| 18 | Form 1040X for Keener for AV2 for 1984 |
| 19 | Form 843 for Keener for AV2 for 1984 |

20 IRS Notice Disallowing Keener Claims for Refund for 1984 and 1985
21 Schedule K-1 for Keener for Agri-Venture Fund ("AVF") for 1984
22 FPAA for AVF for 1985
23 Tax Rate Schedule for 1985
24 Docket Sheet for *AVF v. Commissioner*, Docket No. 15034-91
25 Cash Bond Transmittal from Keener for 1985
26 IRS Transcript of Account for Keener for 1985
27 Form 870-P(AD) for AVF for Keener for 1985
28 Form 870-P(AD) for AVF for Keener for 1986
29 Form 4549A-CG for Keener for AVF for 1985
30 Form 1040X for Keener for AVF for 1985
31 Form 843 for Keener for AVF for 1985
32 Schedule K-1 for Smith for Richgrove Grape Associates ("RGA") for 1984
33 FPAA for RGA for 1984 and 1985
34 Form 1040 excerpts for Smith for 1984
35 Form 1040 excerpts for Smith for 1985
36 Form 1040 excerpts for Smtih for 1986
37 Form 1040 excerpts for Smtih for 1987
38 Form 1040 excerpts for Smtih for 1988
39 Form 1040 excerpts for Smtih for 1989
40 Form 1040 excerpts for Smtih for 1990
41 Form 1040 excerpts for Smtih for 1991
42 Form 1040 excerpts for Smtih for 1992
43 Form 1040 excerpts for Smtih for 1993
44 Docket Sheet for *RGA v. Commissioner*, Docket No. 10544-91
45 IRS Transcript of Account for Smith for 1984
46 Form 870-P(AD) for Smith for RGA for 1984
47 Form 870-P(AD) for Smith for RGA for 1985
48 Form 870-P(AD) for Smith for RGA for 1986
49 Form 4549A-CG for Smith for RGA for 1984 and 1985
50 Form 4549A-CG for Smith for RGA for 1981
51 IRS Transcript of Account for Smith for 1981
52 Form 1040X for Smith for RGA for 1984
53 Form 843 for Smith for RGA for 1984
54 Form 1040X for Smith for RGA for 1981
55 Form 843 for Smith for RGA for 1981
56 IRS Notice Disallowing Smith Claims for Refund
57 Schedule K-1 for Smith for Desert Highland Vineyards ("DHV") for 1985
58 FPAA for DHV for 1985
59 Docket Sheet for *DHV v. Commissioner*, Docket No. 15056-91
60 IRS Transcript of Account foe Smith for 1985
61 Form 870-P(AD) for Smith for DHV for 1985
62 Form 870-P(AD) for Smith for DHV for 1986
63 Form 4549A-CG for Smith for DHV for 1985
64 Form 1040X for Smith for DHV for 1985

| | |
|---|---|
| 65 | Form 843 for Smith for DHV for 1985 |
| 66 | Table 1 Application of Formula to Keener for 1984 |
| 67 | Table 2 Application of Formula to Keener for 1985 |
| 68 | Table 3 Application of Formula to Smith for 1984 |
| 69 | Table 4 Application of Formula to Smith for 1985 |
| 70 | Declaration of Teresa J. Womack |

# TABLE OF AUTHORITIES

## CASES

*Accardi v. Shaughnessy*, 347 U.S. 260 (1953) . . . . . . . . . . 15, 28

*Barlow v. Commissioner*, 301 F.3rd 714 (6th Cir. 2003). . . . . . . . . . 9

*Beall v. United States*, 336 F.3d 419 (5th Cir.2003), *on remand*,
335 F.Supp.2d 743 (E.D. Tex. 2004) . . . . . . . . . . .3

*Borgardus v. U.S.*, 91-1 USTC ¶50,034, 1990 WL 259675 (W.D. Ok. 1990) . . . . . . . . . . 16

*Borgardus v. U.S.*, 956 F.2d 277, 1992 WL 33255 (10th Cir. 1992),
91-1 USTC ¶50,034, 1990 WL 259675 (W.D. Ok. 1990) . . . . . . . . . . 16

*Callaway v. Commissioner*, 231 F.3d 106 (2nd Cir. 2000) . . . . . . . . . . 5, 9, 27

*Chef's Choice Produce, Ltd.*, 95 T.C. 388 (1990) . . . . . . . . . . 10

*Cinema '84 v. C.I.R.*, 294 F.3d 432 (2nd Cir. 2002) . . . . . . . . . . 26

*Conway v. United States*, 50 Fed.Cl. 273, 276 (2001) . . . . . . . . . . 4, 5, 20

*Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002) . . . . . . . . . . 13, 28

*Field v. U.S.* 328 F.3d 58 (2nd Cir. 2003) . . . . . . . . . . 8

*Forseth v. C.I.R.*, 50 T.C.M. 111 (1985) . . . . . . . . . . 23

*Gainer v. C.I.R.*, 893 F.2d 225, 228 (9th Cir. 1990) . . . . . . . . . . 15

*Greenberg Bros. Partnership #4 v. C.I.R.*, 111 T.C. 198 (1998) . . . . . . . . . . 26

*Harris v. Commissioner*, 58 T.C.M. (CCH) 1441 (1990),
*aff'd other grounds*, 16 F.3d 75 (5th Cir. 1994) . . . . . . . . . . 21

*Heasley v. Commissioner*, 902 F.2d 380, 382-3. (5th Cir. 1990) . . . . . . . . . . 20, 28

*Irom v. C.I.R.*, 866 F.2d 545 (2nd Cir. 1988), *reversing* 55 TCM 842, 843 (1988) . . . . . . . . 18, 19

*Law v. Commissioner*, 84 T.C. 985 (1985) . . . . . . . . . . 19, 23, 24

*Maxwell v. C.I.R.*, 87 T.C. 783, 787 (1986) . . . . . . . . . . 5, 9

*McCrary v. Commissioner*, 92 T.C. 827 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18, 24, 29

*N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744-5 (1987) . . . . . . . . . . . . . . . . . . . . . . 8

*Powell v. Commissioner*, 96 T.C. 707 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rasmussen v. C.I.R.*, 63 TCM 2710, 2727-28 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rogers v. Commissioner*, T.C. Memo 1990-619 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Schachter v. Commissioner*, T.C.Memo 1994-273 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24, 25

*Scoville v. C.I.R.*, 108 F.3d 1386, 1997 WL 107751 at 3 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . 15

*Service v. Dulles*, 354 U.S. 363, 372 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sinclair v. C.I.R.*, 58 T.C.M. (CCH) 1140, 1142 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988),
*affirming* 89 T.C. 912 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17, 19, 20, 23, 28, 29-31

*Weiner v. United States*, 389 F.3rd 152 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . 3, 16, 18, 23, 30

*Weiner v. United States*, 255 F.Supp.2d 673 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 30

**STATUTES**

26 U.S.C. §6031 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

26 U.S.C. §6211(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26 U.S.C. §6216(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

26 U.S.C. §6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 16

26 U.S.C. §6222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 27

26 U.S.C. §6222(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26 U.S.C. §6223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

26 U.S.C. §6223(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 20

26 U.S.C. §6223(d)(2) . . . . . 13, 28

26 U.S.C. §6225(a) . . . . . 8

26 U.S.C. §6226 . . . . . 23

26 U.S.C. §6226(a) . . . . . 15

26 U.S.C. §6226(b) . . . . . 26

26 U.S.C. §6226(c) . . . . . 21

26 U.S.C. §6226(d) . . . . . 18

26 U.S.C. §6226(d)(1). . . . . . 6

26 U.S.C. §6226(f) . . . . . 18, 19

26 U.S.C. §6226(g) . . . . . 19, 23, 24

26 U.S.C. §6228(a)(4)(B) . . . . . 5, 9

26 U.S.C. §6229(f). . . . . . 6

26 U.S.C. §6230(a)(1) . . . . . 16-18, 24, 29

26 U.S.C. §6230(c)(1)(C). . . . . . 11

26 U.S.C. §6231(a)(3) . . . . . 8

26 U.S.C. §6231(a)(7) . . . . . 8

26 U.S.C. §6231(b)(1)(C) . . . . . 16

26 U.S.C. §6601(a) . . . . . 24

26 U.S.C. §6622 . . . . . 21, 24, 25

26 U.S.C. §7422(h). . . . . . 11

26 U.S.C. §701 . . . . . 15

26 U.S.C. §702 . . . . . 15

## Rules and Regulations


Tax Ct. Rules 245(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 23, 30

Tax Ct. Rules 247(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Treas. Reg. §1.701-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Treas. Reg. §1.702-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Treas. Reg. §1.6031-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Treas. Reg. §301.6221-1T(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Treas. Reg. §301.6224(c)-3T(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Treas. Reg. §301.6229(f)-1T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Treas. Reg. §301.6231(a)(3)-1(a)(1)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Treas. Reg. §301.6231(a)(3)-1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Treas. Reg. §301.6621-2T, Q-5 and A-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16


## Miscellaneous


Ltr. Rul. 19995008, pp.9-10 (9/13/99) . . . . . . . . . . . . . . . . . . . . . . . . . 15-17, 19, 20, 23, 29-31

"TEFRA and Electing-Large-Partnership Audit Procedures,"Section 402.7,
Kleinrock Analysis, Kleinrock Publishing (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4 Arthur Willis et al., Partnership Taxation, §209.05 at 209-7, 209-12 (5th ed. 1996) . . . . . 4, 10, 27

H. R. Conf. Rep. 97-760, at 611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 27

H.Conf.Rep. No.98-861 (June 23, 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

H.Rep. No. 101-247, 1388, 1393, 1394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IRS Litigation Guideline Memorandum issued August 12, 1992,
1992 LGM TL-68 (Rev) at 6-8, 1992 WL 1355877 . . . . . . . . . . . . . . . . . . . . . . . 15, 21, 22

McKee, Nelson, Whitmire, Federal Taxation of Partnerships 9-180 (3d ed. 1997) . . . . . 10

Statement by Senator Pryor introducing S.1784 at 135 Cong. Rec. S13893-7
(0ctober 24, 1989), 1989 WL 186980 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to RCFC 56, Plaintiffs Kenneth C. Keener ("Keener"), William P. Smith, Jr. ("Smith"), and Anne Smith (collectively the "Smiths") (collectively the "Plaintiffs") move for partial summary judgment on the issue of their respective refund claims of interest assessed under §6621(c).[1]

## STATEMENT OF QUESTIONS INVOLVED

This federal income tax refund case considers, *inter alia*, whether, as a matter of law, penalty interest under §6621(c) was improperly assessed against Plaintiffs.

The §6621(c) claim for refund of the penalty interest is made in addition to Plaintiffs' claims for refund of interest based on expiration of the statue of limitations and §6404(e)(1). There are multiple, alternative legal and possibly fact based grounds for recovery of the §6621(c) interest at issue in this claim that will remain for consideration if the Court should deny this initial motion for partial summary judgment, *e.g.* profit motive with regard to the government's sham transaction allegation. Those other grounds for recovery of the §6621(c) penalty interest are not addressed by this preliminary motion and will remain for discovery and possible trial. However, the Plaintiffs believe that the uncontested facts are sufficient to support this motion for partial summary judgment on the legal grounds set forth in this motion and brief.

The resolution of this §6621(c) motion for partial summary judgment involves complex TEFRA[2] partnership procedural issues, and has multiple sub-issues, including:

a. Whether the assessment of §6621(c) penalty interest was erroneous because the terms

---

1 Unless otherwise indicated all references to section, §, and the Code are to the Internal Revenue Code at 26 U.S.C.

2 Partnership procedures codified at 26 U.S.C. §§6221-6233, as enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324 ("TEFRA"), and as thereafter amended.

of Plaintiffs' partnership-level partnership item settlements do not support the imposition of §6621(c) penalty interest because the underpayment resulting from the settlement is not "attributable to" a "tax motivated transaction" as required by statute and regulation.

b. Whether, in a partner-level refund case, the government can seek or compel Plaintiffs to prove partnership-level, partnership item determinations not found in or contrary to the terms of the partnership item settlements between Plaintiffs and the IRS. Plaintiffs assert such determinations are prohibited by statute and outside this court's jurisdiction in this partner-level TEFRA case.

c. Whether, as a matter of law, the assertion of numerous grounds for adjustment of the partnership items in the Notice of Final Partnership Item Adjustments ("FPAA"), many of which would not support the application of §6621(c) penalty interest, precludes the I.R.S. from imposing that penalty interest after the settlement.

## STATEMENT OF THE CASE AND SUMMARY OF ARGUMENT

Keener filed suit to recover tax and interest assessed and paid with respect to his investments in Agri-Venture II, a California limited partnership, ("AV2") and Agri Venture Fund, a California limited partnership, ("AVF"). The Smiths filed suit to recover tax and interest assessed and paid with respect to Smith's investments in Richgrove Grape Associates, a California limited partnership, ("RGA") and Desert Highland Vineyard, a California limited partnership, ("DHV"). For a complete fact statement, see Plaintiffs' Statement of Uncontroverted Facts.

The corporate general partner for all four partnerships was AMCOR. There are approximately thirty-nine additional partnerships that the IRS audited for which AMCOR was a general partner. These forty-three partnerships have come to be known as the AMCOR partnerships.

This case is among approximately 100 AMCOR partnership related refund cases pending before the Court of Federal Claims that generally address the same legal issues and arise from similar

and/or related facts. This case is one of six AMCOR related refund cases that have been identified by the parties or the court as representative of the issues in these Court of Federal Claims cases.[3]

There are approximately 100 other AMCOR related refund cases pending in various federal district courts around the country that also address the same legal issues and arise from the similar and/or related facts. The lead cases in the Fifth Circuit are: *Weiner v. United States*,[4] which was consolidated with *Kraemer v. United States* and addressed the §6621(c) issue in this motion as well the statute of limitations issue, and *Beall v. United States*,[5] which addresses the same legal and factual issues as the §6404 abatement claim that is on appeal in *Hinck v. United States*.

More of these AMCOR related refund suits are being filed as the claims mature and the limitations period for filing suit approaches.

By statute §6621(c) interest is assessed against a substantial underpayment of tax of more than $1,000.00 that is attributable to a tax motivated transaction ("TMT") as defined in the statute and accompanying regulation. Plaintiffs do not contest that their underpayments of tax are substantial, but asserts that their underpayment is not attributable to a TMT. Accordingly, the IRS improperly and erroneously assessed §6621(c) penalty interest against the Plaintiffs.

Moreover, the terms of the settlement, the legislative history to §6621(c), and the TEFRA bifurcation of partnership item and nonpartnership item jurisdiction mandates that the government

3 *Isler v. United States*, Docket No. 01-344T; *Scuteri v. United States*, Docket No. 01-358T; *Prati v. United States*, Docket No. 02-60T; *Dismore v. United States*, Docket No. 04-1787T; and *Hinck v. United States*, Docket No. 03-865T, currently on appeal in the Federal Circuit at Docket No.05-5099.

4 389 F.3d 152 (5th Cir. 2004).

5 336 F.3d 419 (5th Cir.2003); *on remand*, 335 F.Supp.2d 743 (E.D. Tex. 2004), and currently on appeal at Docket No. 04-41594 in the Fifth Circuit.

cannot now use this forum to establish a ground for the §6621(c) penalty interest assessment, based on new partnership item determinations at the partner level.

The Plaintiffs believe the Fifth Circuit's analysis and conclusions regarding §6621(c) in the context of AMCOR refund cases set forth in *Weiner* is correct and compelling, even though not controlling on this Court, and should be followed.

## ARGUMENT

An understanding of the bifurcation of "partnership items" and "nonpartnership items" under TEFRA is the threshold to the issues in this case.

### 1. An Introduction to TEFRA's Partnership/Nonpartnership Item Structure[6]

Partnerships generally do not pay tax.[7] They file information returns.[8] The partner's current share of partnership income, gains, losses, deductions, *etc*., are reported and recognized on their individual returns.[9]

Prior to 1982, to adjust an item on a partnership return the IRS had to examine each partner's individual return and could not ensure consistent adjustments among partners. In response, Congress

---

6 Although an unbelievably large portion of this area of law remains unsettled, two good basic analyses can be found in Section 402.7, "TEFRA and Electing-Large-Partnership Audit Procedures," Kleinrock Analysis, Kleinrock Publishing (2001) and 4 ARTHUR WILLIS ET AL., PARTNERSHIP TAXATION, (5th ed. 1996). Willis is generally recognized as one of the leading scholars on partnership tax law. For the convenience of the Court, attached as Exhibit 10 to Appendix A is a copy of the relevant section from Kleinrock, which is generally available only in its software form. Plaintiffs do not agree with all of either the Kleinrock or Willis analysis, but they are instructive as a guide to this very complex area of the law.

7 §701; Treas. Reg. §1.701-1. *Conway v. United States*, 50 Fed.Cl. 273, 276 (2001).

8 §6031; Treas. Reg. §1.6031-1. *Conway*, at 276.

9 §§701, 702; Treas. Reg. §1.702-1(a).*Conway*, at 276.



R:\DOCS\TAXCONT.T\twwm1106.ke1.wpd

enacted TEFRA, which consolidated some of the partnership audit and adjustment procedures.[10]

Under TEFRA partners generally must report their "partnership items" consistently with the partnership[11] or face penalties if they do not.[12]

Under TEFRA, if the IRS wants to adjust any partnership item it must issue an FPAA.[13] Judicial review at the partnership level is restricted to "partnership items," the adjustments to partnership items under the FPAA, and partnership item allocation among the partners.[14] Moreover, by statue "the tax treatment of any partnership item *shall* be determined at the partnership level."[15] This mandates a single centralized determination, and if appropriate, adjustment of statutorily defined "partnership items" at the partnership level.[16]

Once the partnership-level determinations are concluded – either by settlement as to an individual partner (as in this case) or by decision (as to all partners who did not previously settle) – then the partner-specific determinations involving nonpartnership items are addressed in separate partner-level deficiency proceedings.[17]

A partner's settled partnership items cease to be treated as partnership items when he and the

---

10 *Conway*, at 276; *Maxwell v. C.I.R.*, 87 T.C. 783, 787 (1986).

11 §6222.

12 §6222(d).

13 §§6223(a) and (d)(2); §6231(a)(7).

14 §§6226(a) and (f).

15 §6221. [Emphasis added].

16 §§6211(c), 6216(4), 6221, 6223, 6225(a), 6230(a)(1), and 6226; Temp. Treas. Reg. §301.6221-1T(a); *Callaway v. Commissioner*, 231 F.3d 106, 110 (2nd Cir. 2000).

17 *Maxwell* at 788; *Callaway* at 108.

IRS enter into a partnership item settlement.[18] Because settled partners no longer have an interest in partnership items, they may no longer participate in, nor be bound as a party to, any partnership-level litigation.[19]

A partner is a party to and may participate in the partnership-level litigation only as long as he has an ongoing interest in the outcome, *i.e.* only if his partnership item determinations have not been settled and therefore converted to nonpartnership items.[20]

This analysis is not affected by the 1997 changes to TEFRA raised in the Motion of the Untied States for Partial Dismissal of Plaintiffs' Complaints and Brief in Support Thereof. As Plaintiffs discussed in their response to that motion, the statutory changes to §6226(d)(1), §6229(f), and Treas. Reg. §301.6229(f)-1T do not apply to Keener because their effective dates are all subsequent to Keener's settlements.

While the effective dates would make those statutory changes and the temporary treasury regulation applicable to the Smiths, the substance of the amendments does not apply to the Smiths or Keener, affect their settlements, or change the nature of partnership level proceeding jurisdiction with regard to their partnership or nonpartnership items. The amendments at §6226(d)(1) and §6226(f) are limited by their plain terms to extending jurisdiction in partnership-level proceedings to challenges to the limitations period for assessment. The §6621(c) claims at issue in these cases rest on grounds other than expiration of the statute of limitations.

Treas. Reg. §301.6229(f)-1T does address continuing partnership-level proceeding jurisdiction

---

[18] §6231(b)(1)(C).

[19] §§6226(c) and (d) and 6228(a)(4)(B); Tax Ct. Rules 245(b) and 247(a). Ltr. Rul. 19995008, pp.9-10 (9/13/99) at Exhibit 7 of Appendix A.

[20] §§6226(c) and (d).

and establishes that unsettled partnership items not addressed in partial settlements continue to be subject to partnership level proceedings. But nothing in the regulation or the statutes addresses or changes the well-settled law that §6224(c) settlements such as the Form 870-P(AD) settlements at issue here are not partial settlements, but comprehensive and settle *all* partnership items.

**a. "Partnership Item" is a Statutorily Defined Term of Art**

"Partnership item" is specifically defined by Congress in §6231(a)(3):

> (3) PARTNERSHIP ITEM.—The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, [subtitle F] such item is more appropriately determined at the partnership level than at the partner level.

There are three statutory requirements for a partnership item. It must:

(1) arise "under any provision of subtitle A;"

(2) be "required to be taken into account for the partnership's taxable year;" and

(3) be properly designated as a partnership item by regulation.[21]

Subtitle **A** is titled "Income Taxes" and includes §§1-1563. These Code sections generally address "the numbers" reported on the Form 1065, Partnership Return of Income. By regulation a partnership's income, gains, losses, deductions, or credits are defined as partnership items.[22] By regulation, the legal and factual determinations that underlie the determination of the amount and characterization of the items of income, credit, gain, loss, deduction, etc. are also partnership items.[23]

---

21 §6231(a)(3).

22 Treas. Reg. §301.6231(a)(3)-1(a)(1)(i).

23 Treas. Reg. §301.6231(a)(3)-1(b).

**b. TEFRA Distinguishes Partnership Items and Affected Items**

By statute, anything that is not a defined "partnership item" is a "nonpartnership item."[24]

An "affected item" is a type of nonpartnership item and is defined by statute as "any item to the extent it is affected by a partnership item."[25] The statutory definition makes it clear and, it is well settled, that some affected items have a partnership item component,[26] such as the deductions reported by partnerships, as well as, the legal and factual determinations that underlie the determination of the timing, amount, and characterization of the partnership's deductions.[27]

It is well settled that §6621(c) is an affected item because the determination of a partner's liability requires a partnership item determination(s), as well as, findings of fact peculiar to the individual partner.[28]

Imposing §6621(c) penalty interest requires a determination that the liability was "attributable to" a defined "tax motivated transaction" Some defined TMTs are likewise affected items because they have both a partnership item component and a nonpartnership item component. For example, in the partnership context, the §6659(c) valuation overstatement penalty is an affected item.[29] Determination of that penalty depends on (i) the proper value of partnership property, which is a partnership item and must be established in a partnership-level proceeding; and (ii) a separate partner-level determination to determine (a) what portion of the underpayment is "attributable to" the valuation understatement and

---

24 §6231(a)(4).

25 §6231(a)(5).

26 *See N.C.F. Energy v. Commissioner*, 89 T.C. 741, 743-4 (1987).

27 §6231(a)(3); Treas. Reg. §301.6231(a)(3)-1(a)(1)(i).

28 *See Field v. U.S.* 328 F.3d 58 (2nd Cir. 2003) and *N.C.F. Energy Partners*, at 744-5.

29 *Powell v. Commissioner*, 96 T.C. 707 (1991), *citing N.C.F. Energy Partners*.

(b) whether the partner had a personal defense.

Section 6621(c) penalty interest is an anomaly in general and is even more of an anomaly in the TEFRA context. It is not subject to the standard deficiency procedures. No statutory notice of deficiency need be issued for a post partnership-level §6621(c) penalty interest assessment. There is no pre-payment forum to contest a post partnership-level §6621(c) assessment. A taxpayers' only recourse against a TEFRA related §6621(c) assessment is to pay the liability and follow the respective overpayment recovery options to challenge the improper assessment in a partner-level refund action.[30]

In a partner's claim for refund of §6621(c) penalty interest, the determination that §6621(c) interest was improperly assessed must be based on the partnership items as determined in the final partnership item settlement *and* the determination of any partner specific relevant nonpartnership item facts. That is to say, the ultimate liability for §6621(c) requires a determination that the liability was "attributable to" a TMT, which depends on partnership item determinations made in the partnership level settlement or proceeding and nonpartnership item facts to be determined in the refund claim proceeding.

**c. Determinations of Partnership Items and Nonpartnership Items are Mutually Exclusive and Conclusive**

Congress has established mutually exclusive procedures for partnership items and nonpartnership items.[31] The statute is clear: "Except as otherwise provided in this subchapter [C], the tax treatment of any partnership item shall be determined at the partnership level."[32] The jurisdictional grant and waiver of sovereign immunity for challenges to partnership items requires that partnership

---

30 *Barlow v. C.I.R.*, 301 F.3d 714, 720 (6th Cir. 2003).

31 §6231(b)(1)(C); *Callaway*, at 108. See generally *Maxwell*, at 788.

32 §6221.

items be addressed only in partnership-level proceedings.[33] The scope of judicial review in the partnership-level proceeding is limited to the partnership items of the partnership for the taxable year to which the FPAA relates.[34] Unless appealed, any determination of partnership items in a partnership-level proceeding will be final and conclusive.[35]

The respected tax authorities McKee, Nelson and Whitmire similarly state:

> Partnership items are determined at the partnership level, rather than the partner level. Whether or not an item is a partnership item can be critical, since partnership items can only be dealt with in partnership level proceedings.[36]

Legislative history confirms that partnership item and nonpartnership item determinations are mutually exclusive and conclusive: "Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, except to the extent they become nonpartnership items under the rules, be raised in proceedings relating to nonpartnership items of a partner."[37]

In 1997, Congress prospectively amended §6221 to make it clear that the applicability of any penalty, addition to tax, or additional amount related to an adjustment to a partnership item must also be determined in a partnership-level proceeding, *i.e.*, the partnership item component(s) to an affected item penalty assessment must be established in the partnership level proceeding. The supporting regulation clearly states: (i) the assessment of any penalty, addition to tax, or additional amount that

---

33 §§6226(a) and (b).

34 §6226(f).

35 §§6230(c)(4) and 6226(g).

36 McKee, Nelson, Whitmire, Federal Taxation of Partnerships 9-180 (3d ed. 1997), *citing Chef's Choice Produce, Ltd.*, 95 T.C. 388 (1990).

37 H. R. Conf. Rep. 97-760, at 611. See also Willis, §209.05 at 209-7, 209-12.

relates to a partnership item adjustment shall be based on partnership-level determinations, which include the legal and factual determinations that underlie the penalty, etc., and (ii) partner-specific defenses continue to be raised in subsequent affected item proceedings. This second part of the regulation conforms with concurrent amendments to §6230(c)(1)(C) in which Congress expressly allowed partners to file refund claims on the grounds that the IRS erroneously imposed any penalty, addition to tax, or additional amount which relates to a partnership item. Such §6230(c) refund claims are excepted from the §7422(h) bar on this Court's jurisdiction.

These amendments are not specifically applicable here because they are effective only for tax years after 1997. But read together, they do follow the same bifurcation of issues discussed above and upheld in the §6621(c) penalty cases discussed below. These amendments are a persuasive indication that Congress intended partnership item components for §6621(c) to be made at the partnership-level and be conclusive and also recognized each partner's right to subsequently assert partner-level refund challenges to the imposition of penalties and additions to tax such as §6621(c).

**2. <u>Imposing §6621(c) Penalty Interest Was Improper as a Matter of Law</u>**

**a. IRS Regulations Prove No Part of the Underpayment of Tax are "Attributable to" a TMT**

For tax years 1984-1989, §6621(c)imposes interest at 120% of the normal rate on a substantial underpayment of tax (more than $1,000.00 per tax year) that is *attributable to* one or more *tax motivated transactions* ("TMT"), as defined by statute and regulations.[38] Plaintiffs' underpayments exceeded $1000.00. The issue is whether they were *attributable to* a TMT. The "attributable to" requirement is statutory and mandatory.

[38] A copy of §6621(c) as it existed for the tax years at issue is at Exhibit 1 to Appendix A.

In the accompanying regulation, the IRS has adopted a formula for determining how much of an underpayment is "attributable to" a TMT under §6621(c):[39] The amount of tax motivated underpayment is determined by:

(1) calculating "total tax liability" as if *all* items of income, gain, loss, deduction, or credit had been reported properly on the taxpayer's income tax return, (*i.e.*, by making all IRS proposed adjustments);

(2) calculating the "total tax liability" ***without taking into account*** *any adjustments* to items of income, gain, loss, deduction, or credit that are *attributable to TMT(s)* ("total tax liability without regard to TMTs"), *i.e*., the adjustments that are *not* attributable to TMTs, and

(3) the difference between the two calculations is the amount of the tax motivated underpayment subject to §6621(c).

The illustration in the regulation makes the application of the formula clear. The first calculation, the "total tax liability," takes into account and makes *all* adjustments. The second calculation re-computes the tax liability, taking into account *only the nonTMT adjustments*. The difference between the two calculations is the portion of the underpayment attributable to TMTs and subject to §6621(c) penalty interest.[40] The amount attributable to the TMT is essentially the remainder of the underpayment, if any.

i. <u>The Formula Proves No Portion of the Taxpayers' Underpayment Was "Attributable To" a TMT</u>

The formula proves that §6621(c) was erroneously and improperly assessed against Plaintiffs.

The Plaintiffs' Form 870-P(AD) settlement agreements partially disallowed their respective partnerships' Schedule F- Farming Expenses and Other Deductions. The settlement agreements were silent and did not express any specific grounds for the disallowance.

However, as in the *Weiner* case, the FPAAs in this case proposed to totally disallow the

---

[39] 26 C.F.R. §301.6621-2T, Q-5 and A-5. Exhibit 2 to Appendix A.

[40] §301.6621-2T, at A-5.

partnerships' Schedule F - Farming Expenses and Other Deductions on numerous, alternative grounds - some of which were TMTs, but most of which were not. For example, the IRS proposed to totally disallow the farming expense deductions as sham transactions (a TMT) and on other numerous nonTMT grounds, including: (i) lack of economic substance (which by itself is not a TMT), (ii) the partnership did not engage in the trade or business of farming during the taxable periods, (iii) the partnership did not substantiate the expenses, and (iv) it was not established that the expenses were ordinary and necessary trade or business expenses under §162 (which the IRS acknowledged is not a TMT in the illustration in §301.6621-2T, A-5 and the Fifth Circuit has established is not a TMT in *Copeland v. Commissioner*[41]).

It is only necessary to apply the formula to Keener for 1984 to illustrate that no portion of his underpayment of tax for that year was attributable to a TMT. Keener’s 1984 return reported taxable income of $124,006.30 and adjusted tax liability of $49,545.25.[42] His settlement disallowed 37% of the "Schedule F - Farming Expenses" and "Other Deductions." The IRS calculated Keener's share of the disallowed deductions and made an aggregate adjustments of $54,460.00 to his taxable income.[43]

(1) Keener's total adjusted taxable income taking into account all of the agreed adjustments, which were attributable to both the alleged sham transaction and the other alleged nonTMT grounds for adjustment, was $178,466.00 ($124,006.00 + 54,460 = $178,466.00).[44] His adjusted "total tax liability" was $76,776.00.[45]

---

41 *Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002).

42 [PE:3 at B13].

43 [PE:17 at B61].

44 [PE:17 at B61].

45 [PE:17 at B61].

(2) Keener's taxable income taking into account *only* the alleged nonTMT adjustments was also $178,466.00 ($124,006.00 + 54,460 = $178,466.00).[46] His adjusted "tax liability based on the other nonTMT grounds" was also $76,776.00.[47]

There is no difference in Keener's total tax liability from the first calculation and the second. Therefore, no underpayment that could have been *attributable to* the alleged sham transaction, or any other alleged TMT.

Moreover, the regulation directs that the portion of the underpayment *not* attributable to a TMT should be computed at the standard rate.[48] Interest should have been computed at the standard rate but was improperly computed using the §6621(c) rate on Keener's entire deficiency of $27,231.00 ($76,776.00 (the tax liability without regard to TMTs) less $49,545.00 (the tax paid with the return or as previously adjusted) = $27,231.00).[49]

This outcome is more than a fortunate contrivance. - it is a function of the formula that the IRS has recognized in its official litigation guideline memo on this issue:

- If there is a single adjustment to a tax item (*e.g.*, a loss or deduction)
- based on two or more alternative grounds for adjustment - at least one of which is a TMT and one of which is not,
- then the inevitable outcome of the formula is that there is no difference in the two calculations and no underpayment of tax is attributable to TMT or subject to §6621(c) punitive interest.[50]

---

46 [PE:17 at B61].

47 [PE:17 at B61].

48 §301.6621-2T, A-5. See also Table 1 below, comparing the application of the formula using the example in the regulation to the facts in this case.

49 [PE:17 at 61].

50 IRS Litigation Guideline Memorandum issued August 12, 1992, 1992 LGM TL-68 (Rev) at 6-8, 1992 WL 1355877 ("IRS LGM"). See Exhibit 3 at Appendix A. See further discussion below.

The regulations set out the formula are the IRS's official method for determining what portion of an underpayment is attributable to a TMT. The IRS is required to follow its own legislative regulations, which are given the weight of law.[51]

In this case, the formula proves not one cent of Keener's underpayment was *attributable to* sham transaction as alleged by the government, or any other TMT either. Consequently, the imposition of §6621(c) penalty interest was erroneous as a matter of law.

The outcome of the application of the formula is the same for each of the Plaintiffs for each tax year. See Tables1 - 4 in the Exhibits at Appendix B for full calculations for all years for both Keener and the Smiths.

ii. Other Courts Have Used the Formula to Make Penalty Determinations

In *Todd* the Tax Court and Fifth Circuit recognized that an almost identical formula in the legislative history to §6659 establishes whether and how much of an underpayment is attributable to a valuation overstatement for purposes of that penalty. The Tax Court and Fifth Circuit recognized that the §6621(c) formula is essentially identical to the §6659 formula.[52]

In *Gainer*, the Ninth Circuit also recognized and used the formula to make the §6659 determination at issue in that case.[53]

The Federal District Court for the Western District of Oklahoma relied on *Todd* and *Gainer* to hold for the taxpayers on a §6659 penalty issue.[54] On appeal from the denial of plaintiffs' request for

---

51 *Accardi v. Shaughnessy*, 347 U.S. 260 (1953); *Service v. Dulles*, 354 U.S. 363, 372 (1957).

52 *Todd v. Commissioner*, 89 T.C. 912 (1987), *aff'd* 862 F.2d 540 (5th Cir. 1988).

53 *Gainer v. C.I.R.*, 893 F.2d 225, 228 (9th Cir. 1990), *see also Scoville v. C.I.R.*, 108 F.3d 1386, 1997 WL 107751 at 3 (9th Cir. 1997), an unpublished opinion.

54 *Borgardus v. U.S.*, 91-1 USTC ¶50,034, 1990 WL 259675 (W.D. Ok. 1990).

attorney's fees (the parties stipulated to dismiss the appeal of the §6659 determination) the Tenth Circuit noted that it found *Todd* and *Gainer* convincing.[55]

The Tax Court has used the formula in considering §6659 issues[56] *and* §6621(c) issues.[57] In *McCrary* the Tax Court addressed both §6659 and §6621(c). There the IRS totally disallowed the McCrarys' investment tax credit ("ITC") and other deductions on ten different grounds.[58] The McCrarys conceded the ITC on the ground that their lease was non-exclusive for the tax years in question,[59] apparently to invoke the Tax Court's earlier hypothesis in *Todd* that such a concession could avoid the §6659 penalty.[60]

Because the McCrarys did not concede the adjustments to their deductions, the Tax Court addressed the merits of the IRS's assertion that the deductions lacked economic substance. That court found the transactions lacked economic substance *and* the McCrarys lacked profit motive.[61]

In determining §6621(c) penalty interest, the Tax Court noted that the findings it made with regard to the other deductions, sham transaction and lack of profit motive under §183, were TMTs that would also support §6621(c) penalty interest against the conceded ITC.[62]

Instead of rendering on the imputed TMT findings, the Tax Court applied the formula to

---

55 *Borgardus v. U.S.*, 956 F.2d 277, 1992 WL 33255 (10th Cir. 1992), an unpublished opinion.

56 *Rasmussen v. C.I.R.*, 63 TCM 2710, 2727-28 (1992); *Sinclair*, at 1141.

57 *McCrary*, at 851-52, 854.

58 *Id.*, at 839.

59 *Id.*, at 840- 41.

60 *Id.*, at 841-42, *citing Todd*, 89 T.C. at 918-19.

61 *Id.*, at 844 and 849.

62 *McCrary*, at 857-859.

determine what portion of the McCrarys' tax underpayment was subject to the §6621(c) rate. The court noted the terms of the formula dictated that the penalty determination should be made *after* taking account of *all* other adjustment to tax liability, *i.e.*, whether the underpayment was attributable to the sham and lack of §183 profit motive TMT findings is determined after taking into account the adjustments for licensee/lessee nonTMT concession.[63] After applying the formula the court found that there was no difference in the two calculations and no portion of the underpayment was attributable to either sham or §183 lack of profit motive.[64]

The Tax Court acknowledged the incongruity of not applying §6621(c) given the TMT findings. But that court was persuaded by the Fifth Circuit's conclusion in *Todd* – the legislative intent behind the statute was to encourage settlement so as to clear the backlog of "tax shelter" cases in the Tax Court, which had been met by the taxpayers' concession, and "reaching out further to penalize petitioners would be 'too draconian.'"[65]

In *Weiner*, when the Fifth Circuit Court of Appeals considered application of the statute, the regulation, and prior precedent to another of the settled AMCOR partners refund actions, it concluded:

> There is no way, given the multiple reasons provided for the disallowance in the FPAAs, to determine whether the underpayments are "attributable to" a tax motivated transaction. . . . Because, under the circumstances of these cases, the taxpayers' underpayments are not "attributable to" a tax motivated transaction as a matter of law, the IRS may not assess the additional interest against them.[66]

iii. The Second Circuit and Other Circuits Rely on a "Separability" Approach that is Not Necessarily Contrary to the Formula

---

63 *Id.*, at 858.

64 *Id.*

65 *Id.*, at 858-59, *quoting Todd*, 862 F.2d at 545 n.15.

66 *Weiner*, 389 F.3rd at 162-3.

In *McCrary* the Tax Court also recognized and reconciled its decision with the *Irom* "attributable to" approach taken by the Second Circuit.[67]

In *Irom*, the Tax Court granted the IRS' motion for summary judgment on the deficiency – holding that the Iroms did not meet the §1.612-3(b)(3) requirements for deducting advanced rental payments.[68] But the Tax Court denied the IRS' §6621(c) motion. The Tax Court found that (i) §1.612-3(b)(3) (a non-TMT) was the only ground the IRS asserted for disallowing the deductions in its case-in-chief and (ii) the IRS had only asserted §465 "at risk" (a TMT) to impose §6621(c) and not as a ground for disallowing the deduction. The court reasoned that because the IRS asserted only §1.612-3(b)(3) as the grounds for disallowance there was no basis for imposing §6621(c).[69]

On appeal the Second Circuit reversed, holding that if there are two possible grounds for disallowing a deduction, one of which is a TMT and one of which is not, the government has no obligation to assert, on summary judgment, both grounds for disallowance or even to choose to assert the TMT ground for disallowance in order to prevail on a claim for additional interest.[70]

As support for this position the Second Circuit found that Congress intended "attributable to" to mean "capable of being attributable to."[71] The court postulated, without authority, that it did not think Congress meant to preclude additional interest for deficiencies capable of being attributed to

---

67 *McCrary* , at 859-860, *distinguishing Irom v. C.I.R.*, 866 F.2d 545 (2nd Cir. 1988).

68 *Irom v. C.I.R.*, 55 TCM 842, 843 (1988).

69 *Irom*, 866 F.2d at 546, discussing the proceedings in the Tax Court, 55 T.C.M. at 845-46.

70 *Irom*, 866 F.2d at 546-47.

71 *Irom*, 866 F.3d at 547.

TMTs simply because the IRS sought summary judgment on other grounds.[72]

The Second Circuit further determined that the Tax Court erred in refusing – apparently *sua sponte* – to further consider whether the deficiency was capable of being attributed to the other TMT that would have entailed additional interest.[73]

In *Irom*, the Second Circuit asserted that a "non-recourse" sub-issue addressed in making the nonTMT determination was "integral to" and "inseparable from" the §465 TMT ground for imposing §6621(c). The Second Circuit remanded for a §6621(c) determination on whether the Iroms' underpayment was capable of being attributable to a §465 "at risk" disallowance due to the finding on that sub-issue.[74]

The Second Circuit mistakenly attempted to distinguish *Todd* based on its assumption that the failure-to-place-in-service finding was the causal basis that the underpayment was attributable to and, therefore, any assertion that the underpayment was attributable to a TMT was "pre-empted" by the nonTMT finding. But the Second Circuit overlooked the actual facts and grounds for the decision in *Todd*. Although the ITC and depreciation deductions were disallowed because the containers were not placed in service, *on appeal* the parties agreed that under that determination the Todds also overstated the containers' value by 500%.[75] The Fifth Circuit ultimately determined §6659 by calculating the difference in tax liability using *all* adjustments to tax, *i.e.*, both the failure-to-place-in-service finding and the overvaluation concession as dictated by the formula.

---

72 *Id.* In contrast the Fifth Circuit found this "capable of being attributable to" approach to be ambiguous and rejected it in *Todd*, at 544.

73 *Id.* The Second Circuit also distinguished *Law v. Commissioner,* 84 T.C. 985 (1985).

74 *Irom*, 866 F.3d at 547.

75 *Todd*, 862 F.2d 541.

In *Conway*, a §6659 penalty case, the Court of Federal Claims considered a similar argument by a taxpayer that §6659 requires the penalty to be attributable to the valuation overstatement and requires a direct causal relationship between the valuation overstatement and the underpayment of tax. In *Conway* the IRS disallowed partnership losses based on lack of economic substance and overvaluation of assets. The taxpayer asserted that a determination that an activity lacks economic substance, as had been made in that case, established the ground for disallowance rather than the overvaluation of assets and, therefore, the §6659 penalty did not apply.

This Court disagreed and found (i) that the overvaluation of assets furnished the only economic rationale for the transaction, and (ii) consequently, the transaction lacked economic substance and the underpayment was attributable to the overvaluation. This Court cited other Circuits that have reached the same conclusion. But those other Circuits did not consider or apply the formula. They focused on and criticized dicta in the Fifth Circuit's *Todd* and *Heasley*[76] opinions and followed other Circuits that use the *Irom* "separability" approach.

But even *Irom*, and the subsequent authorities relied on in *Conway*, recognized that if there are separable grounds for adjustment, then under the formula there is no difference in the outcome of the two calculations and no portion of the underpayment is attributable to the TMT.[77]

In *Schachter* – a case appealable to the Second Circuit and further discussed below– the Tax Court distinguished *Irom* and held that the "potpourri of grounds" for adjustment in that case were "disparate and disconnected" and there were more than enough non-TMT grounds for the adjustment

---

[76] *Heasley v. Commissioner*, 902 F.2d 380, 382-3. (5th Cir. 1990).

[77] *Irom* , 866 F.3d at 747-8.



R:\DOCS\TAXCONT.T\twwm1106.ke1.wpd

that no useful purpose would be served by a trial on the merits.[78]

There are more than enough "disparate and disconnected" grounds for adjustment in this case to preclude even an *Irom* based argument for §6621(c).

The majority of the "potpourri" of grounds for adjustment asserted by the IRS in this case are nonTMTs and are not integral to or inseparable from the government's sole alleged TMT basis for adjustment – sham transaction. For example, §162 is not a TMT. The Tax Court has held that the §162 "trade or business" analysis is *not* an "integral part of" or "inseparable from" sham transaction.[79]

Just this one separable nonTMT ground for adjustment (from among many others) is sufficient to preclude the imposition of §6621(c) under *Todd*, *Heasley*, *McCrary*, **and** *Irom*.

iv. Even Though the IRS Regulations Direct the Use of the Formula, the IRS Has Ignored It in Practice

After *Todd*, *McCrary*, *Irom*, and *Heasley* the IRS issued the internal memorandum setting out its litigating position regarding the application of §6659 and §6621(c) penalties.[80] This LGM is not precedent, but it is persuasive evidence that the IRS is aware of the outcome of the formula and establishes that Plaintiffs correctly applied the formula above and at Tables 1 - 4. In that LGM, the IRS directed that *Irom* should be followed if any of the grounds for adjustment are "an integral part of or inseparable from" a TMT.[81] But the LGM also directed that "where it is clear that the underlying

---

78 *Schachter*, at 3094-95.

79 *Harris v. Commissioner*, 58 T.C.M. (CCH) 1441 (1990), *aff'd other grounds*, 16 F.3d 75 (5th Cir. 1994); see also Treas. Reg. §301.6621-2T, A-6, *Example* ["Section 162 deduction disallowed $7,500 (not tax motivated but fraudulent or negligent)].

80 IRS LGM at 3-8.

81 IRS LGM at 3-7.



R:\DOCS\TAXCONT.T\twwm1106.ke1.wpd

deficiency would likely be sustainable on grounds that are 'independent of and wholly separable from' a TMT" then *none* of the underpayment is attributable to a TMT - even if there is also a TMT ground for disallowing the same deduction.[82]

As discussed above, most of the grounds for adjusting the farming expenses in this case are separable from the alleged sham basis for the adjustment. In this case the IRS ignored its regulation and imposed §6621(c) in contravention of the outcome of the formula.

**b. The Government is Precluded from Using this Forum to Establish a Basis for Imposing §6621(c) Penalty Interest**

The legislative mandate behind §6621(c), the terms of the Form 870-P(AD) settlements between the Plaintiffs and the IRS, and the TEFRA jurisdictional split between partnership and nonpartnership items preclude the government from asserting and this Court from making the partnership item determination necessary to uphold the assessment of §6621(c) penalty interest against the Plaintiffs.

i. Legislative History Bars Post-Assessment Litigation Solely to Establish a Basis to Impose §6621(c)

The legislative history for §6621(c) explains that clearing the Tax Court's backlog was the purpose behind earlier legislation, including §6659, and with §6621(c) Congress had given the Tax Court sufficient tools to effectively manage its docket and reduce that backlog.[83]

Both the district court and the Fifth Circuit *Weiner* court noted that the original intent behind

---

82 IRS LGM at 6-8.

83 *Todd*, 862 F.2d at n.14, *citing* H.Conf.Rep. No.98-861, 1984-6 (June 23, 1984). Exhibit 4 at Appendix A.

§6621(c) was to encourage settlement of tax shelter cases.[84] As the Fifth Circuit noted:

> Additionally, § 6621(c) was one of the provisions enacted by Congress "to deal with the Tax Court backlog." *Todd*, 862 F.2d at 544 n. 14. Yet, fifteen years after the statute's repeal, imposing the penalty in situations such as this does nothing to relieve the Tax Court's backlog, when the taxpayers have in fact settled with the IRS.[85]

In *Law*, the IRS moved for leave to amend to assert §6621(c) interest after the case had been tried and briefed. The *Law* court recognized that the IRS frequently asserts numerous, alternative grounds for adjusting partnership losses, not all of which are TMTs.[86] That court realized that even after addressing the merits of each of the numerous, alternative and overlapping grounds for adjustment in that case it could still be left with two or more valid grounds for the same adjustment, one of which was a TMT and one of which was not.[87] This realization that a trial on the merits of each of the proposed adjustments may likely accomplish nothing, combined with the legislative mandate to use §6621(c) penalty interest as a incentive tool to settle and decrease the backlog of "tax shelter" cases, led to the Tax Court's denial of leave to amend in *Law*.

In a concurrence, Judge Whitaker further explained that reopening the record (analogous to reopening the settlements in these cases) to establish the grounds necessary to apply §6621(c) was not consistent with justice or judicial economy. Judge Whitaker noted that the intent of the statute was to assist the court in managing its backlog and the "*in terrorem*" effect of the statute would not be served by allowing the government to retroactively impose §6621(c) penalty interest and doing so could be

---

[84] 255 F.Supp.2d at n.47.

[85] 389 F.3rd at 162-3.

[86] *Law*, at 993. The Tax Court denied leave to amend for the same reasons in *Forseth v. C.I.R.*, 50 T.C.M. 111 (1985). After that decision Congress amended §6621(c) to add sham transaction to the list of TMTs.

[87] *Law*, at 993-994.

seen as simply abusive.[88]

In *Rogers*, a case very much like this one, the Tax Court again considered §6659 and §6621(c). There the IRS asserted numerous grounds for adjusting the Rogers' credits and deductions, some of which were TMTs and some of which were not. The Rogers conceded they were not entitled to the deductions and credits but contested the penalties and §6621(c) penalty interest. They argued that their concession made it impossible to determine the reason for the adjustment and, therefore, a trial for the sole purpose of making penalty determinations would be unnecessarily burdensome.[89]

The *Rogers* court recalled *McCrary* and was persuaded that the determination on the merits in that case was only made because the McCrarys continued to dispute the proposed adjustments to their deductions and was not made for the sole purpose of imposing §6621(c) against the ITC that the McCrarys had conceded. The *Rogers* court held that a trial on the merits of the adjustments for the sole purpose of imposing §6621(c) was unnecessary and refused to uphold the imposition of penalties and §6621(c) penalty interest.[90]

The Tax Court reached the same conclusion yet again in *Schachter*. The *Schachter* court held that a prior closing agreement and the taxpayers' stipulation conceding the adjustments obviated the need for a trial of the numerous grounds for adjustment asserted by the IRS.[91] The court noted that the IRS' deficiency notice, which is equivalent to an FPAA, "threw in everything but the proverbial kitchen sink" as grounds for the adjustments and held that the "melange of grounds," some of which were TMTs and some of which were not, prevented the court from saying after the taxpayer's concession that

---

88 *Law*, at 994-95.

89 *Rogers v. Commissioner,* T.C. Memo 1990-619 at 1397.

90 *Rogers*, at 1397, *citing McCrary*, at 851-855.

91 *Schachter*, at 3094.

the underpayment was attributable to a particular ground.[92]

The Tax Court noted in those circumstances it was not inclined to rely on the petitioners' burden of proof to show that the transaction was not tax motivated, either all or in part, for purposes of §6621(c).[93]

*Schachter* also found the objectives of administrative efficiency and judicial economy were well served by the settlement and taxpayers' concession and those objectives would not be served by a trial on the substantive issues for the *sole* purpose of imposing §6621(c) penalty interest.[94]

The facts of this case are not different from those in *Law*, *Todd*, *McCrary*, *Rodgers*, or *Schachter*. The improper imposition of §6621(c) interest in this case has done nothing but prolong and multiply the litigation. In fact, in the absence of any agreement to §6621(c) or the specific grounds for adjustment in the settlement agreements, to determine if the Plaintiffs' adjustments are solely attributable to a TMT would require a trial to determine each and every asserted ground for adjustment to partnership items originally set forth in the FPAA. Such a trial in this proceeding would subvert the entire purpose of TEFRA and is prohibited by TEFRA.

If there is a difference in the outcome of the calculations under the formula, or if there are no non-TMT grounds for adjustment, *then* it may be necessary to reach the merits of the proposed TMT adjustment if the taxpayer contests the assessment. A trial in such a case would not be solely to impose §6621(c). But that is not the case here.

In *Weiner*, the only Circuit Court of Appeals case yet to consider the §6621(c) refund issue in the AMCOR cases, the Fifth Circuit concluded:

---

92 *Schachter*, at 3094.

93 *Id*., at 3094.

94 *Id*., at 3094-95.

> The same situation is present in these cases: the taxpayers settled or conceded the disallowances and paid the delinquent taxes, thus removing the need for a trial on the merits of those issues. This court can conceive of no good reason to treat the taxpayers in this case differently from the taxpayers in *Todd, McCrary, Heasley, Rogers*, or *Schachter.*

ii. The Terms of the Settlement Preclude Re-Opening Partnership Items to Establish a Basis for Imposing §6621(c) and are Inconsistent with Sham Transaction Being the Basis for Settlement

The Forms 870-P(AD) plainly state they are the taxpayer's offer to settle partnership items pursuant to §6224(c), which is expressly limited to partnership item settlements. The Tax Court and the Second Circuit have affirmed the IRS's position that §6224(c) settlements may only be had as to partnership items.[95]

The regulations to §6224(c) provide that §6224(c) settlements shall be "comprehensive" and may not be limited to selected partnership items.[96] Therefore, the settlements not only agreed to the amount of the adjustments to the deductions, a partnership item, but also conclusively precluded further legal and factual characterizations of the nature of the deductions, which is also a partnership item.

The FPAAs for the initial years of each of the partnerships completely disallowed all of the partnerships' farming and other expense deductions. A sham transaction determination results in a total disallowance of all partnership item deductions derived from the transactions. But the settlements allowed over half to two-thirds of those same deductions, which is inconsistent with sham transaction being the basis for adjustment in the settlements. The IRS implicitly *agreed* that the partnership item farming and other expense deductions were not shams, otherwise the settlements solicited by the IRS and consummated using a Form870-P(AD) prepared by the IRS would have *completely dis*allowed the

---

95 *Greenberg Bros. Partnership #4 v. C.I.R.*, 111 T.C. 198 (1998), *aff'd sub. nom. Cinema '84 v. C.I.R.*, 294 F.3d 432 (2nd Cir. 2002).

96 Treas. Reg. §301.6224(c)-3T(b).

deductions as the FPAAs originally proposed. Nothing in the settlements contradicts this plain meaning of the agreed numbers.

The Forms 870-P(AD) also state that the agreement "will not be reopened in the absence of fraud, malfeasance or misrepresentation of fact." The government has not alleged any of those grounds at any time in this case or any of the other AMCOR related refund cases. The government is prohibited from re-opening the settlement to make a determine on the merits of the grounds for the partnership item adjustments.

The IRS had other options available to seek §6621(c) penalty interest as a term of the settlement. It could have used a Form 870-L(AD) settlement agreement, which expressly settles §6621(c) interest.[97] It could have used a Form 906 closing agreement, which allows for tailored recitations necessary to support a TMT finding.[98] But it did not. The government may not now seek determinations to suit its current desires without regard to the plainly stated terms of the Forms 870-P(AD) that it drafted, sent to the Plaintiffs, and then accepted to settle the Plaintiffs' tax controversies.

iii. The TEFRA Jurisdictional Bifurcation Precludes Partnership Item Determinations Necessary to Establish or Disprove a Basis to Impose §6621(c)

Because this is a partner-level refund case and this Court lacks jurisdiction to make, and is precluded by statute from making, partnership item determinations.[99] The only jurisdiction this Court has over the converted partnership item farming expense deductions is to determine their correct application under the terms of the settlement.[100]

---

97 A sample Form 870-L(AD) is attached at Appendix A, Exhibit 8.

98 A sample Form 906 Closing Agreement is attached at Appendix A, Exhibit 9.

99 *Callaway* at 108, quoting H.R.Conf.Rep. 97-760, at 611.

100 §§6231(a)(3); 6226(f); H. R. Conf. Rep. 97-760, at 611, emphasis added. See also 4 Arthur Willis et al., Partnership Taxation, §209.05 at 209-7, 209-12 (5th ed. 1996).

Any partnership-item determinations required to impose §6621(c) must be made in a partnership-level proceeding. This includes whether or not the farming transactions lacked economic substance despite the IRS' agreement to roughly 2/3 of the farming expenses. As discussed above, the statutory language is unambiguous:

> Except as provided in this subchapter, the tax treatment of any partnership items shall be determined at the partnership level.[101]

Here the settlement made a naked dollar adjustment to partnership items allowing roughly 2/3 of the deductions and did not identify any grounds for the adjustment. The government is statutorily barred by TEFRA from using this partner-level refund suit to suit establish the partnership item grounds necessary to uphold its §6621(c) assessment.

**c. Policy Favors the Plaintiffs**

i. Congress Intended to "Temper" IRS Imposition of Penalties and Repealed §6621(c) When <u>Imposing It Became Too Routine and Automatic</u>

In 1989, just three years after it was enacted, Congress repealed §6621(c) and overhauled the remainder of the accuracy related penalties at issue in *Todd*, *McCrary*, *Heasley*, and legions of other cases. Congress sought to improve the fairness, comprehensibility, and administrability of those provisions after it found they had been "determined too routinely and automatically by the IRS."[102] After two years of study, hearings, and debate, Congress found §6621(c) and the other penalties were a "morass of inconsistency and irrationality" that discouraged rather than encouraged compliance and under which a "hapless taxpayer [could] find himself, or herself, confronting the Internal Revenue Code over a tax deficiency, where the penalties and interest have been piled on to the extent that they are

---

[101] §6221.

[102] H.Rep. No. 101-247, 1388, 1393, 1394, *cited by Copeland*, at n.10 (recognizing that §6621(c) had been repealed as a part of the accuracy related penalty provisions). Exhibit 5 at Appendix A.

twice the amount of tax in dispute."[103]

This case proves Congress was correct. In practice, nothing has been more routinely, automatically, and even rabidly imposed by the IRS than §6621(c) penalty interest.

ii. <u>The Settlement Served the Statute's Purpose</u>

In *Todd* and *McCrary* the government was concerned that the outcome of the formula "sanctioned" the overvaluation. But the Fifth Circuit recognized the Todds did not benefit since their deductions were denied in full.[104] Those court's were also persuaded that the taxpayers' concessions served the legislative mandate behind §6621(c) - which was to clear the docket backlog.

Here, the IRS allowed the majority of the deductions and, by law, the resulting underpayment was subject to interest from the date the tax return was due until the liability was paid.[105] In cumbersome TEFRA cases that usually taking a protracted period to resolve, interest is always very significant because it is compounded daily.[106] In this case interest on the Plaintiffs' tax liability was compounded daily for almost a decade and exceeded their ultimate tax liability by three or more times. The Plaintiffs did not benefit from the disallowed deductions.

But more importantly, the Plaintiffs conceded and settled their tax liability. The government then assessed §6621(c) penalty interest in contravention of it own regulations and the legislative mandate. The partners should be entitled to rely on the regulations and the IRS's own Litigation Guideline Memorandum in effect when they settled to interpret the impact of their settlements on

---

103 Statement by Senator Pryor introducing S.1784 at 135 Cong. Rec. S13893-7 (0ctober 24, 1989), 1989 WL 186980 (Cong.Rec.). S.1784 was ultimately enacted as a part of P.L. 101-239. Exhibit 6 at Appendix A.

104 *Todd*, 862 F.2d at 544.

105 §6601(a).

106 §6622. Where imposed the inflated §6621(c) penalty rate is also compounded daily.

§6621(c).

iii. The Partnership-Level Transactions Were Outside the Limited Partners' Control

In *Todd*, the Fifth Circuit also noted that the "the failure to place the containers in service during the years of purchase was due to circumstances beyond the control of the Todds and may not have been known to the Todds."[107] In *Weiner*, the district court recognized that in these AMCOR cases the limited partners had no control over the partnership-level transactions.[108] These passive investors are *required* under §6222 to file personal returns in compliance with their Schedule K-1 or face penalties if they do not. The Plaintiffs were also limited partners in these AMCOR partnerships and had no more control over the partnership-level transactions than Weiner did in his limited partnerships.

## CONCLUSION

This case and the others like it in the Court of Federal Claims and the federal district courts are all based on the same legal argument - (i) the IRS's formula proves no part of the AMCOR partners' underpayments of tax were "attributable to" a TMT; (ii) the multiple bases for adjustment of the partnership items set forth in the FPAA preclude any determination that the tax liability was "attributable to" a TMT; (iii) the settlement served the purpose behind §6621(c) to encourage partners to settle and lighten the Tax Court's docket, and (iv) the terms of the settlement, the legislative mandate behind §6621(c), and the partnership/nonpartnership item jurisdictional split precludes additional litigation for the sole purpose of establishing a ground for imposing §6621(c). The IRS is aware that §6621(c) should not have been assessed in situations such as this. Congress recognized §6621(c) was too routinely and automatically imposed when it repealed §6621(c) just three years after it was first

---

107 *Todd*, at 544.

108 *Weiner v. United States*, 255 F.Supp.2d 673 (2003).

enacted - but Congress failed to retroactively repeal §6621(c) and today taxpayers and the courts are still paying the cost of this morass of inconsistency and irrationality.

The outcome of the improper assessment and the government's attempt to force a determination on the merits for the sole purpose of imposing §6621(c) penalty interest has been a proliferation of litigation in this Court and multiple district courts. In *Weiner*, the Fifth Circuit found for other AMCOR partners on the identical legal and factual grounds asserted in this motion for partial summary judgment and held that as a matter of law the IRS improperly assessed §6621(c) interest in those cases. The government's approach in those cases and these cases is contrary to sound judicial administration, contrary to Congressional intent, and in direct violation of the very purpose of TEFRA, to centralize partnership item determinations and avoid numerous conflicting partnership item determinations on a partner-by-partner basis.[109]

The Plaintiffs believe the Fifth Circuit's analysis and conclusions regarding §6621(c) in the context of the AMCOR refund cases set forth in *Weiner* is correct and compelling, even though not controlling on this Court, and should be followed.

---

109 *See Todd*, 89 T.C. at 920.

WHEREFORE, Plaintiffs Kenneth C. Keener, William P. Smith, Jr., and Anne Smith respectfully requests that this Court grant and render judgment in their favor on their respective §6621(c) claims.

Respectfully submitted,

February 17, 2005

/s/ Thomas E. Redding

Thomas E. Redding, Attorney of Record
Teresa J. Womack
Sallie W. Gladney
REDDING & ASSOCIATES, P.C.
P.O. Box 924328
Houston, Texas 77292-4328
(713) 965-9244
(713) 621-5227 Fax
**Attorneys for Kenneth C. Keener, William P. Smith, Jr., and Anne Smith**