**No. 03-2028 T**
Consolidated with 04-907 T
(Judge Francis M. Allegra)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

KENNETH C. KEENER,

PLAINTIFF

VS.

UNITED STATES OF AMERICA,

DEFENDANT

---

# PLAINTIFF'S §6621(C) MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING BRIEF

---

THOMAS E. REDDING, Lead Counsel
TERESA J. WOMACK
SALLIE W. GLADNEY
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
Kenneth C. Keener and
William P. Smith, Jr. and Anne Smith

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JEFFREY T. SCUTERI | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | DOCKET NO. 01-358T |
| vs. | § | |
| | § | Judge Wolski |
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | |
| Defendant. | § | |

**APPENDIX A TO**
**PLAINTIFF'S §6621(C) MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND SUPPORTING BRIEF**

| Doc. No. | Document |
|---|---|
| 1 | 26 U.S.C. §6621(c), effective for tax year 1986 |
| 2 | Treas. Reg. §301.6621-2T, effective for tax year 1986 |
| 3 | 1992 Litigation Guideline Memorandum TL-68, August 12, 1992 |
| 4 | H.Conf.Rep. No. 98-861, June 23, 1984 |
| 5 | H.R. No. 101-247, September 20, 1989 |
| 6 | 135 Cong. Rec. S13893-07, Statement of Sen. Pryor, October 24, 1989 |
| 7 | I.R.S. Ltr. Rul. 199950008 |
| 8 | Form 870-L(AD), Sample |
| 9 | Form 906 Closing Agreement, Sample |
| 10 | Section 402.7, TEFRA and Electing-Large-Partnership Audit Procedures, Kleinrock Publishing (2002) |

**P.L. 97-34, § 711(c):**

Amended Code Sec. 6621(b) by striking out "February 1" and inserting "January 1", applicable to adjustments made for periods after 1982.

**P.L. 94-455, § 1906(b)(13)(A):**

Amended 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective 2-1-77.

**P.L. 93-625, § 7(a)(1):**

Added Code Sec. 6621(b). Applicable to amounts outstanding on such date or arising thereafter. Effective 7-1-75.

**[Sec. 6621(c)]**

(c) INTEREST ON SUBSTANTIAL UNDERPAYMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS.—

(1) IN GENERAL.—In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section shall be 120 percent of the underpayment rate established under this subsection.

(2) SUBSTANTIAL UNDERPAYMENT ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS.—For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000.

(3) TAX MOTIVATED TRANSACTIONS.—

(A) IN GENERAL.—For purposes of this subsection, the term "tax motivated transaction" means—

(i) any valuation overstatement (within the meaning of section 6659(c)),

(ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),

(iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), and

(iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and

(v) any sham or fraudulent transaction.

(B) REGULATORY AUTHORITY.—The Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection and may by regulations provide that specified transactions being treated as tax motivated will no longer be so treated. In prescribing regulations under the preceding sentence, the Secretary shall take into account—

(i) the ratio of tax benefits to cash invested,

(ii) the methods of promotion the use of this type of transaction, and

(iii) other relevant considerations.

(C) EFFECTIVE DATE FOR REGULATIONS.—Any regulations prescribed under subparagraph (A)(iv) or (B) shall apply only to interest accruing after a date (specified in such regulations) which is after the date on which such regulations are prescribed.

(4) JURISDICTION OF TAX COURT.—In the case of any proceeding in the Tax Court for a redetermination of a deficiency, the Tax Court shall also have jurisdiction to determine the portion (if any) of such deficiency which is a substantial underpayment attributable to tax motivated transactions.

**Amendments**

**P.L. 99-514, § 1511(a):**

**Act Sec. 1511(a)** amended Code Sec. 6621 by striking out subsection (c). Prior to amendment, Code Sec. 6621(c) read as follows:

(c) DEFINITION OF PRIME RATE.—For purposes of subsection (b), the term "adjusted prime rate charged by banks" means the average predominant prime rate quoted by commercial banks to large businesses, as determined by the Board of Governors of the Federal Reserve System.

**P.L. 99-514, § 1511(c)(1)(A)-(C):**

**Act. Sec. 1511(c)(1)(A)-(C)** amended Code Sec. 6621 by redesignating subsection (d) as subsection (c), by striking out "the adjusted rate established under subsection (b)" in subsection (c)(1) (as so redesignated) and inserting in lieu thereof "the underpayment rate established under this section", and by striking out "annual" in subsection (c)(1) (as so redesignated).

**The above amendments apply for purposes of determining interest for periods after December 31, 1986.**

PLAINTIFFS' EXHIBIT



©1986, Commerce Clearing House, Inc.

*Example* (5). A, an individual, is liable for an addition to tax under section 6654 for the underpayment of estimated tax from April 15, 1975 until January 15, 1976. The addition to tax shall be computed at the annual rate of 6 percent per annum from April 15, 1975, to June 30, 1975, and at the annual rate of 9 percent per annum from June 30, 1975, to January 15, 1976.

*Example (6).* B, an individual, files an income tax return for calendar year 1980 on April 15, 1981, showing a tax due of $1,000. B pays the $1,000 on March 1, 1983. Under section 6601(a), interest on the $1,000 underpayment is due from April 15, 1981, to March 1, 1983. Such interest is computed at the rate of 12 percent per annum, simple interest from April 15, 1981, to January 31, 1982, and at the rate of 20 percent per annum, simple interest from January 31, 1982, to December 31, 1982, and at the rate of 16 percent per annum, compounded daily, from December 31, 1982, to March 1, 1983. The total simple interest accrued but unpaid at the end of December 31, 1982, is combined with the $1,000 underpayment for purposes of determining the amount of daily compounded interest to be charged from December 31, 1982, to March 1, 1983. [Reg. § 301.6621-1.]

[*T. D.* 7384, 10-21-75. *Amended by T. D.* 7907, 8-22-83.]

**§ 301.6621-2T. Questions and answers relating to the increased rate of interest on substantial underpayments attributable to certain tax motivated transactions.**

The following questions and answers relate to the increased rate of interest on substantial underpayments attributable to certain tax motivated transactions as provided in section 6621(d) of the Internal Revenue Code of 1954, as added by section 144 of the Tax Reform Act of 1984 (Pub. L. 98-369, 98 Stat. 682):

*Q-1. What is the annual interest rate under section 6621 for purposes of computing the amount of interest that must be paid under section 6601 (relating to interest on underpayments)?*

A-1. In general, the annual interest rate for purposes of section 6601 is the adjusted rate of interest established under section 6621(b) and § 301.6621-1 ("adjusted rate"). If, however, a tax motivated underpayment (as defined in A-2 of this section) for a taxable year is substantial (as defined in A-7 of this section), section 6621(d) provides that the annual rate of interest with respect to the tax motivated underpayment is 120 percent of the adjusted rate ("120 percent rate"), rounded to the nearest tenth of a percent.

*Q-2. What is a tax motivated underpayment?*

A-2. A tax motivated underpayment is the portion of a deficiency (as defined in section 6211) of tax imposed by subtitle A (income taxes) that is attributable to any of the following tax motivated transactions:

(1) Any instance in which the value of any property, or the adjusted basis of any property, claimed on a return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (*i. e.,* a valuation overstatement within the meaning of section 6659(c)(1));

(2) Any loss disallowed for any period by reason of section 465(a) or any amount included in gross income by reason of section 465(e);

(3) Any credit disallowed for any period by reason of section 46(c)(8) or section 48(d)(6);

(4) Any loss disallowed for any period with respect to a straddle, as defined in section 1092(c), but without regard to sections 1092(d) and (e);

(5) Any use of an accounting method that may result in a substantial distortion of income for any period (see A-3 of this section); and

(6) Any deduction disallowed with respect to any other tax motivated transactions (see A-4 of this section).

*Q-3. What accounting methods may result in a substantial distortion of income for any period under A-2(5) of this section?*

A-3. A deduction or credit disallowed, or income included, in any of the circumstances listed below shall be treated as attributable to the use of an accounting method that may result in a substantial distortion of income and shall thus be a tax motivated transaction that results in a tax motivated underpayment:

(1) Any deduction disallowed for any period by reason of section 464 or section 278(b), relating to certain expenses of farming syndicates;

(2) In the case of a taxpayer who computes taxable income using the cash receipts and disbursements method of accounting, any interest deduction disallowed for any period by reason of section 461(g), relating to prepaid interest, provided the interest is not paid with respect to indebtedness incurred in connection with (i) the purchase, refinancing, or improvement of the principal residence of the taxpayer, or (ii) the purchase of consumer goods by the taxpayer;

(3) Any interest deduction disallowed for any period because the amount of the claimed deduction was computed using a method resulting in an amount of interest for a period that exceeds the true cost of the indebtedness for the period computed

PLAINTIFFS' EXHIBIT 2



© 1985, Commerce Clearing House, Inc.

by applying the effective rate of interest on the loan to the unpaid balance of the loan for the period (*i.e.*, the economic accrual of interest for the period), provided the interest is not accrued with respect to indebtedness incurred in connection with (i) the purchase, refinancing, or improvement of the principal residence of the taxpayer, or (ii) the purchase of consumer goods by the taxpayer (see Rev. Rul. 83-84, 1983-1 C. B. 97, and sections 163(e), 446(b), and 483);

(4) Any deduction disallowed for any period under section 709, relating to organization or syndication expenditures of a partnership;

(5) In the case of any expenditure described in section 248(b) that was incurred by an S corporation, any deduction disallowed because it exceeds the amount allowable under section 248, relating to organizational expenditures;

(6) Any deduction disallowed for any period under section 267(a), relating to transactions between related taxpayers;

(7) Any deduction disallowed for any period, or any income required to be included for any period, under section 467, relating to certain payments for the use of property or services;

(8) Any deduction disallowed for any period under section 461(i), relating to certain deductions of tax shelters; and

(9) In the case of a taxpayer who computes taxable income using the cash receipts and disbursements method of accounting, any deduction disallowed for any period because (i) the expenditure resulting in the deduction was a deposit rather than a payment, (ii) the expenditure was prepaid for tax avoidance purposes and not for a business purpose, or (iii) the deduction resulted in a material distortion of income (see, *e.g.*, Rev. Rul. 79-229, 1979-2 C. B. 210).

*Q-4. Are any transactions other than those specified in A-2 of this section and those involving the use of accounting methods under circumstances specified in A-3 of this section considered tax motivated transactions under A-2(6) of this section?*

A-4. Yes. Deductions disallowed under the following provisions are considered to be attributable to tax motivated transactions:

(1) Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit, and

(2) Any deduction disallowed for any period under section 165(c)(2), relating to any transaction not entered into for profit.

*Q-5. How is the amount of a tax motivated underpayment determined?*

A-5. Except as provided in A-6 of this section, the amount of a tax motivated underpayment is determined in the following manner:

(1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and

(2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to tax motivated transactions (as defined in A-2 through A-4 of this section), calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated transactions").

(3) The difference between the total tax liability and the tax liability without regard to tax motivated transactions is the amount of the tax motivated underpayment.

*Example.* Taxpayer A, a calendar year taxpayer, files his 1984 income tax return reporting $70,000 of taxable income and $23,171 of tax liability. On January 20, 1986, A enters into a closing agreement with the Internal Revenue Service that includes the following adjustments:

| | |
|---|---|
| Section 162 deduction disallowed (not tax motivated) | $ 7,500 |
| Loss disallowed under section 465 (tax motivated—see A-2 (2) of this section) | $ 5,000 |
| Section 170 deduction disallowed because of a valuation overstatement (tax motivated—see A-2 (1) of this section) | $10,000 |
| Loss disallowed with respect to a straddle as defined in section 1092 (c) (tax motivated—see A-2 (4) of this section) | $ 7,000 |
| Other adjustments (none of which are tax motivated) | $ 4,000 |

The tax motivated underpayment is determined in the following manner:

| | | |
|---|---|---|
| 1. | $ 70,000 | reported taxable income |
| | + 33,500 | (add all adjustments to items of income, gain, loss, deduction, or credit (including tax motivated transactions subject to section 6621(d))) |
| | $103,500 | tax = $39,685 ("total tax liability") |
| 2. | $ 70,000 | reported taxable income |
| | + 11,500 | (add adjustments to items of income, gain, loss, deduction, or credit other than those with respect to items that are tax motivated) |

$ 81,500 tax = $28,691 ("tax liability without regard to tax motivated transactions")

The tax motivated underpayment (*i. e.,* the underpayment attributable to tax motivated transactions) is $10,994 ($39,685 − $28,691). Accordingly, the interest on $10,994 would be computed at the 120 percent rate.

The remainder of the underpayment (*i. e.,* the underpayment not attributable to tax motivated transactions) is $5,520 ($28,691 (tax liability without regard to tax motivated items) − $23,171 (tax paid with return)). The interest on $5,520 would be computed at the adjusted rate.

*Q-6: How are the amounts of the tax motivated underpayment and the underpayment attributable to fraud or negligence determined if all or a portion of the taxpayer's underpayment is attributable to one or more tax motivated transactions and all or a portion is subject to the addition to tax imposed by section 6653(a)(2) (in the case of an underpayment attributable to negligence or intentional disregard) or section 6653(b)(2) (in the case of an underpayment attributable to fraud)?*

A-6: If all or a portion of the taxpayer's underpayment is attributable to tax motivated transactions, and all or a portion is attributable to fraudulent or negligent items (*i. e.,* items that result in an underpayment subject to the addition to tax imposed by section 6653(a)(2) or (b)(2)), the amount of the tax motivated underpayment and the underpayment attributable to fraud or negligence is determined in the following manner:

(1) Determine the following amounts:

(i) The tax liability for the taxable year of the taxpayer as if all items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("total tax liability");

(ii) The tax liability for the taxable year of the taxpayer as if all items of income, gain, loss, deduction, or credit without taking into account adjustments to items of income, gain, loss, deduction, or credit that are both (a) attributable to tax motivated transactions and (b) subject to section 6653(a)(2) or section 6653(b)(2), had been reported properly on the income tax return of the taxpayer ("tax liability without regard to fraudulent or negligent tax motivated items");

(iii) The tax liability for the taxable year of the taxpayer as if all items of income, gain, loss, deduction, or credit, without taking into account adjustments to items of income, gain, loss, deduction, or credit that are subject to section 6653(a)(2) or section 6653(b)(2), had been reported properly on the income tax return of the taxpayer ("tax liability without regard to fraudulent or negligent items");

(iv) The tax liability for the taxable year of the taxpayer as if all items of income, gain, loss, deduction, or credit, without taking into account adjustments to items of income, gain, loss, deduction, or credit that are either subject to section 6653(a)(2) or section 6653(b)(2) or attributable to tax motivated transactions, had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated or fraudulent or negligent items").

(2) The tax motivated underpayment attributable to fraudulent or negligent items is the excess of the total tax liability over the tax liability determined without regard to fraudulent or negligent tax motivated items ((i)-(ii)).

(3) The tax motivated underpayment is the sum of (a) the tax motivated underpayment attributable to fraudulent or negligent items ((i)-(ii)) plus (b) the excess of the tax liability without regard to fraudulent or negligent items over the tax liability without regard to tax motivated or fraudulent or negligent items ((iii)-(iv)). Interest on this underpayment is computed at the 120 percent rate.

(4) The underpayment attributable to fraudulent or negligent items is the excess of the total tax liability over the tax liability without regard to fraudulent or negligent items ((i)-(iii)). The section 6653 addition to tax is 50 percent of the interest on this underpayment computed at the 120 percent rate on an amount equal to the tax motivated underpayment attributable to fraudulent or negligent items (computed in (2)) and at the adjusted rate on the remainder.

*Example.* Taxpayer A, a calendar year taxpayer, files his 1984 income tax return reporting $70,000 of taxable income and $23.171 of tax liability. On January 20, 1986, A enters into a closing agreement with the Internal Revenue Service that includes the following adjustments:

| | |
|---|---|
| Section 162 deduction disallowed (not tax motivated but fraudulent or negligent) | $ 7,500 |
| Loss disallowed under section 465(a) (tax motivated—see A-2(2) of this section—and fraudulent or negligent) | $ 5,000 |
| Section 170 deduction disallowed because of a valuation overstatement (tax motivated—see A-2(1) of this section—but not fraudulent or negligent) | $10,000 |
| Loss disallowed with respect to a straddle as defined in section 1092(c) (tax moti- | $ 7,000 |



**© 1985, Commerce Clearing House, Inc.**

Internal Revenue Service(I.R.S.)

Litigation Guideline Memorandum

August 12, 1992

CC:FS:IT&A:WEArmstrong

TL-68 (rev)

In re: Application of sections 6659 and 6621(c), as well as other penalties with the "attributable to" language in light of the Todd, Gainer, Irom, and Heasley cases

I. Purpose

The purpose of this litigation guideline memorandum is to outline the Service's current litigating position regarding the application of sections 6659 and 6621(c), as well as other penalties containing "attributable to" language where the court could sustain the underlying deficiency on a theory that would not involve a finding of the prohibited conduct necessary to invoke the penalty.

II. Overview of Penalties with "Attributable to" Language

The phrase "attributable to" is used in numerous penalty provisions. Two major provisions which contain the "attributable to" language are sections 6659 and 6621(c).

Section 6659 penalizes significant overstatements of the value or the adjusted basis of property claimed on returns due before January 1, 1990. Specifically, section 6659 penalizes individuals, closely held corporations, and personal service corporations which have an underpayment of income tax of at least $1,000 "attributable to a valuation overstatement." A valuation overstatement is deemed to exist if the value or the adjusted basis of any property claimed on a return is 150% or more of the amount determined to be the correct amount of such valuation or adjusted basis. Accordingly, to impose the section 6659 addition to tax, a court must determine that: (1) there was a valuation overstatement; (2) the valuation overstatement was claimed on the taxpayer's return; and (3) the underpayment is "attributable to" such overvaluation.

The section 6659 addition to tax applies to returns filed after December 31, 1981. The Revenue Reconciliation Act of 1989 repealed section 6659, resurrected it as a component of the new accuracy-related penalty, section 6662, and made it applicable to all taxpayers with respect to returns having due dates after December 31, 1990. [FN1]

Section 6621(c) provides for an interest rate of 120% of the statutory rate on

PLAINTIFFS' EXHIBIT 3

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

substantial underpayments "attributable to" tax motivated transactions. A tax motivated transaction is defined in section 6621(c)(3) to include: any valuation overstatement; any loss disallowed by the at-risk rules; any disallowed investment credit; any straddle; any use of an accounting method resulting in a substantial distortion of income [FN2] and any sham or fraudulent transaction. Temp. Treas. Reg. § 301.6621-2T, A-4 lists two additional transactions which the Service considers to be tax motivated transactions. They are (1) any deduction disallowed because the activity was not engaged in for profit under section 183 and (2) any deduction disallowed because the transaction was not entered into for profit under section 165(c)(2), though not connected with a trade or business.

The 120% interest rate imposed by section 6621(c) with respect to any substantial underpayment of tax attributable to a tax motivated transaction applies to returns due (determined without regard to extensions) before January 1, 1990. The Revenue Reconciliation Act of 1989 modified section 6621(c) and repealed the 120% interest rate imposed with respect to any substantial underpayment of tax attributable to a tax motivated transaction.

In addition to sections 6659 and 6621(c), the phrase "attributable to" is contained in the following twelve statutes: section 72(v), which applies a 10% addition to tax for taxable distributions from modified endowment contracts; section 857(b)(6), which imposes a tax equal to 100% of the net income derived from prohibited transactions conducted by a real estate investment trust; section 6013(e), which provides for the relief of a spouse from tax liability, to the extent that the liability is attributable to a substantial understatement, where a joint return is filed; section 6653(a)(2) [1988 Act], section 6653(a)(1)(B) [1986 Act], section 6653(a)(2) [prior to 1986], which provides for an addition to tax for negligence for any portion of an underpayment attributable to fraud; sections 6653(b)(1) and (2) [1988 Act], section 6653(b)(1)(A) [1986 Act], section 6653(b)(2)(A) [prior to 1986], concerning the addition to tax for any portion of an underpayment attributable to fraud; section 6653(f), which treats certain underpayments attributable to a denial of a loss deduction in connection with a position in personal property as due to negligence; section 6653(g), Regarding failure to report amounts shown on information returns; section 6659A(a), regarding the addition to tax caused by an overstatement of pension liabilities; section 6660(a), which imposes an addition to tax for an underpayment attributable to a valuation understatement for purposes of estate and gift taxes; and section 6661, relating to the addition to tax for the substantial understatement of income tax liability; section 6662, which provides for the imposition of an accuracy penalty; and section 6663, which provides for the imposition of fraud penalty.

Except for sections 72(v), 857(b)(6), 6013(e), 6662 and 6663, all of the statutes were repealed by the Revenue Reconciliation Act of 1989, which applies to returns the due date for which (determined without regard to extensions) is after December 31, 1989. Sections 6662 and 6663 were enacted as part of the Revenue Reconciliation Act of 1989.

III. Factual Context

In many cases, particularly tax shelter cases, the Service asserts multiple grounds for the disallowance of items of deduction and credit. For example, in a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

tax shelter case, the Service may assert the following grounds in connection with the disallowance of items of deduction and credit: (1) sham; (2) lack of economic substance: (3) taxpayer was not in a trade or business; (4) lack of profit motive; (5) the asset was never placed in service; and (6) the financing does not constitute genuine indebtedness. Gross overstatements of the value or basis of assets also may be a factor supporting many of those grounds. See, e.g., Rose v. Commissioner, 88 T.C. 386 (1987), aff'd, 868 F.2d 851 (6th Cir. 1989); Soriano v. Commissioner, 90 T.C. 44 (1988); Bailey v. Commissioner, 90 T.C. 558 (1988). In the context of tax shelters, the issue arises as to whether sections 6659 and 6621(c) may be asserted when the court, without making a finding as to overvaluation or as to whether the transaction is tax motivated, disallows a deduction or credit on a ground which does not involve valuation or a tax motivated transaction. On a broader scale, the issue that arises is whether the underpayment is "attributable to" the prohibited conduct necessary to invoke sections 6659, 6621(c) or any other penalties containing """"attributable to" language when the court could sustain the underlying deficiency on a theory that would not involve a finding of the prohibited conduct necessary to invoke the penalty.

IV. Application of Sections 6659 and 6621(c) Where a Finding of Prohibited Conduct May Not Be Necessary to Sustain Deficiency

A. Todd/Gainer/Heasley Cases

In Todd v. Commissioner, 89 T.C. 912 (1987), aff'd, 862 F.2d 540 (5th Cir. 1988), petitioners invested in a refrigeration container tax shelter and took depreciation and investment tax credits based on the overvalued containers. The Tax Court disallowed these deductions and credits on the sole ground that petitioners did not place their containers in service in the years at issue.

The Fifth Circuit affirmed the Tax Court's holding that section 6659 did not apply because the underpayment was not "attributable to" a valuation overstatement within the meaning of that section. Based on language in the General Explanation of the Economic Recovery Tax Act of 1981 ("Blue Book"), the Tax Court and Fifth Circuit found that the portion of the underpayment attributable to a valuation overstatement is "determined by comparing the taxpayer's (1) actual tax liability (i.e., the tax liability that results from a proper valuation and which takes into account any other proper adjustments) with (2) actual tax liability as reduced by taking into account the valuation overstatement." 862 F. 2d at 542-543. The Fifth Circuit noted that the Blue Book formula instructs it to determine section 6659 liability "'after taking into account any other proper adjustments to tax liability."DDD' 862 F.2d at 542. Thus, when a taxpayer's claimed tax benefits are disallowed because the asset was not placed in service, there is no reduction to the taxpayer's actual tax liability based on valuation overstatement.

In essence, the Tax Court and Fifth Circuit in Todd held that where a court disallows a taxpayer's claimed deductions and credits on a ground that does not require the court to determine the value or the adjusted basis of the property (e.g., the assets were not placed in service in the year at issue), the underpayment is not "attributable to" a valuation overstatement. Thus, the grounds

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

upon which the Tax Court decides the merits of the case control the application of the penalty.

In Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), the facts and issues were substantially identical to those in Todd. There, the Ninth Circuit agreed with the Fifth Circuit's conclusion and reasoning in Todd.

The Tax Court has applied the rationale in Todd to deny the application of section 6659 in other circumstances. For example, in Chellappan v. Commissioner, T.C. Memo. 1988-208, the court found that the section 6659 penalty did not apply because the property giving rise to the claimed deductions and credits did not exist. The court disallowed the taxpayers' deductions and credits based on its holding that the transactions were factual shams, rather than attributable to a valuation overstatement. See also Weiler v. Commissioner, T.C. Memo. 1990-562, where the Tax Court refused to impose the section 6659 penalty because the property purportedly acquired by the taxpayers never existed. Further, in McCrary v. Commissioner, 92 T.C. 827 (1989), the Tax Court allowed the taxpayers, in order to avoid the application of sections 6659 and 6621(c), to concede that the investment tax credit was unallowable because the transaction involved a license and not a lease.

In Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), nonacg., AOD CC-1991-013 (July 3, 1991), the Fifth Circuit, in reversing the decision of the Tax Court with respect to the imposition of sections 6659 and 6621(c), cited Todd. However, it established a rule which is much broader than that established in Todd. There, taxpayers leased energy management devices marketed through a tax shelter and claimed investment tax credit and a deduction for advance rents with respect to the devices. The Service disallowed these items on the grounds that the assets were not placed in service, the transaction was an economic sham, and taxpayers lacked a profit motive. In so doing the Service asserted, inter alia, additions to tax under sections 6659 and 6621(c). The Tax Court sustained the Service's determination of tax deficiency and additions to tax and taxpayers appealed.

On appeal, the Fifth Circuit stated that whenever the Service totally disallows a deduction or credit, the underpayment is not due to a valuation overstatement but rather to an "improper deduction." 902 F.2d at 383. This blanket rule or statement is broader than the rule of Todd.

The rationale of Heasley was followed in Rasmussen v. Commissioner, T.C. Memo. 1992-212, where overvaluation was an integral factor in the Tax Court's determination that a cattle tax shelter lacked economic substance and business purpose and, therefore, was a sham. In not imposing section 6659 on underpayments arising from investments in the tax shelter, the Tax Court noted that under Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971) , it was constrained to follow the rationale of the Fifth Circuit in Heasley.

In contrast to its holding in Rasmussen, the Tax Court in Vangeloff v. Commissioner, T.C. Memo. 1992-514, rejected the proposition that the rationale of the Fifth Circuit in Heasley could apply to circumstances where the deficiency is not conceded by the taxpayer. There, the Tax Court was not constrained by Golsen to follow the holding of the Fifth Circuit in Heasley.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

In Zirker v. Commissioner, 87 T.C. 970 (1986), the Tax Court imposed the sections 6659 and 6621(c) penalties where a deduction and investment credit were totally disallowed. There, taxpayers claimed investment tax credits and depreciation on cattle which they had supposedly purchased. The court held that although the transaction lacked economic substance as a sale because the taxpayers used a nonrecourse note and had no incidents of ownership in the cattle, the taxpayers nevertheless placed in service an asset with a zero basis. Thus, since taxpayers reported an adjusted basis in the cattle of $41,500 and the correct adjusted basis in the cattle was zero, the court held that a valuation overstatement existed within the meaning of section 6659. The Tax Court used similar reasoning in Clayden v. Commissioner, 90 T.C. 656 (1988), where the facts were similar to Zirker.

Furthermore, the Second, Sixth, and Eighth Circuits in Gilman v. Commissioner, 933 F.2d 143 (2d Cir. 1991), cert. denied, 112 S. Ct. 871 (Jan. 14, 1992), Donahue v. Commissioner, No. 91-1849 (6th Cir. Apr. 7, 1992) aff'g T.C. Memo. 1991-181, and Massengill v. Commissioner, 876 F.2d 616, 619-20 (8th Cir. 1989), concluded that when an underpayment stems from disallowed depreciation deductions or investment credit due to lack of economic substance, the deficiency is attributable to overstatement of value, and subject to the sections 6659 and 6621(c) penalties.

B. Irom Case and the "Inseparable" Distinction

The Second Circuit's opinion in Irom v. Commissioner, 866 F.2d 545 (2d Cir. 1989) vacating in part and remanding T.C. Memo. 1988-211, provided a rule for situations where there are two inseparable grounds for an underpayment and one involves a valuation overstatement or tax motivation and the other does not. In Irom, the petitioner invested in a coal mining shelter and gave nonrecourse notes in partial payment of minimum annual royalties for which he claimed deductions under Treas. Reg. § 1.612-3(b)(3). The Service denied the deductions and, subsequent to a petition being filed with the Tax Court, both parties moved for summary judgment.

The Tax Court disallowed the petitioner's deductions for advanced minimum royalties on the ground that the royalties did not satisfy the regulatory requirements under Treas. Reg. § 1.612-3(b)(3) for their deduction. The court reasoned that the nonrecourse nature of the notes, which were contingent upon production, was inherently inconsistent with the requirement under Treas. Reg. § 1.612-3(b)(3) that a substantially uniform amount of royalties be paid at least annually, regardless of production.

In its motion for summary judgment, the Service also asserted the application of section 6621(c) on the ground that the nonrecourse nature of the payments precluded allowance of the deductions under section 465. Underpayments attributable to the disallowance of deductions under section 465 are tax motivated transactions. I.R.C. § 6621(c)(3)(A)(ii). The Tax Court, following Todd, found section 6621(c) inapplicable. The court reasoned that because the deductions were disallowed under Treas. Reg. § 1.612 rather than section 465, the underpayment was not "attributable to" a tax motivated transaction.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

On appeal, the Second Circuit distinguished Todd and found that the Tax Court should have decided whether the petitioner was liable for section 6621(c) additional interest even though the Tax Court sustained the deficiency on a ground that would not be a basis for imposing section 6621(c). 866 F.2d at 547. The Second Circuit reasoned that the phrase "attributable to" should be interpreted to allow the imposition of section 6621(c) when the deficiency is """"capable of being attributed" to a tax motivated transaction. It concluded that if the ground for imposing the penalty is "inseparable from" the ground upon which the Tax Court sustains the deficiency, the penalty would apply.

The Second Circuit noted that in Todd the underpayment was not attributable to a valuation overstatement because "the disallowance of the deduction was independent of and wholly separable from the alleged overvaluation." 866 F.2d at 547. It remanded the case to the Tax Court to decide whether the disallowance of the minimum annual royalty deduction based on the nonrecourse nature of the notes was "independent and wholly separable from" a finding that the taxpayer was not "at risk" under section 465.

The Tax Court has adopted the "inseparable" distinction in analyzing the applicability of both sections 6659 and 6621(c). McCrary v. Commissioner, 92 T.C. 827 (1989) (court noted that section 6621(c) would apply when a category of tax motivated transaction is "an integral part of or inseparable from" the ground for disallowance of an item of deduction or credit); Wilson v. Commissioner, T.C. Memo. 1989-266 (court imposed sections 6659 and 6621(c) because it found that overvaluation was "inseparable" from lack of economic substance, the grounds for sustaining the deficiency); Jackson v. Commissioner, T.C. Memo. 1990-520 (court imposed sections 6659 and 6621(c) because valuation was "integral" to the disallowance of deductions on lack-of-profit grounds).

C. Service Position

It is the position of Field Service that Irom should be followed in determining whether sections 6659 and 6621(c) should apply where the Service asserts multiple grounds for the disallowance of items of deduction and credit. Thus, where the grounds for disallowing a deduction or credit are "an integral part of or inseparable from" overvaluation, the resulting underpayment is attributable to overvaluation and section 6659 should be imposed. Similarly, where the grounds for disallowing a deduction or credit are "an integral part of or inseparable from" tax motivated transaction, the resulting underpayment is attributable to a tax motivated transaction and section 6621(c) should be imposed.

Section 6659 should not be asserted where an underpayment is in no part attributable to an overvaluation. Similarly, section 6621(c) should not be asserted where an underpayment is found on a basis wholly apart from a ground of tax motivated transaction. Where a taxpayer claims a deduction or credit that is disallowed on grounds unrelated to a valuation overstatement, none of the underpayment is attributable to a valuation overstatement, even if the taxpayer also made a valuation overstatement with respect to that same deduction or credit. Similarly, where a taxpayer claims a deduction or credit that is disallowed on grounds unrelated to one of tax motivation transactions, none of the underpayment is attributable to a tax motivated transaction, even if there is also a tax

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

motivated transaction with respect to that same deduction or credit.

In determining the portion of an underpayment that is "attributable to" overvaluation the following formula should be used: (1) calculate the amount of tax liability for each year as if all items had been reported properly; (2) without taking into account any adjustments that are attributable to the valuation overstatement (including adjustments which are inseparable from the overstatement issue), calculate the amount of tax liability as if all other items had been reported properly; and (3) calculate the difference between (1) and (2); the difference between (1) and (2) is the underpayment attributable to the valuation understatement. The same formula should be used in computing the portion of an underpayment that is "attributable to" a tax motivated transaction.

The above formula was originally contained in the General Explanation of the Economic Recovery Tax Act of 1981, or "blue book," and used to explain the operation of section 6659. The formula has been adopted by the Tax Court, the Fifth Circuit and the Ninth Circuit. The formal legislative history surrounding the enactment of section 6659A before its repeal by the Revenue Reconciliation Act of 1989 also supports the interpretation and the application of the formula. Additionally, Treas. Reg. § 301.6621-2T, Q & A-5 provides for an identical formula for purposes of determining the portion of an underpayment attributable to a tax motivated transaction. One result of applying the formula is that where a taxpayer claims a deduction or credit that is disallowed for reasons unrelated to a valuation overstatement, none of the underpayment is attributable to the valuation overstatement, even if there is also a valuation overstatement with respect to that same deduction or credit. Similarly, where a taxpayer claims a deduction or credit that is disallowed for reasons unrelated to a tax motivated transaction, none of the underpayment is attributable to a tax motivated transaction, even if there is also a tax motivated transaction with respect to that same deduction or credit.

Despite the Fifth Circuit's use of this formula, we disagree with its statement in Heasley that whenever the Service totally disallows a deduction or credit the underpayment is not due to a valuation overstatement but rather to an improper deduction. In our view, such a rule will produce a different result from that of Todd, Gainer, or Irom whenever (1) there is a finding that the correct valuation is zero or (2) the deduction or credit could be disallowed as a result of either a valuation overstatement or another reason, but valuation overstatement is not totally unrelated to the other reason. Therefore, where the correct valuation of an item is zero or where overvaluation is "an integral part of or is inseparable from" the ground for disallowance of an item, the rationale of Irom should be followed and not that of Heasley.

Although we disagree with the Fifth Circuit's statement in Heasley that whenever the Service totally disallows a deduction or credit the underpayment is not due to a valuation overstatement, the appellate opinion in Heasley is binding precedent in the Fifth Circuit. Therefore, we recommend that before asserting section 6659 or section 6621(c) in a case arising in the Fifth Circuit where the underlying deduction or credit is completely disallowed, the matter be coordinated with the National Office.

Where section 6659 is clearly not applicable, the Service in the statutory notice of deficiency should assert section 6661 in lieu thereof, if applicable. In

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

light of the holdings in Irom, Todd, and Gainer, the Service should not assert section 6659 in the statutory notice of deficiency where it is clear that the underlying deficiency would likely be sustainable on grounds (e.g., asset not placed in service) that are "independent of and wholly separable from" overvaluation and, should not assert section 6621(c) in the statutory notice of deficiency where it is clear that the underlying deficiency would likely be sustainable on grounds that are "independent of and wholly separable from" a tax motivated transaction.

Sections 6659 and 6621(c) should be asserted where it is unclear with respect to a case pending in litigation that the underlying deficiency would be sustained by the court on grounds that are "independent of and wholly separable from" overvaluation or a tax motivated transaction. However, it is recommended where it is unclear that the underlying deficiency would be sustained by the court on grounds that are "independent of and wholly separable from" overvaluation, that District Counsel attorneys assert section 6661, if applicable, as an alternative to section 6659 or as applying to the extent section 6659 is not applicable.

From the standpoint of litigation strategy, in certain situations it may be advantageous for the Commissioner to assert the section 6661 rate of 25 percent of an underpayment rather than the section 6659 rates of 10 or 20 percent where it is unclear that section 6659 is applicable to the underpayment. Therefore, from the standpoint of litigation strategy and for purposes of economy of time and resources, District Counsel attorneys should consider asserting in certain situations section 6661 as a primary position rather than section 6659. Note that there is nothing in either section 6659 or 6661 that prohibits their simultaneous assertion. However, if section 6659 is found applicable to all or part of an underpayment, section 6661 may not be assessed as to that part of the underpayment. Thus, where it is clear that section 6661 is applicable to an underpayment and that penalty will produce a greater addition than the section 6659 penalty, District Counsel, in the exercise of discretion may wish to forego assertion of the section 6659 penalty.

V. Taxpayer Concessions

A. Discussion of Case Law

The Tax Court has addressed the question of whether sections 6659 and 6621(c) apply when the taxpayer concedes a ground for the disallowance of deductions and credits (e.g., the asset was never placed in service, the asset never existed) in order to avoid the imposition of the section 6659 and/or 6621(c) penalties. It has distinguished post-trial concessions from pre-trial concessions in determining whether these penalties apply. Where the taxpayer concedes a ground for the disallowance of deductions and credits that does not involve a finding of overvaluation or a tax motivated transaction, prior to trial, the Tax Court has accepted this concession and refused to apply these penalties. McCrary, 92 T.C. at 827. However, where the taxpayer has made such a concession post-trial, the Tax Court has rejected the concession and imposed the penalties. Pacheco v. Commissioner, T.C. Memo. 1989-296; Wilson v. Commissioner, T.C. Memo. 1989-266. Moreover, the Tax Court has imposed sections 6659 and 6621(c) when the taxpayer

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

has conceded multiple grounds for the deficiency, where some grounds give rise to the penalty and others do not. Barber v. Commissioner, T.C. Memo. 1989-284.

In McCrary, taxpayers entered into a purported "lease" of educational audio master tape recordings with American Educational Leasing ("AEL"). AEL purchased the master tapes at an inflated price and passed through to taxpayers an investment credit based on the inflated price. On their return, taxpayers claimed investment credit and deductions for rental expenses and distribution fees resulting from their investment in the master tapes.

The Service disallowed the investment credit and deductions. In the statutory notice of deficiency, the Service listed multiple grounds for its disallowance of the investment credit, including: (1) the transactions were not bona fide, arms length transactions at fair market value; (2) the transactions lacked economic substance; (3) the transactions were not incurred in a trade or business or entered into for profit; (4) the basis of the asset was zero; (5) the asset was not placed in service; and (6) the asset was a license or nonexclusive right rather than a lease.

The taxpayers, in order to avoid the application of section 6659, unilaterally conceded, prior to trial, that the investment credit should be disallowed because the purported transaction involved a license rather than a lease. Thus, although the Service had disallowed the investment credit on bases which would invoke sections 6659 and 6621(c), the grounds for taxpayers' concession would not.

The court in McCrary accepted taxpayers' concession and, based on Todd, found that section 6659 did not apply to that portion of the underpayment caused by the inflated investment credit. The court also found that section 6621(c) was inapplicable to the portion of the underpayment attributable to the concession. The court recognized that the investment credit also could have been disallowed under the alternative theories of sham or lack of profit objective. Either of these two theories would have given rise to the application of section 6621(c). I.R.C. § 6621(c)(3)(A)(v); Temp. Treas. Reg. § 301.6621-2T, A-4. However, the court did not make such alternative findings because it believed (1) that taxpayers' concession furthered the intended deterrent effect of sections 6659 and 6621(c) as encouraging prompt disposal of tax shelter issues and (2) that further penalizing petitioners would be "too draconian." Id. at 858.

In Wilson, taxpayers claimed investment credit and lease payment deductions with respect to an investment in a medical equipment leasing program. At the conclusion of trial, taxpayers continued to insist the leasing transaction was viable and they were entitled to the lease payment deductions but offered to concede that the equipment giving rise to investment credit was neither in existence, nor placed in service during the years in which they claimed investment tax credit and lease payment deductions. Taxpayers' concession was an attempt to avoid the section 6659 addition to tax by invoking Todd. However, the Tax Court declined to accept taxpayers' concession and viewed it as an unacceptable attempt to have the court evaluate the investment credit and deductions, separately, each on their own merit.

The court noted that taxpayers' position that the equipment they purportedly leased was in existence during the years of the lease payments and that the transaction was economically viable was maintained throughout the trial and required it to determine fair market value as integral part of its evaluation of

whether the transaction lacked economic substance. Because valuation was "inseparable from" the grounds for disallowance (lack of economic substance), the court found that sections 6659 and 6621(c) applied.

The court found that this case was distinguishable from McCrary. In McCrary, the taxpayers' concession occurred prior to trial. Moreover, the taxpayers in McCrary did not argue that the recording had the value they claimed on their tax returns or that there was an objective possibility of profit from the transaction. In contrast, the taxpayers' concession in Wilson came after the trial. Further, the taxpayers in Wilson had asserted throughout the trial that the equipment they purportedly leased existed, that the equipment had the value they claimed on their tax returns, and that they were entitled to certain lease payments deductions with respect to the equipment because the transaction had economic substance.

The Tax Court also applied sections 6659 and 6621(c) and refused to accept taxpayers' post-trial concessions in Pacheco v. Commissioner, T.C. Memo. 1989-296. There, taxpayers entered into a leasing arrangement with American Energy Systems Leasing Program ("AES") in connection with energy management systems. AES passed through to taxpayers investment credit and energy tax credits, which were calculated on grossly inflated values. In their post-trial reply brief, the taxpayers conceded that they were not entitled to these credits because their energy management systems were not placed in service in the year at issue. In rejecting this concession, the court noted that taxpayers should not be able to avoid the additions to tax for overvaluation by conceding the issue in a post-trial reply brief. Moreover, since this was a test case for other AES investors, the court concluded that the case should be decided on the evidence presented at trial, which showed the sham nature of the transaction. Pacheco, T.C. Memo. 1989-296, 57 T.C.M. (CCH) 739, 746

In Barber v. Commissioner, T.C. Memo. 1989-284, the taxpayers purchased a master recording and, claimed depreciation deductions and investment credit which were based on an inflated basis in the recording. In an attempt to avoid the imposition of sections 6659 and 6621(c), taxpayers conceded that they never acquired the recording and that the long term notes involved were shams lacking economic substance. In addition, taxpayers also conceded that the losses and investment credit should be disallowed because of their failure to establish: (1) that they acquired sufficient equitable, legal title or other interest in the recording; (2) that they were engaged in a trade or business with respect to the recording; (3) that they held the recording for the production of income; and (4) that they placed the recording in service or acquired recording(s) available to be placed in service.

The Tax Court found that the stipulated concessions were "inseparable" and compelled the conclusion that the transaction lacked economic substance. In so finding, the court observed that taxpayers conceded too much to come within the ambit of Todd and McCrary and that it had no way of segregating one concession by petitioner from another. Therefore, because taxpayers had no basis in the recording for purposes of calculating depreciation and investment credit, the court imposed sections 6659 and 6621(c).

In Allison v. Commissioner, T.C. Memo. 1991-115, taxpayer claimed deductions from his involvement in straddle contracts. In the pleadings, taxpayer conceded entitlement to the deductions on several grounds not supporting the imposition of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

section 6621, and admitted that the deductions distorted his income, which is one of the grounds for imposing additional interest under section 6621. In concluding that taxpayer was liable for additional interest under section 6621, the court discussed the Todd- Irom-McCrary opinions and, as in Barber, noted that it had no way of segregating one concession by petitioner from another.

B. Field Service's Position

Under the rationale of Irom, Todd and Gainer, the section 6659 addition to tax would be inapplicable, even though the value of the assets was clearly overstated, if a court sustained the deficiency on a theory which did not require it to make findings of valuation. Similarly, a court would not impose additional interest under section 6621(c), even though the transaction involved a tax motivated transaction, if the court sustained the deficiency on a ground which did not require it to find a tax motivated transaction. Therefore, where a taxpayer establishes that a deduction or credit is not allowable for reasons unrelated to valuation or a tax motivated transaction, it follows that sections 6659 and 6621(c) should not be imposed with respect to the underlying underpayment, if the taxpayer timely concedes the deduction or credit prior to trial on a ground "independent of and wholly separable from" overvaluation or a tax motivated transaction.

However, where, in order to avoid the sanctions of sections 6659 and 6621(c), a taxpayer concedes, post-trial, a ground for the disallowance of deductions and credits that does not involve a finding of overvaluation or a tax motivated transaction, the concession should be rejected. We believe that the distinctions made by the Tax Court between pre-trial and post-trial are valid ones. Concessions, as all pleadings, should be timely made in order to avoid protracted and costly proceedings. Where respondent has undertaken extensive preparations and has gone through a trial, respondent should oppose concessions that limit the taxpayer's exposure. Counsel should argue that the court, in its discretion, should determine all issues tried, including those making applicable the sections 6659 and 6621(c) additions. This position, we believe, is consistent with the legislative intent of sections 6659 and 6621(c). The legislative history of sections 6659 and 6621(c) suggests that Congress enacted those sections to provide the court tools for managing the large backlog of valuation and tax shelter cases. Consistent with this, the taxpayer's concession should be timely to avoid trial.

VI. Application of Todd Rationale to Nonshelter Penalties

Although the litigated cases have involved the application of the Todd rationale to sections 6621(c) and 6659 (shelter penalties), the possibility exists that a taxpayer may attempt to extend the Todd rationale to other (nonshelter) penalties containing the "attributable to" language. For example, a taxpayer in order to avoid being subject to the fraud penalty under section 6653(b)(2) might argue that an underpayment is attributable to the fact that the asset was not placed in service, rather than attributable to fraud.

While the application of the Todd rationale with respect to sections 6621(c) and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

6659 has been litigated at some length, the applicability of Todd's """"attributable to" formula has uncertain application to nonshelter penalties. Therefore, where the prohibited conduct necessary to sustain a nonshelter penalty containing "attributable to" language is present, and the court could sustain the underlying deficiency on a theory that would not involve a finding of the prohibited conduct necessary to the penalty, a taxpayer may assert the rationale of Todd to avoid otherwise applicable accuracy penalties. Since Chief Counsel's position on this issue will need to be determined with respect to particular fact situations, this office should be contacted if a question arises regarding the application of the Todd rationale to penalties outside of the tax shelter context.

CONCLUSIONS

1. It is the position of this office that Irom should be followed in determining whether sections 6659 and 6621(c) apply where the Service asserts multiple grounds for the disallowance of items of deduction and credit. Where the grounds for disallowing a deduction or credit are an "integral part of or inseparable from" overvaluation or the ground that the disallowance is attributable to a tax motivated transaction, we believe that the penalties are applicable.

2. We disagree with the Fifth Circuit's statement in Heasley that whenever the Service totally disallows a deduction or credit, the underpayment is not due to a valuation overstatement but rather to an improper deduction. Where the correct valuation of an item is zero or where the overvaluation is "an integral part of or inseparable from" the ground for disallowance of an item, the rationale of Irom should be followed and not that of Heasley. However, we recommend that before asserting section 6659 in a case arising in the Fifth Circuit where the deduction or credit is completely disallowed solely on the basis of overvaluation, the matter be coordinated with the National Office.

3. Where it is clear with respect to a case pending in litigation that the underlying deficiency would likely be sustained by the court on grounds that are "independent of and wholly separable from" overvaluation or a tax motivated transaction, attorneys should not assert sections 6659 and 6621(c). Rather, consideration should be given to asserting section 6661 in lieu of section 6659. It is also the position of Field Service that where it is unclear that the underlying deficiency could be sustained by the court on grounds that are """"independent of and wholly separable from" overvaluation or a tax motivated transaction, District Counsel attorneys should give consideration to asserting section 6661 in the alternative to section 6659 or to asserting that section 6661 applies to the extent the section 6659 is not applicable.

4. We believe it follows from the holdings of Irom, Todd, and Gainer that where a taxpayer establishes that a deduction or credit is not allowable for reasons unrelated to valuation or a tax motivated transaction, sections 6659 and 6621(c) should not be imposed with respect to underpayments related thereto, if the taxpayer concedes the underlying deduction or credit prior to trial on a ground unrelated to overvaluation or a tax motivated transaction. However, if a taxpayer concedes, post-trial, a ground for the disallowance of deductions and credits that does not involve a finding of overvaluation or a tax motivated transaction, the concession should be rejected and the court urged to decide the case on the issues

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

which give rise to the assertion of the section 6659 and/or section 6621(c).

5. With regard to nonshelter penalties containing the "attributable to" language, the National Office should be immediately contacted for guidance as to Service position where such issue arises.

For additional information and assistance, please contact Willie E. Armstrong, Jr., at FTS (202) 622-7920.

DANIEL J. WILES

Assistant Chief Counsel

(Field Service)

FN1. For purposes of brevity and clarity, this guideline refers to penalties before the restructuring of section 6662. The analysis, however, is equally applicable to sections 6659 and 6661 after the 1989 restructuring.

FN2. Temp. Treas. Reg. § 301.6621-2T, A-3 lists the accounting methods which may result in a substantial distortion of income for any period.

This document may not be used or cited as precedent. Section 6110(j)(3) of Internal Revenue Code.

1992 LGM TL-68 (REV), 1992 WL 1355877 (IRS LGM)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works