**No. 03-2028 T**
Consolidated with 04-907 T
(Judge Francis M. Allegra)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

KENNETH C. KEENER,

PLAINTIFF

VS.

UNITED STATES OF AMERICA,

DEFENDANT

---

# PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION OF THE UNITED STATES FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINTS AND BRIEF IN SUPPORT

---

THOMAS E. REDDING
SALLIE W. GLADNEY
TERESA J. WOMACK
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
Kenneth C. Keener and
William P. Smith, Jr. and Anne Smith

# TABLE OF CONTENTS


Table of Contents . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . iv

Plaintiff's Response in Opposition . . . . . . . . . . 1

Plaintiff's Brief in Support . . . . . . . . . . 1

Response to the Government's Factual Statement . . . . . . . . . . 1

Argument . . . . . . . . . . 6

I. TEFRA's Statutory Scheme . . . . . . . . . . 7

A. In General . . . . . . . . . . 8

B. Specific Provisions . . . . . . . . . . 10

1. "Partnership Item" is a Defined Term, Restricted By Statute . . . . . . . . . . 10

2. Determinations of Partnership Items and Nonpartnership Items are Mutually Exclusive . . . . . . . . . . 11

3. The Determination of a Partner's Assessment Period Includes Only Nonpartnership Items . . . . . . . . . . 12

4. For 1984 and 1985 §6224(c) Settlements Are Comprehensive, Not "Partial" . . . 13

a. For 1984 and 1985, Treas. Reg.§301.6224(c)-3T(b) Mandates that These §6224(c) Partnership Item Settlements Are Comprehensive, Not "Partial" . . 13

b. Treas. Reg. §301.6229(f)-1T(b) and the 1997 Amendment to §6229(f) are Irrelevant Here . . . . . . . . . . 14

c. The History of the 1997 through 1999 Amendments Supports Plaintiffs' Position . . . . . . . . . . 15

d. The Parties Intended that Plaintiffs' §6224(c) Partnership Item Settlements Be Comprehensive, Not "Partial" . . . . . . . . . . 15

C. Congressional Intent Regarding TEFRA . . . . . . . . . . 17

II. The Plaintiffs' Limitations Defense to Assessment . . . . . . . . . . 18

A. The IRS Assessed Against Keener and Smith After Limitations Expired . . . . . . . . . . 18

B. This Court Has Jurisdiction to Address the Plaintiffs' Limitations Defense in This Partner-Level Refund Case . . . . . . . . . . 19

1. A Partner's Assessment Period is *Not* a Partnership Item . . . . . . . . . . 20

2. The Plaintiffs' Refunds Are Not "Attributable to" Partnership Items . . . . . . . . . . 23

3. The Plaintiffs' Limitations Defense to Assessment Cannot and Does Not Challenge the Adjustment of Their Partnership Items . . . . . . . . . . 24



R:\DOCS\TAXCONT.T\TGWBD055.KE1.wpd

4. Violation of the Plaintiffs' Due Process Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

C. The Government's "Policy" Argument Should Be Rejected . . . . . . . . . . . . . . . . . . . . . 27

D. Conclusion Regarding Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

III. Section 6621(c) Penalty Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

A. Plaintiffs Were Not Bound By the Terms as to Economic Substance in the Later Agreed Decisions in the Tax Court . . . . . . . . . . . . . . . . . . . . . 28

B. Administrative and Judicial History of the §6621(c) Penalty Interest Claim . . . . . . . . 30

C. §6621(c) is an Affected Item - Not a Partnership Item . . . . . . . . . . . . . . . . . . . . . . . . 31

D. The Government's Sham Transaction Allegation is an Affected Item . . . . . . . . . . . . . 33

E. Introduction and Survey of Sham Transaction Doctrine . . . . . . . . . . . . . . . . . . . . . . . . 35

F. Conclusion Regarding §6621(c) Penalty Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# TABLE OF AUTHORITIES

**Cases**

*ACM Partnership v. C.I.R.*, 157 F.3d 231 (3d Cir. 1998) . . . . . 36, 37
*AD Global Fund v. U.S.*, 67 Fed.Cl. 657 (2005) . . . . . 8, 21
*Adams v. Carlson*, 488 F.2d. 619 (7th Cir. 1973) . . . . . 26
*Affiliated Equip. Leasing II v. C.I.R.*, 97 T.C. 575 (1991) . . . . . 11, 18, 32
*Alexander v. Sandoval*, 532 U.S. 275 (2001) . . . . . 21
*Alexander v. U.S.*, 44 F.3d 328 (5th Cir.1995) . . . . . 19
*Amer. Pelagic Fishing Co. v. U.S.*, 379 F.3d 1363 (Fed. Cir. 2004). . . . . . 26
*Ames, et al. v. C.I.R.*., 54 T.C.M. 517 (1986),
*aff'd sub nom* as *Lukens*. . . . . . 38
*Atkins v. U.S.*, 556 F.2d 1028 (Ct.Cl. 1977) . . . . . 27
*Barlow v. C.I.R.,* 80 TCM (CCH) 632 (2000) . . . . . 32, 34
*Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852 (5th Cir. 2000) . . . . . 26
*Beall v. U.S.*, 336 F.3d 419 (5th Cir. 2003) . . . . . 16, 19
*Benedict v. Sec. of Dept. of H.H.S.*, 29 Fed.Cl. 587 (1993) . . . . . 27
*Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731 (1983) . . . . . 26
*Bill Johnson's Restaurants*; *Turner v. Safley*, 482 U.S. 78 (1987) . . . . . 26
*Boddie v. Conn*., 401 U.S. 371 (1971) . . . . . 27
*Bounds v. Smith*, 430 U.S. 817 (1977) . . . . . 26
*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) . . . . . 17
*Brinkerhoff-Faris Trust & Savs. Co. v. Hill*, 281 U.S. 673 (1930) . . . . . 26
*Broadcast Music, Inc. v. M.T.S. Enterprises, Inc*., 811 F.2d 278 (5th Cir.1987) . . . . . 26
*Buchine v. C.I.R.*, 20 F.3d 173 (5th Cir. 1994) . . . . . 16
*Burlington Truck Lines, Inc. v. U.S.*, 371 U.S. 156 (1962) . . . . . 17
*Calif. Motor Transp. v. Trucking Unlimited*, 404 U.S. 508 (1972) . . . . . 26
*Callaway v. C.I.R.*, 231 F.3d 106 (2nd Cir. 2000) . . . . . 7-9, 11, 17
*Casebeer v. C.I.R.*, 909 F.2d 1360 (9th Cir. 1990) . . . . . 36
*Chakales v. U.S.*, 79 F.3d 726 (8th Cir.1996) . . . . . 37
*Chamberlain v. C.I.R.*, 66 F.3d 729 (5th Cir. 1995) . . . . . 34, 35, 38, 39
*Chambers v. Baltimore & Ohio RR Co.*, 207 U.S. 142 (1907) . . . . . 25
*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
467 U.S. 837 (1984) . . . . . 21, 22
*Chimblo v. C.I.R.*, 177 F.3d 119 (2nd Cir. 1999),
*cert. denied*, 528 U.S. 1154 (2000) . . . . . 18, 20, 24
*Clary v. U.S.,* 333 F.3d 1345 (Fed.Cir.2003) . . . . . 21
*Cohen v. U.S.*, 995 F.2d 205 (Fed.Cir.1993) . . . . . 19
*Compaq Computer Corp. v. C.I.R.*, 77 F.3d 778 (5th Cir. 2001) . . . . . 36
*Conn. Nat'l Bank v. Germain,* 503 U.S. 249 (1992) . . . . . 21
*Copeland v. C.I.R.*, 290 F.3d 326 (5th Cir. 2002) . . . . . 36, 39, 40
*Crop Assoc.-1986 v. C.I.R.*, 80 T.C.M. 56 (2000) . . . . . 18
*Data Gen. Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996) . . . . . 17
*Davis v. Wakelee,* 156 U.S. 680 (1895) . . . . . 17
*DeWitt v.Pail*, 366 F.2d 682 (9th Cir. 1966) . . . . . 26
*Durrett v. C.I.R.*, 71 F.3d 515 (5th Cir. 1996) . . . . . 35, 38, 39

*Eastern RR Pres. Conf. v. Noerr Motor Freight Inc.*,
365 U.S. 127 (1961) . . . . . 26
*Ex Parte Hull*, 312 U.S. 546 (1941) . . . . . 26
*Exxon Mobil Corp. v. Allapattah Svcs, Inc.*,
125 S.Ct. 2611 (2005) . . . . . 21
*Fehlhaber v. Fehlhaber*, 681 F.2d 1015 (5th Cir. 1982) . . . . . 26
*Field v. U.S.*, 328 F.3d 58 (2003) . . . . . 32
*Frank Lyon Co. v. U.S.*, 435 U.S. 561 (1978) . . . . . 35
*Freytag v. C.I.R.*, 89 T.C. 849 (1987), *aff'd* 904 F.2d 1011 (5th Cir. 1990),
*aff'd on other grounds*, 501U.S. 868 (1991) ("*Freytag I*") . . . . . 38
*Freytag v. C.I.R.*, 904 F.2d 1011 (5th Cir. 1990),
*aff'g* 89 T.C. 840 (1987) ("*Freytag II*") . . . . . 38, 39
*Hambrose Leasing v. C.I.R.*, 99 TC 298 (1992) . . . . . 34
*Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389 (5th Cir. 2001) . . . . . 26
*Hart v. U.S.,* 585 F.2d at 1029 (1978) . . . . . 21
*Heasley v. C.I.R.*, 902 F.2d 380 (5th Cir. 1990) . . . . . 34, 38, 40
*Hill v. C.I.R.*, 204 F.3d 1214 (9th Cir. 2000) . . . . . 36
*Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694 (1982) . . . . . 26
*Johnson v. Avery*, 393 U.S. 483 (1969) . . . . . 26
*Kaplan v. U.S.,* 133 F.3d 469 (7th Cir.1998) . . . . . 19, 20
*Keeler v. C.I.R.*, 243 F.3d 1212 (10th Cir. 2001) . . . . . 36
*Killingsworth v. C.I.R.*, 864 F.2d 1214 (5th Cir. 1989) . . . . . 37
*Kraemer v. U.S.*, 2002 WL 575791 (S.D.Tex. 2002) . . . . . 28, 31
*Lawinger v. C.I.R.*, 103 T.C. 428 (1994) . . . . . 23
*Lukens v. C.I.R.*, 945 F.2d 92 (5th Cir. 1991) . . . . . 34, 35, 38, 39
*Martin v. Occup. Safety and Health Rev. Comm'n*, 111 S.Ct. 1171 (1991) . . . . . 17
*Maxwell v. C.I.R.*, 87 T.C. 783 (1986) . . . . . 8, 9, 17, 34
*Meese v. Keene*, 481 U.S. 465 (1987) . . . . . 21, 22
*Monti v. U.S.*, 223 F.3d 76 (2nd Cir. 2000) . . . . . 10, 11, 18, 23, 24, 34
*N.C.F. Energy v. Comm'r*, 89 T.C. 741 (1987) . . . . . 18, 34
*N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137 (5th Cir.1996) . . . . . 26
*Naftel v. C.I.R.*, 85 T.C. 527 (1985) . . . . . 16
*Neely v. C.I.R.*, 115 T.C. 287 (2000) . . . . . 16
*Norfolk Dredging Co., Inc., v. U.S.,* 375 F.3d 1106 (Fed.Cir.2004) . . . . . 21
*Pa. v. Finley*, 481 U.S. 551 (1987). . . . . . 26
*Patin v. C.I.R.*, 88 T.C. 1086 (1987) . . . . . 38
*Prochorenko v. U.S.*, 243 F.3d 1359 (Fed. Cir. 2001) . . . . . 23, 24
*Randell v. U.S.*, 64 F.3d 101 (2nd Cir. 1995) . . . . . 34
*Rhone-Poulenc v. C.I.R.*, 114 T.C. 533 (2000) . . . . . 18
*Rice's Toyota World, Inc. v. C.I.R.*, 752 F.2d 89 (4th Cir. 1985) . . . . . 35-38
*River City Ranches # 1 v. C.I.R.*, T.C. Memo 2003-150 (2003). . . . . . 33
*River City Ranches #1 v. C.I.R.,* 401 F.3d 1136 (9th Cir. 2005) . . . . . 32, 33
*Roberts v. U.S.*, 242 F.3d 1065 Cir. 2001) . . . . . 19
*Roberts v. U.S.*, 281 F.3d 1108 (10th Cir. 2002) . . . . . 36
*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir.1983) . . . . . 26
*Slovacek v.U.S.*, 36 Fed.Cl. 250 (1996) . . . . . 19-22
*Stanford v. C.I.R.*, 152 F.2d 450 (5th Cir. 1998) . . . . . 23


R:\DOCS\TAXCONT.T\TGWBD055.KE1.wpd

*Stiltner v. Rhay*, 322 F.2d 314 (9th Cir. 1963) . . . . . . . . . . 26
*Thomas v. U.S.*, 166 F.3d 825 (6th Cir.1999) . . . . . . . . . . 37
*Thompson v. U.S.*, 223 F.3d 1206 (10th Cir.2000) . . . . . . . . . . 37
*Todd v. C.I.R.*, 862 F.2d 540 (5th Cir. 1988) . . . . . . . . . . 23, 40
*Transco Exp. Co. v. C.I.R.*, 949 F.2d 837 (5th Cir.1992) . . . . . . . . . . 23, 28
*U.P.S. v. C.I.R.*, 862 F.2d 1486 (11th Cir. 2001). . . . . . . . . . . 36
*Wang Lab., Inc. v. Applied Comp. Sci., Inc.,* 958 F.2d 355 (Fed.Cir.1992) . . . . . . . . . . 17
*Weiner v. U.S.*, 255 F.Supp.2d 624 (S.D.Tex.2002) ("*Weiner I*") . . . . . . . . . . 22, 23, 28, 31, 35, 39
*Weiner v. U.S.*, 255 F.Supp.2d 673 (2002) ("*Weiner*") . . . . . . . . . . 35-37, 39
*Weiner v. U.S.*, 389 F.3d 152 (5th Cir. 2004) ("*Weiner II*") . . . . . . . . . . 21, 22, 27, 30, 31
*White v. C.I.R.,* 95 TC 209 (1990) . . . . . . . . . . 32, 34
*Williams v. Taylor,* 529 U.S. 420 (2000) . . . . . . . . . . 21
*Xechem I'natl, Inc. v. Univ. of Texas*, 382 F.3d 1324 (Fed. Cir. 2004) . . . . . . . . . . 27

**Statutes**

26 U.S.C. §162 . . . . . 36
26 U.S.C. §183 . . . . . 36
26 U.S.C. §6031 . . . . . 7
26 U.S.C. §6211(c) . . . . . 8
26 U.S.C. §6216(4) . . . . . 8
26 U.S.C. §6221 . . . . . 8, 11
26 U.S.C. §6222 . . . . . 2, 39
26 U.S.C. §6223 . . . . . 8
26 U.S.C. §6224(c) . . . . . 1-6, 9, 11, 13-18, 24, 29, 34
26 U.S.C. §6225 . . . . . 8
26 U.S.C. §6226 . . . . . 8, 32-34
26 U.S.C. §6226(a) . . . . . 8, 11, 16
26 U.S.C. §6226(b) . . . . . 8
26 U.S.C. §6226(c) . . . . . 8, 11, 23
26 U.S.C. §6226(d) . . . . . 8, 29
26 U.S.C. §6226(d)(1)(A) . . . . . 5, 9
26 U.S.C. §6226(d)(1)(B) . . . . . 2, 7, 9, 11, 16, 20, 25, 27
26 U.S.C. §6226(e) . . . . . 8
26 U.S.C. §6226(f) . . . . . 11, 16, 25
26 U.S.C. §6228 . . . . . 9, 31
26 U.S.C. §6229(a) . . . . . 10, 12, 13, 17-21, 24, 27
26 U.S.C. §6229(b)(1)(A) . . . . . 12, 20
26 U.S.C. §6229(b)(1)(B) . . . . . 12, 20
26 U.S.C. §6229(c) . . . . . 17
26 U.S.C. §6229(d) . . . . . 10, 12, 19, 20
26 U.S.C. §6229(e) . . . . . 17
26 U.S.C. §6229(f) . . . . . 12, 14, 15, 17, 19, 20, 29
26 U.S.C. §6230 . . . . . 11
26 U.S.C. §6230(a)(1) . . . . . 8, 34
26 U.S.C. §6230(c) . . . . . 31
26 U.S.C. §6231(a)(2) . . . . . 17
26 U.S.C. §6231(a)(3) . . . . . 10, 17, 18, 21-24, 27, 28, 31
26 U.S.C. §6231(a)(4) . . . . . 10, 18
26 U.S.C. §6231(a)(5) . . . . . 34
26 U.S.C. §6231(b) . . . . . 20
26 U.S.C. §6231(b)(1)(C) . . . . . 9
26 U.S.C. §6234(e)(3) . . . . . 17
26 U.S.C. §6401 . . . . . 19
26 U.S.C. §6402(a) . . . . . 19
26 U.S.C. §6501(a) . . . . . 10, 12, 18-20
26 U.S.C. §6501(c)(3) . . . . . 20
26 U.S.C. §6501(c)(4)(A) . . . . . 12, 20
26 U.S.C. §6621(c) . . . . . 2, 4-7, 11, 18, 28-40
26 U.S.C. §6698 . . . . . 11
26 U.S.C. §701 . . . . . 7, 8
26 U.S.C. §702 . . . . . 8

26 U.S.C. §7121 . . . . . . . . . . 9, 13
26 U.S.C. §7422(a) . . . . . . . . . . 19
26 U.S.C. §7422(h) . . . . . . . . . . 1, 6, 12, 17, 19, 23, 31, 32, 34, 35
26 U.S.C. §7441 . . . . . . . . . . 16
26 U.S.C. §7442 . . . . . . . . . . 16
26 U.S.C. §§6221-6233 ("TEFRA"),
as enacted by the Tax Equity and Fiscal Responsibility Act
of 1982, Pub.L. No. 97-248, 96 Stat. 324, and as amended. . . 2, 6-8, 10, 11, 14, 17-20, 22, 24, 27, 28, 33, 34, 36, 37
28 U.S.C. §1346(a)(1) . . . . . . . . . . 12, 17, 19, 32
28 U.S.C. §1491(a)(1) . . . . . . . . . . 12, 17, 19, 32

**Rules and Regulations**

Tax Court Rule 245(b) . . . . . . . . . . 9
Tax Court Rule 247(a) . . . . . . . . . . 9
Tax Court Rule 247(b) . . . . . . . . . . 4, 16
Tax Court Rule 248(c)(1) . . . . . . . . . . 4, 5, 16
Treas. Reg. §1.6031-1 . . . . . . . . . . 7
Treas. Reg. §1.701-1 . . . . . . . . . . 7
Treas. Reg. §1.702-1(a) . . . . . . . . . . 8
Treas. Reg. §301.6224(c)-3T(b) . . . . . . . . . . 9, 13-15
Treas. Reg. §301.6229(f)-1T . . . . . . . . . . 29
Treas. Reg. §301.6229(f)-1T(b) . . . . . . . . . . 14, 15, 29
Treas. Reg. §301.6231(a)(3)-1(a)(1)(i) . . . . . . . . . . 31
Treas. Reg. §301.6231(a)(3)-1(a)(1)(v) . . . . . . . . . . 31
Treas. Reg. §301.6621-2T . . . . . . . . . . 30, 36

**Miscellaneous**

4 Arthur Willis et al., Partnership Taxation,
§209.05 at 209-7, 209-12 (5th ed. 1996) . . . . . . . . . . 11
H. R. Conf. Rep. 97-760, at 611 . . . . . . . . . . 11
H. Rep. No. 101-247, 1388, 1393, 1394 (1989),
*reprinted in* 1989 U.S.C.C.A.N.1906, 2858-59, 2864 . . . . . . . . . . 40
IRS Field Service Advisory 199924003 . . . . . . . . . . 11, 18
IRS Field Service Advisory 199950008 . . . . . . . . . . 9, 11, 18
Statement by Senator Pryor
introducing S.1784 at 135 Cong. Rec. S13893-7 (October 24, 1989),
1989 WL 186980 (Cong.Rec.). S.1784 ultimately enacted as a part of P.L. 101-239 . . . . 40

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 03-2028 T

Consolidated with 04-907 T

(Judge Francis M. Allegra)

KENNETH C. KEENER,

PLAINTIFF

VS.

UNITED STATES OF AMERICA,

DEFENDANT

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION OF THE UNITED STATES FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINTS**

Plaintiffs Kenneth C. Keener and William P. Smith, Jr. and Anne Smith, hereby respond to the Motion of the United States for Partial Dismissal of Plaintiffs' Complaints ("the government's motion") and request that the government's motion be denied on each and every count. As proven in the Plaintiffs attached brief in support, this Court has jurisdiction to address their remaining claims.

The Plaintiffs entered into §6224(c) settlements with the IRS for 1984 and 1985. Those settlements addressed only partnership items. 26 U.S.C. §7422(h) bars this Court from addressing refunds "attributable to partnership items." Section 7422(h) does not deprive this Court of jurisdiction over the Plaintiffs' claims because:

***As to Limitations***: (i) whether the partnership item settlements were partial or comprehensive is irrelevant because an individual partner's assessment period is *not* a partnership item; therefore, it *could*

*not* have been included in the §6224(c) partnership item settlements, and the Tax Court *did not* have jurisdiction to address it in the TEFRA partnership-level cases, (ii) a partner's limitations defense to assessment is a *non*partnership item, and this Court has jurisdiction to address it in this partner-level refund suit, (iii) this partner-level case is the only place Keener and Smith *could* raise their limitations defense because, for 1984 and 1985, §6226(d)(1)(B) bars a partner whose assessment period has expired from being a party to any partnership-level case, and (iv) a holding that Keener and Smith are barred from raising their limitations defense here would violate their fundamental right to due process by taking their limitations defense and robbing them of their constitutional right to petition.

***As to §6621(c) Penalty Interest***: (i) the partnership item settlements were comprehensive, and by statute, for 1984 and 1985, *could not* be "partial," (ii) the parties intended that the settlements be comprehensive as to partnership items and the IRS repeatedly represented to the Tax Court that settled partners were no longer parties to the partnership-level cases for any reason, (iii) §6621(c) is not a partnership item, it is an "affected item," over which the Tax Court has no jurisdiction in a TEFRA partnership-level case, (iv) for the tax years in issue, a partner cannot be bound to determinations made in a TEFRA partnership-level case after they settle their partnership items, (v) even if a partner could be bound to determinations made in a TEFRA partnership-level case after they settle their partnership items, the bases for the adjustments in the decisions cannot be imputed to the Plaintiffs' settlement adjustments because the amount of the adjustments were substantially different for the same partnership items, and (vi) even if the bases for the adjustments in the decisions could be imputed to the Plaintiffs' settlement adjustments they are not binding because they were not independent findings of the Tax Court, but rather resulted from a purported agreement between the IRS and TMP.

WHEREFORE, Plaintiffs respectfully request that the government's motion be denied in full.

Respectfully submitted,

February 17, 2006

/Thomas E. Redding /
Thomas E. Redding
Sallie W. Gladney
Teresa J. Womack
REDDING & ASSOCIATES, P.C.
P.O. Box 924328
Houston, Texas 77292-4328
(713) 965-9244 / (713) 621-5227 Fax
**ATTORNEYS FOR PLAINTIFFS**

**No. 03-2028 T**
Consolidated with 04-907 T
(Judge Francis M. Allegra)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

KENNETH C. KEENER, Plaintiff

VS.

UNITED STATES OF AMERICA, Defendant

**PLAINTIFF'S BRIEF IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO THE MOTION OF THE UNITED STATES FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINTS**

**RESPONSE TO THE GOVERNMENT'S FACTUAL STATEMENT**

Unless otherwise indicated Plaintiffs Kenneth C. Keener ("Keener") and William P. Smith, Jr. and Anne Smith ("the Smiths" or "Smith") (collectively "the Plaintiffs") do not object to the government's factual statements on pp. 1-9 of its brief, except the statement on page 3, 7, and 9, that the plaintiffs' settlements were partial partnership item settlements, for the reasons set forth below, and would add the following relevant facts:

Agri-Venture II ("AV2"), Agri-Venture Fund ("AVF"), Desert Highland Vineyards ("DHV"), and Richgrove Grape Associates ("RGA") were 4 of 43 structurally similar California limited partnerships marketed and managed by AMCOR, a California corporation.

In 1984, Keener and Smith invested in AV2 and RGA, respectively, and filed their 1984 returns on May 13, 1985 and July 5, 1985, respectively. [E1, E2, E5, E6][1] In 1985, Keener and Smith invested

[1] References to [Ax], [Bx], [Cx], or [Dx] are to Bates stamped page "x" of the Appendixes A, B, C, or D, respectively, attached to the government's motion. References to [SAx] and [Ex] are to Bates stamped page "x" of the Supplement to Appendix A, and to Appendix E, respectively, filed

in AVF and DHV, respectively, and both filed their 1985 returns on April 15, 1986. [E24 - E27] They reported each year's losses pursuant to their Schedules K-1 as required by §6222.[2] [E5, E15, E33]

It undisputed that AV2 and RGA filed their 1984 partnership returns on April 15, 1985 and AVF and DHV filed their 1985 returns on April 15, 1986. The deadline for the IRS to assess any tax liability "attributable to" the relevant partnership items against Keener expired on May 13, 1988 (for 1984) and April 15, 1989 (for 1985), and for Smith on July 5, 1988 (for 1984) and April 15, 1989 (for 1985).

On April 10, 1991, the IRS issued Notices of Final Partnership Administrative Adjustment ("FPAAs") proposing "adjustments to the partnership return[s]" of AV2 (1984 and 1985), RGA (1984 and 1985), AVF (1985), and DHV (1985). [B18, B46, B80, B105] The IRS proposed to disallow *all* of the Schedule F- Farming Expenses and Other Deductions reported by the partnerships for 1984 and 1985. [B21, B50, B83, B108]

The IRS never attempted to get any extension for the 1984 assessment periods. The IRS never attempted to get any extension from Keener or Smith for their 1985 assessment periods. The IRS did attempt to get extensions of the 1985 assessment periods from the tax matters partner ("TMP") of AVF and DHV. The Petitioners will show that those extensions were invalid.

Partners other than the TMP challenged the FPAAs by filing over 43 separate partnership-level Tax Court cases. [B1, B28, B61, B89]

In 1995 and 1999, Keener and Smith, respectively, remitted moneys to the IRS toward any validly assessed deficiencies arising from the partnership item adjustments. [C12, C37, E2, E7, E25, E27]

On April 28, 1997 and April 9, 1999, Keener and Smith, respectively, entered into §6224(c)

---

concurrently with this response.

2 Unless otherwise indicated all references to section, §, and the Code are to the Internal Revenue Code at 26 U.S.C.

partnership item settlements with the IRS on Forms 870-P(AD). [B114-B115, E34-E53] Keener's settlements were "original settlements" substantively similar to other "original settlements" entered into by other AMCOR partners in 1996 and 1997 and with which other partners could request "consistent settlements" during 1999 and 2000. [E179, E185, E191] Smith's settlements were "consistent settlements" identical to the "original settlements" of other partners in his partnerships. [E179, E185, E191] Keener and Smith's settlements comprehensively settled all of their partnership items for the relevant partnership and tax year. Treas. Reg. §301.6224(c)-3T(b).

The Schedule of Adjustments attached to the settlements disallowed only a portion of the deductions which the FPAAs had proposed to completely disallow. The settlements allowed Keener to keep 63.79% of his 1984 AV2 deduction and 62.62% of his 1985 AVF deductions and allowed Smith to keep 61.35% of his 1984 RGA deduction and 57.79% of his 1985 DHV deductions. [C10, C35, E5, E24, E15, E20] The IRS also agreed there would be no changes to AV2 and RGA partnership items for 1985 and 1986, nor to AVF and DHV partnership items for 1986, including substantial income reported from farming activities, *i.e.* the "phantom income" reported from farming activities and required to be reported by the partners. [E34-E35, E38-E41, E44-E49, E52-E53]

The Form 870-P(AD) settlements provides, in part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned **offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown** on the attached schedule of adjustments. ...
>
> . . . .
>
> If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.

[B114, E36, E42, E49]. Emphasis added.

The settlements did not address any *non*partnership items, *e.g.* they did not address any factors

related to limitations on assessment or to §6621(c) penalty interest. [B114-B115, E34-E53] The Forms 870-P(AD) and their Schedules of Adjustments identify an agreed dollar amount disallowed for each partnership item but do not identify any grounds or bases for the adjustments. [B114-B115, E34-E53]

In letters sent to individual AMCOR partners the Office of Chief Counsel for the IRS re-opened the period for partners to request consistent settlements and stated that (i) this "does not involve a new settlement offer, rather, it merely lengthens the time period for requesting settlement consistent with one previously offered," and (ii) by settling partners "would avoid further litigation and penalties." [E179-E180, E185-E186, E191-E192] The IRS solicited the AMCOR partners with "take-it-or-leave-it" settlements that were substantively similar across the partnerships, varying only in adjustment percentages not in issue here. The IRS controlled the settlement terms and required that they be effectuated on Forms 870-P(AD) under §6224(c). The IRS stated that if any settlements were received other than the prescribed Forms 870-P(AD), or if the Forms 870-P(AD) were altered in any way they would be rejected. The Plaintiffs' Form 870-P(AD) settlements were substantively similar to those of other AMCOR partners. [B114-B115, E34-E53, E193-E209]

Under Tax Court Rule[3] 248(c)(1), if a partner is a Rule 247(b) "participating partner" in his partnership-level Tax Court case, then upon settlement the IRS "shall" file a notice of settlement in that case. [SA21-22] Smith was purportedly a participating partner in the RGA and DHV Tax Court cases. [E112, E126] On April 23, 1999, the IRS filed the required settlement notice in the RGA case for Smith. [E135] On information and belief, the settlement notice for Smith was substantively similar to the settlement notice filed on other partners in the RGA Tax Court case on April 14, 1999, [E135, E145-E146] and substantively similar to other settlement notices filed by the IRS in other AMCOR Tax

---

[3] Unless otherwise indicated references to "rules" are to the Rules of Practice and Procedure, United States Tax Court.

Court cases. [E147-E174] On information and belief, the IRS stated in its settlement notice that Smith, as with the other AMCOR partners, had "entered into settlement agreements under section 6224(c)(1), ..., with respect to [his] partnership items for the partnership taxable years [1984 and 1985], which are the subject of this proceeding. .... Accordingly, ... pursuant to section 6226(d)(1)(A), [he] is no longer a party to this proceeding." [E147-E174] The IRS violated Rule 248(c)(1) and failed to properly file a settlement notice as to Smith in the DHV Tax Court case. [E110-E121]

Keener was not a participating partner in the AV2 and AVF Tax Court cases. [E66-E109] The IRS was not required to, and did not, file settlement notices for him in those cases.[4] [E66-E109]

On March 2, 1998, the IRS assessed tax and interest against Keener for 1984 and 1985. [E2, E25] The IRS applied Keener's advance remittance to the assessments and refunded the remainder. [E2, E25]

On March 16, 2000, the IRS assessed tax and interest against Smith for 1981 (a carryback from 1984), 1984, and 1985. [E54-E64] Smith's advance remittance completely covered his liabilities for 1981 and 1984. [E54, E7-E8] Smith paid in full the portion of the 1985 assessments that was not covered by his advance remittance. [E27-E28]

The interest assessed against Keener for 1984 and 1985, and against Smith for 1981 and 1985 was computed at the §6621(c) penalty rate. [C11, C36, E17, E60]

TMP Frederick Behrens intervened in the Tax Court cases in June and July of 1999. [E86, E108, E121, E135] Trial in a test case began on December 13, 1999. [E86, E88, E108, E122, E136]

In March of 2000, the IRS filed motions related to the settlement of other partners in many of the AMCOR partnership-level cases, including AV2, AVF, and DHV, representing to the Tax Court that those settled partners were no longer parties to the cases. [E175-192] On information and belief the motions, with exhibits, filed in AV2, AVF, and DHV were substantively similar to the IRS motions

---

4 The IRS was not required to, and did not, file settlement notices for *non*participating partners.

filed for partners in other AMCOR partnerships, including Smith in RGA. The Tax Court entered agreed decisions in the partnership-level cases on July 19, 2001, reflecting adjustments to the same partnership items included in the settlements, but in substantially different amounts. [B55, B59, B116, B119] The Tax Court decisions were agreed decisions reflecting only the terms of a purported agreement between the IRS and TMP, not fact findings or determinations by the Tax Court. [E220]

Keener and Smith timely filed refund claims to recover all or part of their overpayments because (i) the IRS assessed after limitations expired; (ii) the IRS improperly imposed §6621(c) penalty interest; and, (iii) excessive interest should be abated under §6404(e). [C1, C13, C26, C38, D1, D13, D24, D36, D47, D57] The IRS disallowed their claims and the Plaintiffs timely filed these suits. [C24, E65]

## ARGUMENT

The Plaintiffs entered into §6224(c) settlements with the IRS for 1984 and 1985. [B114-B115, E36-E37, E42-E43, E49-E51] It is undisputed that the settlements addressed only partnership items.

26 U.S.C. §7422(h) bars this Court from addressing refunds "attributable to partnership items." The government argues that this Court lacks jurisdiction to determine either that the assessments were untimely or that §6621(c) was improperly imposed. The government is wrong because:

***As to Limitations***: (i) whether the partnership item settlements were partial or comprehensive is irrelevant because an individual partner's assessment period is *not* a partnership item; therefore, it *could not* have been included in the §6224(c) partnership item settlements, and the Tax Court *did not* have jurisdiction to address it in the TEFRA[5] partnership-level cases, (ii) a partner's limitations defense to assessment is a *non*partnership item, and this Court has jurisdiction to address it in this partner-level refund suit, (iii) this partner-level case is the only place Keener and Smith *could* raise their limitations

5 Partnership procedures codified at 26 U.S.C. §§6221-6233, as enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324 ("TEFRA"), and as amended.

defense because, for 1984 and 1985, §6226(d)(1)(B) bars a partner whose assessment period has expired from being a party to any partnership-level case, and (iv) a holding that Keener and Smith are barred from raising their limitations defense here would violate their fundamental right to due process by taking their limitations defense and robbing them of their constitutional right to petition.

***As to §6621(c) Penalty Interest***: (i) the partnership item settlements were comprehensive, and by statute, for 1984 and 1985, *could not* be "partial," (ii) the parties intended that the settlements be comprehensive as to partnership items and the IRS repeatedly represented to the Tax Court that settled partners were no longer parties to the partnership-level cases for any reason, (iii) §6621(c) is not a partnership item, it is an "affected item," over which the Tax Court has no jurisdiction in a TEFRA partnership-level case, (iv) for the tax years in issue, a partner cannot be bound to determinations made in a TEFRA partnership-level case after they settle their partnership items, (v) even if a partner could be bound to determinations made in a TEFRA partnership-level case after they settle their partnership items, the bases for the adjustments in the decisions cannot be imputed to the Plaintiffs' settlement adjustments because the amount of the adjustments were substantially different for the same partnership items, and (vi) even if the bases for the adjustments in the decisions could be imputed to the Plaintiffs' settlement adjustments they are not binding because they were not independent findings of the Tax Court, but rather resulted from a purported agreement between the IRS and TMP.

This Court must first address which items are "partnership items" and which are "*non*partnership items" under TEFRA's statutory scheme. *Callaway v. C.I.R.*, 231 F.3d 106, 108 (2nd Cir. 2000).

## I. TEFRA's Statutory Scheme

Partnerships do not pay income tax; they file information returns.[6] Each partner's share of

[6] §§701, 6031; Treas. Reg. §§1.701-1, 1.6031-1.

partnership income, gains, losses, deductions, etc., is reported and recognized on his individual return.[7]

Before 1982, to adjust an item on a partnership return the IRS had to examine each partner's individual return and could not ensure consistent adjustments among partners. In response, Congress enacted TEFRA, which consolidated *some* of the partnership audit and adjustment procedures.[8]

**A. In General**

Section 6221 of TEFRA mandates that "the tax treatment of any partnership item shall be determined at the partnership level." This allows a single centralized adjustment of statutorily defined "partnership items" at the partnership level under TEFRA's subchapter C.[9] Congress specifically left all *non*partnership items – including many partnership-level issues – to be determine at the partner level under subchapter B. *Callaway* at 108. Under TEFRA, if the IRS wants to adjust any partnership item it must first issue an FPAA.[10] An FPAA is issued only to adjust partnership items. There is no statute of limitations for issuing a FPAA. Judicial review of the FPAA is limited to the partnership level and the jurisdiction of the courts is expressly restricted to statutorily defined "partnership items."[11]

A partner is a party to, may participate in, and is bound by the outcome of, the partnership-level case only as long as he has an ongoing interest in the outcome [§§6226(c), (d)], *i.e.* his partnership

---

7 §§701, 702; Treas. Reg. §1.702-1(a).

8 *Maxwell v. C.I.R.*, 87 T.C. 783, 787 (1986).

9 §§6211(c), 6216(4), 6221, 6223, 6225(a), 6230(a)(1), and 6226; Temp. Treas. Reg. §301.6221-1T(a); *Callaway* at 110. "Subchapter C" is subchapter 63C at §§6221-6234 (TEFRA).

10 §§6223(a)(2) and (d)(2).

11 §§6226(a), (b). Virtually all partnership-level cases are filed in the Tax Court. Occasionally a partnership-level case is filed in a federal district court or this Court, but only after meeting certain bond requirements that do not apply to Tax Court cases. §6226(e). *E.g.*, see *AD Global Fund v. U.S.*, 67 Fed.Cl. 657 (2005). All AMCOR partnership-level cases at issue here were filed in the Tax Court.

items have not converted to nonpartnership items,[12] or "the period within which any tax attributable to such partnership items may be assessed against that partner" has not expired [§6226(d)(1)(B)].

If a partner's assessment period expires before the partnership-level suit is filed then he *never* becomes a party. Likewise, when a partner's partnership items convert to nonpartnership items he is no longer a party, if he ever was, as to his converted partnership items. §6231(b)(1)(C).

Settlement is the most common method of converting partnership items to nonpartnership items. Sections 6224(c) and 7121 are separate grants of authority by which the IRS may settle partnership items with a partner. For 1984 and 1985 Treas. Reg. §301.6224(c)-3T(b) mandates that, prior to 1999, §6224(c) partnership item "[s]ettlements shall be comprehensive, that is, a settlement may not be limited to selected items."[13] This means that here a §6224(c) settlement settles all partnership items, either on the terms stated or with no change. Once the partnership-level case is concluded as to a partner – either by conversion (*e.g.* settlement as to him alone) or by decision (as to all partners with unconverted partnership items), then that partner's *non*partnership items (including all partner-specific determinations and all partnership-level issues not statutorily defined as partnership items) are addressed in separate partner-level proceedings under subchapter B.[14] After the IRS assesses any tax and the partner pays, he may file a refund claim to raise his individual nonpartnership item defenses.

---

[12] §§6226(d)(1)(A) and 6228(a)(4)(B); Tax Ct. Rules 245(b) and 247(a) [SA19, SA20], IRS Field Service Advisory 199950008, (9/13/99) [SA10-SA11].

[13] Treas. Reg. §301.6224(c)-3T(b) was amended in 1999 to allow partial partnership item settlements but does not apply here because Keener settled in 1997 and Smith's was a "consistent settlement" which, even after 1999, must be identical to an "original" settlement. [SA24, SA27] The AMCOR "original" settlements were all substantively similar to Keener's, therefore, the 1999 amendment to §301.6224(c)-3T(b) does not apply to the AMCOR cases here. [E179, E185, E191]

[14] *Maxwell* at 788; *Callaway* at 108; *e.g.*, to assert a penalty related to the partnership item adjustment, such as a negligence penalty, the IRS must wait until after a settlement is effective or a partnership-level decision is final, as applicable, and issue to the partner a statutory notice of deficiency asserting the penalty and giving the opportunity to contest the penalty in the Tax Court.

If his claim is denied, he may file suit in federal district court or this Court to pursue those defenses.

The limitations period to assess against a partner any tax attributable to his partnership items is based on partner-specific facts and can vary from partner-to-partner. If a partner's assessment period is still open when the FPAA is issued, then §6229(d) extends that period until one year after any partnership-item settlement becomes effective or the partnership-level decision becomes final, as applicable. If a partner's assessment period expires before the FPAA is issued, nothing can revive it.

**B. Specific Provisions**

1. "Partnership Item" is a Defined Term, Restricted By Statute

In §6231(a)(3) Congress mandates three requirements for a partnership item.[15] [SA35] It must:

- arise "under any provision of subtitle A" (§§1-1563);
- be "required to be taken into account for the partnership's taxable year;" and
- be designated by the IRS in regulations "as more appropriately determined at the partnership level than at the partner level."

Subtitle A (§§1-1563) is titled "Income Taxes." It may be thought of as addressing "the numbers." A partner's limitations period on assessment (§§6229(a) and 6501(a)), is in subtitle F. Subtitle F (§§6001-7873) is titled "Procedure and Administration." Subtitle F includes the procedural requirements (i) for a valid return [§§6001-6116], (ii) for making assessments [§§6201-6255], (iii) for the general (non-TEFRA) limitations period on assessments [§§6501-6533], and (iv) for collecting amounts owed [§§6301-6344]. It also includes interest [§§6601-6631], penalties [§§6651-6751], and all of the TEFRA partnership procedural provisions [Chapter 63, Subchapter C, §§6221-6233].

By expressly limiting this definition Congress specifically exempted from TEFRA's unified proceedings all subtitle F procedural requirements and all subtitle A items not designated by regulation.

---

15 *Monti v. U.S.*, 223 F.3d 76, 82 (2nd Cir. 2000). Anything that is not a "partnership item" is a "nonpartnership item." §6231(a)(4).

By definition the procedural and administrative requirements of subtitle F are *not* partnership items and the Secretary cannot make them partnership items by regulation because they are not "required to be taken into account for the partnership's taxable year under any provision of subtitle A."[16]

2. Determinations of Partnership Items and Nonpartnership Items are Mutually Exclusive

In TEFRA, Congress statutorily mandated mutually exclusive procedures for determining partnership items (subchapter C) and nonpartnership items (subchapter B).[17]

The legislative history confirms this mandatory bifurcation:

> Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, *except to the extent they become nonpartnership items under the rules*, be raised in proceedings relating to nonpartnership items of a partner.[18]

For 1984 and 1985, partnership-level proceedings are restricted to adjusting partnership items. §6226(a) and §6226(f). If those adjustments result in a tax deficiency it is assessed against the partner. Whether the IRS can collect any resulting tax deficiency is controlled solely by *non*partnership items and is irrelevant to adjusting the partnership items. Sections 6226(c) and 6226(d)(1)(B) of TEFRA bar a partner for whom limitations has expired from being a party to, or bound by, any partnership-level case. He is restricted to raising his nonpartnership item defenses, *e.g.*, limitations to assessment, in a partner-level proceeding, as here.

Likewise, when a partner settles his partnership items he is no longer a party to any pending

---

[16] *Affiliated Equip. Leasing II v. C.I.R.*, 97 T.C. 575, 577-78 (1991) (§6621(c) not a partnership item because it is in subtitle F); *Monti* at 82 (§6224(c) right to "consistent settlement" not a partnership item because "located in subtitle F"); see also IRS Field Service Advisories 199924003 (§6621(c)) and 199950008 (§6698 penalty). [SA3-SA13, SA14-SA18]

[17] §6221; *Callaway*, at 108. See also §6230 (subchapter B non-TEFRA procedures apply to nonpartnership/affected item adjustments that are not merely computational changes).

[18] H. R. Conf. Rep. 97-760, at 611, emphasis added. [SA38] See also 4 Arthur Willis et al., Partnership Taxation, §209.05 at 209-7, 209-12 (5th ed. 1996).

partnership-level case, if he ever was, and in any later partner-level case his converted partnership items may be examined only "to the extent" of their application as determined under the settlement to compute his liability. In a partner-level case neither the IRS nor the partner is allowed to go behind the terms of the partnership item settlement to change or re-characterize the partnership items.

28 U.S.C. §§1346(a)(1) and 1491(a)(1) give this Court jurisdiction over an individual partner's claim for refund of tax and interest. But §7422(h) bars jurisdiction over any "refund attributable to partnership items." Therefore, after a partner's partnership items are determined, either by settlement or court decision, in later partner-level refund cases this Court may address only *non*partnership items.

3. The Determination of a Partner's Assessment Period Includes Only Nonpartnership Items

The IRS has three years from the date a taxpayer files his return to assess *any* tax deficiency for that year. §6501(a). The taxpayer may extend that period. §6501(c)(4)(A). If the taxpayer was a partner in a partnership, then §6229(a) extends the §6501(a) assessment period as to him, but only for assessments of tax "attributable to partnership items," until three years after the *partnership's* return is filed, regardless of any other partner's individual §6501(a) deadline. The TMP may extend the §6229(a) assessment period as to all partners [§6229(b)(1)(B)], or any partner may extend the §6229(a) assessment period as to himself without regard to whether it is extended by other partners [§6229(b)(1)(A)], and the period of the extension can vary from partner to partner.

If an FPAA is issued before a partner's §6501(a) assessment period expires then the §6501(a) period is tolled – but only as to that partner – until one year after either a partnership item settlement becomes effective [§6229(f)] or a partnership-level court decision becomes final [§6229(d)].

There is no partnership-wide limitations period for assessment, and no partnership-level limitations defense. While some partnership-level facts *may* play a part in computing a given partner's assessment period, not one of those partnership-level facts meets the statutory requirements of a partnership item.

This multiplicity of limitations periods was not an oversight. Congress expressly provided a multi-factor formula to determine each partner's individual assessment period.

4. For 1984 and 1985 §6224(c) Settlements Are Comprehensive, Not "Partial"

The government argues that the Plaintiffs' partnership item settlements were "partial" and settled only some of their partnership items. [GB: p. 15, n.11 and n. 12; p. 27, n. 21] As to limitations, this argument is moot because the limitations period and every one of its elements, including §6229(a), is a *non*partnership item. The terms of the Plaintiffs' partnership item settlements are irrelevant to that issue. Even if limitations, or every one of its elements, *were* a partnership item the government would still be wrong because the Plaintiffs' settlements are *§6224(c) settlements*. The 1997 amendments cited by the government only address the effect of partial settlements. The §6224(c) settlements are required by regulation to be, and both the partners and the IRS intended that the §6224(c) settlements be, comprehensive, not partial.

a. *For 1984 and 1985, Treas. Reg.§301.6224(c)-3T(b) Mandates that These §6224(c) Partnership Item Settlements Are Comprehensive, Not "Partial"*

Sections 6224(c) and 7121 are separate grants of authority for the IRS to settle tax disputes. [SA23, SA32] Partnership item settlements are normally made on (i) Forms 870-P(AD), under §6224(c) [E137], (ii) Forms 870-L(AD), under §§6224(c) and 7121 [E139], or (iii) Forms 906 Closing Agreement, under §7121 and, maybe, §6224(c) [E142]. The IRS chose Forms 870-P(AD) for the AMCOR settlements.

For 1984 and 1985, Treas. Reg.§301.6224(c)-3T(b) mandates that pre-1999 §6224(c) partnership item "[s]ettlements shall be comprehensive, that is, a settlement may not be limited to selected items," *i.e.*, all partnership items are settled, either adjusted as stated or as no change. [SA24] The regulation as amended in 1999, still requires consistent settlements (like Smith's) based on a comprehensive original settlement to be comprehensive also. Plaintiffs' Forms 870-P(AD) state they are settlements

"[u]nder the provisions of §6224(c)" and apply "with respect to the determination of partnership items of the partnership for *the year shown on the attached schedule of adjustments*." [B114,E36,E42,E49, Emphasis added.] The schedules of adjustment restrict only (i) the tax year the settlements apply to, and (ii) the partnership items to be *adjusted*. They did not restrict the partnership items *settled*. Therefore, under Treas. Reg. §301.6224(c)-3T(b), *all* of the Plaintiffs' 1984 and 1985 AMCOR partnership items were settled, either adjusted as stated or as no change.

However, whether the settlements were comprehensive or partial is irrelevant to limitations because limitations is a nonpartnership item properly before this Court.

TEFRA's legislative history expressly anticipates that refund claims based on nonpartnership item grounds, specifically limitations on assessment, will be filed for moneys paid on assessments attributable to partnership items, and unambiguously states that such claims are timely within two years of payment. [SA38] This evidences Congress' recognition that an *assessment* may be "attributable to" partnership item adjustments, but the *refund* is not. A partner is not automatically due a refund every time the IRS makes an assessment arising from adjustments to partnership items, *i.e.* his *refund* is not "attributable to" the partnership item adjustments. Congress recognized that a partner may be due a refund ( *i.e.* his *refund* is "attributable to") a nonpartnership item ground, *e.g.*, because the IRS assessed after limitations expired.

b. *Treas. Reg. §301.6229(f)-1T(b) and the 1997 Amendment to §6229(f) are Irrelevant Here*

To support its "partial" settlement argument the government offers only an erroneous interpretation of the 1997 amendments to §6229(f) and §301.6229(f)-1T(b) which provide that if a partner settled some but not all of his partnership items then the assessment period related to the settled items is controlled by the unsettled items. [A4, A6] Assuming, *arguendo*, that limitations is a partnership item, the government is still wrong because §301.6229(f)-1T(b) and the 1997 amendments to §6229(f) do

not apply to the AMCOR settlements. The government concedes they do not apply to Keener because his "original settlements" were countersigned before the amendments. [GB p.15, fn. 12] Section §6224(c) and §301.6224(c)-3T(b) mandate that Keener's settlements were comprehensive and settled all of his partnership items. Also, the IRS represented to the AMCOR partners and the Tax Court, and Smith's records reflect, that "consistent settlements" such as Smith's were based on "original settlements" such as Keener's. [E179, E185, E191] Treas. Reg. §301.6224(c)-3T(b) as amended in 1999 and applicable to Smith still requires consistent settlements to be identical to the original settlements. [SA27] Therefore, Smith's consistent settlements were also comprehensive and §6229(f) is irrelevant to him. All AMCOR settlements, original and consistent, were comprehensive.

c. *The History of the 1997 through 1999 Amendments Supports Plaintiffs' Position*

Congress amended §6229(f) in 1997 and the IRS added §301.6229(f)-1T(b) in 1998 to address the problem of split limitations periods caused by partial partnership item settlements. But the IRS chose not to amend Treas. Reg.§301.6224(c)-3T(b), which continued to bar partial partnership item settlements under §6224(c) until 1999. But §301.6224(c)-3T(b) still requires "consistent settlements" to be identical to the "original settlement." Therefore, all AMCOR settlements are comprehensive because "original settlements" such as Keener's were comprehensive and "consistent settlements" such as Smith's were required to be identical to the "original settlements."

d. *The Parties Intended that Plaintiffs' §6224(c) Partnership Item Settlements Be Comprehensive, Not "Partial"*

The Plaintiffs and the IRS intended the §6224(c) partnership item settlements to be comprehensive, not partial. The settlements were substantively similar across the 43 AMCOR partnerships, varying only in certain amounts not in issue here. [B114-B115, E34-E53, E195-E209] The IRS chose and mandated Forms 870-P(AD) under §6224(c) for the AMCOR settlements. The Form 870-P(AD) plainly states that the partner "offers to enter into a settlement agreement with respect to the

determination of partnership items of the partnership for the year shown on the attached schedule of adjustments." [B14, E36, E42, E49] The IRS told the AMCOR partners that by settling they would "avoid further litigation." [E179, E185, E191] And the IRS repeatedly represented to the Tax Court that settlements substantively similar to the Plaintiffs' addressed "such partners' partnership items for the partnership taxable year ..., which is the subject of this proceeding" and such partners are, therefore, "no longer parties to the proceeding." [E147-E174] The IRS's statements were unqualified and unequivocal: settled partners were no longer parties to the Tax Court cases for any reason.

Tax Court Rule 248(c)(1) only requires the IRS to file settlement notices where the partner is a "participating partner" under Rule 247(b). [SA22] Smith was purportedly a participating partner in his RGA and DHV Tax Court cases.[19] [E112, E126] On April 23, 1999, the IRS filed the required settlement notice in the RGA case. [E135] Smith does not have a copy of that notice. On information and belief, that notice was substantively similar to the notices the IRS filed on other partners in the RGA case on April 14, 1999, [E135, E145-E146] and substantively similar to other settlement notices filed by the IRS in other AMCOR Tax Court cases. [E147-E174] On information and belief, the IRS made an unqualified and unequivocal representation to the Tax Court that under §6224(c) Smith was "no longer [a party] to the proceeding" for any purpose.

---

[19] Mistakenly filing notices of election to participate in the partnership-level Tax Court cases did not subject Smith to the jurisdiction of the Tax Court. Limitations on assessment is not a partnership item. In a partnership-level case, for the years in issue, §6226(a) and §6226(f) restrict the Tax Court's *subject matter* jurisdiction to partnership items only and Congress, in §6226(d)(1)(B), expressly barred *personal* jurisdiction where a partner's assessment period has expired. Here the assessment periods for Smith and Keener expired before the Tax Court cases commenced. Therefore, they were never parties. The Tax Court is an Article I court with *only* that jurisdiction expressly authorized by Congress. §7442; *Naftel v. C.I.R.*, 85 T.C. 527, 529 (1985); *Beall v. U.S.*, 336 F.3d 419, 430 (5th Cir. 2003). It may not be expanded by the court or the parties. §§7441, 7442; *Buchine v. C.I.R.*, 20 F.3d 173, 177 (5th Cir. 1994); *Neely v. C.I.R.*, 115 T.C. 287, 290-291 (2000). A partner cannot create subject matter jurisdiction by participating in the case nor can he create personal jurisdiction in the face of Congress' express statutory prohibition.

"[A]gency 'litigating positions' are not entitled to deference when they are merely ... counsel's '*post hoc* rationalizations' for agency action."[20] The IRS solicited Form 870-P(AD) the §6224(c) settlements and represented to both the Plaintiffs and the Tax Court that they settled all partnership items before the Tax Court. "Judicial estoppel" bars the IRS from now arguing that they were partial.[21]

But, as asserted and proven by the Plaintiffs, limitations on assessment is a nonpartnership item; therefore, the Plaintiffs' partnership item settlements are irrelevant to that issue, 28 U.S.C. §§1346(a)(1) and 1491(a)(1) authorize this Court to address it, and the §7422(h) bar is irrelevant.

**C. Congressional Intent Regarding TEFRA**

Congress knew the long established subtitle structure of the tax code and expressly restricted partnership items to subtitle A.[22] It further restricted them to *only* those items "required to be taken into account for the partnership's taxable year." It then narrowed them even further to *only* those items properly designated by the IRS in regulations. §6231(a)(3). Congress clearly intended TEFRA to *ease* the IRS's administrative burden by allowing it to choose by regulation those subtitle A issues to be treated uniformly under TEFRA (subchapter C). Congress left all other issues – including all subtitle F procedures and all subtitle A items the IRS does not designate by regulation – to be determined under the general, non-TEFRA procedures (subchapter B). *Callaway* at 108; *Maxwell* at 788.

---

[20] *Martin v. Occup. Safety and Health Rev. Comm'n*, 111 S.Ct. 1171, 1178 (1991), citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988). See also *Burlington Truck Lines, Inc. v. U.S.*, 371 U.S. 156, 168 (1962).

[21] *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996) ("The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed. ... Judicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants.") citing *Davis v. Wakelee,* 156 U.S. 680, 689 (1895); *Wang Lab., Inc. v. Applied Comp. Sci., Inc.,* 958 F.2d 355, 358 (Fed.Cir.1992).

[22] Section §6231(a)(3)'s subtitle A restriction is not an anomaly. Congress expressly reiterated it in §§6229(a), 6229(c), 6229(e), 6229(f), 6231(a)(2) and 6234(e)(3).

Many courts have tried to make TEFRA a panacea to centralize the examination of anything *they* believed *ought* to be determined at the partnership level. They use nebulous and inaccurate terms like "partnership-level issues," "issues concerning a partnership item" or "issues related to partnership items."[23] This evidences a flawed understanding of TEFRA's *limited* purposes. "Partnership item" is defined by statute and does *not* include all "partnership-level issues," "issues concerning a partnership item" or "issues related to partnership items." There are only statutorily defined subtitle A "partnership items." Everything else is a nonpartnership item. §§6231(a)(3) and (4). This is not ambiguous.

Every element of a partner's §§6501/6229 assessment period is in subtitle F. The IRS could not *make* it or any of its elements partnership items, even by regulation, because they are not "required to be taken into account for the partnership's taxable year under any provision of subtitle A."[24]

## II. <u>The Plaintiffs' Limitations Defense to Assessment</u>

### A. The IRS Assessed Against Keener and Smith After Limitations Expired

For 1984, Keener and Smith filed their returns on May 13, and July, 5, 1985, respectively. [E2, E7] Their §6501(a) assessment deadlines were May 13, and July 5, 1988, respectively. AV2 and RGA filed their partnership returns on April 15, 1985. For both Plaintiffs §6229(a) is irrelevant because its deadline (April 15, 1988) is before their §6501(a) deadline (May 3, 1988 and July 5, 1988, respectively). The IRS never attempted to get extensions from Keener, Smith, or their TMP. The limitations period for the IRS to assess taxes attributable to their AV2 and RGA partnership items against them expired on May 3, and July 5, 1988, respectively. Some facts are disputed.

---

23 *Crop Assoc.-1986 v. C.I.R.*, 80 T.C.M. 56, 63 n.4 (2000); *Chimblo v. C.I.R.*, 177 F.3d 119, 121 (2nd Cir. 1999), *cert. denied*, 528 U.S. 1154 (2000); *N.C.F. Energy v. Comm'r*, 89 T.C. 741, 743 (1987); *Rhone-Poulenc v. C.I.R.*, 114 T.C. 533, 540 n.12 (2000).

24 *Affiliated Equip*. at 577-78 (§6621(c) not a partnership item because it is in subtitle F); *Monti*, at 82 (partner's §6224(c) right to "consistent settlement" not a partnership item because "located in subtitle F"); see also IRS Field Service Advisories 199924003 [SA18] and 199950008 [SA9].

For 1985, Keener and Smith filed their returns on April 15, 1986. Their §6501(a) assessment deadlines were April 15, 1989. AVF and DHV filed their partnership returns on April 15, 1986. For both Plaintiffs §6229(a) is irrelevant because its deadline (April 15, 1989) is the same as their §6501(a) deadline. The IRS never tried to get extensions from Keener or Smith. It did try to get extensions from the TMP, but those were invalid. The limitations period to assess taxes attributable to their AVF and DHV partnership items against both Plaintiffs expired on April 15, 1989. Some facts are disputed.

If the IRS had issued the 1984 and 1985 FPAAs before the Plaintiffs' assessment deadlines expired then §6229(d) and/or §6229(f) would have tolled the limitations period. But the IRS issued the FPAAs on April 10, 1991. The IRS assessed against Keener on March 2, 1998 and Smith on March 16, 2000, long after limitations expired. Payments on assessments made after the limitations period are "overpayments" and must be refunded.[25] As to limitations, some of the Plaintiffs' substantive arguments depend on complex disputed facts requiring further proceedings.

**B. This Court Has Jurisdiction to Address the Plaintiffs' Limitations Defense in This Partner-Level Refund Case**

28 U.S.C. §§1346(a)(1) and 1491(a)(1) and 26 U.S.C. §7422(a) give this Court jurisdiction and waive sovereign immunity over IRS denials of refund claims for tax or "any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."[26] But §7422(h) bars any "action ... for a refund attributable to a partnership item." The government urges this Court to ignore the plain language of the TEFRA statutes and deny jurisdiction over the Plaintiffs' limitations defenses as a matter of policy. In support, the government asserts three erroneous analyses of other courts: *Slovacek* (limitations is an "implicit" partnership item), *Kaplan* (limitations is "attributable to

---

[25] §6401; §6402(a); *Alexander v. U.S.*, 44 F.3d 328, 331 (5th Cir.1995); *Cohen v. U.S.*, 995 F.2d 205, 207 (Fed.Cir.1993).

[26] *Roberts v. U.S.*, 242 F.3d 1065, 1067(Fed. Cir. 2001); *Beall*, at 422.

partnership items"), and *Chimblo* (limitations concerns or challenges the adjustment of partnership items).[27] [GB19-27] This Court must decide if the Plaintiffs' limitations defense to assessment is a partnership item and if their refunds are "attributable to" partnership items. The Plaintiffs' limitations defense to assessment does not challenge the agreed and settled partnership item adjustments.

This Court should follow TEFRA's plain language and address all elements of the Plaintiffs' limitations defense because every element is itself a nonpartnership item. The government argues that the Plaintiffs could only have raised the §6229 element of their defense in the partnership-level cases, where §6226(d)(1)(B) barred the Plaintiffs from ever participating, and, therefore, they cannot raise their limitations defense here. The government's arguments should be rejected.

1. <u>A Partner's Assessment Period is *Not* a Partnership Item</u>

Under TEFRA each partner may have a different assessment period even though the tax assessed arises from common partnership items. Elements in determining a partner's assessment period include: §6501(a), §6501(c)(4)(A) §6229(a), §6229(b)(1)(A), §6229(b)(1)(B), §6501(c)(3), §6229(f) and §6231(b), §6229(d). Whether and when a §6229(a) FPAA is issued may be one element, but it is not *per se* the determining element, and it does not automatically establish a common assessment deadline for all partners. Further, every listed element, including §6229(a) is itself a nonpartnership item.

The government concedes that (i) neither §6501 nor §6229 is located in subtitle A, (ii) neither is required to be taken into account for the partnership's taxable year, and (iii) neither is properly designated by the IRS in regulations. [GB:20] Nonetheless, it exhorts this Court to create a *de facto* partnership-level limitations defense that is a *de facto* partnership item that can be examined only at the partnership-level. But neither the IRS nor the courts are allowed to ignore the requirements

---

27 *Slovacek v.U.S.*, 36 Fed.Cl. 250, 255 (1996); *Kaplan v. U.S.,* 133 F.3d 469, 473 (7th Cir.1998); *Chimblo*, at 125.

Congress places in statutes. Statutory interpretation begins with the language of the statute.[28] Courts derive the plain meaning of a statute from its "text and structure."[29] If the meaning of the statute is clear, that is as far as the court may go.[30] This is because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there."[31] Once plain meaning is ascertained, it is inappropriate for courts to attempt to interpret a statutory provision.[32]

In *Chevron*, the Supreme Court mandated a two step analysis for statutes and regulations: if Congress spoke to the issue the courts *must* give effect to Congress's unambiguously expressed intent, *only* if the statute is ambiguous or silent on that issue may the courts determine if an agency's regulation is a permissible construction or "resort to legislative history and other extrinsic aids."[33] "Ambiguity in a statute ... normally means two or more alternative readings, all having some claim to respect and none leading to absurd results."[34] No court has ever held that §6231(a)(3)'s definition of "partnership item" is ambiguous. A partner's assessment period, and every one of its elements, is a *non*partnership item.

In *Weiner II* the Fifth Circuit – adopting the analysis first articulated in the unappealed *Slovacek*[35] – noted that §6229(a) did not meet even one of the §6231(a)(3) requirements to be a partnership item,

---

28 *Norfolk Dredging Co., Inc., v. U.S.,* 375 F.3d 1106, 1110 (Fed.Cir.2004) (citing *Williams v. Taylor,* 529 U.S. 420, 431 (2000)).

29 *Norfolk Dredging*, at 1110, citing *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001).

30 *Norfolk Dredging*, at 1110; *see also Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842-43 (1984); *Exxon Mobil Corp. v. Allapattah Svcs, Inc.*, 125 S.Ct. 2611, 2626-27 (2005).

31 *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992).

32 *AD Global*, at 672; *Norfolk Dredging,* at 1110.

33 *AD Global,* at 672; *Clary v. U.S.,* 333 F.3d 1345, 1348 (Fed.Cir.2003); *Chevron* at 842-43; *Allapattah Servs.* at 2626-27; see also *Meese v. Keene*, 481 U.S. 465, 484-485 (1987) ("When a statute includes an explicit definition, [courts] must follow that definition ....").

34 *Hart v. U.S.,* 585 F.2d at 1029 (1978).

35 *Slovacek*, at 255.

deemed the express requirements in the *statute* [§6231(a)(3)] irrelevant, and held that the IRS's interpretation of its *regulation* [§301.6231(a)(3)-1(b)] was "broad enough" to "implicitly" *make* the assessment period a partnership item.[36] *Weiner II* erred in that holding and should not be followed.

The Fifth Circuit and the *Slovacek* court were wrong as a matter of law to disregard Congress's plain language and ignore *Chevron*'s requirement of statutory silence or ambiguity before an agency's interpretation of its regulation may control an issue."When a statute includes an explicit definition, [courts] must follow that definition ...."[37] Partnership items must come from subtitle A. The IRS may not defeat the unambiguous statute by designating outside the universe of subtitle A, especially when that designation is "by implication." "Congress did not purport to transfer its legislative power to the unbounded discretion of the regulatory body." *FCC v. RCA Comm.*, 346 U.S. 86, 90 (1953).

Even if their holdings did not violate the plain language of TEFRA, the *Slovacek* and *Weiner II* courts are simply wrong. The district court in *Weiner I*[38] recognized that *Slovacek* was wrong and correctly pinpointed the error in its "aggressive reading" of Treas. Reg. §301.6231(a)(3)-1:

> Contrary to [*Slovacek*'s] analysis that the regulation encompassed the "thumbs up, thumbs down" issue of the timeliness of the FPAA, the limitations question is not of the same ilk as matters listed in §301.6231(a)(3)-1. ... Thus, §301.6231(a)(3)-1 was designed to cover more specific matters that affect the particulars of the tax due, and ... the *Slovacek* court's analysis ... is unsupported by the applicable regulations.
>
> . . . .
>
> According to the plain meaning of the statutory language, an item does not become a "partnership item" simply because it affects the partnership as a whole and is more appropriately decided at the partnership level. ...

*Weiner I* correctly refrained from "attempt[ing] to compensate for poorly drafted IRC provisions and regulations" recognizing that "[c]ourts are particularly ill-equipped to overhaul complicated tax

---

36 *Weiner v. U.S.*, 389 F.3d 152, 157 and fn. 3 (5th Cir. 2004) ("*Weiner II*").

37 *Meese*, at 484-485.

38 *Weiner v. U.S.*, 255 F.Supp.2d 624, 635-36 (S.D.Tex.2002) ("*Weiner I*"), rev'd on this issue by *Weiner II*.

provisions whose function in the general tax scheme is often beyond their ken."[39]

2. The Plaintiffs' Refunds Are Not "Attributable to" Partnership Items

Section §7422(h) bars jurisdiction if the Plaintiffs' *refunds* are "attributable to partnership items." "Attributable to" and "attributable to partnership items" are not defined in the Code. For tax purposes, "attributable to" requires a clear causal nexus *i.e.*, "due to," "caused by," or "generated by."[40]

The government asserts that the Plaintiffs' refunds are attributable to partnership items because the tax assessed by the IRS arose from partnership item adjustments. [GB23-27] But even the government concedes that this "type of analysis is foreclosed by binding Federal Circuit precedent." [GB24] In the Federal Circuit, *Prochorenko* holds that the source of the tax to be refunded is irrelevant to §7422(h). Rather, the issue that causes the refund to be due is determinative.[41] Plaintiffs are due refunds because the IRS assessed after the §§6229/6501 assessment period expired. Sections 6229 and 6501 are subtitle F *non*partnership items and §7422(h) does not bar this Court's refund jurisdiction.

The government argues that in *Prochorenko* the Federal Circuit focused its §7422(h) analysis on the third requirement of §6231(a)(3) (proper regulatory designation) and, therefore, to make a §7422(h) determination it is only necessary to examine that §6231(a)(3) requirement. [GB24-27] The government is wrong. While *Prochorenko* did not ignore §6231(a)(3)'s clear subtitle A requirement, its analysis, and that of the Second Circuit in *Monti* on which it relied, was, nonetheless, flawed.

*Prochorenko* and *Monti* both referenced the first requirement of §6231(a)(3) [subtitle A] to hold that §6226(c)(2) [in subtitle F] is not a partnership item.[42] But they erred in going further to hold that

---

39 *Weiner I* at 636, quoting *Transco Exp. Co. v. C.I.R.*, 949 F.2d 837, 840-41 (5th Cir.1992).

40 *Todd v. C.I.R.*, 862 F.2d 540, 541-542 and fn. 5 (5th Cir. 1988); *Stanford v. C.I.R.*, 152 F.2d 450, 458-459 (5th Cir. 1998), *citing Lawinger v. C.I.R.*, 103 T.C. 428, 435 (1994).

41 *Prochorenko v. U.S.*, 243 F.3d 1359, 1363 (Fed. Cir. 2001), relying on *Monti* at 82.

42 *Prochorenko* at 1363; *Monti* at 82.

§6224(c)(2) consistent settlement "is not the type of issue that is 'more appropriately determined at the partnership level.'"[43] These errors were immaterial to the ultimate, correct holdings in *Prochorenko* and *Monti*. But they must be noted because they are common, recurring mistakes in TEFRA cases. First, partnership items must be found in subtitle A. Second, even if the subtitle A requirement is ignored, an item cannot meet the other requirements of §6231(a)(3) just because it logically is "more appropriately determined at the partnership level." It can only meet the other statutory requirements if the IRS has *designated by regulation* that it is "more appropriately determined at the partnership level."

3. The Plaintiffs' Limitations Defense to Assessment Cannot and Does Not Challenge the Adjustment of Their Partnership Items

In footnote 17, of its brief, the government raises, but does not assert, the *Chimblo* analysis that "under TEFRA, a statute of limitations defense concerns a 'partnership item,' ..., [and, therefore,] must be raised at the partnership level." [GB21] The government is correct not to assert that argument here because it is irrelevant. Keener and Smith settled their partnership items. They agreed to the adjustment of their partnership items. Those settlements are binding and neither they nor the IRS may dispute them now. Their refund claims are not based on changes to those adjustments.

4. Violation of the Plaintiffs' Due Process Rights

A holding that Keener and Smith could raise the §6229(a) element of their limitations defense to assessment *only* in the partnership-level cases would be an improper taking or conversion of their limitations defense and violate the substantive and procedural due process rights of all partners in all partnerships for tax years prior to 1997 because it would deny them *any* forum of competent jurisdiction to assert their entire limitations defense to assessment.

First, for 1984 and 1985, a court's subject matter jurisdiction in a partnership-level case is restricted

---

43 *Prochorenko* at 1363; see also *Monti* at 82-83.

to partnership items, it cannot address or determine *non*partnership items.[44] The holding requested by the government would mandate that for 1984 and 1985 a partner's limitations defense to assessment can be litigated *only* in the partnership-level case where he is barred from raising the nonpartnership item elements. For years prior to 1997, this created a catch-22 that impermissibly denies partners *any* court of competent subject matter jurisdiction to address their limitations defense.

Second, for 1984 and 1985, §6226(d)(1)(B) unambiguously bars any partner from the partnership-level case if "the period within which any tax attributable to such partnership items may be assessed against the partner [has] expired."[45] If his assessment period has expired §6226(d)(1)(B) denies the court *personal* jurisdiction over him. This means he *cannot* raise his limitations defense to assessment even if, *arguendo*, *every* element is a partnership item under the court's *subject matter* jurisdiction. This second catch-22, between lack of subject matter jurisdiction in partner-level cases and lack of personal jurisdiction in partnership-level cases again violates every partner's right to due process because it denies them *any* court of competent jurisdiction to assert their limitations defense to assessment.

No court has ever addressed the consequences of either the forced splitting of a partner's limitations defense or the bar to jurisdiction in the Tax Court under §6226(d)(1)(B).

An individual's right to pursue legal redress for claims with a reasonable basis in law and fact is fundamental and protected by numerous provisions of the Constitution[46] including: the Due Process

---

44 In 1997, Congress amended §6226(f) granting courts in partnership-level cases broader subject matter jurisdiction. However, this amendment was a grant of new jurisdiction and only "applies to partnership tax years ending after August 5, 1997."

45 In 1997, Congress amended §6226(d)(1)(B) to allow partners whose assessment periods have expired to "participate in such action ... solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, ..." It only "applies to partnership tax years ending after August 5, 1997."

46 *Chambers v. Baltimore & Ohio RR Co.*, 207 U.S. 142, 148 (1907).

Clauses of the 5th[47] and 14th[48]Amendments, the Equal Protection Clause,[49] the 6th Amendment,[50] the Privileges and Immunities Clause of Article IV,[51] and the 1st Amendment protection of the right to petition.[52] The Due Process Clause of the 14th Amendment guarantees access to both state and federal courts.[53] This right cannot be infringed upon or burdened.[54] A court of competent jurisdiction is required for legal redress.[55]A basic requirement of due process is that no valid judgment may be had or enforced without personal jurisdiction.[56] A judgment issued by a court lacking personal jurisdiction is void as to that person[57] and he is not required to appear in such court to raise the jurisdictional defect. *Harper Macleod*, at 393. He is "always free to ignore ... [those] judicial proceedings, risk a default judgment, then challenge that judgment on jurisdictional grounds in a collateral proceeding."[58]

Refusing to hear the Plaintiffs' limitations defense in this refund suit when "under the law there is

---

47 *Amer. Pelagic Fishing Co. v. U.S.*, 379 F.3d 1363, 1371 (Fed. Cir. 2004).

48 *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 857 (5th Cir. 2000); *Bounds v. Smith*, 430 U.S. 817 (1977); *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731, 741 (1983).

49 *Pa. v. Finley*, 481 U.S. 551, 557 (1987).

50 *Johnson v. Avery*, 393 U.S. 483 (1969); *Ex Parte Hull*, 312 U.S. 546 (1941).

51 *Bayou Fleet* at 857, *citing Chambers* at 148; *Ryland v. Shapiro*, 708 F.2d 967,971(5th Cir.1983).

52 *Calif. Motor Transp. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Bill Johnson's Restaurants*; *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Eastern RR Pres. Conf. v. Noerr Motor Freight Inc.*, 365 U.S. 127, 138 (1961).

53 *DeWitt v.Pail*, 366 F.2d 682,685(9th Cir. 1966), *citing Stiltner v. Rhay*, 322 F.2d 314,316(9th Cir. 1963); *Brinkerhoff-Faris Trust & Savs. Co. v. Hill*, 281 U.S. 673, 680 (1930).

54 *Silver* at 163, *citing Adams v. Carlson*, 488 F.2d. 619, 630 (7th Cir. 1973).

55 *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1027 (5th Cir. 1982).

56 *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 396 and fn. 9 (5th Cir. 2001).

57 *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir.1996); *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir.1987).

58 *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 706 (1982).

no other court to which they could go ... could amount to a denial of due process under the 14th amendment to the Constitution."[59]

## C. The Government's "Policy" Argument Should Be Rejected

The government says it is "imperative" that this Court ignore Congress' plain language of TEFRA's limited scope and expand the §6231(a)(3) definition of "partnership item" to include §6229(a). [GB26] To do otherwise, it says, would "destroy Congress' purpose" in enacting TEFRA by allowing each partner to assert his limitations defense to assessment in his individual refund suit. [GB26] Other courts have fallen victim to this chimera believing that their dockets can be shrunk and repetitive litigation eliminated if they simply create an "FPAA statute of limitations" out of §6229(a), where Congress did not, and deem it a *de facto* partnership item, regardless of Congress' definition.[60]

The three requirements for partnership items mandated by Congress in §6231(a)(3) are not secret or difficult to understand. The §6226(d)(1)(B) jurisdictional bar against a partner whose assessment period has expired from being a party to any partnership-level case is clear. If the IRS believed limitations to assessment could be and should be a partnership item it could have amended §301.6231(a)(3)-1 to designate the §6229(a) period as "more appropriately determined at the partnership level than at the partner level." It has not. If, as the government argues, TEFRA was intended to centralize the examination of *anything* that logically *ought* to be determined at the partnership level, Congress would have drafted §6231(a)(3) differently and broader. But it did not.

---

59 *Atkins v. U.S.*, 556 F.2d 1028, 1040 (Ct.Cl. 1977) *citing Boddie v. Conn.*, 401 U.S. 371 (1971); *Xechem I'natl, Inc. v. Univ. of Texas*, 382 F.3d 1324, 1334-35 (Fed. Cir. 2004) concurring opinion. (In an action for a taking or conversion "a factor in the due process provision of the 14th Amendment is whether any remedy is otherwise available. ... [I]f no remedy is indeed available ... by federal preemption of the cause of action – there can arise an affront to the fundamentals of due process."); *Benedict v. Sec. of Dept. of H.H.S.*, 29 Fed.Cl. 587, 594 (1993) ("[T]he guaranty of due process applies to the judicial branch as well as the legislative, executive, and administrative branches of government.").

60 *E.g. Weiner II*, at 155-158 and the cases cited therein.

Congress unambiguously restricted "partnership items" by statute and where it later chose to amend some TEFRA provisions it expressly restricted those amendments to tax years after 1984 and 1985.

**D. Conclusion Regarding Limitations**

The government concedes that a partner's limitations defense does not meet even one of the mandatory requirements of §6231(a)(3) to be a partnership item. [GB20] The government, nonetheless, urges this Court to hold that a partner's assessment period is a *de facto* partnership item.

The government's request should be rejected. Re-writing the tax code is the job of Congress, not the IRS, and not the courts. Courts "have balked in the past at revision of the tax code to reach what *appears* to be a more sensible result."[61] While the government's argument here may appear sensible to those unfamiliar with TEFRA, upholding it would circumvent the plain language of the TEFRA statutes and violate the Plaintiffs' due process rights by improperly taking their limitations defense.

**III. Section 6621(c) Penalty Interest**

All of the AMCOR related §6621(c) claims are based on the same two arguments: (i) by law the underpayments were not "attributable to" tax motivated transactions ("TMTs") as required by §6621(c), and (ii) in the alternative and in response to government allegations, the underpayments were not "attributable to" sham transactions. See also the analysis in Plaintiffs' §6621(c) Motion for Partial Summary Judgment and Supporting Brief ("Plaintiffs' MSJ").

**A. Plaintiffs Were Not Bound By the Terms as to Economic Substance in the Later Agreed Decisions in the Tax Court**

As to §6621(c), the government asserts the Plaintiffs were bound by "economic substance" terms in agreed decisions entered by the Tax Court after they settled. The *Weiner I* and *Kraemer* courts both rejected the government's assertion of that argument based on *res judicata* and/or estoppel.[62]

---

61 *Transco Expl.*, at 840-841. Emphasis added.

62 *Weiner I*, at 645 *Kraemer v. U.S.*, 2002 WL 575791 (S.D.Tex. 2002).

In re-asserting that same argument here, the government first mischaracterizes Plaintiffs' claims so as to incorrectly portray the §6224(c) settlements as partial and not comprehensive. Having set that false predicate, the government then uses the amendments to §6226(d) and §6229(f) and Treas. Reg. §301.6229(f)-1T to argue that Plaintiffs were still parties to and bound by the agreed decisions entered in the Tax Court after they settled.

First, the amendments to §6226(d) and §6229(f) are effective only for settlements entered into after August 5, 1997. The temporary regulation accompanying §6229(f) is effective as of January 26, 1999. The government concedes that these amendments do not apply to Keener's settlements which were dated April 26, 1997. The government offers no authority for its argument that Keener should, nonetheless, be bound by them because there is none. The government did not cite or otherwise offer any authority to support its bald assertion that the changes in §6229(f) represented the then-current state of the law because it was not. See the §6224(c) discussions above and immediately below.

Second, Plaintiffs' settlements are §6224(c) settlements for 1984 and 1985. Therefore, as discussed above, these amendments do not apply to them even though the Smiths' settled in April of 1999.

Third, even if the amendments did apply to the Plaintiffs settlements they would not apply to the§6621(c) issues. The changes to §6226(d) and §6229(f) at issue are limited to challenges to limitations on assessment. Plaintiffs' §6621(c) claims rest on other grounds.

Treas. Reg. §301.6229(f)-1T(b) more generally directs that all unsettled partnership items, in addition to challenges to limitations on assessment, remain within the province of the partnership level proceedings. However, that regulation does not identify or otherwise direct what is or is not a partial settlement. Despite the government's attempt to mischaracterize Plaintiffs' claims and assert that the settlements were partial, the 1997 amendments did not in any way change the terms of §6224(c) or revise the blackletter law that governs the Keener and Smith settlements. As discussed above, §6224(c)

settlements for 1984 and 1985 were required by regulation to be comprehensive, not partial, and settled *all* partnership items for those years. The face of the Smiths' Forms 870-P(AD) are conspicuously stamped "Consistent Agreement." Once the Smith's "Consistent Settlement" was processed, the IRS filed a notice of settlement on their behalf in the RGA proceeding. That notice of settlement expressly states that the settled partners were no longer parties to the partnership level the Tax Court cases.

**B. Administrative and Judicial History of the §6621(c) Penalty Interest Claim**

In the FPAAs, the IRS proposed to totally disallow all of the partnership farming expenses and other partnership deductions on multiple grounds (usually 10 to 20 discrete reasons), some TMTs and some not. The Forms 870-(PAD) identify only the *amount* of the agreed partnership item adjustments, not the grounds or *basis for* the adjustments. The IRS specifically drafted them to allow over ½ to ⅔ of each partnership's "Schedule F- Farming Expenses" and made other adjustments that either allowed a portion of or agreed that there was no adjustment to other partnership items.

At issue is whether the liabilities were "attributable to" a TMT. The facts and law prove they were not. Moreover, the government's attempt to here seek a *post hoc* causal nexus to a TMT in order to justify §6621(c) after the fact is antithetical to Congress's express intent that the IRS use the threat of §6621(c) to encourage settlement and, thereby, avoid actually imposing §6621(c), where possible.

Plaintiffs are due a refund because the IRS improperly assessed §6621(c). The express terms of §6621(c) and Treas. Reg. §301.6621-2T (the IRS' formula for TMT determinations) mandate that §6621(c) can only be imposed where the underpayment is "attributable to" a TMT. But as held by the Fifth Circuit in *Weiner II*, the Plaintiffs' AMCOR Form 870-P(AD) settlements make it impossible, as a matter of law, to determine if their underpayments were "attributable to" a TMT. This "attributable to" argument is the thrust of Plaintiffs' §6621(c) claims, forms the basis for the Plaintiffs' Motion for Partial Summary Judgment on §6621(c) accompanying this response, and is the same analysis adopted

by the Fifth Circuit in *Weiner II* to hold that §6621(c) was improperly assessed against a settled AMCOR partner as a matter of law. *Weiner II*, 389 F.3rd 152.

In *Weiner I* and *Kraemer*, the courts denied the settled AMCOR partners' "attributable to" argument and directed the government to choose from the FPAAs the TMT that the underpayments were retroactively "attributable to." The IRS chose "sham transaction" and the case went to trial. *Weiner I* at 654, 657. The partners won in *Weiner I* and lost in *Kraemer*. The Fifth Circuit reversed *Kraemer* and sustained *Weiner I*, albeit on other grounds, adopting the AMCOR partner's "attributable to" analysis.

Should this Court deny Plaintiffs' "attributable to" motion for partial summary judgment and address the merits of the government's assertion of sham transactions, Plaintiffs agree that this Court does not have jurisdiction to make partnership item determinations. However, this Court does have jurisdiction to make "affected item" and other nonpartnership item determinations, particularly partner fact-specific determinations needed to impose §6621(c).

**C. §6621(c) is an Affected Item - Not a Partnership Item**

The government has moved to dismiss Plaintiffs' §6621(c) claims because, pursuant to §7422(h), no action may be brought for *a **refund** attributable to **partnership items***.

"Partnerships items" include any item required to be taken into account for the partnership's taxable year under any provision of subtitle A. §6231(a)(3). By regulation, "the accounting practices and *the legal and factual determinations that underlie the* determination of the amount, timing, and *characterization of items of income, credit, gain, loss, deduction, etc*" are also partnership items[63] Determinations regarding partnership liabilities are also partnership items.[64] Nonpartnership items are all other items that are partner specific or would be partnership items but are not so defined by the

---

[63] Treas. Reg. §301.6231(a)(3)-1(a)(1)(i). [Emphasis added.]

[64] Treas. Reg. §301.6231(a)(3)-1(a)(1)(v). [Emphasis added.]

regulations. Jurisdiction over refunds attributable to nonpartnership items is not barred by §7422(h) and those actions are within this Court's §1346(a)(1) and/or §1491(a) jurisdiction.

Section 6621(c) penalty interest itself is a nonpartnership item. As the Second Circuit explained in holding that jurisdiction of a §6621(c) refund action is not barred by §7422(h), §6621(c) is within subtitle F, not subtitle A, and it is not defined as a partnership item in the Code or regulations.[65] Other courts, particularly the Tax Court, have consistently held that §6621(c) penalty interest is not a partnership item.[66]

The government's *sole* authority for the proposition that this Court lacks jurisdiction over §6621(c) refund claims is the Ninth Circuit's decision in *River City*. But that decision does not support the government's assertions. And the conclusion that the government urges this Court to draw from that decision is contrary to well established precedent. The government offers no analysis or authority in support of it argument to disregard that authority.

First, *River City* does not address this Court's jurisdiction or the §7422(h) issue.[67] *River City* was a §6226 partnership-level proceeding - not a partner level refund action.

Second, in the *River City* Tax Court proceeding, the partnership asserted that §6621(c) was not applicable because it had conceded adjustments to the partnership items at issue on nonTMT grounds and that concession made it impossible to determine whether the partnership's transactions were attributable to TMTs for the purpose of imposing §6621(c). The IRS, nonetheless, continue to assert that §6621(c) applied. The partnership asserted that the Tax Court had jurisdiction to determine that, consequent to its concession, the transactions at issue were not attributable to a TMT for purposes of

---

65 *Field v. U.S.*, 328 F.3d 58, 59 (2003).

66 *Id.*, *citing Affiliated Eqpmt,* at 578; *White v. C.I.R.,* 95 TC 209 (1990); and *Barlow v. C.I.R.,* 80 TCM (CCH) 632, 643 (2000). *See also* Plaintiffs' MSJ.

67 *River City Ranches #1 v. C.I.R.,* 401 F.3d 1136, 1143 (9th Cir. 2005).

§6621(c). The government asserted that the Tax Court should use its §6226 jurisdiction to go behind the partnership's concessions and make fact findings to establish whether the transactions *could* have been disallowed as shams for the sole purpose of imposing §6621(c) penalty interest. The Tax Court followed precedent that §6621(c) is an affected item and held that it does not have jurisdiction over the applicability of §6621(c) in a partnership proceeding.[68]

The Ninth Circuit addressed the Tax Court's jurisdiction to make partnership item fact findings regarding the nature of the partnership transactions. It held that Tax Court has §6226 jurisdiction to make findings concerning the character of the partnerships' transactions.

That holding is, in and of itself, not inconsistent or contrary to either parties' assertions in this case. However, the continuation of the proceeding for the sole purpose of establishing grounds to impose §6621(c) after a concession is directly at odds with Congressional intent to encourage settlements to reduce the court's backlog, butt was apparently not appealed in *River City*. It is an issue here.

The government acknowledges at GB:38 that the applicability of §6621(c) is an affected item. Consequently, this Court does have refund jurisdiction and is not barred from exercising that jurisdiction over Plaintiffs. Moreover, should the Court deny Plaintiffs' MSJ and address the general issue of whether the partnership transactions were sham transactions for the sole purpose of imposing §6621(c) then, in the context of TEFRA, sham transaction is also an affected item over which this Court has jurisdiction to make the partner specific factual determinations necessary to make an ultimate sham determination, and the government's present motion should still be denied.

**D. The Government's Sham Transaction Allegation is an Affected Item**

At GB:38, the government acknowledged the overwhelming weight of authority that the Tax Court

---

[68] *River City Ranches # 1 v. C.I.R.*, T.C. Memo 2003-150, 2003 WL 21205284 (2003).

followed in *River City* - the applicability of §6621(c) penalty interest is an "affected item."[69]

Not only is §6621(c) itself a nonpartnership, affected item but, under TEFRA, the TMT findings on which the §6621(c) penalty interest rests are also affected items because each TMT depends on both partnership and nonpartnership item determinations. The government acknowledged this second type of affected item that requires findings of fact peculiar to each individual partner.[70]

The overwhelming authority on sham transaction in the context of a TEFRA related §6621(c) case holds that it is an affected item requiring (i) partnership item findings, *e.g.*, lack of economic substance,[71] and (ii) nonpartnership item findings, *e.g.*, the amount of the taxpayer's underpayment that is "attributable to" a TMT and/or the profit motive of the individual partner.[72]

Here the government asks this Court to re-characterize the partnership farming expenses as sham transactions. These farming losses were reported on line 8 of each of the partnerships' Forms 1065 as "Schedule F Farming Expenses." Plaintiffs agree with the government that this Court lacks jurisdiction to re-determine these partnership item farming expenses in this partner level refund suit[73] The AMCOR §6224(c) settlements were comprehensive and settled all partnership items which included the nature

---

69 *E.g.*, *N.C.F. Energy Partners*, at 745; §6231(a)(5).

70 §6231(a)(5) and §6230(a)(1). It is important to note that §6621(c) penalty interest is unique because it is an affected item assessed without issuing a notice of deficiency and with no pre-assessment opportunity to object or contest the assessment or raise any partner level substantive determinations that may be required, *e.g.*, the partner's profit motive. *White*; *Barlow, supra.*

71 The economic substance of a partnership level transaction is a partnership item because it entails a determination of partnership income and/or loss. *Randell v. U.S.*, 64 F.3d 101 (2nd Cir. 1995), *cert. denied* 117 S.Ct. 65; *Hambrose Leasing v. C.I.R.*, 99 TC 298 (1992).

72 *Barlow* at 643; *Durrett v. C.I.R.*, 71 F.3d 515, n.13 (5th Cir. 1996); *Chamberlain v. C.I.R.*, 66 F.3d 729, 732 (5th Cir. 1995) ("In the context of section 6621(c), '[a] sham or fraudulent transaction includes transactions that were not entered into for profit and are without economic substance.'" and "In determining a profit motive we focus on the intent of the taxpayer, not on that of the underlying entity or activity."), *citing Lukens v. C.I.R.*, 945 F.2d 92, 99 (5th Cir. 1991); *Heasley v. C.I.R.*, 902 F.2d 380 (5th Cir. 1990).

73 §7422(h) and §6226; see also *Monti*; *Weiner I, supra.* and *Maxwell*.

of the income, loss, expenses, etc. Any allegation that the transactions were shams at this late date is not supported by the terms of the settlement that allowed ½ - ⅔ of the farming expenses – sham transactions would have been totally disallowed. Not only are partnership item re-determinations barred by §7422(h), the settlements expressly bar re-opening those determinations except for fraud, malfeasance, or misrepresentation of material fact, which no party has alleged here.

The parties agree that this Court has jurisdiction over partner specific factual issues related to the §6621(c) assessment. The partner's profit motive in investing is one such partner specific factual issue.

**E. Introduction and Survey of Sham Transaction Doctrine**

The district court in *Weiner* acknowledged accepted law that "sham transaction" is not defined in §6621(c) or otherwise in the Tax Code. It is a judicially created doctrine of tax law that has two prongs: (i) whether the transactions had economic substance, and (ii) whether there was profit motive.[74] The *Weiner* court considered the genesis and the evolution of the sham transaction doctrine, as well as divergent theories in the case law, but was ultimately persuaded that *in the partnership* context "sham transaction" has two prongs: whether (i) the transactions had economic substance, and (ii) the partner had a profit motive. The court held that to find sham it was necessary to prove both prongs. *Rice's Toyota World* originated this two prong inquiry to give effect to the Supreme Court's mandate in *Frank Lyon*.[75]

While the sham transaction doctrine is widely accepted and it is generally agreed that the doctrine employs a two prong analysis, there is great uncertainty about its application. In *Compaq* the Fifth Circuit recognized this tension between the Circuits and the trend of some courts to collapse the two

---

[74] *Weiner v. U.S.*, 255 F.Supp.2d 673, 678-682 (2002) ("*Weiner*"); *Chamberlain*, at 729; *Durrett v. C.I.R.*, 71 F.3d 515 (5th Cir. 1996); *Lukens*, *supra* .

[75] *Rice's Toyota World, Inc. v. C.I.R.*, 752 F.2d 89 (4th Cir. 1985), *citing Frank Lyon Co. v. U.S.*, 435 U.S. 561, 583-84 (1978).

prongs and overlook the profit motive requirement.[76] This discord between the Circuits (and lower courts) is exacerbated by a tendency to conflate judicial doctrines and use terms interchangeably. For example, while economic substance is one prong of the sham transaction test, they are two separate and distinct doctrines; however, some courts loosely use "economic substance" and the traditional "sham transaction"inquiry interchangeably.[77]

This distinction is irrelevant when considering only the validity of the deduction - an adverse determination under either prong denies the deduction - but is important in addressing sham transaction in the context of §6621(c), especially regarding a TMT determination in a TEFRA related case because there must be an adverse determination *on both prongs* to impose §6621(c). Here, all of the FPAAs disallowed partnership items on at least twenty *separate* grounds, including: (i) sham transaction, (ii) lack of economic substance, and (iii) lack of §162 profit motive. Sham transaction is a TMT. Lack of economic substance and lack of §162 profit motive, even if proven, are **not** separately TMTs.[78]

For example, in *Copeland*, the Fifth Circuit distinguished *Hill* for conflating the nonTMT §162 ground for disallowance with §183, and then improperly relying on §183 and §301.6621-2T, A-4, which only apply to individuals and S-corporations, as the basis for a partnership-level §6621(c) determination. *Copeland* at n.27, *construing Hill v. C.I.R.*, 204 F.3d 1214 (9th Cir. 2000). The district court in *Weiner* also recognized *Hill's* limited authority and distinguished it extensively.

---

76 *Compaq Computer Corp. v. C.I.R.*, 77 F.3d 778 (5th Cir. 2001), *comparing Rice's Toyota World* and *ACM Partnership v. C.I.R.*, 157 F.3d 231, 247 (3d Cir. 1998); *Casebeer v. C.I.R.*, 909 F.2d 1360, 1363 (9th Cir. 1990); *U.P.S. v. C.I.R.*, 862 F.2d 1486, n.2 (11th Cir. 2001).

77 *Roberts v. U.S.*, 281 F.3d 1108 (10th Cir. 2002); *Keeler v. C.I.R.*, 243 F.3d 1212 (10th Cir. 2001) ("The federal income tax laws do not permit deduction of losses incurred in transactions that lack economic substance. ... 'A transaction will be accorded tax recognition only if it has 'economic substance which is ... imbued with tax-independent considerations and is not shaped solely by tax-avoidance features...'").

78 §6621(c) and *Copeland v. C.I.R.*, 290 F.3d 326 (5th Cir. 2002).

A close reading of the cases that appear to disregard the two prong analysis indicates that both profit motive and economic substance are still analyzed. This is true not only under the *Rice's Toyota World* test, but also under the *ACM* "unified" approach.[79] For example, *Thomas* and *Thompson* appear to hold that sham is strictly a partnership item issue and there is no profit motive requirement in making a §6621(c) sham determination.[80] But those cases have a common factor – the *taxpayers made specific concessions that the transactions were shams* and *then* attempted to avoid §6621(c).

The Plaintiffs here did not make a specific sham concession. Their settlement made no concession to the grounds for the adjustments. Any intimation that the adjustments were due to sham is inconsistent with the amount of the adjustments. The *Weiner* court also distinguished *Thompson* and *Thomas* on the grounds that the taxpayers conceded the transactions were shams.

The question is if sham transaction applies where only lack of economic substance or profit motive, but not both, are present. Common sense and precedent indicates that if a transaction **either** possesses economic substance **or** is entered into with a profit motive, it is **not** a sham transaction, though **either** determination is sufficient to disallow the deduction, both must be found to support the penalty.[81]

The Fifth Circuit has addressed the issue of sham in the context of TEFRA related §6621(c) actions more frequently than any of the other circuits and has consistently recognized and used both prongs to determine whether an underpayment was attributable to sham transaction for purposes of imposing §6621(c) in a partner level action. In those types of cases, the Fifth Circuit looks to the investing

---

[79] *Killingsworth v. C.I.R.*, 864 F.2d 1214 (5th Cir. 1989). The Fifth Circuit considered whether the transactions (i) were factual shams, (ii) lacked economic substance, and (iii) were deductible under §165 because they were not entered into primarily for profit. The court found that the transactions in that case lacked economic substance. But §6621(c) was not at issue.

[80] *Thomas v. U.S.*, 166 F.3d 825, 832-34 (6th Cir.1999); *Thompson v. U.S.*, 223 F.3d 1206, 1212-13 (10th Cir.2000).

[81] For example, a gift has economic substance but not profit motive. Such a transaction is not a "sham" for purposes of §6621(c) penalty interest under the two prong test.

partner's profit motive.[82]

In *Lukens* the Fifth Circuit stated that TMTs include a "sham or fraudulent transaction," which "includes transactions that were not entered into for profit and are without economic substance." The appellate court relied on *Patin* as authority for that statement and to impose §6621(c). In making its determination in *Lukens*, the Tax Court also relied on *Patin* in making its sham transaction determination.[83] *Patin* followed and used *Rice's Toyota World* sham transaction analysis, looking both to the taxpayer's profit motive and economic substance.[84]

In *Chamberlain*, the losses in question arose from the same transactions at issue in *Freytag* that had previously been to be "illusory, and ficticious, and not bona fide," and "were entered into primarily, if not solely for tax avoidance purposes."[85] The §6621(c) determination in *Freytag* was not appealed.

In the Tax Court, Chamberlain *conceded* that his transactions were conducted in the same way as the transactions in *Freytag*. Nonetheless, Chamberlain contested the imposition of §6621(c) penalty interest. The Tax Court rejected that claim, holding that profit motive is irrelevant when a transaction is a factual sham and §6621(c) is appropriately imposed regardless of the taxpayer's profit motive.[86] Chamberlain appealed.

The Fifth Circuit stated succinctly that in making its ***§6621(c) determination***:

Tax motivated transactions include, *inter alia*, "any sham of fraudulent transaction." In the

---

82 *Durrett, supra.*; *Chamberlain, supra.*; *Lukens, supra.*

83 *Lukens at 99 and citing Patin v. C.I.R.*, 88 T.C. 1086, 116-18 (1987).

84 *Ames, et al. v. C.I.R.*., 54 T.C.M. 517 (1986), *aff'd sub nom* as *Lukens*. It is necessary to review both the Tax Court and appellate opinions in these cases to establish the issues that were addressed and concessions that were made.

85 *Chamberlain*, at 731 and n.2 and 3, *affirming*, 67 T.C.M. 2992, 2993 (1994), *citing Freytag v. C.I.R.*, 89 T.C. 849, 875-6 (1987), *aff'd* 904 F.2d 1011 (5th Cir. 1990), *aff'd on other grounds*, 501U.S. 868 (1991).

86 *Chamberlain* 67 T.C.M., at 2993-3, rejecting *Heasley* and *Lukens*.

> context of section 6621(c), a sham or fraudulent transaction includes transactions that were not entered into for profit and are without economic substance."[13] [Emphasis in the original.]
>
> ...
>
> [13] *Lukens v. C.I.R.*, 945 F.2d 92,99 (5th Cir. 1991). In determining a profit motive we focus on the intent of the taxpayer, not that of the underlying entity or activity.[87]

The Fifth Circuit went on to state:

> Capsulating today's disposition we note that: (1) in determining whether a loss deduction may be allowed we look to the transaction itself--if it was a sham no deduction is appropriate; (2) for imposition of the additional interest penalty we look, in part, to these taxpayers' motivation for the transaction, *i.e.*, was there a realistic profit expectation powering the investment engine;...[88]

The Fifth Circuit determined that the Tax Court did address Chamberlain's profit motive and found he had none. That profit motive finding coupled with Chamberlain's concession regarding the nature of the transactions was sufficient to affirm the denial of his §6621(c) claim.

In *Durrett*, the Fifth Circuit followed *Chamberlain* and also looked to the individual partner's profit motive in investing in the partnership to make its §6621(c) sham determination. *Durrett* at 517 and n.6 -9, *citing Lukens* and *Chamberalain*. In *Copeland*, the Fifth Circuit noted that in *Lukens*, *Chamberlain*, and *Durrett*, its affirmance was based at least in part on the Tax Court's factual finding that the partners lacked a profit motive when they invested in the partnerships at issue. *Copeland* at 337.

The Fifth Circuit's approach only makes sense. Passive investors who were in no way personally at fault for the disqualification of the relevant deductions and who are required by §6222 to report consistently with the partnership's return should not be subject to a potentially huge "no fault" penalty. Using both prongs of the test allows qualification of the deduction at the partnership level (or in some instances not relevant here case at the partner level), but the application of the penalty is made only if the individual taxpayer is at least at fault for not having a bona fide profit motive. Based on that

---

87 *Chamberlain* at 732.

88 *Chamberlain* at 733, *citing Freytag II* and *Lukens* at n.26 and 27.

precedent, the district court in *Weiner* determined sham transaction requires both a lack of economic substance and *partner profit motive* in investing in the partnership and held §6621(c) did not apply because Weiner had a *bona fide* profit motive for investing in TFA.

**F. Conclusion Regarding §6621(c) Penalty Interest**

In 1989, Congress repealed §6621(c) and overhauled the remainder of the accuracy related penalties with the aim of improving the fairness, comprehensibility, and administrability of those provisions after it found they had been "determined too routinely and automatically by the IRS."[89] After two years of study, hearings, and debate, Congress found §6621(c) and the other penalties were a "morass of inconsistency and irrationality" that discouraged rather than encouraged compliance and under which a "hapless taxpayer [could] find himself, or herself, confronting the Internal Revenue Code over a tax deficiency, where the penalties and interest have been piled on to the extent that they are twice the amount of tax in dispute."[90] This case proves Congress was correct. To dismiss Plaintiffs' claim would not serve justice and would be wrong as a matter of law.

Respectfully submitted,

February 17, 2006

/Thomas E. Redding/
Thomas E. Redding
Sallie W. Gladney
Teresa J. Womack
REDDING & ASSOCIATES, P.C.
P.O. Box 924328
Houston, Texas 77292-4328
(713) 965-9244 / (713) 621-5227 Fax
**ATTORNEYS FOR PLAINTIFFS**

---

[89] H. Rep. No. 101-247, 1388, 1393, 1394 (1989), *reprinted in* 1989 U.S.C.C.A.N.1906, 2858-59, 2864, *cited by Copeland*, at n.10 (recognizing that §6621(c) had been repealed as a part of the accuracy related penalty provisions).

[90] Statement by Senator Pryor introducing S.1784 at 135 Cong. Rec. S13893-7 (October 24, 1989), 1989 WL 186980 (Cong.Rec.). S.1784 ultimately enacted as a part of P.L. 101-239.