## INDEX TO SUPPLEMENT TO APPENDIX A


| Doc. | Document | Bates Pages |
|---|---|---|
| 1 | Tax Rate Schedule for 1984 | SA1 |
| 2 | Tax Rate Schedule for 1985 | SA2 |
| 3 | IRS Field Service Advisory 199950008 | SA3-SA13 |
| 4 | IRS Field Service Advisory 199924003 | SA14-SA19 |
| 5 | Tax Court Rules 243-248 | SA19-SA22 |
| 6 | I.R.C. (26 U.S.C.) §6224(c), effective for 1984 and 1985 | SA23 |
| 7 | Treas. Reg.§301.6224(c)-3T(b), effective for settlements prior to 1-25-99 | SA24-SA25 |
| 8 | Treas. Reg.§301.6224(c)-3T(b), effective for settlements after 1-24-99 | SA26-SA28 |
| 9 | I.R.C. (26 U.S.C.) §6229(f), effective for settlements on or before 8-5-97 | SA29 |
| 10 | I.R.C. (26 U.S.C.) §6229(f), effective for settlements after 8-5-1997 | SA30 |
| 11 | Treas. Reg.§301.6229(f)-1T, effective 1-25-98 | SA31 |
| 12 | I.R.C. (26 U.S.C.) §7121 | SA32 |
| 13 | I.R.C. (26 U.S.C.) §6226(d)(1)(B), effective for tax years prior to 8-6-97 | SA33 |
| 14 | I.R.C. (26 U.S.C.) §6226(d)(1)(B), effective for tax years after 8-5-97 | SA34 |
| 15 | I.R.C. (26 U.S.C.) §6231 - TEFRA definitions | SA35-SA36 |
| 16 | H. R. Conf. Rep. 97-760, at 611 | SA37-SA38 |

# TAX RATE SCHEDULES FOR 1984

[¶ 2]

## SCHEDULE X
## for use by
## SINGLE INDIVIDUALS[1]

| Taxable Income Over | But Not Over | Pay | % on + Excess | of the amount over— |
|---|---|---|---|---|
| $ 0— | $ 2,300 | $ 0 | 0 | ...... |
| 2,300— | 3,400 | 0 | 11 | $ 2,300 |
| 3,400— | 4,400 | 121 | 12 | 3,400 |
| 4,400— | 6,500 | 241 | 14 | 4,400 |
| 6,500— | 8,500 | 535 | 15 | 6,500 |
| 8,500— | 10,800 | 835 | 16 | 8,500 |
| 10,800— | 12,900 | 1,203 | 18 | 10,800 |
| 12,900— | 15,000 | 1,581 | 20 | 12,900 |
| 15,000— | 18,200 | 2,001 | 23 | 15,000 |
| 18,200— | 23,500 | 2,737 | 26 | 18,200 |
| 23,500— | 28,800 | 4,115 | 30 | 23,500 |
| 28,800— | 34,100 | 5,705 | 34 | 28,800 |
| 34,100— | 41,500 | 7,507 | 38 | 34,100 |
| 41,500— | 55,300 | 10,319 | 42 | 41,500 |
| 55,300— | 81,800 | 16,115 | 48 | 55,300 |
| 81,800— | ...... | 28,835 | 50 | 81,800 |

SA1

[1] See ¶ 5 for rates for a qualified surviving spouse and ¶ 7 for rates for a qualified head of household.

***Example:*** Mr. Thomas, a single man, has gross income of $61,000 for 1984. He files a return as a single individual and claims itemized deductions of $5,000. His taxable income is $57,300 ($61,000 less $2,700 excess itemized deductions (¶ 126) and less a $1,000 exemption). Referring to the 1984 schedule above, the tax on $55,300 is $16,115. The tax on the $2,000 balance at 48% is $960. The total tax is $17,075 ($16,115 plus $960.00).





[¶ 5]

## SCHEDULE Y—MARRIED INDIVIDUALS

### JOINT RETURNS AND SURVIVING SPOUSES

| Taxable Income Over | But Not Over | Pay | % on + Excess | of the amount over— |
|---|---|---|---|---|
| $ 0— | $ 3,400 | $ 0 | 0 | ...... |
| 3,400— | 5,500 | 0 | 11 | $ 3,400 |
| 5,500— | 7,600 | 231 | 12 | 5,500 |
| 7,600— | 11,900 | 483 | 14 | 7,600 |
| 11,900— | 16,000 | 1,085 | 16 | 11,900 |
| 16,000— | 20,200 | 1,741 | 18 | 16,000 |
| 20,200— | 24,600 | 2,497 | 22 | 20,200 |
| 24,600— | 29,900 | 3,465 | 25 | 24,600 |
| 29,900— | 35,200 | 4,790 | 28 | 29,900 |
| 35,200— | 45,800 | 6,274 | 33 | 35,200 |
| 45,800— | 60,000 | 9,772 | 38 | 45,800 |
| 60,000— | 85,600 | 15,168 | 42 | 60,000 |
| 85,600— | 109,400 | 25,920 | 45 | 85,600 |
| 109,400— | 162,400 | 36,630 | 49 | 109,400 |
| 162,400— | ...... | 62,600 | 50 | 162,400 |

### SEPARATE RETURNS—MARRIED PERSONS

| Taxable Income Over | But Not Over | Pay | % on + Excess | of the amount over— |
|---|---|---|---|---|
| $ 0— | $ 1,700 | $ 0.00 | 0 | ..... |
| 1,700— | 2,750 | 0.00 | 11 | $ 1,700 |
| 2,750— | 3,800 | 115.50 | 12 | 2,750 |
| 3,800— | 5,950 | 241.50 | 14 | 3,800 |
| 5,950— | 8,000 | 542.50 | 16 | 5,950 |
| 8,000— | 10,100 | 870.50 | 18 | 8,000 |
| 10,100— | 12,300 | 1,248.50 | 22 | 10,100 |
| 12,300— | 14,950 | 1,732.50 | 25 | 12,300 |
| 14,950— | 17,600 | 2,395.00 | 28 | 14,950 |
| 17,600— | 22,900 | 3,137.00 | 33 | 17,600 |
| 22,900— | 30,000 | 4,886.00 | 38 | 22,900 |
| 30,000— | 42,800 | 7,584.00 | 42 | 30,000 |
| 42,800— | 54,700 | 12,960.00 | 45 | 42,800 |
| 54,700— | 81,200 | 18,315.00 | 49 | 54,700 |
| 81,200— | ..... | 31,300.00 | 50 | 81,200 |

***Example:*** Mr. and Mrs. Foy file a joint return for 1984 showing a taxable in of $63,900. In the 1984 joint return schedule above, the tax on $60,000 is $15,168, an tax on the $3,900 balance at 42% is $1,638. Therefore, their total tax for 1984 is $1 ($15,168 plus $1,638).

SA2

# TAX RATE SCHEDULES FOR 1985

[¶ 2]

## 1985 SCHEDULE X for use by SINGLE INDIVIDUALS[1]

| Taxable Income Over | But Not Over | Pay | % on + Excess | of the amount over— |
|---|---|---|---|---|
| $ 0— | $ 2,390 | $ 0.00 | 0 | ...... |
| 2,390— | 3,540 | 0.00 | 11 | $ 2,390 |
| 3,540— | 4,580 | 126.50 | 12 | 3,540 |
| 4,580— | 6,760 | 251.30 | 14 | 4,580 |
| 6,760— | 8,850 | 556.50 | 15 | 6,760 |
| 8,850— | 11,240 | 870.00 | 16 | 8,850 |
| 11,240— | 13,430 | 1,252.40 | 18 | 11,240 |
| 13,430— | 15,610 | 1,646.60 | 20 | 13,430 |
| 15,610— | 18,940 | 2,082.60 | 23 | 15,610 |
| 18,940— | 24,460 | 2,848.50 | 26 | 18,940 |
| 24,460— | 29,970 | 4,283.70 | 30 | 24,460 |
| 29,970— | 35,490 | 5,936.70 | 34 | 29,970 |
| 35,490— | 43,190 | 7,813.50 | 38 | 35,490 |
| 43,190— | 57,550 | 10,739.50 | 42 | 43,190 |
| 57,550— | 85,130 | 16,770.70 | 48 | 57,550 |
| 85,130— | ...... | 30,009.10 | 50 | 85,130 |

[1] See ¶ 5 for rates for a qualified surviving spouse and ¶ 7 for rates for a qualified head of household.

***Example:*** Mr. Thomas, a single man, has gross income of $61,000 for 1985. He files a return as a single individual and claims itemized deductions of $5,000. His taxable income is $57,350 ($61,000 less $2,610 excess itemized deductions (¶ 126) and less a $1,040 exemption). Referring to the 1985 schedule above, the tax on $43,190 is $10,739.50. The tax on the $14,160 balance at 42% is $5,947.20. The total tax is $16,686.70 ($10,739.50 plus $5,947.20).



[¶ 5]

## 1985 SCHEDULE Y—MARRIED INDIVIDUALS

### JOINT RETURNS AND SURVIVING SPOUSES

| Taxable Income Over | But Not Over | Pay | % on + Excess | of the amount over— |
|---|---|---|---|---|
| $ 0— | $ 3,540 | $ 0.00 | 0 | ...... |
| 3,540— | 5,720 | 0.00 | 11 | $ 3,540 |
| 5,720— | 7,910 | 239.80 | 12 | 5,720 |
| 7,910— | 12,390 | 502.60 | 14 | 7,910 |
| 12,390— | 16,650 | 1,129.80 | 16 | 12,390 |
| 16,650— | 21,020 | 1,811.40 | 18 | 16,650 |
| 21,020— | 25,600 | 2,598.00 | 22 | 21,020 |
| 25,600— | 31,120 | 3,605.60 | 25 | 25,600 |
| 31,120— | 36,630 | 4,985.60 | 28 | 31,120 |
| 36,630— | 47,670 | 6,528.40 | 33 | 36,630 |
| 47,670— | 62,450 | 10,171.60 | 38 | 47,670 |
| 62,450— | 89,090 | 15,788.00 | 42 | 62,450 |
| 89,090— | 113,860 | 26,976.80 | 45 | 89,090 |
| 113,860— | 169,020 | 38,123.30 | 49 | 113,860 |
| 169,020— | ...... | 65,151.70 | 50 | 169,020 |

### SEPARATE RETURNS—MARRIED PERSONS

| Taxable Income Over | But Not Over | Pay | % on + Excess | of the amount over— |
|---|---|---|---|---|
| $ 0— | $ 1,770 | $ 0.00 | 0 | ...... |
| 1,770— | 2,860 | 0.00 | 11 | $ 1,770 |
| 2,860— | 3,955 | 119.90 | 12 | 2,860 |
| 3,955— | 6,195 | 251.30 | 14 | 3,955 |
| 6,195— | 8,325 | 564.90 | 16 | 6,195 |
| 8,325— | 10,510 | 905.70 | 18 | 8,325 |
| 10,510— | 12,800 | 1,299.00 | 22 | 10,510 |
| 12,800— | 15,560 | 1,802.80 | 25 | 12,800 |
| 15,560— | 18,315 | 2,492.80 | 28 | 15,560 |
| 18,315— | 23,835 | 3,264.20 | 33 | 18,315 |
| 23,835— | 31,225 | 5,085.80 | 38 | 23,835 |
| 31,225— | 44,545 | 7,894.00 | 42 | 31,225 |
| 44,545— | 56,930 | 13,488.40 | 45 | 44,545 |
| 56,930— | 84,510 | 19,061.65 | 49 | 56,930 |
| 84,510— | ...... | 32,575.85 | 50 | 84,510 |

***Example:*** Mr. and Mrs. Foy file a return for 1985 showing a taxable income $63,900. In the 1985 joint return schedule above, the tax on $62,450 is $15,788.00, and tax on the $1,450 balance at 42% is $609. Therefore, their total tax for 1985 is $16,39[illegible] ($15,788.00 plus $609).

OFFICE OF
CHIEF COUNSEL

**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, D.C. 20224**

September 13, 1999

Number: **199950008**
Release Date: 12/17/1999
CC:DOM:FS:PROC

UILC: 6231.03-00
6231.05.00
6621.03-01
9210.00-00

INTERNAL REVENUE SERVICE NATIONAL OFFICE FIELD SERVICE ADVICE

MEMORANDUM FOR

FROM: Deborah A. Butler
Assistant Chief Counsel (Field Service) CC:DOM:FS

SUBJECT: Application of I.R.C. § 6621(c) Interest to Sham Transactions of a TEFRA Partnership

This Field Service Advice responds to your memorandum dated July 2, 1999. Field Service Advice is not binding on Examination or Appeals and is not a final case determination. This document is not to be cited as precedent.

## ISSUES

1. Whether the increased rate of interest on substantial underpayments of tax attributable to tax motivated transactions is a partnership item.

2. Whether the determination that the partnership engaged in a sham transaction must be made in the partnership proceeding.

3. Whether, for purposes of applying the increased rate of interest, partners who enter into a settlement of partnership items would be bound by a subsequent decision in the related TEFRA partnership case that the underlying partnerships engaged in sham transactions.

## CONCLUSION

1. The increased rate of interest on substantial underpayments of tax attributable to tax motivated transactions is not a partnership item.

2. The determination that the partnership engaged in a sham transaction may be made in the partner-level proceeding.

3. For purposes of applying the increased rate of interest, partners who enter into a settlement of partnership items would not be bound by a subsequent decision in the related TEFRA partnership case that the underlying partnerships engaged in sham transactions. Nonetheless, the outcome of the TEFRA proceeding may have a strong impact on the determination of whether the underlying partnership engaged in a sham transaction in any subsequent action challenging the applicability of the increased rate of interest.

FACTS

With regard to a group of partnerships that are subject to the TEFRA unified audit and litigation procedures, the Service and several investors executed forms 870-P with regard to partnership items. None of the agreements expressly addressed the applicability of the increased rate of interest on the face of the form or the attached schedule of adjustments. Some investors received an attachment indicating that the increased rate of interest would apply. None of the agreements set forth the underlying basis for imposing the increased rate of interest.

LAW AND ANALYSIS

The sole issue for consideration is the applicability of the increased rate of interest. The resolution of this issue rests primarily upon the application of the TEFRA unified audit and litigation procedures to the settlements that have been executed in these related cases.

Former I.R.C. § 6621(c) Increased Interest

Former section 6621(c) increased the interest rate to 120% of the statutory rate on substantial underpayments of tax that exceeded $1,000 that were attributable to "tax motivated transactions," as that term was defined in section 6221(c)(3). This provision was repealed for returns due after December 31, 1989 (without regard to extensions). Pub. L. No. 101-239, § 7721(b). The Code defined tax motivated transactions as:

- Any valuation overstatement (within the meaning of former section 6659(c)),
- Any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),

- Any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092),
- Any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and
- Any sham or fraudulent transaction.

The temporary regulations enumerate several accounting methods that might have resulted in a substantial distortion under section 6621(c)(3)(A)(iv). See Temp. Treas. Reg. § 301.6621-2T (A-3). Also, section 6621(c)(3)(B) authorized the Secretary to specify by regulation other types of transactions that would have been treated as tax motivated transactions. Temporary Treas. Reg. § 301.6621-2T (A-4) added the following:

- Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit, and
- Any deduction disallowed for any period under section 165(c)(2), relating to any transaction not entered into for profit.

The determination of whether the increased rate of interest applies is generally based upon the nature of the underlying transactions. For example, if the underlying transactions are determined to be "sham transactions," the increased rate of interest applies by operation of law. Durrett v. Commissioner, T.C. Memo. 1994-179. Similarly, the same result would be reached if it were determined that any of the specified prohibited accounting methods were used. The taxpayer's individual profit motive is irrelevant once it is determined that the transaction meets any of the specified criteria.

By contrast, the increased rate of interest may be imposed based upon a partner's individual profit motive. Temp. Treas. Reg. § 301.6621-2T(A-4)(1). If the increased rate of interest is imposed based upon profit motive, the necessary inquiry looks at the intentions of the taxpayers. Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990). In Durrett, the Tax Court distinguished Heasley, noting that "[w]hen a transaction is the simple product of smoke and mirrors, it is a factual sham, regardless of whether the taxpayer may have thought that a profit might have been made." The court held that the determination that the transaction is a sham, without regard to profit motive, is sufficient to determine that the increased rate of interest applies. Durrett, citing H.R. Conf. Rep. No. 99-841 (1986), 1986-3 C.B. (Vol. 4) 796.

The ultimate issue in the present matter is whether the determinations that result in the application of the increased rate of interest must be made in

accordance with TEFRA procedures. Such an inquiry necessarily focuses on the scope of the TEFRA provisions.

TEFRA Generally

In 1982, Congress enacted the TEFRA[1] unified audit and litigation procedures to simplify and streamline the partnership audit, litigation, and assessment process. The underlying principle of TEFRA is that "the tax treatment of items of partnership income, loss, deductions, and credits will be determined at the partnership level in a unified partnership proceeding rather than separate proceedings with the partners."[2] Once partnership determinations become final, the Service and the partners are bound by those determinations. I.R.C. § 6230.

Partnership Items

With the enactment of TEFRA, Congress established a unified audit and litigation proceeding through which determinations as to partnership items are required to be made at the partnership level. I.R.C. § 6221. A partnership item is any item required to be taken into account by subtitle A for the partnership's taxable year to the extent it is determined by regulation that such item is more appropriately determined at the partnership level than at the partner level. I.R.C. § 6231(a)(3). The partnership aggregate and each partner's share of items of income, gain, loss, deduction and credit of the partnership are expressly defined by the regulations as partnership items. Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i). In addition to those items that may be directly reported by the partnership, the regulations also state that partnership items include "factors that affect the determination of partnership items." Treas. Reg. § 301.6231(a)(3)-1(b). Such factors include the accounting practices of the partnership and whether the partnership is engaged in an activity for profit. Id.

For purposes of determining whether the increased rate of interest is a partnership item, the inquiry ends with the statutory definition of partnership items. Partnership items are limited to items required to be taken into account under any provision of subtitle A. As the Tax Court has succinctly stated, "Section 6621(c) is within subtitle F, not subtitle A. Therefore, section 6621(c) interest is not a 'partnership item'...." Affiliated Equipment Leasing II v. Commissioner, 97 T.C. 575, 577-78 (1991). Our inquiry, however, does not end there. In addition to partnership items, the preclusive effect of the TEFRA proceedings also applies to partnership-level determinations as to affected items. Smith v. Commissioner, T.C.

---

[1]Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248.

[2]H.R. Conf. Rep. No. 97-760, at 600 (1982), 1982-2 C.B. 600, 662.

Memo. 1990-510. Thus, though the increased rate of interest is not itself a partnership item, we must determine the extent to which it is impacted by partnership-level determinations.

Affected Items

An affected item is "any item to the extent such item is affected by a partnership item." I.R.C. § 6231(a)(5). The regulations clarify that affected items include "items unrelated to the items reflected on the partnership return." Temp. Treas. Reg. § 301.6231(a)(5)-1T. By definition, the tax treatment of affected items depends on partnership-level determinations. Maxwell v. Commissioner, 87 T.C. 783, 792 (1986).

In N.C.F. Energy Partners v. Commissioner, 89 T.C. 741 (1987), the Tax Court held that the increased rate of interest is an affected item of the type that may require findings of fact peculiar to the particular partner. One of the partnership item components is the deficiency that gives rise to the interest, in that the amount of the deficiency is determined by taking into account partnership items. Barton v. Commissioner, 97 T.C. 548, 551 (1991). The determination as to whether the partnership engaged in a tax motivated transaction, however, is not necessarily a partnership item. Affiliated Equipment Leasing II v. Commissioner, 97 T.C. 575, 579 (1991).

In Affiliated Equipment Leasing, the investors argued that the Tax Court had jurisdiction in the partnership-level proceeding to determine "whether an item is attributable to a tax motivated transaction" and that the applicability of the increased rate of interest would merely flow from the partnership item determination. The taxpayers argued that Treas. Reg. § 301.6231(a)(3)-1(b), which includes the character of an item in the definition of partnership items, includes the underlying determination of whether the increased rate of interest applies. The Tax Court rejected this argument.

Though not directly addressing the increased rate of interest, Smith v. Commissioner, T.C. Memo. 1990-510, is instructive on this point. In Smith, the taxpayer challenged, inter alia, the penalty for a substantial valuation overstatement. The Service issued an affected item notice of deficiency setting forth the substantial valuation overstatement penalty. The underlying basis for the penalty was the overvaluation of partnership property. The partnership had valued the property in excess of six million dollars; whereas the Service had issued a notice of final partnership administrative adjustment in which it was determined that the value of the property was zero. The valuation of the partnership asset was a necessary determination under subtitle A for purposes of computing the investment tax credit at the entity level and allocating that item to the partners. As a result, it was a partnership item under Treas. Reg. § 301.6231(a)(3)-1(b). Because the

value of the property was a partnership item, petitioners were bound by the determination in the FPAA (from which no petition was filed). Thus, the substantial valuation overstatement penalty applied.

Similarly, for purposes of determining the applicability of the increased rate of interest, to the extent subtitle A determinations are underlying components of the tax motivation inquiry, such determinations are partnership items.[3] As the Tax Court noted in Dial USA, Inc. v. Commissioner, however, the critical factor is whether the determination is required to be determined at the entity level. 95 T.C. 1, 4 (1990). As noted at the outset, the increased rate of interest may be imposed under a variety of circumstances. Whether the components that underlie the application of the increased rate of interest are partnership items must be determined in light of the applicable definition of tax motivation.

Partnership Item Components of Tax Motivation

As noted at the outset, the increased rate of interest may be imposed under a variety of circumstances. Those circumstances constitute the underlying basis for imposing the increased interest. Whether the underlying basis for imposing the increased rate of interest is a partnership item will depend upon whether it is required to be determined by the partnership under subtitle A.

One example is the imposition of the increased rate of interest when there is a valuation overstatement within the meaning of former section 6659(c). In Smith v. Commissioner, T.C. Memo. 1990-510, the Tax Court held that underlying components of the substantial valuation overstatement penalty are partnership items (specifically, the value placed on the asset by the partnership and the actual value of the asset). Those same items are components of the tax motivation determination under former section 6621(c)(3)(A)(i). Thus, to the extent those components must be determined in the partnership proceeding for purposes of determining the adjustment to items that are required to be taken into account under subtitle A, those items must also be determined in the partnership proceeding for purposes of determining the applicability of increased interest.

As applicable to this case, a sham or fraudulent transaction may also give rise to the imposition of the increased rate of interest. If it is determined that the partnership engaged in sham transactions resulting in the adjustment of partnership items, such an adjustment will automatically give rise to the imposition of the

---

[3]An example of the partnership item component approach to affected items commonly occurs with regard to basis determinations. See, e.g., University Heights at Hamilton Corp. v. Commissioner, 97 T.C. 278 (1991) (addressing S corporation-level determinations as components of basis, which is an affected item).

increased rate of interest; however, the sham determination is only a partnership item to the extent it must be determined in the partnership proceeding for purposes of determining the adjustment to items that are required to be taken into account under subtitle A. See Treas. Reg. § 301.6231(a)(3)-1(b).

The Present Situation

In the above examples, we concluded that a determination at the partnership level that a transaction or the partnership as a whole met one of the criteria specified in section 6621(c)(3) results in the automatic application of the increased rate of interest. In the present situation, however, the partners executed forms 870-P that were silent as to the application of the increased rate of interest and did not expressly indicate the underlying basis for imposing the increased rate of interest. In some instances, those determinations may be required to be made under subtitle A. This occurs when the issues underlying the resulting deficiency involve those same subtitle A determinations. Absent such a required subtitle A determination, tax motivation is not required to be determined at the entity level. Affiliated Equipment Leasing, 97 T.C. at 577-78; Dial, 95 T.C. at 4. The confusion arises because the tax motivation underlying the application of the increased rate of interest is inextricably interwoven with the underlying merits of the partnership proceeding. Nonetheless, unless the tax motivation criteria is a required subtitle A determination, it is not a partnership item. Affiliated Equipment Leasing, 97 T.C. at 577-78.

In the instant case, the partnership item adjustments set forth in the FPAAs were based on the Commissioner's determination that the partnerships engaged in a sham transaction. Some partners entered into settlements that are silent on the sham issue. Because the determination that the partnership engaged in a sham transaction is not a determination required under subtitle A, the absence of such a determination is not fatal to its assertion.

Unlike the substantial valuation overstatement penalty, which requires subtitle A determinations, a determination that a transaction is a sham is not required to be taken into account under subtitle A. Furthermore, the assertion that the partnership engaged in a sham transaction is consistent with the FPAAs issued in this case. Accordingly, the determination that the partnership engaged in a sham transaction is not a partnership item.

We recognize that the sham determination is akin to a partnership item in that it may be determined in the partnership proceeding and binding on all partners, and that such a partnership-level determination would be consistent with the objectives of TEFRA to reduce duplicative proceedings. As the Tax Court stated in N.C.F. Energy Partners, 89 T.C. at 746-47:

> We appreciate petitioner's concern for avoiding repetitive litigation. We doubt, however, that the litigation will be repetitive; it has been organized by statute to avoid chaotic and disparate results. Any future litigation at the partner level will not be repetitive of the partnership level proceeding. The doctrine of res judicata will apply to preclude the parties from relitigating any issue already resolved in the partnership proceeding, for example, the value or basis of partnership assets.

In focusing on the principles of res judicata (or what should more properly be characterized as collateral estoppel), the Tax Court clarified how determinations made in a partnership proceeding, such as the determination that a partnership is a sham, may be binding on the partners without necessarily being a partnership item. A partner is generally a party to the TEFRA proceeding, and thus is precluded from relitigating issues that were determined in the prior proceeding even absent the statutory provisions regarding finality as to partnership items.

In sum, the determination that a partnership engaged in a sham transaction for purposes of imposing the increased rate of interest on substantial underpayments of tax attributable to tax motivated transactions is an affected item, not a partnership item. This is consistent with those cases which have held that we look to the partnership proceeding to determine whether the facts lead to the conclusion that the tax motivation inquiry is satisfied, because though not a partnership item, partners may be collaterally estopped from challenging a determination in a TEFRA proceeding that the partnership engaged in a sham transaction.[4]

As a secondary issue, you have inquired whether a subsequent determination in a TEFRA proceeding that the partnership engaged in a sham transaction would be binding on partners who had previously entered into a settlement. Section 6231(b)(1)(C) provides that partnership items convert to nonpartnership items when the partner enters into a settlement agreement. Once the partner's partnership items convert to nonpartnership items, the partner is no longer a party to the TEFRA proceeding. I.R.C. § 6226(d)(1)(A). Accordingly, the partner is not bound by the outcome of the proceeding. As noted by the Court of Federal Claims, "the value or treatment of the items in the hands of the individual partner is determined solely by the terms of the settlement agreement and the taxpayer's own circumstances, and not by any subsequent tax determination with respect to the partnership." Slovacek v. United States, 36 Fed. Cl. 250, 255 (1990).

---

[4]Likewise, the Service may similarly be estopped from arguing in a later proceeding that the partnership engaged in a sham transaction if it is determined in the TEFRA proceeding that the partnership did not engage in a sham transaction.

Though the partner is not bound to the outcome of the TEFRA proceeding, the TEFRA proceeding may, from a practical standpoint, be determinative of the outcome as to the issue of the increased rate of interest. For example, in the plastics recycling cases, the Tax Court held that certain transactions were shams and applied the substantial overvaluation penalty. See Provizer v. Commissioner, T.C. Memo. 1992-177. Though petitioners in related cases generally signed agreements to be bound, not all partners agreed to be bound to the outcome of Provizer. Nonetheless, rather than revisiting the underlying issues, the Tax Court often cited to the opinion in Provizer and where the parties failed to distinguish the facts, the court based its decision upon the holding in Provizer. See, e.g., Sann v. Commissioner, T.C. Memo 1997-259. A similar result is likely here. There are numerous partnerships with an identical structure, and there are thousands of partners. If the Tax Court were to hold in the TEFRA proceeding that the partnership engaged in a sham transaction, that opinion would be influential, though not binding, in any other proceeding.

CASE DEVELOPMENT, HAZARDS, AND OTHER CONSIDERATIONS

[redacted]

[redacted]

If you have any further questions, please call (202) 622-7880.

Deborah A. Butler
Assistant Chief Counsel (Field Service)

By:

HENRY S. SCHNEIDERMAN
Technical Assistant to the
Assistant Chief Counsel (Field Service)

OFFICE OF
CHIEF COUNSEL

**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, D.C. 20224**
January 19, 1999

CC:DOM:FS:PROC

UILC: 6231.14-00
6226.03.00
Number: **199924003**
Release Date: 6/18/1999

INTERNAL REVENUE SERVICE NATIONAL OFFICE FIELD SERVICE ADVICE

MEMORANDUM FOR

FROM: DEBORAH A. BUTLER
ASSISTANT CHIEF COUNSEL CC:DOM:FS

SUBJECT: Substantive Consolidation of TEFRA Entities

This Field Service Advice responds to your memorandum dated May 12, 1998. Field Service Advice is not binding on Examination or Appeals and is not a final case determination. This document is not to be cited as precedent.

<u>LEGEND</u>

Partnerships =
Partnership Business =
Investor Partnerships =
Sales Partnership =
Management Partnership =
Operational Partnership =
X =
Y =
Date 1 =
Date 2 =

ISSUE[1]

To what extent would the substantive consolidation of a group of partnerships by a bankruptcy court impact TEFRA proceedings with regard to partners of those partnerships?

CONCLUSION

Because the partnership is not a party to a TEFRA proceeding, the consolidation of by bankruptcy court of a group of partnerships will not impact the TEFRA proceeding.

FACTS:

At the time of your request, there are two cases pending before the bankruptcy court involving two partnerships of a group of related partnerships. The partnerships are a series of tax shelters involving Partnership Business. The shelter includes Investor Partnerships, which purchased Partnership Business from Sales Partnership. The investor partnerships also pay management fees to Management Partnership. Lastly, money flowed to Operational Partnership, which operated the facilities for the Partnership Business. There are over X investors in a total of Y Investor Partnerships. The Sales, Management, and Operational Partnerships are essentially comprised of the founders and promoters of the tax shelter.

Operational Partnership filed a Chapter 11 petition and a plan has been confirmed. The Sales and Management Partnerships were forced into involuntary bankruptcy by a group investors, and those cases are pending. A United States Trustee was appointed to monitor the Sales and Management Partnerships' cases. The trustee initiated a declaratory judgement action in the Bankruptcy Court requesting that the court collapse all Partnerships (including the Investor Partnerships that were not before the court) into a single entity. The basis for collapsing such entities is that all of the entities have shared common accounts and books and records. From a bookkeeping standpoint, the partnerships have made no meaningful distinctions among themselves, and from a practical standpoint, have operated as a single enterprise.

---

[1]Due to events that occurred during the time this request for advice was pending, several issues raised in your original request have been rendered moot. Accordingly, we are limiting our response to the sole issue that remains relevant following the court order regarding substantive consolidation.

Nearly all of the partnerships are subject to the TEFRA unified audit and litigation procedures and are either currently under examination or docketed before the Tax Court. Cases generally fall into four categories: under exam; docketed but not yet tried; docketed and awaiting opinion; and, decided. The result of these TEFRA proceedings consistently have been (and we believe will continue to be) deficiencies in the income tax liabilities of the partners. Also, several of the Investor Partnerships have been assessed late filing penalties, which are liabilities of the partnerships. Because the partners are all general partners, in some instances, these late filing penalties are being collected from the partners.

On Date 1 the Bankruptcy Court granted the trustee's motion to consolidate into one entity the two debtor partnerships with Y Investor Partnerships as of Date 2, the date the involuntary bankruptcies were filed. The motion was based on the inability to determine the relative ownership of the assets and liabilities of each partnership.

LAW AND ANALYSIS

The jurisdiction of the Bankruptcy Court is limited to matters "concerning the debtor." The Bankruptcy Code permits "determination by the bankruptcy court of any unpaid tax liability of the debtor that has not been contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction before the bankruptcy case." S. Rep. No. 95-989 (1978); see also 11 U.S.C. § 505. Though the court may determine that the debtor partnerships are a common enterprise with the Investor Partnerships, this should have no impact on the TEFRA unified audit and litigation procedures.

In 1982, Congress enacted the TEFRA[2] unified audit and litigation procedures to simplify and streamline the partnership audit, litigation, and assessment process. The underlying principle of TEFRA is that "the tax treatment of items of partnership income, loss, deductions, and credits will be determined at the partnership level in a unified partnership proceeding rather than separate proceedings with the partners."[3] Accordingly, the Service may examine the partnership as an entity, rather than conduct a separate examination as to each of the partners.

Despite the creation of a unified procedure for audit and litigation, the manner of tax reporting and assessment is not affected by TEFRA and it is the partners that are the true subject of a TEFRA proceeding. The Conference Report

---

[2]Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248.

[3]Conf. Rep. No. 97-248 at 600 (1982), 1982-2 C.B. 462.

to TEFRA expressly notes that "[f]or income tax purposes, partnerships are not taxable entities. Instead, a partnership is a conduit, in which the items of partnership income, deduction, and credit are allocated among the partners for inclusion in their respective income tax returns."[4] For example, a partnership files a Form 1065 "U.S. Partnership Return of Income"; however, this form is merely an informational return that sets forth the amounts of partnership items and includes schedules allocating such items among the partners. The enactment of TEFRA merely set forth rules as to the administrative procedures for making adjustments to these items: taxes continue to be assessed against the partners and the partnership continues to be a mere conduit for tax purposes.

The issue of the interplay between a partnership in bankruptcy and a TEFRA proceeding has been addressed in numerous cases. Most notably, in 1983 Western Reserve Oil & Gas Ltd. v. Commissioner, 95 T.C. 51 (1990), the Tax Court addressed the impact of the bankruptcy stay on a TEFRA proceeding when the partnership was in bankruptcy. The court noted that for bankruptcy purposes, a partnership is an entity separate and distinct from its partners. Id., 95 T.C. at 56. Most importantly, the court noted that, although a TEFRA proceeding determines partnership items, "[u]ltimately, however, it is the tax liability of the individual partners which is affected by the redetermination of the adjustments as to the return of the partnership." Id., 95 T.C. at 57. In reaching its conclusion, the Tax Court relied heavily on American Principles leasing Corp. v. United States, 904 F.2d 477 (9th Cir. 1990), which expressly held that 'section 505 does not permit the bankruptcy court to determine the tax liabilities of the non-debtor partners." Id., 904 F.2d at 481.

Most recently, this issue was addressed in Hoyt and Sons Ranch Properties, Ltd. v. Commissioner, T.C. Memo. 1998-77, in which the court succinctly stated that:

> because a TEFRA partnership proceeding ultimately concerns the tax liability of the partnership's individual partners, and recognizing that a partnership in bankruptcy is an entity separate and distinct from its partners, we conclude that a partnership level proceeding may be commenced and concluded in this Court without violating the automatic stay.

The courts have repeated recognized that a bankruptcy court cannot exercise jurisdiction over the tax matters of non-debtor partners of a partnership in bankruptcy.

Late Filing Penalties

---

[4]Conf. Rep. No. 97-248, at 599 (1982), 1982-2 C.B. 462.

With regard to the late filing penalties imposed on the partnership, we reach a different conclusion. A TEFRA proceeding is a proceeding with respect to partnership items of the partners in the aggregate. I.R.C. § 6221. Partnership items are, by definition, limited to items required to be taken into account by the partnership under subtitle A. I.R.C. § 6231(a)(3). Late filing penalties are imposed by subtitle F, and thus are not subject to the TEFRA proceeding. Accordingly, the above analysis regarding the impact of the partnership's bankruptcy on the TEFRA proceeding is inapplicable. The late filing penalty at issue in this case was imposed pursuant to I.R.C. § 6698, which expressly imposes liability for the penalty on the partnership. I.R.C. § 6698(c). Section 505(a)(1) of the Bankruptcy Code vests the bankruptcy court with jurisdiction to determine the amount of any penalty relating to a tax. Because this penalty is imposed on the debtor partnership, it may be determined by the bankruptcy court.

If you have any further questions, please call (202) 622-7950.

Deborah A. Butler
Assistant Chief Counsel
(Field Service)

By: ____________________________
PATRICK PUTZI
Special Counsel
(Natural Resources)

## RULE 243. OTHER PLEADINGS

**(a) Answer:** The Commissioner shall file an answer or shall move with respect to the petition within the periods specified in and in accordance with the provisions of Rule 36.

**(b) Reply:** For provisions relating to the filing of a reply, see Rule 37.

## RULE 244. JOINDER OF ISSUE IN PARTNERSHIP ACTION

A partnership action shall be deemed at issue upon the later of:

(1) the time provided by Rule 38, or

(2) the expiration of the period within which a notice of election to intervene or to participate may be filed under Rule 245(a) or (b).

## RULE 245. INTERVENTION AND PARTICIPATION

**(a) Tax Matters Partner:** The tax matters partner may intervene in an action for readjustment of partnership items brought by another partner or partners by filing a notice of election to intervene with the Court. Such notice shall state that the intervenor is the tax matters partner and shall be filed within 90 days from the date of service of the petition by the Clerk on the Commissioner. See Code sec. 6226(b)(2) and Rule 241(d)(3).

**(b) Other Partners:** Any other partner who satisfies the requirements of Code section 6226(d) or 6228(a)(4)(B) may participate in the action by filing a notice of election to participate with the Court. Such notice shall set forth facts establishing that such partner satisfies the requirements of Code section 6226(d) in the case of an action for readjustment of partnership items or Code section 6228(a)(4)(B) in the case of an action for adjustment of partnership items and shall be filed within 90 days from the date of service of the petition by the Clerk on the Commissioner. A single notice may be filed by two or more partners; however, each such partner must satisfy all requirements of this paragraph in order for the notice to be treated as filed by or for that partner.

**(c) Enlargement of Time:** The Court may grant leave to file a notice of election to intervene or a notice of election to participate out of time upon a showing of sufficient cause.

**(d) Pleading:** No assignment of error, allegation of fact, or other statement in the nature of a pleading shall be included in a notice of election to intervene or notice of election to participate. As to the form and content of a notice of election to intervene and a notice of election to participate, see Appendix I, Forms 11 and 12, respectively.

**(e) Amendments to the Petition:** A party other than the petitioner who is authorized to raise issues not raised in the petition may do so by filing an amendment to the petition. Such an amendment may be filed, without leave of Court, at any time within the period specified in Rule 245(b). Otherwise, such an amendment may be filed only by leave of Court. See Rule 36(a) for time for responding to amendments to the petition.

## RULE 246. SERVICE OF PAPERS

**(a) Petitions:** All petitions shall be served by the Clerk on the Commissioner.

**(b) Papers Issued by the Court:** All papers issued by the Court shall be served by the Clerk on the Commissioner, the tax matters partner (whether or not the tax matters partner is a participating partner), and all other participating partners.

**(c) All Other Papers:** All other papers required to be served (see Rule 21(a)) shall be served by the parties filing such papers. Whenever a paper (other than a petition) is required by these Rules to be filed with the Court, the original paper shall be filed with the Court with certificates by the filing party or the filing party's counsel that service of the paper has been made on each of the other parties set forth in paragraph (b) of this Rule or on such other parties' counsel. The Court may return without filing documents that are not accompanied by certificates of service required by this Rule.

## RULE 247. PARTIES

**(a) In General:** For purposes of this title of these Rules, the Commissioner, the partner who filed the petition,

the tax matters partner, and each person who satisfies the requirements of Code section 6226(c) and (d) or 6228(a)(4) shall be treated as parties to the action.

**(b) Participating Partners:** Participating partners are the partner who filed the petition and such other partners who have filed either a notice of election to intervene or a notice of election to participate in accordance with the provisions of Rule 245. See Code secs. 6226(c), 6228(a)(4)(A).

## RULE 248. SETTLEMENT AGREEMENTS

**(a) Consent by the Tax Matters Partner to Entry of Decision:** A stipulation consenting to entry of decision executed by the tax matters partner and filed with the Court shall bind all parties. The signature of the tax matters partner constitutes a certificate by the tax matters partner that no party objects to entry of decision. See Rule 251.

**(b) Settlement or Consistent Agreements Entered Into by All Participating Partners or No Objection by Participating Partners:**

(1) After the expiration of the time within which to file a notice of election to intervene or to participate under Rule 245(a) or (b), the Commissioner shall move for entry of decision, and shall submit a proposed form of decision with such motion, if—

(A) all of the participating partners have entered into a settlement agreement or consistent agreement with the Commissioner, or all of such partners do not object to the granting of the Commissioner's motion for entry of decision, and

(B) the tax matters partner (if a participating partner) agrees to the proposed decision in the case but does not certify that no party objects to the granting of the Commissioner's motion for entry of decision.

(2) Within 3 days from the date on which the Commissioner's motion for entry of decision is filed with the Court, the Commissioner shall serve on the tax matters partner a certificate showing the date on which the Commissioner's motion was filed with the Court.

(3) Within 3 days after receiving the Commissioner's certificate, the tax matters partner shall serve on all other parties to the action other than the participating partners, a copy of the Commissioner's motion for entry of decision,

a copy of the proposed decision, a copy of the Commissioner's certificate showing the date on which the Commissioner's motion was filed with the Court, and a copy of this Rule.

(4) If any party objects to the granting of the Commissioner's motion for entry of decision, then that party shall, within 60 days from the date on which the Commissioner's motion was filed with the Court, file a motion for leave to file a notice of election to intervene or to participate, accompanied by a separate notice of election to intervene or a separate notice of election to participate, as the case may be. If no such motion is filed with the Court within such period, or if the Court should deny such motion, then the Court may enter the proposed decision as its decision in the partnership action. See Code secs. 6226(f), 6228(a)(5); see also Rule 245, relating to intervention and participation, and Rule 251, relating to decisions.

**(c) Other Settlement and Consistent Agreements:** If a settlement agreement or consistent agreement is not within the scope of paragraph (b) of this Rule, then—

(1) in the case of a participating partner, the Commissioner shall promptly file with the Court a notice of settlement agreement or notice of consistent agreement, whichever may be appropriate, that identifies the participating partner or partners who have entered into the settlement agreement or consistent agreement; and

(2) in the case of any partner who enters into a settlement agreement, the Commissioner shall, within 7 days after the settlement agreement is executed by both the partner and the Commissioner, serve on the tax matters partner a statement which sets forth—

(A) the identity of the party or parties to the settlement agreement and the date of the agreement;

(B) the year or years to which the settlement agreement relates; and

(C) the terms of the settlement as to each partnership item and the allocation of such items among the partners.

Within 7 days after receiving the statement required by this subparagraph, the tax matters partner shall serve on all parties to the action a copy of such statement.

(1) IN GENERAL.—If a pass-thru partner receives a notice with respect to a partnership proceeding from the Secretary, the tax matters partner, or another pass-thru partner, the pass-thru partner shall, within 30 days of receiving that notice, forward a copy of that notice to the person or persons holding an interest (through the pass-thru partner) in the profits or losses of the partnership for the partnership taxable year to which the notice relates.

(2) PARTNERSHIP AS PASS-THRU PARTNER.—In the case of a pass-thru partner which is a partnership, the tax matters partner of such partnership shall be responsible for forwarding copies of the notice to the partners of such partnership.

**Amendments**

**P.L. 97-248, § 402(a):**

Added Code Sec. 6223 to read as above, applicable to partnership taxable years beginning after September 3, 1982, and applicable to any partnership taxable year ending after September 3, 1982, if the partnership, each partner, and each indirect partner rquests such application and the Secretary or his delegate consents to such application. For a special rule for certain international satellite partnerships, see the amendment note for P.L. 97-248, following Code Sec. 6221.

**[Sec. 6224]**

## SEC. 6224. PARTICIPATION IN ADMINISTRATIVE PROCEEDINGS; WAIVERS; AGREEMENTS.

**[Sec. 6224(a)]**

(a) PARTICIPATION IN ADMINISTRATIVE PROCEEDINGS.—Any partner has the right to participate in any administrative proceeding relating to the determination of partnership items at the partnership level.

**[Sec. 6224(b)]**

(b) PARTNER MAY WAIVE RIGHTS.—

(1) IN GENERAL.—A partner may at any time waive—

(A) any right such partner has under this subchapter, and

(B) any restriction under this subchapter on action by the Secretary.

(2) FORM.—Any waiver under paragraph (1) shall be made by a signed notice in writing filed with the Secretary.

**[Sec. 6224(c)]**

(c) SETTLEMENT AGREEMENT.—In the absence of a showing of fraud, malfeasance, or misrepresentation of fact—

(1) BINDS ALL PARTIES.—A settlement agreement between the Secretary and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year shall (except as otherwise provided in such agreement) be binding on all parties to such agreement with respect to the determination of partnership items for such partnership taxable year. An indirect partner is bound by any such agreement entered into by the pass-thru partner unless the indirect partner has been identified as provided in section 6223(c)(3).

(2) OTHER PARTNERS HAVE RIGHT TO ENTER INTO CONSISTENT AGREEMENTS.—If the Secretary enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement. Except in the case of an election under paragraph (2) or (3) of section 6223(e) to have a settlement agreement described in this paragraph apply, this paragraph shall apply with respect to a settlement agreement entered into with a partner before notice of a final partnership administrative adjustment is mailed to the tax matters partner only if such other partner makes the request before the expiration of 150 days after the day on which such notice is mailed to the tax matters partner.

(3) TAX MATTERS PARTNER MAY BIND CERTAIN OTHER PARTNERS.—

(A) IN GENERAL.—A partner who is not a notice partner (and not a member of a notice group described in subsection (b)(2) of section 6223) shall be bound by any settlement agreement—

(i) which is entered into by the tax matters partner, and


©1988, Commerce Clearing House, Inc.

See p. 20,601 for regulations not amended to reflect law changes

§ 301.6223(c)-1T. The only interest that C holds in P is through J. The tax matters partner of J enters into a settlement agreement with the Service with respect to partnership items arising from P. C is bound by the settlement agreement entered into by the tax matters partner of J.

(b) *Person in pass-thru partner authorized to enter into settlement agreement that binds indirect partners.* In the case of a pass-thru partner that is—

(1) A partnership within the meaning of section 6231(a)(1), the tax matters partner of that partnership;

(2) A partnership other than a partnership described in paragraph (b)(1) of this section, any general partner of that partnership;

(3) An S corporation subject to the provisions of subchapter D of chapter 63 of the Code, the tax matters person of that S corporation;

(4) An S corporation other than an S corporation described in paragraph (b)(3) of this section, any officer of that S corporation; or

(5) A trust, estate, or nominee, any person authorized in writing to act on behalf of that trust, estate, or nominee may enter into a settlement agreement with the Service on behalf of its respective entity that would bind the unidentified indirect partners that hold a partnership interest through the pass-thru partner. [Temporary Reg. § 301.6224(c)-2T.]

☐ [*T.D.* 8128, 3-2-87.]

### [Reg. § 301.6224(c)-3T]

§ 301.6224(c)-3T. **Consistent settlements (Temporary).**—(a) *In general.* If the Service enters into a settlement agreement with any partner with respect to partnership items, the Service shall offer to any other partner who so requests in accordance with paragraph (c) of this section settlement terms which are consistent with those contained in the settlement agreement entered into.

(b) *Requirements for consistent settlements.* "Consistent" settlement terms are those based on the same determinations with respect to partnership items. Settlements with respect to partnership items shall be self-contained; thus, a concession by one party with respect to a partnership item may not be based upon a concession by the other party with respect to a nonpartnership item. Settlements shall be comprehensive, that is, a settlement may not be limited to selected items. The requirement for consistent settlement terms applies only if—

(1) The items were partnership items for the partner entering into the original settlement immediately before the original settlement, and

(2) The items are partnership items for the partner requesting the consistent settlement at the time the partner files the request.

(c) *Time and manner of requesting consistent settlements*—(1) *In general.* A partner desiring settlement terms consistent with the terms of any settlement agreement entered into between any other partner and the Service shall submit a written statement to the Internal Revenue Service office that entered into the settlement.

(2) *Contents of statement.* Except as otherwise provided in instructions to the taxpayer from the Service, the written statement described in paragraph (c)(1) of this section shall—

(i) Identify the statement as a request for consistent settlement terms under section 6224(c)(2),

(ii) Contain the name, address, and taxpayer identification number of the partnership and of the partner requesting the settlement offer (and, in the case of an indirect partner, of the pass-thru partner through which the indirect partner holds an interest),

(iii) Identify the earlier agreement to which the request refers, and

(iv) Be signed by the partner making the request.

(3) *Time for filing request.* The statement shall be filed not later than the later of—

(i) The 150th day after the day on which the notice of final partnership administrative adjustment is mailed to the tax matters partner, or

(ii) The 60th day after the day on which the settlement was entered into.

(d) *Examples.* The following examples illustrate the principles set out in this section.

*Example (1).* The Service seeks to disallow a $100,000 loss reported by Partnership P. The Service agrees to a settlement with X, a partner in P, in which the Service allows 60 percent of the loss and accepts the treatment of all other partnership items on the partnership return. Partner Y, which owns a 10 percent interest in the partnership, requests settlement terms which are consistent with the settlement made between X and the Service. The items are partnership items for X immediately before X enters into the settlement agreement and partnership items for Y at the time of the request. The Service must offer Y a settlement agreement allowing a $6,000 loss and otherwise reflecting the treatment of partnership items on the partnership return.

See p. 20,601 for regulations not amended to reflect law changes

*Example (2).* F files inconsistently with partnership P and reports the inconsistency. The Service notifies F that it will treat all partnership items arising from P as nonpartnership items with respect to F. Later, the Service enters into a settlement with F on these items. The Service is not required to offer the other partners of P settlement terms consistent with the settlement reached between F and the Service because at the time of the settlement the items arising from P are no longer partnership items with respect to F.

*Example (3).* G, a partner in Partnership P, filed suit under section 6228(b) after the Service failed to allow an administrative adjustment request with respect to a partnership item arising from P for a taxable year. Under section 6231(b)(1)(B), the partnership items of G for the partnership taxable year became nonpartnership items as of the date the suit was filed. After G filed suit, another partner and the Service entered into a settlement agreement with respect to items arising from P in that year. G is not entitled to consistent settlement terms because the items arising from P are no longer partnership items with respect to G. [Temporary Reg. § 301.6224(c)-3T.]

☐ [*T.D.* 8128, 3-2-87.]

### [Reg. § 301.6226(a)-1T]

**§ 301.6226(a)-1T. Principal place of business of partnership (Temporary).**—(a) *In general.* The principal place of business of a partnership for purposes of determining the appropriate district court in which a petition for a readjustment of partnership items may be filed is its principal place of business as of the date the petition is filed.

(b) *Example.* The provisions of paragraph (a) of this section may be illustrated by the following example:

*Example.* The principal place of business of partnership A on the day that the notice of the final partnership administrative adjustment was mailed to the tax matters partner of A was Cincinnati, Ohio. However, by the day on which a petition seeking judicial review of that adjustment was filed, A had moved its principal place of business to Louisville, Kentucky. For purposes of section 6226(a)(2), A's principal place of business is Louisville. [Temporary Reg. § 301.6226(a)-1T.]

☐ [*T.D.* 8128, 3-2-87.]

### [Reg. § 301.6226(b)-1T]

**§ 301.6226(b)-1T. 5-percent group (Temporary).**—All members of a 5-percent group shall join in filing any petition for judicial review. designation of a partner as a representative notice group does not authorize that partner to file a petition for a readjustment of partnership items on behalf of the notice group. [Temporary Reg. § 301.6226(b)-1T.]

☐ [*T.D.* 8128, 3-2-87.]

### [Reg. § 301.6226(e)-1T]

**§ 301.6226(e)-1T. Jurisdictional requirement for bringing an action in District Court or Claims Court (Temporary).**—(a) *Amount to be deposited*—(1) *In general.* The jurisdictional amount that the filing partner (or, in the case of a petition filed by a 5-percent group, each member of the group) shall deposit is the amount by which the tax liability of the partner would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the notice of final partnership administrative adjustment. The partner is not required to pay other outstanding liabilities in order to deposit a jurisdictional amount.

(2) *Example.* The provisions of paragraph (a)(1) of this section may be illustrated by the following example:

*Example.* A files a petition for readjustment of partnership items in the Claims Court. A's tax liability would be increased by $4,000 if partnership items on his return were conformed to the partnership return, as adjusted by the notice of final partnership administrative adjustment. A has an unpaid liability of $10,000 attributable to nonpartnership items. A is required to deposit only $4,000 in order to satisfy the jurisdictional requirement.

(b) *Deposit taken into account in computing interest.* The amount deposited is treated as a payment of tax for purposes of chapter 67 (relating to interest). Thus, the period of deposit will be treated as a period of payment for purposes of determining the interest due on any overpayment or underpayment and computing any penalty under section 6653(a)(2) or (b)(2).

(c) *Deposit generally not treated as payment of tax.* Except as provided in paragraph (b) of this section, an amount deposited under section 6226(e) shall not be treated as payment of tax. Thus, the Service may proceed against the depositor for a deficiency based on nonpartnership items without regard to this deposit.

(d) *Amount deposited may be applied against assessment.* If the restriction on assessment provided under section 6225(a) lapses with respect to a deficiency attributable to partnership items for a partnership taxable year while an amount is on t under section 6226(e) in connection with a n relating to those items, the Service may

ment not to be bound at least 90 days before the agreement was entered into. C is bound by the settlement agreement.

(c) *Statement not to be bound*—(1) *Contents of statement.* The statement referred to in paragraph (a)(2) of this section shall—

(i) Be clearly identified as a statement to deny settlement authority to the tax matters partner under section 6224(c)(3)(B),

(ii) Identify the partner and partnership by name, address, and taxpayer identification number,

(iii) Specify the taxable year or years to which the statement applies, and

(iv) Be signed by the partner filing the statement.

(2) *Place where statement is to be filed.* The statement described in paragraph (c)(1) of this section generally shall be filed with the service center with which the partnership return is filed. However, if the partner knows that the notice described in section 6223(a)(1) (beginning of an administrative proceeding) has already been mailed to the tax matters partner, the statement shall be filed with the Internal Revenue Service office that mailed that notice.

(3) *Consolidated statements.* The statement described in paragraph (c)(1) of this section may be filed with respect to more than one partner if the requirements of that paragraph (c)(1) (including signatures) are satisfied with respect to each partner. [Temporary Reg. § 301.6224(c)-1T.]

☐ [*T.D.* 8128, 3-2-87.]

## [Reg. § 301.6224(c)-2T]

§ 301.6224(c)-2T. **Pass-thru partner binds indirect partners (Temporary).**—(a) *Pass-thru partner binds unidentified indirect partners*—(1) *In general.* If a pass-thru partner enters into a settlement agreement with the Service with respect to partnership items, that agreement binds all indirect partners holding an interest in that partnership through the pass-thru partner except those indirect partners who have been identified as provided in section 6223(c)(3) and § 301.6223(c)-1T at least 30 days before the date on which the agreement is entered into. However, if, in addition to the interest in the partnership held through the pass-thru partner entering into a settlement agreement, an indirect partner holds a separate interest in that partnership, either directly or indirectly through a different pass-thru partner, the indirect partner shall not be bound by that settlement agreement with respect to the interests held directly or indirectly through a pass-thru partner other than the pass-thru partner entering into the settlement agreement.

(2) *Example.* The provisions of paragraph (a)(1) of this section may be illustrated by the following example:

*Example.* Partnership J is a partner in partnership P. C is a partner in J but has not been identified as provided in section 6223(c)(3) and § 301.6223(c)-1T. The only interest that C holds in P is through J. The tax matters partner of J enters into a settlement agreement with the Service with respect to partnership items arising from P. C is bound by the settlement agreement entered into by the tax matters partner of J.

(b) *Person in pass-thru partner authorized to enter into settlement agreement that binds indirect partners.* In the case of a pass-thru partner that is—

(1) A partnership within the meaning of section 6231(a)(1), the tax matters partner of that partnership;

(2) A partnership other than a partnership described in paragraph (b)(1) of this section, any general partner of that partnership;

(3) An S corporation subject to the provisions of subchapter D of chapter 63 of the Code, the tax matters person of that S corporation;

(4) An S corporation other than an S corporation described in paragraph (b)(3) of this section, any officer of that S corporation; or

(5) A trust, estate, or nominee, any person authorized in writing to act on behalf of that trust, estate, or nominee may enter into a settlement agreement with the Service on behalf of its respective entity that would bind the unidentified indirect partners that hold a partnership interest through the pass-thru partner. [Temporary Reg. § 301.6224(c)-2T.]

☐ [*T.D.* 8128, 3-2-87.]

## [Reg. § 301.6224(c)-3T]

§ 301.6224(c)-3T. **Consistent settlement terms (Temporary).**—(a) *In general.* If the Service enters into a settlement agreement with any partner with respect to partnership items, the Service shall offer to any other partner who so requests in accordance with paragraph (c) of this section settlement terms which are consistent with those contained in the settlement agreement entered into.

(b) *Requirements for consistent settlement terms*—(1) *In general.* Consistent settlement terms are those based on the same determinations with respect to partnership items. However, consistent settlement terms also may include partnership level determinations of any penalty, addition

to tax, or additional amount that relates to partnership items. Settlements with respect to partnership items shall be self-contained; thus, a concession by one party with respect to a partnership item may not be based upon a concession by another party with respect to any item that is not a partnership item other than any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item. Consistent agreements, whether comprehensive or partial, must be identical to the original settlement (that is, the settlement upon which the offered settlement terms are based). A consistent agreement must mirror the original settlement and may not be limited to selected items from the original settlement. Once a partner has settled a partnership item, or penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item, that partner may not subsequently request settlement terms consistent with a settlement that contains the previously settled item. The requirement for consistent settlement terms applies only if—

(i) The items were partnership items (and any related penalty, addition to tax, or additional amount) for the partner entering into the original settlement immediately before the original settlement; and

(ii) The items are partnership items (and any related penalty, addition to tax, or additional amount) for the partner requesting the consistent settlement at the time the partner files the request.

(2) *Effect of consistent agreement.* Consistent settlement terms are reflected in a consistent agreement. A consistent agreement is not a settlement agreement which gives rise to further consistent settlement rights because it is required to be given without volitional agreement of the Secretary. Therefore, a consistent agreement required to be offered to a requesting taxpayer is not a settlement agreement under section 6224(c)(2) of the Internal Revenue Code, or paragraph (c)(3) of this section which starts a new period for requesting consistent settlement terms. For all other purposes of the Internal Revenue Code, however, (e.g., binding effect under section 6224(c)(1), and conversion to nonpartnership items under section 6231(b)(1)(C)) a consistent agreement is treated as a settlement agreement.

(c) *Time and manner of requesting consistent settlements*—(1) *In general.* A partner desiring settlement terms consistent with the terms of any settlement agreement entered into between any other partner and the Service shall submit a written statement to the Internal Revenue Service office that entered into the settlement.

(2) *Contents of statement.* Except as otherwise provided in instructions to the taxpayer from the Service, the written statement described in paragraph (c)(1) of this section shall—

(i) Identify the statement as a request for consistent settlement terms under section 6224(c)(2),

(ii) Contain the name, address, and taxpayer identification number of the partnership and of the partner requesting the settlement offer (and, in the case of an indirect partner, of the pass-thru partner through which the indirect partner holds an interest),

(iii) Identify the earlier agreement to which the request refers, and

(iv) Be signed by the partner making the request.

(3) *Time for filing request.* The statement shall be filed not later than the later of—

(i) The 150th day after the day on which the notice of final partnership administrative adjustment is mailed to the tax matters partner, or

(ii) The 60th day after the day on which the settlement agreement was entered into.

(d) *Examples.* The following examples illustrate the principles set out in this section.

*Example (1).* The Service seeks to disallow a $100,000 loss reported by Partnership P. The Service agrees to a settlement with X, a partner in P, in which the Service allows 60 percent of the loss, accepts the treatment of all other partnership items on the partnership return, and imposes a penalty for negligence related to the loss disallowance. Partner Y, which owns a 10 percent interest in the partnership, requests settlement terms which are consistent with the settlement made between X and the Service. The items are partnership items (and a related penalty) for X immediately before X enters into the settlement agreement and are partnership items (and a related penalty) for Y at the time of the request. The Service must offer Y settlement terms allowing a $6,000 loss, a negligence penalty on the $4,000 disallowance, and otherwise reflecting the treatment of partnership items on the partnership return.

*Example (2).* F files inconsistently with partnership P and reports the inconsistency. The Service notifies F that it will treat all partnership items arising from P as nonpartnership items with respect to F. Later, the Service enters into a settlement with F on these items. The Service is not required to offer the other partners of P settlement terms consistent with the settlement reached between F and the Service because at the

See p. 20,601 for regulations not amended to reflect law changes

time of the settlement the items arising from P are no longer partnership items with respect to F.

*Example (3).* G, a partner in Partnership P, filed suit under section 6228(b) after the Service failed to allow an administrative adjustment request with respect to a partnership item arising from P for a taxable year. Under section 6231(b)(1)(B), the partnership items of G for the partnership taxable year became nonpartnership items as of the date the suit was filed. After G filed suit, another partner and the Service entered into a settlement agreement with respect to items arising from P in that year. G is not entitled to consistent settlement terms because the items arising from P are no longer partnership items with respect to G. [Temporary Reg. § 301.6224(c)-3T.]

☐ [*T.D.* 8128, 3-2-87. *Amended by T.D.* 8808, 1-25-99.]

### [Reg. § 301.6226(a)-1T]

**§ 301.6226(a)-1T. Principal place of business of partnership (Temporary).**—(a) *In general.* The principal place of business of a partnership for purposes of determining the appropriate district court in which a petition for a readjustment of partnership items may be filed is its principal place of business as of the date the petition is filed.

(b) *Example.* The provisions of paragraph (a) of this section may be illustrated by the following example:

*Example.* The principal place of business of partnership A on the day that the notice of the final partnership administrative adjustment was mailed to the tax matters partner of A was Cincinnati, Ohio. However, by the day on which a petition seeking judicial review of that adjustment was filed, A had moved its principal place of business to Louisville, Kentucky. For purposes of section 6226(a)(2), A's principal place of business is Louisville. [Temporary Reg. § 301.6226(a)-1T.]

☐ [*T.D.* 8128, 3-2-87.]

### [Reg. § 301.6226(b)-1T]

**§ 301.6226(b)-1T. 5-percent group (Temporary).**—All members of a 5-percent group shall join in filing any petition for judicial review. The designation of a partner as a representative of a notice group does not authorize that partner to file a petition for a readjustment of partnership items on behalf of the notice group. [Temporary Reg. § 301.6226(b)-1T.]

☐ [*T.D.* 8128, 3-2-87.]

### [Reg. § 301.6226(e)-1T]

**§ 301.6226(e)-1T. Jurisdictional requirement for bringing an action in District Court or Claims Court (Temporary).**—(a) *Amount to be deposited*—(1) *In general.* The jurisdictional amount that the filing partner (or, in the case of a petition filed by a 5-percent group, each member of the group) shall deposit is the amount by which the tax liability of the partner would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the notice of final partnership administrative adjustment. The partner is not required to pay other outstanding liabilities in order to deposit a jurisdictional amount.

(2) *Example.* The provisions of paragraph (a)(1) of this section may be illustrated by the following example:

*Example.* A files a petition for readjustment of partnership items in the Claims Court. A's tax liability would be increased by $4,000 if partnership items on his return were conformed to the partnership return, as adjusted by the notice of final partnership administrative adjustment. A has an unpaid liability of $10,000 attributable to nonpartnership items. A is required to deposit only $4,000 in order to satisfy the jurisdictional requirement.

(b) *Deposit taken into account in computing interest.* The amount deposited is treated as a payment of tax for purposes of chapter 67 (relating to interest). Thus, the period of deposit will be treated as a period of payment for purposes of determining the interest due on any overpayment or underpayment and computing any penalty under section 6653(a)(2) or (b)(2).

(c) *Deposit generally not treated as payment of tax.* Except as provided in paragraph (b) of this section, an amount deposited under section 6226(e) shall not be treated as payment of tax. Thus, the Service may proceed against the depositor for a deficiency based on nonpartnership items without regard to this deposit.

(d) *Amount deposited may be applied against assessment.* If the restriction on assessment provided under section 6225(a) lapses with respect to a deficiency attributable to partnership items for a partnership taxable year while an amount is on deposit under section 6226(e) in connection with a petition relating to those items, the Service may apply the amount deposited against any such deficiency that is assessed. [Temporary Reg. § 301.6226(e)-1T.]

☐ [*T.D.* 8128, 3-2-87.]