IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2028 T

(Consolidated with 04-907 T)

(Judge Francis M. Allegra)

KENNETH C. KEENER,

Plaintiff

v.

THE UNITED STATES,

Defendant

DEFENDANT'S OPPOSITION TO PLAINTIFFS' §6621(c) MOTION FOR PARTIAL SUMMARY JUDGMENT

## INTRODUCTION AND QUESTIONS PRESENTED

Defendant, the United States, respectfully submits this response in opposition to plaintiffs' § 6621(c) motion for partial summary judgment.

In their motion, plaintiffs seek a judgment, as a matter of law, that the IRS erroneously assessed tax motivated interest against them pursuant to former § 6621(c). Plaintiffs argue that their tax underpayments, which resulted from the disallowance of partnership losses under settlement agreements with the IRS, cannot be "attributable to tax motivated transactions" as required under former § 6621(c) for imposition of tax motivated interest. The required attribution nexus, plaintiffs say, cannot be established because their settlements did not specify any grounds for disallowing the losses; the final notices of partnership administrative adjustment

("FPAAs") issued to Keener's and Smith's partnerships before the settlements disallowed all partnership losses on multiple grounds, only some of which would attribute the disallowed losses to tax motivated transactions; and the scheme for litigating partnership items enacted by Congress as part of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") precludes requiring plaintiffs in this partner level refund action to prove that their disallowed losses were not attributable to sham transactions.

A single, but obvious flaw pervades plaintiffs' arguments. They assume that their settlement agreements were comprehensive, that is, that they settled all their partnerships' disputed partnership items. As a factual matter, that is untrue. The FPAAs issued earlier included a determination that partnership transactions were shams. The partnerships and Keener, Smith, and theri partners were contesting all of the FPAA determinations in the Tax Court. Their settlement agreements were partial. They contain no agreement on whether the partnerships' activities generating plaintiffs' disallowed losses were sham transactions. As set forth infra, the evidence before the Court reveals no genuine dispute over the partialness of the settlements.

The critical issue is the legal effect, if any, under TEFRA's statutory and regulatory scheme, of the partial settlements on the IRS' subsequent assessment of tax motivated interest against the plaintiffs. The answer is twofold. First, because the settlements left the prior IRS' FPAA sham transaction determinations undisturbed, and the Tax Court's subsequent decisions did not overturn them, the determinations continued and supported the IRS' assessment of tax motivated interest. Second, plaintiffs remained parties to the Tax Court proceedings to contest the unsettled nature of their partnerships' transactions, and therefore the Tax Court's subsequent

decisions attributing the partnerships' disallowed losses to sham transactions also supported the IRS' assessment. In sum, even though Keener's and Smith's partial settlements did not attribute the losses disallowed in them to sham transactions, TEFRA's scheme for litigating partnership items directs that the surviving FPAA sham determinations and subsequent Tax Court decisions that did do so validate the IRS' imposition of tax motivated interest.

Accordingly, the issues raised by plaintiffs' motion are three:

1. Whether plaintiffs Form 870-P(AD) settlement agreements were comprehensive - and settled all partnership items, including whether the partnerships' transactions were shams.
2. If the settlement agreements did not resolve whether the partnerships' transactions were shams, whether the IRS' FPAA determinations that the transactions that generated plaintiffs' disallowed losses were shams support the IRS' assessment of tax motivated interest against plaintiffs.
3. If the settlement agreements did not resolve all issues, whether plaintiffs remained parties to the Tax Court proceedings, and therefore the Tax Court's decisions that the partnerships' disallowed losses were attributable to sham transactions under § 6621(c)(3)(A)(v) support the IRS' assessment of tax motivated interest against plaintiffs.

## I. Factual Background and Summary Judgment Posture

For this opposition, we rely on: 1) the factual statement and supporting materials submitted with our motion to dismiss, <u>see</u> Mot. [Doc. #22] at 1-9 (citing supporting materials), to the vast majority of which plaintiffs make no objection, <u>see</u> Resp. [Doc. #36] at 1; 2) plaintiffs'

proposed findings of uncontroverted fact (and accompanying materials) to the extent admitted or revised by us in our response to them, which is being filed with this brief; 3) the facts and supporting materials set forth in our reply to plaintiffs' response to our motion to dismiss, which are largely duplicated and set forth as part of our proposed findings of uncontroverted fact, also being filed with this brief; and 4) our proposed findings of uncontroverted fact.

We see little point in reprinting those factual statements here, as defendant and plaintiffs appear to agree on a great deal of the factual matter relevant to the imposition of tax motivated interest against them. Our disagreements are clear (particularly in our response to plaintiffs' proposed findings of uncontroverted fact), and there seems little need for a largely repetitive factual statement resulting from the linkage between our motion for partial dismissal and plaintiffs' motion for partial summary judgment. We will rely throughout this brief on the facts and supporting material set forth in the factual statements.

Summary judgment is only appropriate if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party to a judgment as a matter of law." RCFC 56(c). The record must be "examined in a light most favorable to the non-movant. . . ." Falconwood Corp. v. U.S., 422 F.3d 1339, 1344 (Fed. Cir. 2005). Where the moving party bears the burden of proof at trial, as plaintiffs do here, see e.g. U.S. v. Janis, 428 U.S. 433, 440 (1976); Conway v. U.S., 326 F.3d 1268, 1278 (Fed. Cir. 2003), summary judgment is improper unless the movant is entitled to prevail as a matter of law on every essential element of its claim. See e.g. Saab Cars USA, Inc. v. U.S., 434 F.3d 1359, 1368 (Fed. Cir. 2006). Plaintiffs must therefore establish that their underpayments cannot be attributed to sham partnership transactions. They attempt to do this first, on the basis that the underpayments have never been

so attributed in the past, and second by arguing that they are not permitted to be so attributed in this proceeding, because the TEFRA scheme bars inquiry here into the nature of their partnerships' transactions. We agree that the TEFRA scheme bars inquiry in this partner level proceeding as to whether the partnerships' transactions were shams. Regarding plaintiffs' first claim, the record and applicable law in fact establish the opposite. Both the IRS' FPAA sham determinations, and the Tax Court's decisions, attribute Keener's and Smith's disallowed partnership losses (and therefore their resulting underpayments) to tax motivated transactions. They thus support the IRS' corresponding assessment of tax motivated interest. Accordingly, plaintiffs' motion should be denied.[1]

## II. Plaintiffs' Form 870-P(AD) Settlement Agreements were Partial not Comprehensive: there was no agreement that the partnership activities of AVII, AVF, RGA, and DHV, which generated Keener's and Smith's disallowed deductions, were not shams.

Before explaining why plaintiffs' settlement agreements were partial, we first review the events leading up to the settlements. The IRS issued FPAAs to plaintiffs' partnerships, AVII, AVF, RGA, and DHV, disallowing their reported losses on multiple grounds, including that the partnership transactions that generated the losses were shams. The FPAAs' determination that the loss generating partnership activities were shams was the determination of a partnership item, as defined in § 6231(a)(3). See Mot. [Doc. #22] at 30-31; see also Resp. [Doc. #36] at 34 n.71. The partnerships petitioned the Tax Court for readjustment of the FPAAs' adjustments, including the sham determinations, and plaintiffs, by statute, were parties to those proceedings.

---

[1] The remainder of this brief assumes familiarity with the discussion of the statutory and regulatory background at Mot. [Doc. #22] at 11-16.

§ 6226(c).

While *Agri-Venture-II*, *Agri-Venture-Fund*, *Richgrove*, and *Desert Highland* were proceeding in the Tax Court, plaintiffs entered Form 870-P(AD) settlements with the IRS, settling some of the amounts of partnership items adjusted by the FPAAs, for example, farming losses, but did not settle the FPAA sham determinations. Their agreements, which constitute their offers to settle certain partnership items, say nothing about the sham determination. They only purport to set forth the amounts of certain partnership items to which the IRS and plaintiffs agreed. For example, the agreements disallowed a portion of the partnership losses disallowed by the FPAAs. In addition, the agreements explicitly cabin themselves to the determinations set forth in the schedule of adjustments attached to the agreements, and the schedules on their face make no claim to comprehensiveness but merely set forth the amounts of certain partnership items to be adjusted. See e.g. PE:14 [Doc. #37] at B54 ("... the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items . . . shown on the attached schedule of adjustments."), B55. Thus, no contract, as a matter of law, could be formed on the sham issue, because the contracts, on their face, reveal no mutual intent to contract, or an unambiguous offer and acceptance of a contract, on the sham issue. See e.g. Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed. Cir. 1997); see generally Dismore, Fed. Cl. 04-1787, Reply [Doc. #31] at 3-4.

Plaintiffs, however, argue that the settlement agreements implicitly settled the sham determination, and did so in their favor. They say that the disallowance of only a portion of their reported partnership losses means they offered and the IRS accepted terms under which the disallowed deductions were not attributed to sham transactions. According to plaintiffs, if

 1682711.1

the IRS had maintained the sham position, no loss deductions would have been allowed at all.

Plaintiffs' finding of an agreement on shams from silence about them does not withstand scrutiny. The settlement agreements say nothing about the FPAA sham determination that was being contested in Tax Court proceedings and make no claim of comprehensiveness. In addition, such a contention is belied by the facts surrounding the settlement discussions.

Because plaintiffs attempt to squeeze a settlement of the sham issue into terms that on their face do not mention it but only settle amounts of certain partnership items, extrinsic evidence is permitted to demonstrate that the IRS and plaintiffs never contracted on the sham issue. See e.g. Dureiko v. U.S., 209 F.3d 1345, 1356-57 (Fed. Cir. 2000). As for plaintiffs, they have conceded that "there was no agreement that the adjustments [in their settlement agreements] resulted from tax motivated transactions as defined in §6621(c) or the relevant regulations." See e.g. Compl. (Keener) ¶ 12C; see generally Mot. [Doc. #22] at 3, 7, 9 (and accompanying citations). As for the IRS, we have shown in our reply submitted today with this opposition that the undisputed fact record reveals the IRS held the opposite view, that plaintiffs had agreed, as part of their Form 870-P(AD) settlements, to pay tax motivated interest on tax deficiencies resulting from the partial disallowance of their reported partnership losses. See Reply [Doc. #47] at Part II.B.1-2.

To summarize the discussion in our reply, the facts are supported by: 1) the declaration of Jerry Gossett (who negotiated the AMCOR settlements and whose actions in this regard plaintiffs have endorsed as representing the IRS' intent, see Resp. [Doc. #28] at 4-5);[2] 2) the

---

[2] The Gossett declaration is also attached as part of Exhibit 1 to our Statement of Uncontroverted Facts filed with our opposition to plaintiffs' motion for partial summary (continued...)

January 15, 1999 letter mailed by the IRS to AMCOR partners who had not yet entered into Form 870-P(AD) settlement agreements (wherein the IRS stated that a settling partner could seek a consistent settlement in which the IRS might concede additions to tax, but would not concede as to tax motivated interest); 3) the providing of tax motivated interest calculations in forms sent to plaintiffs within months of settlement, which explain how the settlement affected their tax liability; 4) the assessment of tax motivated interest based on the settlements within one year thereof; and 5) the IRS' defense in litigation until defeated that AMCOR partners had agreed to pay tax motivated interest as a part of their settlements.

Gossett also responds directly to plaintiffs' claim that the IRS' agreement to reduce the disallowed losses determined in the FPAA means it agreed the losses were not generated by sham transactions. He explains why the IRS believed plaintiffs and all other AMCOR partners were agreeing, as a term of settlement, to pay tax motivated interest on resulting underpayments and at the same time be allowed some of the partnership deductions the FPAAs totally disallowed. The answer is one of administrative efficiency not tax substance: the IRS, in calculating the adjustments it set forth in the schedules attached to the Form 870-P(AD) settlement agreements, offset the FPAA's total disallowance of first year partnership losses by an

---

[2](...continued)
judgment. As set forth in the Declaration of Inocentes A. Tecala preceding the Gossett Declaration, the Gossett Declaration was filed originally by the Government in United States District Court (S.D. Tex.) in Kraemer v. United States, No. 03-20176. The Kraemer case was part of the nationwide AMCOR litigation. See Kraemer v. United States, No. CIV. H-00-2948, 2002 WL 575791 (S.D.Tex. Feb. 13, 2002); Weiner v. United States, 389 F.3d 152 (5th Cir. 2004). Gossett, now retired, remains available to testify, if necessary. We understand that the original, signed declaration is on file with the district court in the Southern District of Texas. While defendant would be unable directly to provide the Court with the original (see RCFC Gen. Order 42A, VIII.29.), we presume that the district court would be able to assist the Court if it seeks confirmation regarding the declaration.

amount that credited partners for taxes they had already paid on partnership income for years succeeding the first year - because such income merely recaptured pursuant to §§ 447/481 deductions taken in the first year that were being disallowed under the settlements. From an administrative standpoint, this allowed the IRS to avoid opening and adjusting multiple years of partnership returns, and reviewing thousands of refund claims from partners for multiple years. Partners benefitted too. They would not have to claim, and would not receive, refunds for the later income years. In the IRS' view, the offset was an administrative tool and did not prevent attributing the un-offset disallowed portion of losses to sham partnership transactions.

In sum, the IRS and plaintiffs never settled the FPAA determinations that their disallowed losses derived from sham partnership transactions. Uncontroverted facts reveal an unbroken and consistent IRS' view from the mid to late 1990s until 2002 that AMCOR settling partners, including plaintiffs, agreed to pay tax motivated interest as part of their Form 870-P(AD) settlements. Plaintiffs, like other AMCOR partners, by contrast, have steadfastly maintained that they did not. The agreements on their face say nothing about tax motivated interest and do not purport to be comprehensive. Moreover, the partial allowance of deductions in the settlement resulted from IRS' calculations to promote administrative efficiency not concession of sham determinations. Accordingly, as a matter of law, the only conclusion possible is that there was no contract entered between the IRS and Keener and Smith (and all AMCOR partners) with respect to the FPAA sham determinations.[3]

---

[3] We direct the Court's attention to our arguments regarding plaintiffs' claim that IRS' representations to the Tax Court and Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) mandate concluding that plaintiffs' settlements were comprehensive and not partial. See Reply [Doc. #47] at Part II.B.1. As explained there, they do not.

**III. Because plaintiffs' settlement agreements were partial, the FPAA sham determinations and the Tax Court's decisions both support the IRS' assessment of tax motivated interest against them.**

Because the sham issue was not settled at all, much less in plaintiffs' favor, the settlement agreement does not preclude the assessment of tax motivated interest. The inquiry thus turns to whether the assessment of such interest is supportable on other grounds. The answer is yes under TEFRA's statutory/regulatory scheme for litigating partnership items. The FPAA sham determinations, not having been settled, remained contested partnership items in the Tax Court proceedings. Plaintiffs remained parties to the proceedings, as they still had an interest in whether their partnerships' (and consequently their) disallowed losses derived from sham transactions. The Tax Court's decisions did not overturn the FPAA determinations but upheld them, concluding that the partnerships' loss generating transactions were shams for purposes of former § 6621(c)(3)(A)(v). Thus, in lieu of the settlements, both the FPAA sham determinations and the Tax Court's decisions, to which plaintiffs are bound as parties, support the IRS' assessment of tax motivated interest.

We have already set forth why, under TEFRA, the FPAA sham determinations support the assessment of tax motivated interest against plaintiffs. See Mot. [Doc. #22] at 27-39. We return to the statutory/regulatory scheme here in response to arguments raised by plaintiffs, and to demonstrate how, under it, the Tax Court's decisions are res judicata as to plaintiffs' contention that their disallowed losses are not attributable to sham transactions.

Where a FPAA is involved, there are four seminal events in the TEFRA scheme for litigating partnership items: filing of a partnership return reporting partnership items, issuance of a FPAA, petition of a FPAA to court, and settlement. If the IRS seeks to adjust the partnership

items reported on a partnership return, it must mail the partners a FPAA in a timely manner. See 26 U.S.C. §§ 6223(a)(2), (d)(2), 6229(a), (d). If the IRS fails to do so, the partnership items as reported stand and cannot be adjusted. See Roberts v. Commissioner, 94 T.C. 853, 859-62 (1990). On the other hand, if the IRS issues a timely FPAA, adjusting the reporting of partnership items on a return, it falls to the partners to petition for judicial readjustment of the adjustments within 150 days of the mailing of the FPAA. See § 6226(a), (b). If a petition is not timely filed, the FPAA adjustments stand and cannot be overturned. See Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562, 566 (1989) ("Since neither the TMP [tax matters partner] nor any notice partner filed a timely petition, they have lost their right to contest, in any court, respondent's determinations in the FPAA."). If the petition is timely, then the court has the power to readjust and determine the partnership items of the partnership for the partnership taxable year. See § 6226(f). Any determination of the court, including upholding the FPAA determinations, binds the parties. See § 6226(g). If the court does not readjust the FPAA's adjustments, the adjustments stand as correct. Cf. § 6226(h) (dismissal of readjustment petition deemed decision that FPAA is correct).

Partial settlements, like plaintiffs, alter this calculus. We start with Keener's settlements, which were entered in April 1997. At that time, the statutory scheme provided that partnership items converted to nonpartnership items as of the date the IRS entered into a settlement agreement with a partner with respect to partnership items. § 6231(b)(1)(C). The statute allowed for partial settlements, and only called for the conversion of settled items. See id. (". . . partnership items of a partner . . . shall become nonpartnership items as of the date the Secretary . . . enters into a settlement agreement with the partner with respect to such items. . .



1682711.1

.")(emphasis added). The Fifth Circuit has recognized this. See Weiner v. United States, 389 F.3d 152, 156 n.2 (5th Cir. 2004). Thus, where a partial settlement was entered during a readjustment petition proceeding, the settling partner remained a party, because the partner retained an interest in the outcome with respect to unsettled items. See §§ 6226(c)(1), (d)(1)(A); 6231(b)(1)(C).

Smith's April 1999 settlements were governed in the same way, which Congress and the IRS spelled out by statutory and regulatory amendments effective respectively on August 5, 1997 and January 26, 1999. First, Congress enacted § 6229(f)(2) to clarify that the period of limitations for assessing tax attributable to settled partnership items is measured by the period of limitations applicable to the last disputed and unsettled item. The enactment of this statute recognized the obvious, that partial settlements of partnership items were possible and occurring, and that partial settlements left partners and the IRS in a dispute over unsettled partnership items. Second, by temporary regulations effective January 26, 1999, the IRS "clarif[ied] that the [partially settling] partner remains subject to the unified audit procedures regarding the nonsettled items," 64 Fed. Reg. 3837 (1999):

> Pursuant to section 6226(c), a partner is a party to a partnership level judicial proceeding with respect to partnership items. When a partner settles partnership items, the settled partnership items convert to nonpartnership items under 6231(b)(1)(C) and will not be subject to any future or pending partnership level proceeding pursuant to section 6226(d)(1). The remaining unsettled partnership items, however, will remain subject to determination under partnership level administrative and judicial procedures. Consequently, any remaining unsettled items will be deemed to remain in dispute. Thus, the period for assessing settled items will be governed by the period for assessing the remaining unsettled items.

Temp. Treas. Reg. § 301.6229(f)-1T(b)(1999). The regulation, as stated, merely clarified the pre-August 5, 1997 statutory scheme.

Two results follow from the partial nature of plaintiffs' settlements and their consequently remaining parties to the Tax Court proceedings. First, the FPAA sham determination, having been undisturbed by the settlements, remained a contested partnership item in the Tax Court proceedings and, because not disturbed by the Tax Court's ultimate decisions, a valid basis for assessment of tax motivated interest. We have explained this conclusion in detail in our motion to dismiss. We here emphasize only the assessment power with which the TEFRA scheme imbues a FPAA determination. In accord with the scheme described supra, under TEFRA, FPAA determinations support assessment where a timely noticed taxpayer takes no action in response to an FPAA or takes untimely action in petitioning an FPAA to court, see Genesis Oil, 93 T.C. at 566, while a readjustment proceeding in district court or the Court of Federal Claims remains in its infancy, § 6225(a), or after a judicial proceeding where the court does not readjust the FPAA's adjustments, for example, dismisses a petition for failure to comply with the jurisdictional deposit requirement of § 6226(e), § 6226(h). As will be seen infra, the failure to give due deference to an FPAA determination was one of the flaws in the Fifth Circuit's decision in Weiner v. U.S., 389 F.3d 152, which, not surprisingly, relied on non-TEFRA cases. Properly understood, the TEFRA scheme directs deference to an FPAA determination by permitting it to support assessment unless settled or overturned by judicial decision.

Second, plaintiffs are bound by the Tax Court's July 19, 2001 decisions in *Agri-Venture-II*, *Agri-Venture-Fund*, *Richgrove*, and *Desert Highland*, wherein the Tax Court decided that the disallowed losses of AVII, AVF, RGA, and DHV were attributable to sham transactions for purposes of § 6621(c)(3)(A)(v). Prior to settlement, Keener and Smith were parties to those

proceedings by statute, § 6226(c). Because plaintiffs' settlement agreements were partial, they remained parties to those proceedings after settlement. They are thus barred by the doctrine of res judicata from claiming that their disallowed losses are not attributable to sham transactions.

"Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5 (1979). The Supreme Court has specifically held that *res judicata* is applicable in federal tax cases. Commissioner v. Sunnen, 333 U.S. 591, 598-99 (1948). A finding of res judicata requires "'that: (1) the court's prior decision must be a valid and final judgment, (2) the suit before the court must involve the same claim or cause of action as in the prior decision, (3) the prior decision must have been made on the merits of the case, and (4) the same parties must be involved in both cases.'" Lyons v. U.S., 45 Fed. Cl. 399, 403 (1999) (quoting Mosca v. United States, 224 Ct. Cl. 678, 679, 650 F.2d 288 (1980)). "Additionally, the Supreme Court has attached significant importance in making sure the nonmovant has had a full and fair opportunity to litigate the claim below." Id. (quotation omitted).

The first requirement is satisfied, for the Tax Courts' July 19, 2001 decisions were valid and final judgments. Notice partners of AVII, AVF, RGA, and DHV, filed readjustment petitions pursuant to § 6226(b). Thus, under § 6226(f), the Tax Court had "jurisdiction to determine all partnership items of [each] . . . partnership for the partnership taxable year to which the [FPAA] relates and the proper allocation of such items among the partners." Pursuant to § 6226(g), the Tax Court's decisions were valid and subject to review just as any other decision of the Tax Court:

> Any determination by a court under this section shall have the force and effect of a decision of the Tax Court . . . and shall be reviewable as such.

Finally, under § 7483, the decisions became final 90 days after entered, *i.e.*, on October 17, 2001.

The second requirement – that both suits must involve the same claim or cause of action – is also satisfied. In comparing claims, the Federal Circuit has endorsed a transactional test. Foster v. Hallco Mfg. Co., Inc., 947 F.2d 469, 479 (Fed. Cir. 1991). The test focuses on whether two claims are based on a "common nucleus of operative facts," not whether the relief requested or legal theories asserted are the same. Lyons, at 403-404.

As regards tax motivated interest, both *Agri-Venture-II*, *Agri-Venture-Fund*, *Richgrove*, and *Desert Highland* and plaintiffs' claims here rest on identical factual grounds, that the partnerships' disallowed deductions were not generated by sham transactions. The FPAAs issued to AVII, AVF, RGA, and DHV disallowed the losses reported on the partnerships' returns for 1984 and 1985, and asserted as one ground that the partnerships' activities were shams. Notice partners filed readjustment petitions with the Tax Court, specifically contesting the sham determinations. Under § 6226(f), the Tax Court had jurisdiction to determine the partnership items of AVII, AVF, RGA, and DHV, including whether their loss generating activities were shams. The Tax Court's decisions disallowed a portion of the deductions disallowed by the FPAAs and attributed the disallowed deductions to tax motivated transactions for purposes of § 6621(c).

Plaintiffs' claim for refund of tax motivated interest in the present proceeding is identical to the claim at issue before the Tax Court. Plaintiffs contend that the partnership losses disallowed by their settlement agreements cannot be attributed to tax motivated sham

transactions. While their legal theory they now advance is different than that asserted in the Tax Court - they contend the Court has no jurisdiction to consider the merits of the sham determinations whereas the merits were at issue in the Tax Court - the identical factual nucleus is involved: the nature of the partnerships' transactions that gave rise to the partnerships' disallowed deductions. The Tax Court decided the issue in the Commissioner's favor, and plaintiffs cannot avoid that ruling here.[4]

The decisions of the Tax Court in *Agri-Venture-II*, *Agri-Venture-Fund*, *Richgrove*, and *Desert Highland*, were decisions on the merits, thus satisfying the third requirement of *res judicata*. The decisions were entered on July 19, 2001, pursuant to motions for entry of decision filed April 13, 2001. See Stat. Uncontroverted Facts ¶ 11 Ex. 2. The motions reflect the agreement of the Commissioner and the tax matters partner of AVII, AVF, RGA, and DHV to be bound by the July 19, 2001 decisions, including the attributing of deductions disallowed thereunder to sham transactions for purposes of § 6621(c), see id. at 6 ¶ 20, 13 ¶¶ i, j, 14 ¶ 4, 15 ¶ 7. Tax decisions based on an agreement of the parties are *res judicata*. See U.S. v. International Bldg. Co., 345 U.S. 502, 506 (1953); Erickson v. U.S., 159 Ct. Cl. 202, 217, 309

[4] It is of no moment that the decision computations of disallowed deductions differ slightly from the settlement computations. As explained in the Motion for Entry of Decision, the portion of partnership losses disallowed by the decisions in *Agri-Venture-II, Agri-Venture Fund*, *Richgrove*, and *Desert Highland* and attributed to sham transactions constituted the amount remaining after partners were allowed an offset for tax they had already paid on partnership income that merely recaptured deductions from the partnerships' first year. Thus, as an administrative matter, the IRS would not have to deal with opening years of partnership and partner returns, and partners would not have to claim, and would not receive, refunds for later years. Thus, the settlement computations followed the same methodology the IRS used to calculate the adjustment amounts it set forth in the Form 870-P(AD) settlements. Under both computations, allowed deductions offset total disallowance as credits for tax paid on recapture income, whereas the un-offset disallowed deductions remain, as always, attributable to sham transactions. See Stat. Uncontroverted Facts ¶ 11.

F.2d 760, 768 (1962). Accordingly, the decisions were merits based determinations on the unsettled sham issue and with respect to which plaintiffs remained parties.

The final requirements for application of *res judicata* are that the same parties must be involved in both cases and have had a full and fair opportunity to litigate in the prior proceeding. By statute, plaintiffs were parties in *Agri-Venture-II*, *Agri-Venture-Fund*, *Richgrove*, and *Desert Highland*, with full rights to participate and litigate the sham determinations. § 6226(c)(1) and (2). Indeed, Smith exercised his rights by electing to participate in RGA and DHV. See PE:44 [Doc. #39] at B224; PE:59 [Doc. #40] at B317. Their settlement agreements did not divest them of their party status pursuant to § 6226(d)(1)(A), as they retained an interest in the unsettled sham determination. Therefore, the final requirement for application of *res judicata* is met in this case.

To summarize, the Court should deny plaintiffs' motion. The undisturbed FPAA sham determinations sustain the IRS' assessment of tax motivated interest against Keener and Smith. In addition, Keener and Smith are bound by the Tax Court's July 19, 2001 decisions, which, in accord with the FPAA determinations, determined that their partnerships' disallowed partnership deductions were attributable to sham transactions. The decisions therefore also support the IRS' assessment.

## IV. The Court should not follow Weiner.

Relying on the Fifth Circuit's decision in Weiner, plaintiffs contend that the IRS erroneously assessed tax motivated interest against them, because the disallowance of partnership losses (and resulting tax underpayments) under their settlements cannot be attributed

to tax motivated transactions. They point out that their settlement agreements do not provide the required nexus, and argue that the FPAAs issued to AVII, AVF, RGA, and DHV cannot. They reason that the FPAAs disallowed the losses on multiple grounds, and only some of the grounds support attributing the losses to sham transactions. Furthermore, say plaintiffs, the required nexus cannot be established in the present proceeding, because the sham nature of a partnership transaction is a partnership item that cannot be litigated in a partner level proceeding. We agree that the nature of the partnership transactions is beyond the jurisdictional scope of the Court in the present proceeding. The Fifth Circuit accepted plaintiffs' former arguments, stating:

> The same situation is present in these cases: the taxpayers settled or conceded the disallowances and paid the delinquent taxes, thus removing the need for a trial on the merits of those issues. This court can conceive of no good reason to treat the taxpayers in this case differently from the taxpayers in *Todd*, *McCrary*, *Heasley*, *Rogers*, or *Schachter*. There is no way, given the multiple reasons provided for the disallowance in the FPAAs, to determine whether the underpayments are "attributable to" a tax motivated transaction.

Weiner, 389 F.3d at 162.

The Weiner appellate panel was not presented with, and therefore did not address, our current jurisdictional and *res judicata* arguments regarding tax motivated interest, which are based on the partialness of Keener's and Smith's settlements and the effect thereof under TEFRA. Weiner also relied on cases outside the TEFRA partnership context. See Mot. [Doc. #22] at 35 and n.25. Before the Fifth Circuit in Weiner, the United States argued unsuccessfully that the district court had jurisdiction to determine whether taxpayers overpaid § 6621(c) interest, and, accordingly, to make findings incident to such determination, including findings that a partnership engaged in sham or fraudulent transactions. See Stat. Uncontroverted Facts ¶ 12, Ex. 3. We followed suit in our initial briefs to this Court in the original three

AMCOR representative cases. See Isler, Fed. Cl. No. 01-344 T, Resp. [Doc. #71] at 20-22; Scuteri, Fed. Cl. No. 01-358 T, Resp. [Doc. #60] at 17-19; Prati, Fed. Cl. No. 02-60 T, Resp. [Doc. #47] at 20-23. However, we subsequently withdrew the argument and replaced it with the arguments made in our motion to dismiss here, explaining to the Court that the earlier argument was the subject of internal debate within the Tax Division and that the replacement arguments represented the resolution of the debate. See Isler, Fed. Cl. No. 01-344 T, Mot. [Doc. #102] at 2-3; Scuteri, Fed. Cl. No. 01-358, Mot. [Doc. #72] at 2.

The Fifth Circuit therefore did not consider the result that obtains under TEFRA, where a taxpayer settles some disputed partnership items but not the sham nature of the partnerships' transactions. We have explained in our motion to dismiss, our reply in support of it, and here that, in such circumstance, FPAA sham determinations remain valid unless readjusted by a court, and that partially settling partners remain parties to the partnership proceedings and are bound by any subsequent decision on unsettled matters. Thus, either the FPAA determinations or judicial decisions can support imposition of tax motivated interest against partners who did not settle the sham issue but settled other partnership items. These conclusions follow the statutory and regulatory scheme governing partial settlements of partnership items and honor the deferential position FPAA determinations hold under TEFRA.

Accordingly, applying the Fifth Circuit's decision in Weiner here would contravene the law of partial settlements and degrade FPAA sham determinations. With respect to partial settlements, it would permit a partner to settle some partnership items and, as to unsettled items, avoid both the FPAA and a subsequent unfavorable judicial decision on unsettled items.

With respect to FPAA determinations, the situation grows even worse. As we explained

supra, FPAA determinations support assessment 1) where a timely noticed taxpayer takes no action in response to an FPAA or takes untimely action in petitioning an FPAA to court, see Genesis Oil, 93 T.C. at 566, 2) while a readjustment proceeding in district court or the Court of Federal Claims remains in its infancy, § 6225(a), or 3) after a judicial proceeding where the court does not readjust the FPAA's adjustments, for example, dismisses a petition for failure to comply with the jurisdictional deposit requirement of § 6226(e), § 6226(h). In each instance, the determination is undisturbed and, if it is a determination that transactions were a sham, supports the imposition of tax motivated interest. Thus, it is irrelevant that one valid FPAA determination would not support imposition of tax motivated interest where at least one FPAA determination would and has not been readjusted. However, under Weiner, in any of these scenarios, a taxpayer avoids paying tax motivated interest if the FPAA contains multiple grounds to disallow deductions and a court or settlement do not express whether the resolved tax liability is based on grounds that also would support tax motivated interest. A taxpayer might thus avoid tax motivated interest simply by doing nothing after receipt of an FPAA - after paying the assessment and commencing a partner level action, the taxpayer will argue that the FPAA sham determination cannot be evaluated due to the bifurcation of proceedings mandated by TEFRA and cannot, as a matter of law, support imposing tax motivated interest because other determinations in the same FPAA would not. Congress did not craft such a loophole.[5]

---

[5] By degrading FPAA determinations, plaintiffs' Weiner argument improperly attempts to shift the burden to us to prove that their underpayments were attributable to sham transactions. Although we have explained that the FPAA determinations validly attribute plaintiffs' underpayments to tax motivated transactions, in the present refund suits, it is plaintiffs' burden to show that they overpaid their tax liabilities, here, that their underpayments were not so attributable. See e.g. United States v. Janis, 428 U.S. 433, 440 (1976); Conway v. U.S., 326 F.3d (continued...)

Finally, the Weiner court was concerned with judicial economy, and perceived no reason to hold in favor of an additional full round of litigation at the partner level after a settlement agreement at the partnership level. That concern does not apply here. We do not contend that an additional round of litigation should be conducted at the partner level to decide whether partnership transactions were shams. Instead, we agree this Court has no such jurisdiction. Rather, we maintain that partners who settle only some of their partnership items are subject to the law of partial settlements, and, as applied here, were properly assessed tax motivated interest. No more litigation is needed here to establish the basis for the imposition of tax motivated interest.

For the same reasons Weiner should not apply here, plaintiffs' reliance on other decisions is misplaced.[6] None of those cases were partnership cases decided under TEFRA, and therefore

---

[5](...continued)
1268, 1278 (Fed. Cir. 2003). The assessment of tax motivated interest against plaintiffs is entitled to a presumption of correctness. See e.g. United States v. Fior D'Italia, Inc., 536 U.S. 238, 243 (2002) ("An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. It is well established in the tax law than an assessment is entitled to a legal presumption of correctness - - a presumption that can help the Government prove its case against a taxpayer in court."); Conway, 326 F.3d at 1278; see also Esposito v. United States, - - Fed. Cl. - -, 2006 WL 800757, at *4 (Mar. 27, 2006) (citing cases). Thus, plaintiffs have the task of demonstrating the assessment of tax motivated interest incorrect. Under TEFRA, however, they cannot meet that burden in a partner level proceeding, because they would have to prove that the FPAA was incorrect in determining that their partnership deductions (and corresponding underpayments) were attributable to sham transactions, and such partnership level determinations are beyond the jurisdictional scope of the present proceeding.

[6] Heasley v. Commissioner, 902 F.2d 380, 382-82 (5th Cir. 1990), Gainer v. Commissioner, 893 F.2d 225 (9th Cir. l990), Todd v. Commissioner, 862 F.2d 540 (5th Cir. l988), Schachter v. Commissioner, 67 T.C.M. (CCH) 3092 (1994), Rodgers v. Commissioner, 60 T.C.M. (CCH) 1386 (1990), and McCrary v. Commissioner, 92 T.C. 827 (1989), and Law v. Commissioner, 84 T.C. 985 (1985).

none of them addresses the law of partial settlements in the partnership context. There are also additional reasons these cases do not apply here.

In Heasley, the Court did not hold that taxpayers' concession of the underlying deficiencies without conceding a specific ground for liability automatically exempted them from § 6621(c) interest. To the contrary, the Fifth Circuit considered whether there was a tax motivated transaction under either § 6621(c)(3)(A)(i) or Temp. Treas. Reg. § 301.6621-2T, Q4. Heasley, 902 F.2d at 385-86. Only after a thorough analysis of the facts did the court hold that the transaction was not tax motivated.

Gainer, Todd, and McCrary, are also inapposite. In those cases, taxpayers were not liable for the § 6621(c) interest when it had been established that the tax underpayment was not attributable to a tax motivated transaction. In Gainer and Todd, which involved the overvaluation penalty,[7] the Tax Court had found that the tax underpayment resulted from the failure to place the assets in service in the years for which the deductions had been taken. The courts then refused to impose the overvaluation penalty because the tax underpayment was not "attributable to" overvaluation.

In McCrary, the tax deficiency resulted from the fact, conceded by taxpayers, that they were licensees of the master recording, not lessees, and thus not entitled to claim an investment tax credit. The court ruled that in light of the taxpayers' concession, it could not be said that the underpayment of their tax was attributable to a tax motivated transaction described in § 6621(c).

Here, however, there has been no concession or judicial finding that precludes the

---

[7] Under former § 6659(a) an overvaluation penalty ranging from 10% to 30% of the tax underpayment was imposed when a tax underpayment was attributable to a valuation overstatement.

assessment of tax motivated interest. Neither the settlement agreement nor the decisions of the Tax Court specified that the only grounds for tax liability were ones that would not support tax motivated interest. Rather, the Tax Court decisions upheld the FPAA sham determination by deciding that the disallowed losses of AVII, AVF, RGA, and DHV were attributable to sham transactions. Accordingly, under TEFRA, both the sham determination and the Tax Court's decisions support attributing plaintiffs' underpayments to tax motivated interest.

In the absence of a finding or concession precluding imposition of tax motivated interest, the formula in Temp. Treas. Reg. § 301.6621-2T, A-5 (1984), for determining the amount of a tax underpayment that is attributable to a tax motivated transaction, does not aid plaintiffs. Under that formula, the amount of the tax motivated underpayment equals the difference between the total tax liability for the year (computed as if all items had been correctly reported) and the tax liability computed without regard to tax motivated transactions. Plaintiffs mistakenly rely on that formula to assert that their total tax liability equaled their tax liability computed without regard to tax motivated transactions, and that, therefore, their tax underpayments were not attributable to any extent to tax motivated transactions. This erroneous conclusion is based on plaintiffs' assumption that every grounds for disallowance in the FPAAs has been conceded or specifically found applicable, when, in fact, plaintiffs' settlement agreements are silent on the grounds supporting the adjustments. In the face of such silence, the formula must be applied within the bounds of the deference due an FPAA determination under TEFRA. Under that scheme, the FPAA sham determination supports an assessment of tax motivated interest as long as it is not disturbed, for example, because the taxpayer does nothing after receipt of the FPAA. Accordingly, the determination stands on its own when making calculations under the formula,

without regard to other FPAA determinations that have not been found or conceded to be applicable. In addition, plaintiffs assume they are not bound by the Tax Court decisions upholding the FPAA sham determination. They are wrong, and those decisions explicitly provide for imposition of tax motivated interest under the formula. Indeed, the IRS provided calculations under the formula to plaintiffs in explaining the effect of their settlements on their tax liability. See [PE:17 at B62, B64-B66][PE:29 at B147, B149-B151][PE:50 at B252, B254-B255][PE:63 at B338-B340].[8]

Taxpayers also rely on certain unappealed Tax Court decisions, such as Rodgers v. Commissioner, 60 T.C.M. (CCH) 1386 (1990), and Schachter v. Commissioner, 67 T.C.M. (CCH) 3092 (1994), where taxpayers avoided § 6621(c) interest by conceding the tax underpayment without conceding the ground for the underpayment. For example, in Schachter, taxpayers conceded certain deductions in a closing agreement and in a stipulation of settled issues, but neither document stated the grounds for the concession. The Tax Court declined to force taxpayers to meet their burden of proving that the transaction was not tax motivated, and it relieved them of liability for § 6621(c) interest. The court reasoned (id. at 3094):

---

[8] Contrary to plaintiffs' contention, the Tax Court's refusal to allow the Commissioner to seek § 6621(c) interest in Law v. Commissioner, 84 T.C. 985 (1985), was not based primarily on the Commissioner's assertion of numerous, alternative grounds for disallowing the partnership's losses. Section 6621(c) had been enacted after the trial in Law, and the Commissioner had filed a post-trial motion to amend his answer to assert taxpayers' liability for this interest. The untimeliness of the motion, which would have severely prejudiced taxpayers in the context of that case, caused the Tax Court to prevent the Commissioner from amending his answer to invoke § 6621(c) after the taxpayers' submission of their final brief.

Plaintiffs' reliance on an IRS litigation guideline memorandum, 1992 LGM TL-68, 1992 WL 1355154, is misplaced. The LGM explicitly states that it may not be used or cited as precedent. See also I.R.C. § 6110(j)(3); Keene v. Commissioner, 121 T.C. No. 2 at n.1 (2003).

> The objectives of administrative efficiency and judicial economy have been well served by the closing agreement and petitioner's concession. Those objectives would not be served by requiring a trial on the substantive issues for the sole purpose of determining whether petitioner is liable for 20 percent more interest on the deficiency under section 6621(c).

As an initial matter, we note, as above with Weiner, that concerns for judicial economy do not favor plaintiffs here, because we do not ask the Court to force them to prove that their partnerships' transactions were not tax motivated. Instead, we urge application of the law of partial settlements under TEFRA, with the result that no further proceedings are necessary on plaintiffs' claims for tax motivated interest - as they raise no partner level tax motivated interest issues.

In addition, Schachter is incorrect and should not be followed. The courts do not have the authority to prevent the assessment of enhanced interest provided in § 6621(c) for reasons of "administrative efficiency and judicial economy," or any other "equitable" reason. The statute makes it clear that imposition of this interest is mandatory in every case that falls within its scope. It provides:

> In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest established under this section shall be 120 percent of the underpayment rate established under his section.

§ 6621(c)(1) (emphasis added). When Congress has intended to provide equitable relief from a tax or penalty, it has done so explicitly. See, e.g., § 6404 (authorizing abatement of taxes and interest attributable to any IRS error or delay in performing a ministerial act); former § 6661(c) (authorizing Commissioner to waive substantial understatement penalty in specified circumstances); § 6015(f) (1986 Code, as amended) (authorizing equitable relief from tax liability for the innocent spouse in certain circumstances). But § 6621(c) applies automatically

to the extent an underpayment is attributable to a tax motivated transaction. There is nothing in the language of the statute that would allow a taxpayer to avoid liability for the increased interest provided therein by conceding or settling his tax liability.[9]

## V. Conclusion

Plaintiffs' motion for partial summary judgment should be denied. Undisturbed FPAA sham determinations and Tax Court decisions sustain the IRS' assessment of tax motivated interest against Keener and Smith.

---

[9] The mandating of tax motivated interest for transactions within the scope of § 6621(c) also responds to another concern mentioned in Weiner:

> Additionally, § 6621(c) was one of the provisions enacted by Congress "to deal with the Tax Court backlog." *Todd*, 862 F.2d at 544 n.14. Yet, fifteen years after the statute's repeal, imposing the penalty in situations such as this does nothing to relieve the Tax Court's backlog, when taxpayers have in fact settled with the IRS.

Weiner, 389 F.3d at 162-63. But the statute requires imposition of tax motivated interest here, because undisturbed FPAA sham determinations and Tax Court decisions attribute plaintiffs' disallowed losses to sham transactions. And Congress, on the very same page it referred to enhanced interest under § 6621(c) as one of "a number of . . . provisions . . . designed , in whole or in part, to deal with the Tax Court backlog," also exhorted the IRS to "assert, without hesitancy in appropriate circumstances, the penalties that the Congress has provided." H.R. Conf. Rep. No. 98-861, at 985 (1984), reprinted in 1984-3 C.B. Vol. II at 239.

Finally, plaintiffs argue that it is unfair to subject them to tax motivated interest where they had no control over the operations of the partnership. We have addressed a similar argument in our reply brief, filed today. In short,

> '[I]t might well be more just that taxpayers who unwittingly enter into sham transactions in hopes of making a profit should not be treated as harshly as taxpayers who do so knowing full well that they are engaging in a sham. Unfortunately, this is not the law, which is dictated here by the inflexible terms of § 6621(c) and the law defining "sham transactions."'

Thompson v. United States, 223 F.3d 1206, 1213 (10th Cir. 2000) (quoting Thomas v. United States, 166 F.3d 825, 834-35 (6th Cir. 1999) (Boggs, J., concurring)).

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Acting Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

May 5, 2006