IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2028 T

(Consolidated with 04-907 T)

(Judge Francis M. Allegra)

KENNETH C. KEENER,

Plaintiff

v.

THE UNITED STATES,

Defendant

DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT WITH RESPECT TO THEIR § 6621(c) MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to RCFC 56(h)(2), defendant responds as follows to plaintiffs' proposed findings of uncontroverted fact with respect to their § 6621(c) motion for partial summary judgment (every asserted fact not admitted is denied).

**Keener - Agri-Venture II for 1984**

l. In 1984, Plaintiff Kenneth C. Keener ("Kenner") was a limited partner in Agri-Venture II, a California limited partnership ("AV2"). [PE:1 at B1][1]

RESPONSE:

Admits.

[1] References to [B**] are to specific numbered pages to Plaintiffs' Exhibits included in Appendix B to Plaintiffs' Motion for Partial Summary Judgment.

2. For 1984, AV2 reported an ordinary loss of Schedule F - Farming Expenses in the amount of $23,926,643.00 and Other Deductions of $416,189.00 on its Form 1065, U.S. Partnership Return of Income. [PE:2 at B6]

RESPONSE:

Admits; however, notes that the FPAA only shows the adjustments to the expenses and other deductions reported on the Form 1065, not the actual expenses and other deductions reported on the Form 1065 before adjustment.

3. Keener invested $50,000.00 in AV2. [PE:1 at B1].

RESPONSE:

Admits.

4. On his 1984 Form 1040, Keener recognized and reported his share of the AV2 losses, $151,142.00. [PE:3 at B14].

RESPONSE:

Admits.

5. Keener's ratio of tax benefits to cash invested was only 3.02 to 1. ($151,142 ÷ $50,000).

RESPONSE:

Admits, except as to plaintiffs' characterization of the ratio as "only" 3.02 to 1. Such a ratio generally yields greater tax savings than the cash invested. See response to Proposed

Finding #8.

6. Keener's taxable income, taking into account the AV2 deduction, was $124,006.30. [PE:3 at B13].

<u>RESPONSE</u>:

Admits.

7. Keener's marginal tax rate was 50%. [PE:4]

<u>RESPONSE</u>:

Admits.

8. Therefore, his initial tax savings from AV2 was approximately $75,571 ($151,142 x 50%), which is only $25,571.00 more than his cash investment in AV2 ($75,571 - $50,000).

<u>RESPONSE</u>:

Admits, except as to plaintiffs' characterization that he "only" saved $25,571 more than he contributed, $50,000. That amounts to a 50% return on investment.

9. As a consequence of his investment Keener was required to pick up and report in subsequent years "phantom income" in the amount of his 1984 AV2 loss in excess of his cash investment ($151,142 - $50,000 = $101,142). Over the years AV2 reported and Keener declared and paid tax on all $101,142 of that phantom income. [PE:5; PE:6 at B21; PE:7 at B25; PE:8 at B29]. Consequently, Keener had no long-term net tax savings from the AV2 investment.

RESPONSE:

Admits that AVII reported income after the first year of its existence that recaptured some of the deductions it claimed in the first year. Denies that the referenced pages of plaintiff's exhibits support the proposed finding that plaintiff declared and paid tax on $101,142 of phantom income from AV2. First, the exhibits relate only to years 1985, 1986, 1991, and 1992, not for all years for which plaintiff was a partner in AV2; and second, the income reported from AV2 for years 1986, 1991, and 1992 does not amount to $101,142. States that, even if Keener did report and pay tax on $101,142 of recaptured AVII income, he would only appear therefore to have had no "net tax savings": in such case, Keener's reported losses from AVII preceded by several years his reporting of substantial AVII income (for example, his reported AVII income for years 1991 and 1992 is in excess of $41,000) - thus, Keener's "net tax savings" do not appropriately gage the time value of money benefit he derived from his participation in AVII.

10. On April 10, 1991 the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") for AV2 for 1984 and 1985. [PE:2]

RESPONSE:

Admits.

11. The FPAA stated it was the IRS's proposed "adjustments to the partnership return" and proposed to totally disallow all of the $23,926,643.00 Schedule F- Farming Expenses and all of the $416,189.00 in Other Deductions reported on the AV2 Form 1065 for 1984. [PE:2 at B3 and B6].

RESPONSE:

Denies.

PROPOSED REVISION: The FPAA made no proposals, rather it "determined that there are adjustments to the partnership return as shown on the attached schedule of adjustments. . . ." [PE:2 at B3]. Among other determinations, "[i]t . . . determined that the farming expenses claimed on Schedule F in the amount[] of $23,926,643.00 . . . and Other Deductions claimed on line 22, page 1 of Form 1065 in the amount[] of $416,189.00 . . . for the taxable period[] ending December 31, 1984 . . . are not allowable. . . ." [PE:2 at B8].

12. The FPAA made no adjustments to the 1985 phantom income reported on the AV2 Form 1065 for 1985. [PE:2 at B6-B7].

RESPONSE:

Denies. The referenced pages of plaintiffs' exhibits do not appear to support the assertion. Admits that the IRS generally made no adjustments to income reported by AMCOR partnerships that recaptured loss deductions in later years from the first year of the partnerships.

13. The four page "Explanation of Adjustments" to the FPAA asserted twenty different grounds for totally disallowing the partnerships' "Schedule F-Farm Expenses" and Other Deductions, including:

1. The partnership's activities constitute a series of sham transactions.
2. The partnership's activities lack economic substance.
3. The partnership did not engage in the trade or business of farming during the taxable periods.

4. The partnership has not substantiated any of the expenses it claimed it paid or incurred during the taxable periods.

5. The partnership did not pay or incur any bona fide trade or business expenses during the taxable periods.

6. If it is determined that the partnership did pay or incur expenses during the taxable periods, it has not been established that the expenses paid or incurred were ordinary and necessary trade or business expenses currently deductible under § 162 of the Internal Revenue Code and the Regulations thereunder.

7. The partnership has not substantiated its claimed cost or other basis in the alleged qualified investment property.

8. The partnership has not clearly described which property it is claiming is qualified for the investment tax credit.

9. The partnership has not established that it acquired tangible personal property or other tangible property that qualifies for the investment credit, and that such property both was placed in service during the year in question and was used in a trade or business that year.

[PE:2 at B8-B11].

RESPONSE:

Admits in large part, but notes that not every one of the asserted grounds by itself purports to disallow in total the claimed farming expenses and other deductions. Denies that the FPAA asserted the ninth enumerated ground set forth above.

14. On July 10, 1991, a partner other than the tax matters partner ("TMP") filed a § 6226(b) partnership-level case in the Tax Court based on the AV2 1984 FPAA (Docket No. 15048-91). [PE:11].

RESPONSE:

Admits, but notes that the referenced pages do not appear to support the assertion. The petition is available to the Court at Mot. [Doc. #22] Ex. 1, App. B.

PROPOSED REVISION:

On July 10, 1991, notice partners of AVII filed in the United States Tax Court petitions for readjustment contesting adjustments made in an FPAA issued to AVII, *Agri-Venture-II, Lloyd T. And Mary Ann Whitaker, A Partner Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15048-91, ("*Agri-Venture-II*"). See Mot. [Doc. #22] Ex. 1, App. B. The readjustment petition raised numerous challenges to the FPAA adjustments, including that the period for assessing tax attributable to the adjusted partnership items expired prior to issuance of the FPAA and that the IRS had erred in determining that the partnerships' activities constituted a series of sham transactions. See Mot. [Doc. #22] Ex. 1, App. B at B2-5.

15. Keener did not file an election to participate in that proceeding. [PE:11].

RESPONSE:

Admits.

16. On September 28, 1995, Keener sent an advance remittance of $91,542.91 to be posted to his 1984 tax account. [PE:12 at B52 and PE:13 at B53].

RESPONSE:

Admits that an advance remittance in the amount of $95,542.91 was posted to Keener's 1984 tax account as a cash bond on October 2, 1995. [PE:13 at B53].

17. On March 21, 1997, Keener offered to settle his disputed partnership items with the

IRS by executing a Form 870-P(AD) for 1984. The IRS accepted that offer by countersigning the Form 870-P(AD) on April 28, 1997. [PE:14 at B54-B55].

RESPONSE:

Denies.

PROPOSED REVISION:

While *Agri-Venture-II* was proceeding in the Tax Court, the IRS and Keener entered into settlement agreements with respect to some of the FPAA determinations of the partnership items of AVII for 1984. See Compl. ¶¶ 7, 12A, 12C, 12I [Doc. #22] App. C at C8-11.

On March 21, 1997, Keener offered to settle some of his disputed AVII partnership items with the IRS by executing a Form 870-P(AD) for 1984. The IRS accepted that offer by countersigning the Form 870-P(AD) on April 28, 1997. Compare [PE:14 at B54-B55] with e.g. Mot. [Doc. #22] Ex. 1, App. B at B4 (¶ 10.A.), B5 (¶ 10.I.).

The settlement was partial and did not reach an agreement with respect to every determination made in or related to the FPAA, including that the IRS and Keener did not reach any agreement on the period of limitations challenge to the timeliness of the issuance of the FPAA raised by the petition for readjustment in the Tax Court or on the determination of the FPAA that AVII's partnership activities from which the claimed loss deductions derived were sham transactions. See Compl. ¶¶ 7, 12A, 12C, 12I, [Doc. #22] App. C at C8-11; compare [PE:14 at B54-B55] with e.g. Mot. [Doc. #22] Ex. 1, App. B at B4 (¶ 10.A.), B5 (¶ 10.I.).

18. Also on March 21, 1997, Keener offered to settle his disputed partnership items with the IRS by executing a Form 870-P(AD) for 1985 and 1986. The IRS accepted those offers by

countersigning the Forms 870-P(AD) on April 28, 1997. [PE:15 at B56-B57 and PE:16 at B58-B59].

RESPONSE:

Admits that, also on March 21, 1997, Keener offered to settle some of his disputed partnership items with the IRS by executing a Form 870-P(AD) for 1985 and 1986. The IRS accepted those offers by countersigning the Forms 870-P(AD) on April 28, 1997. [PE:15 at B56-B57 and PE:16 at B58-B59].

19. In the Forms 870-P(AD) for 1985 and 1986, the IRS asserted there would be no changes to AV2 partnership items for 1985 and 1986 - which included the "phantom income" reported from farming activities. [PE:15 at B57; PE:16 at B59].

RESPONSE:

Admits that the Forms 870-P(AD) do not set forth any adjustments to partnership items of AV2 for 1985 and 1986. Admits that AVII reported income after the first year of its existence that recaptured some of the deductions it claimed in the first year, but notes that the Forms do not support the assertion that AV2 reported "phantom income" from farming activities in 1985 and 1986.

20. The Form 870-P(AD) settlements state, in part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments. . . .

....

> **If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact**; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.
>
> [PE:14 at B54; PE:15 at B56; and PE:16 at B58].

RESPONSE:

Admits that the Forms so state in part, but denies the Forms emphasize plaintiffs' bolded language.

21. The Schedule of Adjustments to the 1984 Form 870-P(AD) proposes to disallow $8,614,381.00 of the Schedule F - Farming Expenses and $149,842.00 of the Other Deductions reported on the AV2 Form 1065 for 1984. [PE:14 at B55].

RESPONSE:

Admits that the Schedule of Adjustments to the 1984 Form 870-P(AD) disallows $8,614,381.00 of the Schedule F - Farming Expenses and $149,842.00 of the Other Deductions reported on the AV2 Form 1065 for 1984.

22. The Schedules of Adjustments to the 1985 and 1986 Forms 870-P(AD) propose no adjustments to the partnership items. Particularly there are no adjustments to AV2 income for 1985 and 1986. [PE:15 at B57 and PE:16 at B59].

RESPONSE:

Admits that the Schedules of Adjustments to the 1985 and 1986 Forms 870-P(AD) set forth no adjustments to partnership items of AV2 for 1985 and 1986.

23. The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each partnership item but do not identify or include any grounds or bases for the adjustments. [PE:14, PE:15, and PE:16].

RESPONSE:

Denies.

PROPOSED REVISION: The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each settled partnership item but do not specify the grounds or bases for the adjustments. [PE:14, PE:15, and PE:16]

24. On November 13, 1997, the IRS sent Keener a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1984 affected his individual income tax return. [PE:17 at B60]. The Form 4549 reflected an adjustment of $54,460.00 related to AV2 for 1984 that would be made to his taxable income, *i.e.*, $54,460.00 of the $151,142 reported on Keener's 1984 Form 1040 would be disallowed and that Keener would owe the resulting additional tax of $27,231.00. [PE:17 at B61-B62 and B67].

RESPONSE:

Admits, except asserts that the description of the November 13, 1997 letter is materially incomplete.

PROPOSED REVISION:

On November 13, 1997, the IRS sent Keener a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1984 affected his individual income tax return. [PE:17 at B60]. The Form 4549 reflected an adjustment of $54,460.00 related to AVII for 1984

that would be made to his taxable income, *i.e.*, $54,460.00 of the $151,142 reported on Keener's 1984 Form 1040 would be disallowed and that Keener would owe the resulting additional tax of $27,231.00. [PE:17 at B61-B62 and B67]. The mailing to Keener stated that the entire disallowance and resulting underpayment were attributable to tax motivated transactions, applied the formula of Temp. Treas. Reg. § 301.6621-2T, A-5 (1984) to demonstrate that the underpayment was so attributable, and computed tax motivated interest to 12/03/97. [PE:17 at B62, B64-B66].

25. As applied, the settlements allowed sixty-three percent (63%) of the AV2 related Schedule F - Farming Expenses and Other Deduction Keener originally claimed on his 1984 Form 1040 and which the IRS had originally proposed to totally disallow. ($151,142 - $54,460.00 = $96,682.00) ($96,682 ÷ $151,142 = .63967).

RESPONSE:

Admits that the settlements allowed sixty-three percent (63%) of the AV2 related Schedule F - Farming Expenses and Other Deduction Keener originally claimed on his 1984 Form 1040 and which the IRS had originally disallowed in full. ($151,142 - $54,460.00 = $96,682.00) ($96,682 ÷ $151,142 = .63967).

26. As a result, the IRS allowed deductions exceeding 193% of Keener's 1984 AV2 investment ($96,682.00 ÷ $50,000.00 = 1.93).

RESPONSE:

Admits.

27. On March 2, 1998, the IRS assessed tax against Keener of $27,231.00, plus interest computed at the §6621(c) penalty rate of $61,904.09 and issued a refund for the remaining balance of the advance remittance. [PE:13 at B53].

RESPONSE:

Denies in part and admits in part.

PROPOSED REVISION:

On March 2, 1998, the IRS assessed tax against Keener of $27,231.00, plus regular interest and tax motivated interest in the total amount of $61,904.09, approximately 3/4 of which was regular interest, and issued a refund for the remaining balance of Keener's October 2, 1995 cash bond. [PE:13 at B53, B65].

28. On November 18, 1999, Keener filed a Form 1040X and a Form 843 claiming a refund of $27,231.00 of tax and $86,730.51 of interest and §6621(c) penalty interest, or such amount as is legally refundable, assessed against him for 1984. [PE:18 at B68-B82 and PE:19 at B83-B94].

RESPONSE:

Admits in part and denies in part. The refund claims were filed on December 9, 1999.

29. On August 30, 2001, the IRS disallowed Keener's claims. [PE:20 at B95].

RESPONSE:

Admits.

30. On September 2, 2003, Keener timely filed this suit.

RESPONSE:

Admits.

**Keener - Agri-Venture Fund for 1985**

3l. In 1985, Keener was a limited partner in Agri-Venture Fund, a California limited partnership (“AVF"). [PE:21 at B97]

RESPONSE:

Admits.

32. For 1985, AVF reported an ordinary loss of Schedule F - Farming Expenses in the amount of $27,605,580.00 and Other Deductions of $510.828.00 on its Form 1065, U.S. Partnership Return of Income. [PE:22 at B101]

RESPONSE:

Admits; however, notes that the FPAA only shows the adjustments to the expenses and other deductions reported on the Form 1065, not the actual expenses and other deductions reported on the Form 1065 before adjustment.

33. Keener invested $25,000.00 in AVF. [PE:21 at B97].

RESPONSE:

Admits.

34. On his 1985 Form 1040, Keener recognized and reported his share of the AVF losses, $74,425.00. [PE:5 at B16 and PE:21 at B97].

RESPONSE:

Admits, however notes that this is not discernable from the referenced pages.

35. Keener's ratio of tax benefits to cash invested was only 2.97 to 1. ($74,425 ÷ $50,000 (sic!)).

RESPONSE:

Admits (as corrected with a $25,000 investment), except as to plaintiffs' characterization of the ratio as "only" 2.97 to 1. Such a ratio generally yields greater tax savings than the cash invested. See response to Proposed Finding #38.

36. Keener's taxable income, taking into account the AVF deduction, was $61,019.89.

RESPONSE:

Admits.

37. Keener's marginal tax rate was 50%. [PE:23 at B107].

RESPONSE:

Admits.

38. Therefore, his initial tax savings from AVF was approximately $38,857.54, only $13,857.00 more than his cash investment in AVF ($38,857.54 - $25,000).

<u>RESPONSE</u>:

Admits approximately, although math here appears slightly incorrect, and except as to plaintiffs' characterization that he "only" saved $13,857 more than he contributed, $25,000. That amounts to a 50% return on investment.

39. A consequence of Keener's investment was that he was required to pick up and report on subsequent tax returns "phantom income" in the amount of his 1985 AVF loss in excess of his cash investment ($74,425 - $25,000 = $49,425). Over the years AVF reported and Keener declared and paid tax on all $49,425 of that phantom income. [PE:6 at B21; PE:7 at B25; PE:8 at B29]. Therefore, Keener had no long-term net tax savings from the AVF investment.

<u>RESPONSE</u>:

Admits that AVF reported income after the first year of its existence that recaptured some of the deductions it claimed in the first year. Denies that the referenced pages of plaintiff's exhibits support the proposed finding that Keener declared and paid tax on $49,425 of phantom income from AVF. First, the exhibits relate only to years 1986, 1991, and 1992, not for all years for which plaintiff was a partner in AVF; and second, the income reported from AVF for years 1986, 1991, and 1992 does not amount to $49,425. States that, even if Keener did report and pay tax on $49,425 of recaptured AVF income, he would only appear therefore to have had no "net tax savings": in such case, Keener's reported losses from AVF preceded by several years his reporting of substantial AVF income (for example, his reported AVF income for years 1991 and 1992 is in excess of $11,000) - thus, Keener's "net tax savings" do not appropriately gage the time value of money benefit he derived from his participation in AVF.

40. On April 10, 1991 the IRS issued an FPAA for AVF for 1985. [PE:22]

RESPONSE:

Admits.

41. The FPAA stated it was the IRS's proposed "adjustments to the partnership return" and proposed to totally disallow all of the $27,605,580.00 Schedule F- Farming Expenses and all of the $510,828.00 in Other Deductions reported on the AVF Form 1065 for 1985. [PE:22 at B98 and B101].

RESPONSE:

Denies.

PROPOSED REVISION:

The FPAA made no proposals, rather it "determined that there are adjustments to the partnership return as shown on the attached schedule of adjustments. . . ." [PE:22 at B98]. Among other determinations, "[i]t . . . determined that the farming expenses claimed on Schedule F in the amount of $27,605,580.00, [and] Other Deductions claimed on line 22, page 1 of Form 1065 in the amount of $510,828.00 . . . for the taxable period ending December 31, 1985, are not allowable. . . ." [PE:22 at B103].

42. The four page "Explanation of Adjustments" to the FPAA asserted twenty-two different grounds for totally disallowing the partnerships' "Schedule F-Farm Expenses" and Other Deductions, including:

1. The partnership's activities constitute a series of sham transactions.

2. The partnership's activities lack economic substance.

3. The partnership did not engage in the trade or business of farming during the taxable periods.

4. The partnership has not substantiated any of the expenses it claimed it paid or incurred during the taxable periods.

5. The partnership did not pay or incur any bona fide trade or business expenses during the taxable periods.

6. If it is determined that the partnership did pay or incur expenses during the taxable periods, it has not been established that the expenses paid or incurred were ordinary and necessary trade or business expenses currently deductible under § 162 of the Internal Revenue Code and the Regulations thereunder.

7. The partnership has not substantiated its claimed cost or other basis in the alleged qualified investment property.

8. The partnership has not clearly described which property it is claiming is qualified for the investment tax credit.

9. The partnership has not established that it acquired tangible personal property or other tangible property that qualifies for the investment credit, and that such property both was placed in service during the year in question and was used in a trade or business that year.

[PE:22 at B103-B106].

RESPONSE:

Admits, but notes that not every one of the asserted grounds by itself purports to disallow in total the claimed farming expenses and other deductions.

43. On July 10, 1991, a partner other than the TMP filed a § 6226(b) partnership-level case in the Tax Court based on the AVF 1985 FPAA (Docket No. 15034-91). [PE:24].

RESPONSE:

Admits, but notes that the referenced pages do not appear to support the assertion. The

petition is available to the Court at Mot. [Doc. #22] Ex. 2, App. B.

PROPOSED REVISION:

On July 10, 1991, a notice partner of AVF filed in the United States Tax Court a petition for readjustment contesting adjustments made in a FPAA issued to AVF, *Agri-Venture Fund, Donald Housman, A Partner Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15034-91 ("*Agri-Venture-Fund*"). See Mot. [Doc. #22] Ex. 2, App. B.

The petition raised numerous challenges to the FPAA adjustments, including that the period for assessing tax attributable to the adjusted partnership items expired prior to issuance of the FPAA and that the IRS had erred in determining that the partnerships' activities constituted a series of sham transactions. See Mot. [Doc. #22] Ex. 2, App. B at B29-32.

44. Keener did not file an election to participate in that proceeding. [PE:24 at B108-B137].

RESPONSE:

Admits.

45. On September 28, 1995, Keener submitted an advance remittance of $52,361.21 to be posted to his 1985 tax account. [PE:25 at B138 and PE:26 at B139].

RESPONSE:

Admits that an advance remittance in the amount of $52,361.21 was posted to Keener's 1985 tax account as a cash bond on October 2, 1995. [PE:26 at B139].

46. On March 21, 1997, Keener offered to settle his disputed partnership items with the IRS by executing a Form 870-P(AD) for 1985. The IRS accepted that offer by countersigning the Form 870-P(AD) on April 28, 1997. [PE:27 at B140-B141].

RESPONSE:

Denies.

PROPOSED REVISION:

While *Agri-Venture-Fund* was proceeding in the Tax Court, the IRS and Keener entered into settlement agreements with respect to some of the FPAA determinations of the partnership items of AVF for 1985. See Compl. ¶¶ 17, 22A, 22C, 22I, [Doc. #22] App. C at C33-36.

On March 21, 1997, Keener offered to settle some of his disputed AVF partnership items with the IRS by executing a Form 870-P(AD) for 1985. The IRS accepted that offer by countersigning the Form 870-P(AD) on April 28, 1997. Compare [PE:27 at B140-B141] with e.g. Mot. [Doc. #22] Ex. 2, App. B at B31 (¶ 10.A.), B32 (¶ 10.J.).

The settlements were partial and did not reach an agreement with respect to every determination made in or related to the FPAAs, including that the IRS and Keener did not reach any agreement on the period of limitations challenge to the timeliness of the issuance of the FPAA raised by the petition for readjustment in the Tax Court or on the determination of the FPAA that AVF's partnership activities from which the claimed loss deductions derived were sham transactions. See Compl. ¶¶ 17, 22A, 22C, 22I, [Doc. #22] App. C at C33-36; compare [PE:27 at B140-B141] with e.g. Mot. [Doc. #22] Ex. 2, App. B at B31 (¶ 10.A.), B32 (¶ 10.J.).

47. Also on March 21, 1997, Keener offered to settle his disputed partnership items with

the IRS by executing a Form 870-P(AD) for 1986. The IRS accepted that offer by countersigning the Forms 870-P(AD) on April 28, 1997. [PE:28 at B143-B144].

RESPONSE:

Admits that, also on March 21, 1997, Keener offered to settle some of his disputed partnership items with the IRS by executing a Form 870-P(AD) for 1986. The IRS accepted that offer by countersigning the Forms 870-P(AD) on April 28, 1997. [PE:28 at B143-B144].

48. The Form 870-P(AD) settlements state, in part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments. . . .
>
> ....
>
> **If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact**; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.
>
> [PE:27 at B140 and PE:28 at B143].

RESPONSE:

Admits that the Form so states in part, but denies the Form emphasizes plaintiffs' bolded language.

49. The Schedule of Adjustments to the 1985 Form 870-P(AD) proposes to disallow $11,806,681.00 of the Schedule F - Farming Expenses and $218,477.00 of the Other Deductions reported on the AVF Form 1065 for 1985. [PE:27 at B141].

RESPONSE:

Admits that the Schedule of Adjustments to the 1985 Form 870-P(AD) disallows

$11,806,681.00 of the Schedule F - Farming Expenses and $218.477.00 of the Other Deductions reported on the AVF Form 1065 for 1985.

50. The Schedule of Adjustments to the 1986 Form 870-P(AD) proposes to (sic!) no adjustments to partnership items. Particularly there are no adjustments to partnership income. The IRS made no adjustments to the 1986 phantom income reported by AVF and recognized and reported by Keener for later years. [PE:28 at B144; and PE:6 at B21; PE:7 at B25; PE:8 at B29].

RESPONSE:

Admits that the Schedules of Adjustments to the 1986 Form 870-P(AD) set forth no adjustments to partnership items of AVF for 1986. Admits that AVF reported income after the first year of its existence that recaptured some of the deductions it claimed in the first year. Admits that the IRS generally made no adjustments to income reported by AMCOR partnerships that recaptured loss deductions in later years from the first year of the partnerships. Denies that the referenced pages of plaintiff's exhibits support the proposed finding that Keener recognized and reported phantom income for later years. The exhibits relate only to years 1986, 1991, and 1992, not for all years for which plaintiff was a partner in AVF.

51. The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each partnership item but do not identify or include any grounds or bases for the adjustments. [PE:27 and PE:28].

RESPONSE:

Denies.

PROPOSED REVISION:

Admits that the Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each settled partnership item but do not specify the grounds or bases for the adjustments. [PE:27 and PE:28]

52. On November 13, 1997, the IRS sent Keener a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1985 affected his individual income tax return. [PE:29 at B145]. The Form 4549 reflected an adjustment of $27,814.00 related to AVF for 1985 that would be made to his taxable income, *i.e.*, $27,814.00 of the $74,425.00 reported on Keener's 1985 Form 1040 would be disallowed, and that Keener would owe the resulting additional tax of $13,384.00. [PE:29 at B146-B147 and B152].

RESPONSE:

Admits, except asserts that the description of the November 13, 1997 letter is materially incomplete.

PROPOSED REVISION:

On November 13, 1997, the IRS sent Keener a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1985 affected his individual income tax return. [PE:29 at B145]. The Form 4549 reflected an adjustment of $27,814.00 related to AVF for 1985 that would be made to his taxable income, *i.e.*, $27,814.00 of the $74,425.00 reported on Keener's 1985 Form 1040 would be disallowed, and that Keener would owe the resulting additional tax of $13,384.00. [PE:29 at B146-B147 and B152]. The mailing to Keener stated that the entire disallowance and resulting underpayment were attributable to tax motivated

transactions, applied the formula of Temp. Treas. Reg. § 301.6621-2T, A-5 (1984) to demonstrate that the underpayment was so attributable, and computed tax motivated interest to 12/10/97. [PE:29 at B147, B149-B151].

53. As applied, the settlements allowed sixty-two percent (62%) of the AVF related Schedule F - Farming Expenses and Other Deduction Keener originally claimed on his 1985 Form 1040 and which the IRS had originally proposed to totally disallow. ($74,425 - $27,814.00 = $46,611.00) ($46,611.00 ÷ $74,425 = .6262).

RESPONSE:

Admits that the settlements allowed sixty-two percent (62%) of the AVF related Schedule F - Farming Expenses and Other Deduction Keener originally claimed on his 1985 Form 1040 and which the IRS had originally disallowed in full. ($74,425 - $27,814.00 = $46,611.00) ($46,611.00 ÷ $74,425 = .6262).

54. As a result, the IRS allowed deductions exceeding 186% of Keener's 1985 AVF investment ($46,611.00 ÷ $25,000.00 = 1.86).

RESPONSE:

Admits.

55. On March 2, 1998, the IRS assessed tax against Keener of $13,384.00, plus interest computed at the §6621(c) penalty rate of $25,073.27 and issued a refund for the remaining balance of the advance remittance. [PE:26 at B139].

<u>RESPONSE</u>:

Denies in part and admits in part.

<u>PROPOSED REVISION</u>:

On March 2, 1998, the IRS assessed tax against Keener of $13,384.00, plus regular interest and tax motivated interest in the total amount of $25,073.27, approximately 3/4 of which was regular interest, and issued a refund for the remaining balance of Keener's October 2, 1995 cash bond. [PE:26 at B139, B150].

56. On November 18, 1999, Keener filed a Form 1040X and a Form 843 claiming a refund of $13,384.00 of tax and $36,728.91 of interest and §6621(c) penalty interest, or such amount as is legally refundable, assessed against him for 1985. [PE:30 at B153-B166 and PE:31 at B166-B176].

<u>RESPONSE</u>:

Admits in part and denies in part. The refund claims were filed on December 9, 1999.

57. On August 30, 2001, the IRS disallowed Keener's claims. [PE:20 at B95].

<u>RESPONSE</u>:

Admits.

58. On September 2, 2003, Keener timely filed this suit.

<u>RESPONSE</u>:

Admits.

**<u>Smith - Richgrove Grape Associates for 1984 and 1981</u>**

59. In 1984, Plaintiff William P. Smith, Jr., ("Smith") was a limited partner in Richgrove Grape Associates, a California limited partnership ("RGA"). [PE:32 at B178]

<u>RESPONSE</u>:

Admits.

60. For 1984, RGA reported an ordinary loss of Schedule F - Farming Expenses in the amount of $4,766,893.00 and Other Deductions of $121,027.00 on its Form 1065, U.S. Partnership Return of Income. [PE:33 at B183]

<u>RESPONSE</u>:

Admits; however, notes that the FPAA only shows the <u>adjustments</u> to the expenses and other deductions reported on the Form 1065, not the actual expenses and other deductions reported on the Form 1065 before adjustment.

61. Smith invested $20,000.00 in RGA. [PE:32 at B178].

<u>RESPONSE</u>:

Admits.

62. On their 1984 Form 1040, Plaintiffs William P. Smith, Jr., and Anne D. Smith (the "Smiths") recognized and reported Smith's share of the RGA losses, $44,377.00. [PE:34 at B192].

<u>RESPONSE</u>:

Denies. William P. Smith filed his 1984 Form 1040 as a single individual, and reported on it his share of 1984 RGA losses, $44,377.

63. Smith's ratio of tax benefits to cash invested was only 2.21 to 1. ($44,377 ÷ $20,000).

RESPONSE:

Admits, except as to plaintiffs' characterization of the ratio as "only" 2.21 to 1. Such a ratio generally yields greater tax savings than the cash invested.

64. Smith's taxable income, taking into account the RGA deduction, was -$1557.00. [PE:34 at B190].

RESPONSE:

Admits.

65. Smith's marginal tax rate was 48%. [PE:4 at B15].

RESPONSE:

Denies. Smith reported no taxable income. According to the referenced page, therefore, his marginal tax rate, as reported, was %0.

66. Therefore, his initial tax savings from RGA was approximately $8,301.60, $11,698.40 ***less*** than his cash investment, and he had no immediate tax savings from his RGA investment.

<u>RESPONSE</u>:

Admits that his initial tax savings from RGA approximate to $10,000, which is $10,000 less than his cash investment. Denies that "he had no immediate tax savings from his RGA investment." Rather, his immediate tax savings approximated $10,000, for which he apparently paid $20,000.

67. A consequence of Smith's investment was that he was required to pick up and report on subsequent tax returns "phantom income" in the amount of his 1984 RGA loss in excess of his cash investment ($44,377 - $20,000 = $24,377). Over the years RGA reported and Smith declared and paid tax on all $24,377 of that phantom income. [PE:35 at B193; PE:36 at B198; PE:37 at B201; PE:38 at B205; PE:39 at B209; PE:40 at B212; PE:41 at B215; PE:42 at B218; PE:43 at B221]. Therefore, Smith had no long-term net tax savings from the RGA investment.

<u>RESPONSE</u>:

Admits that RGA reported income after the first year of its existence that recaptured some of the deductions it claimed in the first year, and that Smith's referenced returns show that he reported income from RGA in an amount equal to or in excess of $24,377. Admits that Smith appears therefore to have had no "net tax savings," but notes that Smith's reported losses from RGA preceded by several years Smith's reporting of the vast majority of RGA income (for example, Smith's reported RGA income for years 1991, 1992, and 1993, is in excess of $22,000) - thus, Smith's "net tax savings" do not appropriately gage the time value of money benefit he derived from his participation in RGA.

68. On April 10, 1991 the IRS issued an FPAA for RGA for 1984 and 1985. [PE:33]

RESPONSE:

Admits.

69. The FPAA stated it was the IRS's proposed "adjustments to the partnership return" and proposed to totally disallow all of the $4,766,893.00 Schedule F- Farming Expenses and all of the $121,027.00 in Other Deductions reported on the RGA Form 1065 for 1984. [PE:33 at B180 and B183].

RESPONSE:

Denies.

PROPOSED REVISION: The FPAA made no proposals, rather it "determined that there are adjustments to the partnership return as shown on the attached schedule of adjustments. . . ." [PE:33 at B180]. Among other determinations, "[i]t . . . determined that the farming expenses claimed on Schedule F in the amount[] of $4,766,893.00 . . . and the Other Deductions claimed on line 22, page 1 of Form 1065 in the amount[] of $121,027.00 . . . for the taxable period[] ending December 31, 1984 . . . are not allowable. . . ." [PE:33 at B185].

70. The IRS made no adjustments to the 1985 phantom income reported by RGA and recognized and reported by the Smiths for 1985 and later years. [PE:33 at B183-184; and PE:35 at B193; PE:36 at B198; PE:37 at B201; PE:38 at B205; PE:39 at B209; PE:40 at B212; PE:41 at B215; PE:42 at B218; PE:43 at B221].

RESPONSE:

Admits that RGA reported income after the first year of its existence that recaptured some of the deductions it claimed in the first year. Admits that the IRS generally made no adjustments to income reported by AMCOR partnerships that recaptured loss deductions in later years from the first year of the partnerships. Denies that the referenced pages of plaintiffs' exhibits support the assertion.

71. The four page "Explanation of Adjustments" to the FPAA asserted twenty-three different grounds for totally disallowing the partnerships' "Schedule F-Farm Expenses" and Other Deductions, including:

1. The partnership's activities constitute a series of sham transactions.

2. The partnership's activities lack economic substance.

3. The partnership did not engage in the trade or business of farming during the taxable periods.

4. The partnership has not substantiated any of the expenses it claimed it paid or incurred during the taxable periods.

5. The partnership did not pay or incur any bona fide trade or business expenses during the taxable periods.

6. If it is determined that the partnership did pay or incur expenses during the taxable periods, it has not been established that the expenses paid or incurred were ordinary and necessary trade or business expenses currently deductible under § 162 of the Internal Revenue Code and the Regulations thereunder.

7. The partnership has not substantiated its claimed cost or other basis in the alleged qualified investment property.

8. The partnership has not clearly described which property it is claiming is qualified for the investment tax credit.

9. The partnership has not established that it acquired tangible personal property or other tangible property that qualifies for the investment credit, and that such

> property both was placed in service during the year in question and was used in a trade or business that year.

[PE:33 at B185-B188].

<u>RESPONSE</u>:

Admits in large part, but notes that not every one of the asserted grounds by itself purports to disallow in total the claimed farming expenses and other deductions.

72. On July 10, 1991, a partner other than the TMP filed a § 6226(b) partnership-level case in the Tax Court based on the RGA 1984 FPAA (Docket No. 15044-91). [PE:44 at B222-B234].

<u>RESPONSE</u>:

Admits, but notes that the referenced pages do not appear to support the assertion. The petition is available to the Court at Mot. [Doc. #22] Ex. 5, App. B.

<u>PROPOSED REVISION</u>:

On July 10, 1991, notice partners of RGA filed in the United States Tax Court a petition for readjustment contesting adjustments made in a FPAA issued to RGA, *Richgrove Grape Associates, Charles W. And Martha C. Adair, Partners Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15044-91, ("*Richgrove*"). <u>See</u> Mot. [Doc. #22] Ex. 5, App. B.

The petition raised numerous challenges to the FPAA adjustments, including that the period for assessing tax attributable to the adjusted partnership items expired prior to the issuance of the FPAA and that the IRS had erred in determining that the partnerships' activities constituted a series of sham transactions. <u>See</u> Mot. [Doc. #22] Ex. 5, App. B at B63-65.

73. On August 23, 1991, the Smiths filed an election to participate in that proceeding. [PE:44 at B224].

RESPONSE:

Admits that William P. Smith, Jr. did so.

74. On November 2, 1995, the IRS posted the Smiths' advance remittance of $892.94 to their 1984 tax account. On February 23, 1999, the IRS posted the Smiths' advance remittance of $3,525.40 to their 1984 tax account. [PE:45 at B235-B236].

RESPONSE:

Admits that, on November 2, 1995, the IRS posted an advance remittance of $892.94 to Smith's 1984 tax account, and that, on February 23, 1999, the IRS posted an advance remittance of $3,525.40 to Smith's 1984 tax account. [PE:45 at B235-B236].

75. On February 1, 1999, the Smiths offered to settle the disputed partnership items with the IRS by executing Forms 870-P(AD), Consistent Settlement, for 1984, 1985, and 1986. The IRS accepted those offers by countersigning the Forms 870-P(AD) on April 9, 1999. [PE:46 at B237-B238; PE:47 at B239-B240; and PE:48 at B241-B242].

RESPONSE:

Denies.

PROPOSED REVISION:

While *Richgrove* was proceeding in the Tax Court, the IRS and Smith (and Plaintiff Anne D. Smith) entered into a settlement agreement with respect to some of the FPAA determinations

of the partnership items of RGA for 1984. See Compl. ¶¶ 6, 12A, 12C, 12H, 16, 22A, 22C, 22H, Ex. A, [Doc. #22] App. D at D9-10, Ex. D, [Doc. #22] App. D at D32-34.

On February 1, 1999, the Smiths offered to settle some of the disputed RGA partnership items with the IRS by executing Forms 870-P(AD) for 1984, 1985, and 1986. The IRS accepted those offers by countersigning the Forms 870-P(AD) on April 9, 1999. Compare [PE:46 at B237-B238] with e.g. Mot. [Doc. #22] Ex. 5, App. B at B64 (¶ 10.A.), B65 (¶ 10.H.); see also [PE:46 at B237-B238; PE:47 at B239-B240; and PE:48 at B241-B242].

The settlements were partial and did not reach an agreement with respect to every determination made in or related to the FPAA, including that the IRS and Smith (and Plaintiff Anne D. Smith) did not reach any agreement on the period of limitations challenge to the timeliness of the issuance of the FPAA raised by the petition for readjustment in the Tax Court or on the determination of the FPAA that RGA's partnership activities from which the claimed loss deductions derived were sham transactions. See Compl. ¶¶ 6, 12A, 12C, 12H, 16, 22A, 22C, 22H, [Doc. #22] App. D at D9-10, [Doc. #22] App. D at D32-34.

76. The Form 870-P(AD) settlements state, in part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments. . . .
>
> ....
>
> **If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact**; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.
>
> [PE:46 at B237; PE:47 at B239; and PE:48 at B241].

RESPONSE:

Admits that the Forms so state in part, but denies the Forms emphasize plaintiffs' bolded language.

77. The Schedule of Adjustments to the 1984 Form 870-P(AD) proposes to disallow $1,841,599 of the Schedule F - Farming Expenses and $46,757 of the Other Deductions reported on the RGA Form 1065 for 1984. [PE:46 at B238].

RESPONSE:

Admits that the Schedule of Adjustments to the 1984 Form 870-P(AD) disallows $1,841,599 of the Schedule F - Farming Expenses and $46,757 of the Other Deductions reported on the RGA Form 1065 for 1984.

78. The IRS did not assert any adjustments to the 1985 and 1986 RGA partnership items on the respective Forms 870-P(AD) - which included the "phantom income" reported from farming activities for 1985 and later years. [PE:47 at B240 and PE:48 at B242].

RESPONSE:

Admits that the Schedules of Adjustments to the 1985 and 1986 Forms 870-P(AD) set forth no adjustments to partnership items of RGA for 1985 and 1986.

79. The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each partnership item but do not identify or include any grounds or bases for the adjustments. [PE:46, PE:47, and PE:48].

RESPONSE:

Denies.

PROPOSED REVISION:

The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each settled partnership item but do not specify the grounds or bases for the adjustments. [PE:46, PE:47, and PE:48]

80. On November 9, 1999, the IRS sent the Smiths a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1984 affected the Smiths' income tax return. [PE:49 at B243]. The Form 4549 reflected an adjustment of $17,175.00 related to RGA for 1984 that would be made to their taxable income, *i.e.*, $17,175.00 of the $44,377 reported on the Smiths' 1984 Form 1040 would be disallowed, and that the Smith would owe the resulting additional tax of $848.00. [PE:49 at B244-245 and B248].

RESPONSE:

Admits only with respect to Smith, except asserts that the description of the November 9, 1999 letter is materially incomplete.

PROPOSED REVISION:

On November 9, 1999, the IRS sent Smith a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1984 affected Smith's income tax return. [PE:49 at B243]. The Form 4549 reflected an adjustment of $17,175.00 related to RGA for 1984 that would be made to his taxable income, *i.e.*, $17,175.00 of the $44,377 reported on the Smith's 1984 Form 1040 would be disallowed, and that Smith would owe the resulting additional tax of $848.00. [PE:49 at B244-245 and B248]. No tax motivated interest was

computed with respect to the underpayment. [PE:49 at B243-B248].

81. Also on November 9, 1999, the IRS sent the Smiths a Form 4549 that explained how the adjustments agreed to in the 1984 Form 870-P(AD) affected the Smiths' income tax return for 1981. The Form 4549 reflected an adjustment of $1,247.00 related to an investment carryback from 1984 to their 1981 return, *i.e.*, $1,247.00 of the $3,035.00 reported on the Smiths' 1981 Form 1040 would be disallowed, and that the Smiths would owe the resulting additional tax of $1,247.00. [PE:50 at B251-253 and B256].

RESPONSE:

Admits only with respect to Smith and, in part, "Mary L. Smith," with whom Smith jointly filed a 1981 individual income tax return, [PE:51], except asserts that the description of the November 9, 1999 letter is materially incomplete.

PROPOSED REVISION:

Also on November 9, 1999, the IRS sent Smith a Form 4549 that explained how the adjustments agreed to in the 1984 Form 870-P(AD) affected his and Mary L. Smith's income tax return for 1981. The Form 4549 reflected an adjustment of $1,247.00 related to an investment carryback from 1984 to their 1981 return, *i.e.*, $1,247.00 of the $3,035.00 reported on their 1981 Form 1040 would be disallowed, and that they would owe the resulting additional tax of $1,247.00. [PE:50 at B251-253 and B256]. The mailing to Smith stated that the entire underpayment was attributable to tax motivated transactions, applied the formula of Temp. Treas. Reg. § 301.6621-2T, A-5 (1984) to demonstrate that the underpayment was so attributable, and computed tax motivated interest to 02/23/1999. [PE:50 at B252, B254-B255].

82. As applied, the settlements allowed sixty-one percent (61%) of the RGA related Schedule F - Farming Expenses and Other Deduction the Smiths originally claimed on their 1984 Form 1040 and which the IRS had originally proposed to totally disallow. ($44,377 - $17,175.00 = $27,202.00) ($27,202.00 ÷ $44,377 = .6129).

RESPONSE:

Admits that the settlements allowed sixty-one percent (61%) of the RGA related Schedule F - Farming Expenses and Other Deduction Smith originally claimed on his 1984 Form 1040 and which the IRS had originally disallowed in full. ($44,377 - $17,175.00 = $27,202.00) ($27,202.00 ÷ $44,377 = .6129).

83. As a result, the IRS allowed deductions exceeding 136% of Smith's 1984 RGA investment ($27,202.00 ÷ $20,000.00 = 1.36).

RESPONSE:

Admits.

84. On March 16, 2000, the IRS made a "Quick Assessment" of tax against the Smiths of $848.00, plus interest computed at the §6621(c) penalty rate of $44.94 for 1984. On April 17, 2000, the IRS assessed additional interest of $1,981.55, which was also computed at the §6621(c) penalty rate. [PE:45 at B235-236].

RESPONSE:

Denies in part and admits in part.

PROPOSED REVISION: On March 16, 2000, the IRS made a "Quick Assessment" of

tax against the Smiths of $848.00, plus interest of $44.94 for 1984. On April 17, 2000, the IRS assessed additional interest of $1,901.55. The $1,946.49 of assessed interest was regular interest not tax motivated interest. [PE:45 at B235-236; PE:49].

85. The IRS offset the advance remittance against that previous advance remittance. In a series of transfers between 1981, 1984, and 1985, the remaining balance was paid in full. [PE:45 at B235-236].

RESPONSE:

Admits that the referenced pages reveal that the tax and interest assessed in March and April 2000 was paid in full.

86. On January 1, 2001, the IRS abated interest of $34,53 (sic) and issued a refund for that amount to the Smiths. [PE:45 at B235-236].

RESPONSE:

Admits with respect to Smith.

87. On November 2, 1995, the Smiths made an advance remittance to their 1981 tax account. On February 23, 1999, the Smiths made a second advance remittance in the amount of $3,514.60 to their 1981 tax account. [PE:51 at B257].

RESPONSE:

Admits that, on November 2, 1995, an advance remittance was posted to the 1981 tax account of Smith and Mary L. Smith, Jr., and that, on February 23, 1999, a second advance

remittance in the amount of $3,514.60 was posted to the 1981 tax account of Smith and Mary L. Smith, Jr. [PE:51 at B257].

88. On March 16, 2000, the IRS assessed additional tax of $1,247.00 and interest computed at the §6621(c) penalty rate of $3,698.16 against the Smiths for 1981. [PE:51 at B257].

RESPONSE:

Denies in part and admits in part.

PROPOSED REVISION:

On March 16, 2000, the IRS assessed tax against Smith and Mary L. Smith of $1,247.00, plus regular interest and tax motivated interest in the total amount of $3,698.16, approximately 3/4 of which was regular interest. [PE:51 at B257; PE:50 at B255].

89. The IRS applied the two advance remittances against the assessments and transferred the remaining balance to the Smiths' 1985 tax account. [PE:51 at B257].

RESPONSE:

Admits with respect to Smith and Mary L. Smith, Jr.

90. On March 8, 2002, the Smiths filed a Form 1040X and a Form 843 claiming a refund of $848.00 of tax and $1,946.59 of interest and §6621(c) penalty interest assessed against them for 1984. [PE:52 at B258-B270 and PE:53 at B271-B280].

RESPONSE:

Admits, except the proposed finding is materially incomplete.

PROPOSED REVISION:

On March 8, 2002, the Smiths filed a Form 1040X and a Form 843 claiming a refund of $848.00 of tax and $1,946.59 of interest and §6621(c) penalty interest assessed against them for 1984. [PE:52 at B258-B270 and PE:53 at B271-B280]. The refund claims erroneously seek tax motivated interest for 1984 although none was assessed for that year - the underpayment was not substantial within the meaning of former § 6621(c)(2) as required for assessment of tax motivated interest. [PE:45 at B235-236; PE:49].

91. On March 8, 2002, the Smiths filed a Form 1040X and a Form 843 claiming a refund of $848.00 of tax, or such amount as is legally refundable, and $3,698.16 of interest and §6621(c) penalty interest assessed against them for 1981. [PE:54 at B281-B291 and PE:55 at B292-B301].

RESPONSE:

The assertion is denied to the extent it claims that tax and interest was assessed against Anne D. Smith.

PROPOSED REVISION:

On March 8, 2002, the Smiths filed a Form 1040X and a Form 843 claiming a refund of $848.00 of tax, or such amount as is legally refundable, and $3,698.16 of interest and §6621(c) penalty interest assessed against Smith and Mary L. Smith, Jr. for 1981. [PE:54 at B281-B291 and PE:55 at B292-B301].

92. In a letter dated May 23, 2002, but not mailed until June 6, 2002, the IRS disallowed the Smiths' claims. [PE:56 at B302].

RESPONSE:

Admits that the IRS disallowed the Smiths' claims in a letter dated May 23, 2002.

93. On May 24, 2004, the Smiths timely filed this refund suit.

RESPONSE:

Admits.

**Smith - Desert Highland Vinyard (sic) for 1985**

94. In 1985, Plaintiff William P. Smith, Jr., ("Smith") was a limited partner in Desert Highland Vineyard Associates, a California limited partnership ("DHV"). [PE:57 at B304]

RESPONSE:

Admits.

95. For 1985, DHV reported an ordinary loss of Schedule F - Farming Expenses in the amount of $3,377,028.00 and Other Deductions of $92,085.00 on its Form 1065, U.S. Partnership Return of Income. [PE:58 at B309]

RESPONSE:

Admits; however, notes that the FPAA only shows the adjustments to the expenses and other deductions reported on the Form 1065, not the actual expenses and other deductions reported on the Form 1065 before adjustment.

96. Smith invested $15,000.00 in DHV. [PE:57 at B304].

RESPONSE:

Admits.

97. On their 1985 Form 1040, Plaintiffs William P. Smith, Jr., and Anne D. Smith (the "Smiths") recognized and reported Smith's share of the DHV losses, $31,764.00. [PE:35 at B195].

RESPONSE:

Denies. Smith filed his 1985 Form 1040 as a single individual, and, on it, reported $31,764 in losses from DHV.

98. Smith's ratio of tax benefits to cash invested was only 2.11 to 1. ($31,764 ÷ $15,000).

RESPONSE:

Admits, except as to plaintiffs' characterization of the ratio as "only" 2.11 to 1. Such a ratio generally yields greater tax savings than the cash invested.

99. Smith's taxable income, taking into account the DHV deduction, was $2,827.00. [PE:35 at B194]

RESPONSE:

Admits.

100. Smith's marginal tax rate was 42%. [PE:23 at B107].

RESPONSE:

Denies. According to the referenced page, it was 11%.

101. Therefore, his initial tax savings from DHV was approximately $8,085.64, $6,914.36 ***less*** than his cash investment, and he had no immediate tax savings from his DHV investment.

RESPONSE:

Admits that his initial tax savings from DHV approximate to $7,500, which is $7,500 less than his cash investment. Denies that "he had no immediate tax savings from his DHV investment." Rather, his immediate tax savings approximated $7,500, for which he apparently paid $15,000.

102. A consequence of Smith's investment was that he was required to pick up and report on subsequent tax returns "phantom income" in the amount of his 1985 DHV loss in excess of his cash investment ($31,764 - $15,000 = $16,764). Over the years DHV reported and Smith declared and paid tax on all $16,764 of that phantom income. [PE:36 at B198; PE:37 at B201; PE:38 at B205; PE:39 at B209; PE:40 at B212; PE:41 at B215; PE:42 at B218; PE:43 at B221]. Therefore, Smith had no long-term net tax savings from the DHV investment.

RESPONSE:

Admits that DHV reported income after the first year of its existence that recaptured some of the deductions it claimed in the first year, and that Smith's referenced returns show that

he reported income from DHV in the amount of $16,764. Admits that Smith appears therefore to have had no "net tax savings," but notes that Smith's reported losses from DHV preceded by several years Smith's reporting of the vast majority of DHV income (Smith's reported DHV income for 1993 is $14,470) - thus, Smith's "net tax savings" do not appropriately gage the time value of money benefit he derived from his participation in DHV.

103. On April 10, 1991 the IRS issued an FPAA for DHV for 1985.

RESPONSE:

Admits.

104. The FPAA stated it was the IRS's proposed "adjustments to the partnership return" and proposed to totally disallow all of the $3,377,028.00 Schedule F- Farming Expenses and all of the $92,085.00 in Other Deductions reported on the DHV Form 1065 for 1985. [PE:58 at B309].

RESPONSE:

Denies.

PROPOSED REVISION:

The FPAA made no proposals, rather it "determined that there are adjustments to the partnership return as shown on the attached schedule of adjustments. . . ." [PE:58 at B306]. Among other determinations, "[i]t . . . determined that the farming expenses claimed on Schedule F in the amount of $3,377,028.00, [and] Other Deductions claimed on line 22, page 1 of Form 1065 in the amount of $92,085.00 . . . for the taxable period ending December 31, 1985,

are not allowable. . . .” [PE:58 at B311].

105. The four page “Explanation of Adjustments” to the FPAA asserted twenty different grounds for totally disallowing the partnerships’ “Schedule F-Farm Expenses” and Other Deductions, including:

1. The partnership’s activities constitute a series of sham transactions.

2. The partnership’s activities lack economic substance.

3. The partnership did not engage in the trade or business of farming during the taxable periods.

4. The partnership has not substantiated any of the expenses it claimed it paid or incurred during the taxable periods.

5. The partnership did not pay or incur any bona fide trade or business expenses during the taxable periods.

6. If it is determined that the partnership did pay or incur expenses during the taxable periods, it has not been established that the expenses paid or incurred were ordinary and necessary trade or business expenses currently deductible under § 162 of the Internal Revenue Code and the Regulations thereunder.

7. The partnership has not substantiated its claimed cost or other basis in the alleged qualified investment property.

8. The partnership has not clearly described which property it is claiming is qualified for the investment tax credit.

9. The partnership has not established that it acquired tangible personal property or other tangible property that qualifies for the investment credit, and that such property both was placed in service during the year in question and was used in a trade or business that year.

[PE:58 at B311-B314].

<u>RESPONSE</u>:

Admits, but notes that not every one of the asserted grounds by itself purports to disallow

in total the claimed farming expenses and other deductions.

106. On July 10, 1991, a partner other than the TMP filed a § 6226(b) partnership-level case in the Tax Court based on the DHV 1985 FPAA (Docket No. 15056-91). [PE:59 at B315-B328].

RESPONSE:

Admits, but notes that the referenced pages do not appear to support the assertion. The petition is available to the Court at Mot. [Doc. #22] Ex. 6, App. B.

PROPOSED REVISION:

On July 10, 1991, a notice partner of DHV filed in the United States Tax Court a petition for readjustment contesting adjustments made in a FPAA issued to DHV, *Desert Highland Vineyards, Russell E. And Lois E. Hughes, A Partner Other Than the Tax Matters Partner, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15056-91 ("*Desert Highland*"). See Mot. [Doc. #22] Ex. 6, App. B.

The petition raised numerous challenges to the FPAA adjustments, including that the period for assessing tax attributable to the adjusted partnership items expired prior to the issuance of the FPAA and that the IRS had erred in determining that the partnerships' activities constituted a series of sham transactions. See Mot. [Doc. #22] Ex. 6, App. B at B90-93.

107. On August 23, 1991, the Smiths filed an election to participate in that proceeding. [PE:59 at B317].

RESPONSE:

Admits with respect to Smith.

108. On February 23, 1999, the IRS posted the Smiths' advance remittance of $3,960 to their 1985 tax account. [PE:60 at B329].

RESPONSE:

Admits that an advance remittance in the amount of $3,960 was posted to Smith's 1985 tax account on February 23, 1999.

109. On February 1, 1999, the Smiths offered to settle the disputed partnership items with the IRS by executing Forms 870-P(AD) for 1985 and 1986. The IRS accepted those offers by countersigning the Forms 870-P(AD) on April 9, 1999. [PE:61 at B331-B332 and PE:62 at B333-B334].

RESPONSE:

Denies.

PROPOSED REVISION:

While *Desert Highland* was proceeding in the Tax Court, the IRS and Smith (and Plaintiff Anne D. Smith) entered into a settlement agreement with respect to some of the FPAA determinations of the partnership items of DHV for 1985. See Compl. ¶¶ 26, 32A, 32C, 32H, Ex. A; [Doc. #22] Ex. 7, App. B at B114-115.

On February 1, 1999, the Smiths offered to settle some of the disputed DHV partnership items with the IRS by executing Forms 870-P(AD) for 1985 and 1986. The IRS accepted those offers by countersigning the Forms 870-P(AD) on April 9, 1999. Compare [PE:61 at B331-

B332] with e.g. Mot. [Doc. #22] Ex. 6, App. B at B92 (¶ 10.A.), B93 (¶ 10.G.); see also [PE:61 at B331-B332 and PE:62 at B333-B334].

The settlements were partial and did not reach an agreement with respect to every determination made in or related to the FPAAs, including that the IRS and Smith (and Plaintiff Anne D. Smith) did not reach any agreement on the period of limitations challenge to the timeliness of the issuance of the FPAA raised by the petitions for readjustment in the Tax Court or on the determination of the FPAA that DHV's partnership activities from which the claimed loss deductions derived were sham transactions. See Compl. ¶¶ 26, 32A, 32C, 32H, Ex. A; [Doc. #22] Ex. 7, App. B at B114-115.

110. The Form 870-P(AD) settlements provide, in part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments. . . .
>
> ....
>
> **If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact**; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.
>
> [PE:61 at B331 and PE:62 at B332].

RESPONSE:

Admits that the Forms so state in part, but denies the Forms emphasize plaintiffs' bolded language.

111. The Schedule of Adjustments to the 1985 Form 870-P(AD) proposes to disallow $1,423,734 of the Schedule F - Farming Expenses and $38,822 of the Other Deductions reported

on the DHV Form 1065 for 1985. [PE:61 at B332].

RESPONSE:

Admits that the Schedule of Adjustments to the 1985 Form 870-P(AD) disallows $1,423,734 of the Schedule F - Farming Expenses and $38,822 of the Other Deductions reported on the DHV Form 1065 for 1985.

112. The IRS did not assert any adjustments to the 1986 DHV partnership items on the respective Forms 870-P(AD) - which included the "phantom income" reported from farming activities for 1986 or for later years. [PE:62 at B334].

RESPONSE:

Admits that the Schedule of Adjustments to the 1986 Form 870-P(AD) set forth no adjustments to partnership items of DHV for 1986.

113. The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each partnership item but does (sic) not identify or include any grounds or bases for the adjustments. [PE:61 and PE:62].

RESPONSE:

Denies.

PROPOSED REVISION:

The Forms 870-P(AD) and the incorporated Schedules of Adjustments identify the agreed dollar amount disallowed for each settled partnership item but do not specify the grounds or bases for the adjustments. [PE:61 and PE:62]

114. On November 9, 1999, the IRS sent the Smiths a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1985 affected the Smiths' income tax return. [PE:63 at B335]. The Form 4549 reflected an adjustment of $13,406.00 related to DHV for 1985 that would be made to their taxable income, *i.e.*, $13,406.00 of the $31,764.00 reported on the Smiths' 1985 Form 1040 would be disallowed, and that the Smiths would owe the resulting additional tax of $2,174.00. [PE:63 at B337-B338 and B341].

RESPONSE:

Admits with respect to Smith, except asserts that the description of the November 9, 1999 letter is materially incomplete.

PROPOSED REVISION:

On November 9, 1999, the IRS sent Smith a Form 4549 that explained how the adjustments agreed to in the Form 870-P(AD) for 1985 affected his income tax return. [PE:63 at B335]. The Form 4549 reflected an adjustment of $13,406.00 related to DHV for 1985 that would be made to his taxable income, *i.e.*, $13,406.00 of the $31,764.00 reported on the 1985 Form 1040 would be disallowed, and that he would owe the resulting additional tax of $2,174.00. [PE:63 at B337-B338 and B341]. The mailing to Smith stated that the entire disallowance and resulting underpayment were attributable to tax motivated transactions, applied the formula of Temp. Treas. Reg. § 301.6621-2T, A-5 (1984) to demonstrate that the underpayment was so attributable, and computed tax motivated interest to 11/23/1999. [PE:63 at B338-B340].

115. As applied, the settlements allowed almost fifty-eight percent (58%) of the DHV

related Schedule F - Farming Expenses and Other Deduction the Smiths originally claimed on their 1985 Form 1040 and which the IRS had originally proposed to totally disallow. ($31,764 - $13,406 = $18,358) ($18,358 ÷ $31,764 = .5779).

RESPONSE:

Admits that the settlements allowed almost fifty-eight percent (58%) of the DHV related Schedule F - Farming Expenses and Other Deduction Smith originally claimed on his 1985 Form 1040 and which the IRS had originally disallowed in full. ($31,764 - $13,406 = $18,358) ($18,358 ÷ $31,764 = .5779).

116. As a result, the IRS allowed deductions exceeding 122% of Smith's 1985 DHV investment ($18,358.00 ÷ $15,000.00 = 1.22).

RESPONSE:

Admits.

117. On March 16, 2000, the IRS assessed tax against the Smiths of $2,174.00, plus interest computed at the §6621(c) penalty rate of $6,352.70. On June 12, 2000, the IRS abated interest of $152.59. [PE:60 at B330].

RESPONSE:

Denies in part and admits in part.

PROPOSED REVISION:

On March 16, 2000, the IRS assessed tax against Smith of $2,174.00, plus regular interest and tax motivated interest in the total amount of $6,352.70, the majority of which was

regular interest, and, on June 12, 2000, the IRS abated interest of $152.59. [PE:60 at B330; PE:63 at B340].

118. The IRS offset the advance remittance against those assessments and in a series of transfers between the Smiths' 1981, 1984, and 1985 accounts, the remaining balance was paid in full.

RESPONSE:

Admits that the IRS offset the advance remittance against the assessments, and that transfers from Smith's tax accounts supplied some of the shortfall. Notes that Smith made a payment to supply the remaining shortfall in June 2000. [PE:60 at B329-B330].

119. On January 1, 2001, the IRS abated interest of $220.76 and issued a refund to the Smith's of $230.35. [PE:60 at B330].

RESPONSE:

Admits (refund to Smith).

120. On March 8, 2002, the Smiths filed a Form 1040X and a Form 843 claiming a refund of $2,124.00 of tax and $6,200.11 of interest and §6621(c) penalty interest assessed against them for 1985. [PE:64 at B342-B351 and PE:65 at B352-B360].

RESPONSE:

The assertion is denied to the extent it claims that tax and interest was assessed against Anne D. Smith.

PROPOSED REVISION:

On March 8, 2002, the Smiths filed a Form 1040X and a Form 843 claiming a refund of $2,124.00 of tax and $6,200.11 on interest and §6621(c) penalty interest assessed against Smith for 1985. [[PE:60 at B330; PE:64 at B342-B351; PE:65 at B352-B360][].

121. In a letter dated May 23, 2002, but not mailed until June 6, 2002, the IRS disallowed the Smiths' claims. [PE:56 at B302]

RESPONSE:

Admits that the IRS disallowed the Smiths' claims in a letter dated May 23, 2002.

122. On May 24, 2004, the Smiths timely filed this refund suit.

RESPONSE:

Admits.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-0508
(202) 514-9440 (fax)

EILEEN J. O'CONNOR

*Assistant Attorney General*
DAVID GUSTAFSON
*Acting Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

May 5, 2006