IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2028 T

(Consolidated with 04-907 T)

(Judge Francis M. Allegra)

---

KENNETH C. KEENER,

Plaintiff

v.

THE UNITED STATES,

Defendant.

---

PROPOSED FINDINGS OF UNCONTROVERTED FACT WITH RESPECT TO PLAINTIFFS' §6621(C) MOTION FOR PARTIAL SUMMARY

---

Pursuant to RCFC 56(h)(2), defendant proposes that the Court find the facts set forth below regarding matters not covered by the moving party's statement.

1. The materials provided by plaintiffs at Resp. [Docs. ##43-1-6] at E145-E209 support the following findings:

The IRS once believed settlement agreements substantially similar if not identical to Keener's April 28, 1997 agreements and to Smith's April 9, 1999 agreements were comprehensive. In sum, the materials reveal two waves of AMCOR partner settlement agreements, all substantially similar. The first wave, of which Keener's settlement agreements are a part, were believed by the IRS to be comprehensive original settlements pursuant to § 6224(c)(1). That statute relates to "[a] settlement agreement between the Secretary ... and 1 or



1683082.1

more partners in a partnership with respect to the determination of partnership items for any partnership taxable year. . . .” IRS attorneys maintained in the Tax Court that the § 6224(c)(1) settlements were comprehensive. They stated that the settling partners were no longer parties to the Tax Court proceedings pursuant to § 6226(d)(1)(A), and that statute precludes partners from participating in judicial proceedings after all their partnership items convert to nonpartnership items via § 6231(b)(1)(C).

The second wave, of which Smith’s settlement agreements are a part, were believed by the IRS to be comprehensive consistent settlements pursuant to § 6224(c)(2), which mirrored the original settlements of the first wave. Section 6224(c)(2) directs the IRS “to offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in” a previous settlement agreement between the IRS and a partner regarding partnership items for that taxable year. Thus, the IRS believed the original settlements of the first wave gave rise to consistent settlement rights for partners in the second. Often, the IRS’ belief in the consistent settlement nature of second wave agreements is made explicit where, as with Smith’s agreement, the IRS stamped them “consistent agreement.” Like the original settlements, IRS attorneys maintained in the Tax Court that the § 6224(c)(2) consistent agreements were comprehensive. They also represented that the settling partners were no longer parties to the Tax Court proceedings pursuant to § 6226(d)(1)(A).

The IRS’ position was consistent with the then governing regulations. Prior to January 26, 1999, a date somewhere in the middle of the second wave of AMCOR settlements, Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) defined the type of original settlement that gave rise to consistent settlement rights under § 6224(c)(2). As relevant here, the original settlement had to

be "comprehensive" in settling all partnership items. See Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) ("Consistent settlement terms are those based on the same determinations with respect to partnership items. . . . Settlements shall be comprehensive, that is, a settlement may not be limited to selected items."); Cinema '84 v. Commissioner, 294 F.3d 432, 437 (2d Cir. 2002). Even after Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) was amended effective January 26, 1999 to regulate both comprehensive and partial settlements, the amended regulation still required "[c]onsistent agreements . . . be identical to the original settlement (that is, the settlement upon which the offered settlement terms are based)." Temp. Treas. Reg. § 301.6224(c)-3T(b) (1999). Thus, the IRS' view that the original first wave § 6224(c)(1) AMCOR settlements were comprehensive led the IRS under the regulations to offer the same comprehensive terms in § 6224(c)(2) settlements during the second wave.

The IRS' view also was revealed in a letter sent to certain AMCOR partners. Prior to the end of the second wave of settlements, the IRS mailed a letter dated January 15, 1999, to AMCOR partners who had not yet settled out of the various Tax Court cases still proceeding as of that date. In the letter, the IRS Office of Chief Counsel re-opened the period for partners to request settlements consistent with earlier original settlements, informing the partners that the letter "does not involve a new settlement offer, rather, it merely lengthens the time period for requesting settlement consistent with one previously offered" and settling "would avoid further litigation and penalties." The letter thus informed partners who, as of January 1999, had not yet asserted their consistent settlement rights, that doing so would result in their obtaining the same comprehensive terms the first wave AMCOR partners received. Tellingly, the letter provides a glimpse into the IRS' understanding of the terms of the comprehensive settlements, including

that settling partners would agree to the imposition of tax motivated interest:

> A request for consistent settlement terms received by February 11, 1999, may result in the concession of the above penalties [additions to tax under 26 U.S.C. §§ 6653 or 6661]by the Government (aside from the increased rate of interest under section 6621 of the Internal Revenue Code).

See e.g. Resp. App. E [Doc. #43-4] at 6 or E180 (emphasis added).

2. The IRS view of the AMCOR settlements was that they were comprehensive and covered all partnership items and more. This view, laid out in full, is on file with the Court, see Scuteri, Fed. Cl. 01-358T, Resp. [Doc. #60] App. A at A1-A75, and is discussed in part in Dismore, Fed. Cl. 04-1787 T, Reply [Doc. #31] at 7-8. The IRS believed that the partners agreed to pay tax motivated interest on tax underpayments resulting from disallowed partnership deductions. Jerry Gossett, an IRS appeals officer who negotiated the AMCOR partnership settlements, explains:

> 11. As part of the basis for settlement, the Commissioner agreed to concede that no additions to tax under 26 U.S.C. §§ 6653 or 6661 would be assessed. However, because the Service had determined that the purported farming transactions were shams and the AMCOR Partnerships' activities lacked economic substance, the Commissioner agreed to concede the additions to tax and penalties at the partner level only if the taxpayers conceded that tax motivated interest under 26 U.S.C. § 6621(c) would apply to any deficiency in income taxes at the individual partner level.
> . . .
> 14. The LNAO decided to use Form 870-P(AD) as the means by which individual partners could offer to settle, in accordance with the Basis of Understanding, their partnership items and affected items.

See Scuteri, Fed. Cl. 01-358 T, Resp. [Doc. #60] App. A at A6, A7. Plaintiffs' counsel has endorsed Gossett as an authoritative source with respect to the IRS' intent in negotiating the AMCOR settlements. See Resp. [Doc. #28] at 4-5. A copy of the Gossett declaration and other AMCOR materials filed in Scuteri is attached hereto as Ex. 1.

3. Gossett also responds directly to plaintiffs' claim that the IRS' agreement to reduce the disallowed losses determined in the FPAA means it agreed the losses were not generated by sham transactions. He explains why the IRS believed plaintiffs and all other AMCOR partners were agreeing, as a term of settlement, to pay tax motivated interest on resulting underpayments and at the same time be allowed some of the partnership deductions the FPAAs totally disallowed. The answer is one of administrative efficiency not tax substance: the IRS, in calculating the adjustments it set forth in the schedules attached to the Form 870-P(AD) settlement agreements, offset the FPAA's total disallowance of first year partnership losses by an amount that credited partners for taxes they had already paid on partnership income for years succeeding the first year - because such income merely recaptured pursuant to §§ 447/481 deductions taken in the first year that were being disallowed under the settlements. From an administrative standpoint, this allowed the IRS to avoid opening and adjusting multiple years of partnership returns, and reviewing thousands of refund claims from partners for multiple years. Partners benefitted too. They would not have to claim, and would not receive, refunds for the later income years. In the IRS' view, the offset was an administrative tool and did not prevent attributing the un-offset disallowed portion of losses to sham partnership transactions:

> 19. The Appeals Settlement Summary that was associated with page two of the Form 870-P(AD), Schedule of Adjustments, was part of the Appeals settlement offer and the summary described how the Total Adjustments to Ordinary Income, as shown on page 2 of Form 870-P(AD), were determined. Because the change in accounting method by the partnerships resulted in farming expenses being deducted twice by the partnerships, each partnership was required under 26 U.S.C. § 481 to report income in subsequent years to avoid a duplicate deduction. Under 26 U.S.C. § 447(f), the income was included over a ten-year period starting with the year of change in accounting method.
>
> 20. Because the Government disallowed a portion of the first-year farming expenses, the amount that the partnerships were required to include in income over the ten-



1683082.1

year period under 26 U.S.C. §§ 447 and 481 was reduced. To avoid the necessity of opening and adjusting 10 years of partnership returns, the settlement was devised to account for all years adjustments in the first year of the partnership by utilizing present value amounts based on the interest rates charged by the Government and using the highest marginal tax rates for the years income was reported. (An example computation is attached in Exhibit B.) Therefore, the total excess income reported in the subsequent years was discounted and used to reduce the amount to be disallowed in the first year. In consideration for reducing the adjustments in the first year, taxpayers agreed not to file claims for reduction of income in the subsequent years.

21. Therefore, the 26 U.S.C. § 447/481 income that would otherwise create a refund in the later years from the first-year disallowance was computed for each year. The refund and interest was computed using the rate of interest under 26 U.S.C. § 6621(c) and the total offset for all years was converted to a present value for the first year of each partnership.[1] Thus, the partnerships received the benefit in the first year for the income that was reported in the following ten years.[2] The taxpayers were also given the benefit of net interest by using the same interest rate for refunds as was charged for deficiencies, i.e., 26 U.S.C. § 6621(c) interest, which further decreased the amount disallowed.

See Scuteri, Fed. Cl. 01-358 T, Resp. [Doc. #60] App. A at A8-A10 ¶¶ 19-21.

4. Consistent with its beliefs and representations to the Tax Court and AMCOR partners, the IRS, soon after entering settlement agreements with plaintiffs, provided them with tax calculations, explaining how the adjustments agreed to in the settlement agreements affected

[1] Because partnerships generally do not pay income tax, the first year tax deficiency and interest and the income offsets and interest for the later years were netted and the net tax and interest were converted using the highest marginal tax rate to an adjustment to be made at the partnership level.

[2] Not all of the partnerships reported the 26 U.S.C. § 447/481 income for a ten year period. Some partnerships terminated early and reported the remaining income. Therefore, the partnerships were provided offsets in the amounts and for the years that they reported income. In addition, at the time of the settlement computation, the partnerships had not filed their tax returns for the years 1995 and 1996. Therefore, the settlement computations did not include any offsets for those years if applicable. The partners were advised to adjust their 1995 and 1998 (sic!) partnership income to be consistent with the Appeals settlement.

their respective tax liability. In every case where a deficiency greater than $1,000 resulted, the calculations included an amount due from taxpayers for tax motivated interest on the entire deficiency. See Resp. App. E [Doc. #41-3] at 1-12, E9-E20; [Doc. #41-6] at 4-11, E57-E64; [Doc. #43-6] at 1-10, E210-E219; see also [PE:17 at B60-B62 and B64-B67]; [PE:29 at B145-B147 and B149-B152]; [PE:50 at B251-253 and B254-B256]; [PE:63 at B335 and B337-B341]. Corresponding assessments followed within one year of the settlements. See [PE:13 at B53, B65]; [PE:26 at B139, B150]; [PE:51 at B257; PE:50 at B255]; [PE:60 at B330; PE:63 at B340].

5. The IRS' belief that the settlements were comprehensive, and included tax motivated interest, continued for some time, until rejected by judicial decisions. In fact, in early AMCOR filings in the Court of Federal Claims, the United States asserted as a defense to AMCOR partners' claims for tax motivated interest that they were barred from such relief as a result of their settlement agreements. See e.g. Wood, Fed. Cl. No. 02-56 T, Answer [Doc. #11] at ¶ 16. At the urging of plaintiffs' counsel, two decisions from the Southern District of Texas held that such settlements did not include any agreement on tax motivated interest. See Dismore, Fed. Cl. No. 04-1787, Reply [Doc. #31] at 6-9.

6. Faced with the realization, as urged by plaintiffs' counsel, that the AMCOR partnership agreements were partial, the IRS was forced to ask what legal result obtained with respect to tax motivated interest from an agreement that did not settle the FPAA sham determination being litigated in the Tax Court.

7. On July 19, 2001, pursuant to an agreement between the IRS and the tax matters partners of AVII regarding adjustments to the FPAA issued to AVII for 1984, the Tax Court issued a decision in *Agri-Venture-II*, which reads in pertinent part:

> Pursuant to Rule 248(b) of the Tax Court Rules of Practice and Procedure and Respondent's Motion for Entry of Decision, it is
>
> ORDERED and DECIDED: That the following statement shows the adjustments to the partnership items of Agri-Venture-II for the taxable years 1984 and 1985, as set forth below:
>
> **1984 Year**
>
> **ADJUSTMENTS TO ORDINARY INCOME:**
>
> | Partnership Item | As Reported | As Determined |
> | --- | --- | --- |
> | Farming Expense Schedule F | $23,926,643.00 | $13,139,725.00 |
>
> . . .
>
> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting;
>
> . . .
>
> That the assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for the years 1984 and 1985 are not barred by the provisions of I.R.C. § 6229.

See Mot. [Doc. #22] Ex. 3, App. B at B55, B57.

8. On July 19, 2001, pursuant to an agreement between the IRS and the tax matters partners of AVF regarding adjustments to the FPAA issued to AVF for 1985, the Tax Court issued a decision in *Agri-Venture-Fund*, which reads in pertinent part:

Pursuant to Rule 248(b) of the Tax Court's Rules of Practice and Procedure and Respondent's Motion for Entry of Decision, it is

ORDERED and DECIDED: That the following statement reflects the correct adjustments to the partnership items of Agri-Venture Fund for the taxable year 1985:

**1985 Year**

**ADJUSTMENTS TO ORDINARY INCOME:**

| Partnership Item | As Reported | As Determined |
|---|---|---|
| Farming Expense Schedule F | $27,605,580.00 | $14,364,026.00 |

. . .

That the foregoing adjustments are attributable to the partnerships reporting of transactions, as described in former I.R.C. § 6621(c)(3)(A)(v), which lacked economic substance so as to result in a substantial distortion of partnership income under the partnership's cash receipts and disbursements method of accounting, as described at I.R.C. § 6621(c)(3)(A)(iv);

. . .

That the assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for the year 1985 are not barred by the provisions of I.R.C. § 6229.

See Mot. [Doc. #22] Ex. 4, App. B at B59-60.

9. On July 19, 2001, pursuant to an agreement between the IRS and the tax matters partners of RGA regarding adjustments to the FPAA issued to RGA for 1984, the Tax Court issued a decision in *Richgrove*, which reads in pertinent part:

Pursuant to Rule 248(b) of the Tax Court Rules of Practice and Procedure and Respondent's Motion for Entry of Decision, it is

ORDERED and DECIDED: That the following statement shows the adjustments to the partnership items of Richgrove Grape Associates for the taxable years 1984 and 1985, as set forth below:

**1984 Year**

**ADJUSTMENTS TO ORDINARY INCOME:**

| Partnership Item | As Reported | As Determined |
| --- | --- | --- |
| Farming Expense Schedule F | $4,766,893.00 | $2,788,170.00 |

. . .

That the adjustments to partnership income and expense for the 1984 taxable year are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(V), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting;

. . .

That the assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for the years 1984 and 1985 are not barred by the provisions of I.R.C. § 6229.

See Ex. 8, App. B at B116, B118.

10. On July 19, 2001, pursuant to an agreement between the IRS and the tax matters partners of DHV regarding adjustments to the FPAA issued to DHV for 1985, the Tax Court issued a decision in *Desert Highland*, which reads in pertinent part:

Pursuant to Rule 248(b) of the Tax Court Rules of Practice and Procedure and Respondent's Motion for Entry of Decision, it is

ORDERED and DECIDED: That the following statement shows the adjustments to the partnership items of Desert Highlands Vineyards for the taxable year 1985, as set forth below:

**1985 Year**

**ADJUSTMENTS TO ORDINARY INCOME:**

| Partnership Item | As Reported | As Determined |
| --- | --- | --- |

| | | |
|---|---|---|
| Farming Expense Schedule F | $3,377,028.00 | $1,932,227.00 |

> . . .
>
> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting;
>
> . . .
>
> That the assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for the year 1985 are not barred by the provisions of I.R.C. § 6229.

See Ex. 9, App. B at B119-120.

11. The decisions of the Tax Court in *Agri-Venture-II*, *Agri-Venture-Fund*, *Richgrove*, and *Desert Highland* were entered on July 19, 2001, pursuant to motions for entry of decision filed April 13, 2001. The motions are attached as Exhibit 2. They reflect the agreement of the Commissioner and the tax matters partner of AVII, AVF, RGA, and DHV to be bound by the July 19, 2001 decisions, including the attributing of deductions disallowed thereunder to sham transactions for purposes of § 6621(c), see Ex. 2 at 6 ¶ 20, 13 ¶¶ i, j, 14 ¶ 4, 15 ¶ 7.

The motions explain why the entirety of the partnerships' reported losses was not disallowed notwithstanding that the disallowed portion was ruled attributable to sham transactions under former § 6621(c)(3)(A)(v). The explanation is the same one Gossett provides supra. To wit, as with the deductions allowed under the settlements, the deductions allowed in the decisions offset the amounts tax partners had already paid on partnership income for later

years that merely recaptured deductions from the partnership's first year. This eased the administrative burden, as partnership and partner returns would not have to be opened and adjusted for multiple years, and partners would not have to claim, and would not receive, refunds for later years:

**MOTION FOR ENTRY OF DECISIONS PURSUANT TO RULE 248(b)**

...

2. The terms of the express agreement between the respondent and the tax matters partners, Frederick Behrens and Robert Wright, and of the implied agreement between respondent and all partners are as follows:

...

c. The income, expenses, and credits of the Partnerships for the first year in which a deduction for Farming Expenses was claimed on Schedule F and disallowed by respondent in the FPAA ("the Adjustment Year"), will be adjusted by the reduced amounts shown in the Decisions. If Decisions are entered in each of the above-docketed cases, it is contemplated that all parties will be directly bound by the final determination of the Tax Court. Any resulting assessments of additional tax will be made within the time period provided by I.R.C. § 6229(c).

...

e. In consideration of the reduced adjustments to partnership income, expense and credits set forth therein, the parties agree that the income, expense and credits reported by the Partnership for years ending after the Adjustment Year up through December 31, 1997, will not be adjusted by respondent or by any partner. All Administrated Adjustment Requests relating to adjustments to the income, expense or credit of the Partnerships which are presently pending before any court will be dismissed with prejudice prior to the entry of Decisions by the United States Tax Court in this proceeding.

Ex. 2 at 10-11. Although the decision computations and settlement computations differ slightly, (which appears to result from the fact that the settlement computations were done prior to the partnerships filing their tax returns for the years 1995 and 1996 whereas the decision computations were made through December 31, 1997), they both calculated the adjustments with the same bottom line in mind: allowed deductions offset total disallowance as credits for tax paid on recapture income, whereas the un-offset disallowed deductions remained, as always, attributable to sham transactions.

12. The United States argued unsuccessfully in Weiner v. U.S., 389 F.3d 152 (5th Cir. 2004), that the district court had jurisdiction to determine whether taxpayers overpaid § 6621(c) interest, and, accordingly, to make findings incident to such determination, including findings that a partnership engaged in sham or fraudulent transactions. The relevant excerpt from the Government's brief (with cover and signature pages) is attached as Exhibit 3.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-0508
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Acting Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

May 5, 2006