No. 01-358 T
(Judge Victor J. Wolski)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JEFFREY T. SCUTERI,

Plaintiff

v.

THE UNITED STATES,

Defendant

APPENDIX A TO
RESPONSE OF THE UNITED STATES IN OPPOSITION
TO PLAINTIFF'S § 6621(c) MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING BRIEF

JUN -3 2004

EILEEN J. O'CONNOR
*Assistant Attorney General*

MILDRED L. SEIDMAN
WILLIAM K. DREW
ELLEN C. SPECKER
*Attorneys*
*Justice Department (Tax)*
*Court of Federal Claims Section*
*P.O. Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-0508
(202) 514-9440 - fax

EXHIBIT
1

# INDEX

| | | Page |
|---|---|---|
| Exhibit 1: | Declaration of Inocentes A. Tecala | A1 |
| Exhibit 1A: | Declaration of Jerry Gossett | A3 |
| Exhibit 2: | Declaration of Ellen C. Specker | A54 |
| Exhibit 2A: | Letter dated Dec. 20, 1996, to Partner of Vista Ag-Realty Partners from Director, Ogden Service Center, IRS, with the following attachments: | A56 |
| | Form 870-P(AD), with Schedule of Adjustments | A57 |
| | Summary of the Amcor Appeals Settlement Offer | A60 |
| | Appeals Settlement Offer | A62 |
| Exhibit 2B: | Letter dated Dec. 20, 1996, to Partner of Coachella Fruit Growers from Director, Ogden Service Center, IRS, with the following attachments: | A67 |
| | Form 870-P(AD), without Schedule of Adjustments | A68 |
| | Summary of the Amcor Appeals Settlement Offer | A69 |
| | Appeals Settlement Offer | A71 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 01-358 T

(Judge Victor J. Wolski)

JEFFREY T. SCUTERI,

Plaintiff

v.

THE UNITED STATES,

Defendant

DECLARATION OF INOCENTES A. TECALA

I, Inocentes A. Tecala, pursuant to the provisions of 28 U.S.C. § 1746, state as follows:

1. That I am a paralegal in the Court of Federal Claims Section of the Tax Division of the U.S. Department of Justice;

2. that the briefs and exhibits thereto that were filed by the Government in United States District Court (S.D. Tex.) in *Kraemer v. United States*, No. 03-20176, which was docketed on Feb. 12, 2003, in the Fifth Circuit Court of Appeals, are currently located in the office of Joan I. Oppenheimer, the Department of Justice attorney assigned to represent the defendant-appellee in *Kraemer*;

3. that in my capacity as a paralegal I examined the District Court briefs and exhibits thereto in *Kraemer* that are located in the office of Ms. Oppenheimer;

4. that the District Court briefs referred to above include a copy of the Declaration of Jerry Gossett, Government Exhibit 4 to the United States' Supplemental Reply Brief on



PENGAD-Bayonne, N. J. DEFENDANT'S EXHIBIT 1

Dispositive Motions that was filed in District Court in *Kraemer*; and

5. that a true and correct copy of the Declaration of Jerry Gossett is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C. on June 3, 2004.

INOCENTES A. TECALA

IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| MARION S. KRAEMER and JOYCE W. KRAEMER, | ) |
| Plaintiffs, | ) |
| v. | ) Civil No. H-00-2948 |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

DECLARATION OF JERRY GOSSETT

I, Jerry Gossett, pursuant to 28 U.S.C. § 1746, declare that:

1. I am an Appeals Officer employed by the Internal Revenue Service and have been so employed since October 16, 1983. As an Appeals Officer, I am responsible for, among other things, negotiating settlements, on behalf of the Commissioner of Internal Revenue, (the "Commissioner"), of cases docketed before the United States Tax Court. During 1994 through 1997, and at other times, I was assigned to the Laguna Niguel, California, appeals office, ("LNAO").

2. In January of 1995, docketed Tax Court cases collectively referred to herein as the "AMCOR Tax Court Litigation" were referred to the LNAO for settlement and I was one of the assigned appeals officers.



DEFENDANT'S EXHIBIT 1A

GOVERNMENT EXHIBIT 4

3. I am competent to testify about the matters contained herein on the basis of personal knowledge as a result of my participation in settlement efforts concerning the AMCOR Tax Court Litigation.

4. The AMCOR Tax Court Litigation includes forty-four (44) cases filed pursuant to 26 U.S.C. § 6226(b) disputing certain adjustments the Internal Revenue Service, ("I.R.S." or "Service"), made to income, expenses and related items reported on tax returns of forty-three limited partnerships that, I understand, were organized, marketed, and managed by a California corporation known, at various times, as American Agri-Corp, Inc., AMAGCO, USA Biomass, or AMCOR. Hereinafter "AMCOR" refers to this corporation, "AMCOR Partnerships" refers to these forty-three limited partnerships and "AMCOR FPAA Cases" are these forty-four cases filed pursuant to 26 U.S.C. § 6226(b).

5. The adjustments in dispute in the AMCOR FPAA Cases concern "partnership items," as that term is defined in 26 U.S.C. § 6231(a)(3). In general, the partnership items in issue include losses from purported farming transactions that each of the forty-three AMCOR Partnerships reported on Form 1065, U.S. Partnership Return of Income. In most instances, the majority of the purported farming losses were reported on the first tax return an AMCOR Partnership filed, which was generally for the taxable year during which AMCOR organized the partnership (the "Initial Return"). The Service mailed Notices of Final Partnership Administrative Adjustment ("FPAA") to the tax matters partners and the notice partners of the AMCOR Partnerships notifying them that the Internal Revenue Service had disallowed these purported farming losses.

6. The petitions in the AMCOR FPAA Cases were, I believe, in almost all, if not all, cases, filed by attorneys from the law firm of Arnold & Porter ("A&P").

7. Negotiations for settlement of the AMCOR Tax Court Litigation were conducted between the LNAO and A&P. At some time during this process, I came to understand that A&P's clients were a group of limited partners of the AMCOR Partnerships, (the "AMCOR Litigation Committee"), and that A&P represented only the AMCOR Litigation Committee in these negotiations.

8. In 1995, the LNAO and A&P agreed upon a comprehensive basis for settling the AMCOR Tax Court Litigation. This basis included settlement of partnership items, including the statute of limitations defenses raised in the petitions A&P filed, and certain "affected items," as defined by 26 U.S.C. § 6231(a)(5). The affected items subject to the settlement included the applicability of tax motivated interest under former 26 U.S.C. § 6621(c) and additions to tax under 26 U.S.C. §§ 6653 and 6661. The basis for settlement was set forth in a document titled, "Basis of Understanding," which was signed on or about August 10, 1995, by the A&P attorneys and, on behalf of the Commissioner, by myself and my supervisor, Associate Chief of Appeals Jeffery Galante. A copy of the Basis of Understanding, including all exhibits thereto, is attached hereto as Exhibit A.

9. The Basis of Understanding was, among other things, intended to prescribe the procedures to be followed, and define the formulas to be used, to determine the amount of reported loss from purported farming transactions that would be disallowed for each of the forty-three AMCOR Partnerships.

10. Specifically, the Basis of Understanding set forth separate formulas for each of four separate groupings of AMCOR Partnerships, identified as either "1986 Partnerships," "1985 Partnerships," "1984 Partnerships" or "Miscellaneous Partnerships." In general, the AMCOR Partnerships were grouped by, and were referred to based upon, the first year of each respective AMCOR Partnership's existence. Because, within each partnership grouping, the facts and issues involved in the FPAA Cases were generally similar, it was determined that the same formula should, in general, be applied to each case within the particular grouping. Thus, for example, the same formula was, in general, applied to all "1984 Partnerships."

11. As part of the basis for settlement, the Commissioner agreed to concede that no additions to tax under 26 U.S.C. §§ 6653 or 6661 would be assessed. However, because the Service had determined that the purported farming transactions were shams and the AMCOR Partnerships' activities lacked economic substance, the Commissioner agreed to concede the additions to tax and penalties at the partner level only if the taxpayers conceded that tax motivated interest under 26 U.S.C. § 6621(c) would apply to any deficiency in income taxes at the individual partner level.

12. For several months following the signing of the Basis of Understanding, LNAO and A&P further negotiated to finalize the schedule of the adjustments to the partnership income and expenses. These schedules of adjustment were later reflected in Forms 870-P(AD), which are discussed below.

13. The LNAO and A&P initially intended to procedurally close the FPAA Cases via a decision entered by the Tax Court in each case pursuant to Rule 248(b) of the Rules of Practice and Procedure of the United States Tax Court ("Tax Court Rules"). However, that procedure, as

I understand it, became unavailable because not all of the participating partners agreed to the settlement. Therefore, the parties proceeded via individual settlement agreements pursuant to Tax Court Rule 248(c).

14. The LNAO decided to use Form 870-P(AD) as the means by which individual partners could offer to settle, in accordance with the Basis of Understanding, their partnership items and affected items.

15. The LNAO drafted a separate Form 870-P(AD) for each AMCOR Partnership. With respect to each AMCOR Partnership, a separate Form 870-P(AD) was drafted for each partnership taxable year before the Tax Court. Each Form 870-P(AD) set forth the agreed-upon adjustments, if any, to partnership income and expenses. These Forms 870-P(AD) which the LNAO prepared are referred to as the "Master Forms 870-P(AD)."

16. In addition, the LNAO drafted summaries of the Basis of Understanding which, as discussed below, were distributed to each limited and general partner who was a "party," as that term is defined in 26 U.S.C. §§ 6226(c), 6226(d), and 6228(a)(4), and Tax Court Rule 247(a), to the AMCOR Tax Court Litigation partnership proceedings. Hereinafter, a limited or general partner who was a party to these partnership proceedings is referred to as a "Partner." In some cases, particularly with respect to the "Miscellaneous Partnerships," the summary was tailored to the unique factual situation of the respective AMCOR Partnership. In others, one summary was used for all AMCOR Partnerships within a particular partnership grouping. For instance, there was one summary that applied with respect to all but one of the 1984 Partnerships. Each of the various summaries was titled "Summary of the AMCOR Appeals Settlement Offer," (hereinafter

"Appeals Settlement Summary"). Each Appeals Settlement Summary referred to the Basis of Understanding as the "Appeals Settlement Offer."

17. The LNAO provided the Internal Revenue Service's Ogden Service Center ("OSC") with the Master Form 870-P(AD) and a copy of the Appeals Settlement Summary for each taxable year at issue in the FPAA Cases of each AMCOR Partnership.

18. At the OSC, Service personnel assembled a settlement package for each Partner. With respect to the FPAA Cases, each settlement package consisted of the following: (1) a cover letter; (2) a "Settlement Agreement for Partnership Items," which appeared on page 1 of Form 870-P(AD), (hereinafter the "Form 870-P(AD)"); (3) a "Schedule of Adjustments" to each partnership level item, which appeared on page 2 of Form 870-P(AD), (hereinafter the "Schedule of Adjustments"); (4) an Appeals Settlement Summary for the respective AMCOR Partnership and partnership taxable year; (5) a second copy of the cover letter; and (6) a second copy of the Form 870-P(AD). I understand the OSC personnel prepared the Form 870-P(AD) by computer, using information from the various Master Forms 870-P(AD), and that they prepared the Schedules of Adjustments and Appeals Settlement Summaries by photocopying the respective copies the LNAO provided.

19. The Appeals Settlement Summary that was associated with page two of the Form 870-P(AD), Schedule of Adjustments, was part of the Appeals settlement offer and the summary described how the Total Adjustments to Ordinary Income, as shown on page 2 of Form 870-P(AD), were determined. Because the change in accounting method by the partnerships resulted in farming expenses being deducted twice by the partnerships, each partnership was required under 26 U.S.C. § 481 to report income in subsequent years to avoid a

duplicate deduction. Under 26 U.S.C. § 447(f), the income was included over a ten-year period starting with the year of change in accounting method.

20. Because the Government disallowed a portion of the first-year farming expenses, the amount that the partnerships were required to include in income over the ten-year period under 26 U.S.C. §§ 447 and 481 was reduced. To avoid the necessity of opening and adjusting 10 years of partnership returns, the settlement was devised to account for all years adjustments in the first year of the partnership by utilizing present value amounts based on the interest rates charged by the Government and using the highest marginal tax rates for the years income was reported. (An example computation is attached as Exhibit B.) Therefore, the total excess income reported in the subsequent years was discounted and used to reduce the amount to be disallowed in the first year. In consideration for reducing the adjustments in the first year, taxpayers agreed not to file claims for reduction of income in the subsequent years.

21. Therefore, the 26 U.S.C. § 447/481 income that would otherwise create a refund in the later years from the first-year disallowance was computed for each year. The refund and interest was computed using the rate of interest under 26 U.S.C. § 6621(c) and the total offset for all years was converted to a present value for the first year of each partnership.[1] Thus, the partnerships received the benefit in the first year for the income that was reported in the following

[1] Because partnerships generally do not pay income tax, the first year tax deficiency and interest and the income offsets and interest for the later years were netted and the net tax and interest were converted using the highest marginal tax rate to an adjustment to be made at the partnership level.

ten years.[2] The taxpayers were also given the benefit of net interest by using the same interest rate for refunds as was charged for deficiencies, i.e, 26 U.S.C. § 6621(c) interest, which further decreased the amount disallowed.

22. Before the settlement was finalized, the attorneys of record reviewed each partnership computation and discussed any disagreements with Appeals. Where the parties did not agree on income figures for certain periods, a figure mid-way between the parties figures were used ("Split Comp"). The final computation adjustment sheets were mailed to the Tax Matters Partner and to each taxpayer or representative who requested a copy.

23. If more than one taxable year of an AMCOR Partnership was before the court in the AMCOR Tax Court Litigation, OSC personnel prepared a separate settlement package for each such year. With respect to many of the AMCOR Partnerships, more than one taxable year was before the Tax Court for one, or both, of the following reasons.

a. Some of the FPAAs the Service issued proposed adjustments to income and/or expense items for more than one partnership taxable year. In particular, with respect to 1984 Partnerships, the Service's FPAAs proposed adjustments for taxable years ending December 31, 1984, and December 31, 1985. The petitions filed with respect to such FPAAs disputed the adjustments for both taxable years. Accordingly, in order to settle such cases, it was necessary to resolve the issues for each taxable year before the Tax Court.

---

[2] Not all of the partnerships reported the 26 U.S.C. § 447/481 income for a ten year period. Some partnerships terminated early and reported the remaining income. Therefore, the partnerships were provided offsets in the amounts and for the years that they reported income. In addition, at the time of the settlement computation, the partnerships had not filed their tax returns for the years 1995 and 1996. Therefore, the settlement computation did not include any offsets for those years if applicable. The partners were advised to adjust their 1995 and 1998 partnership income to be consistent with the Appeals settlement.

b. With respect to many of the AMCOR partnerships, petitions were also filed with the Tax Court pursuant to 26 U.S.C. § 6228(a)(1)(A) for the taxable year following the year or years placed at issue by the Service's FPAA. Thus, for example, in the case of 1984 Partnerships, Petitions for Determination of Partnership Items Pursuant to § 6228, (i.e., so-called "AAR Cases"), were filed with respect to taxable years ending December 31, 1986. These AAR cases are also part of the AMCOR Tax Court Litigation. In order to settle these AAR Cases, a separate settlement package was prepared for each Partner. Thus, for example, three settlement packages were prepared for a Partner in a 1984 Partnership; one each for taxable years ending December 31, 1984, December 31, 1985, and December 31, 1986.

24. If I.R.S. records indicated a power of attorney was on file for a particular Partner for the taxable years in question, OSC personnel generated two packages for such taxpayer. The second package was to be provided to the Partner's authorized representative.

25. Personnel at the OSC shipped the settlement packages back to the LNAO for mailing to the Partners and, if applicable, the Partners' respective authorized representatives. Prior to mailing, each settlement package was reviewed to ensure that it contained all of the items identified in paragraph 18, above.

26. On or about December 20, 1986, the LNAO mailed a settlement package to each Partner. Generally, the LNAO mailed one copy of the settlement package to the Partner and the duplicate to the Partner's authorized representative, if any. However, if the authorized representative was an attorney who was counsel of record in the AMCOR Tax Court Litigation, the LNAO mailed the settlement package only to the representative. In such cases, the Appeals

Division generally tried to retain the extra copy. In total, the LNAO mailed approximately 10,000 settlement packages.

27. A copy of the settlement package sent to the Kraemers, in care of their attorney, with respect to the 1984 Partnership at issue in which they invested is attached as Exhibits C. A similar package was sent to the Kraemers, in care of their attorney, for the 1986 partnership at issue in which they invested.

28. As directed in the cover letter and Form 870-P(AD), a Partner desiring to enter into the settlement agreement with respect to his or her partnership interest was required to sign a Form 870-P(AD) and return it to the OSC. In order to have a valid settlement, a Partner was required to complete and return a separate Form 870-P(AD), together with the Schedule of Adjustments, for each partnership taxable year before the Tax Court in the AMCOR Tax Court Litigation. There was no requirement to return the Appeals Settlement Summary. Thus, for instance, a Partner in a 1984 Partnership had to complete and return separate Forms 870-P(AD) for the taxable years ending December 31, 1984, December 31, 1985, and December 31, 1986.

29. I understand the OSC's policy for processing executed Forms 870-P(AD) was as follows:

a. OSC personnel reviewed executed Forms 870-P(AD) to ensure the Partners had correctly signed the forms and that the forms were ready for processing. Forms 870-P(AD) passing this inspection were sent to the Appeals Division office in Salt Lake City, where they were countersigned on behalf of the Commissioner and returned to the OSC.

b. Upon receipt of the countersigned Form 870-P(AD), a tax technician officially dated the Form 870-P(AD). The Service deemed this date (the "original settlement date") to

commence the period during which other partners could request consistent agreements pursuant to 26 U.S.C. § 6224(c)(2).

c. After dating the countersigned Form 870-P(AD), the OSC mailed a notification letter to the tax matters partner of the applicable AMCOR Partnership. The letter identified the partner who had settled, the date of settlement and the years to which the settlement pertained.

30. By law, Partners desiring a consistent settlement had 60 days from the original settlement date to sign and return to the OSC a request for consistent agreement.

31. I understand the OSC processed both the original settlements and the consistent settlements as follows: (a) if the OSC was the service center that had control of the Partners' tax returns for the years in question, the OSC computed and assessed the resulting deficiency due from the Partner and also assessed interest based on the rate under former 26 U.S.C. § 6621(c); (b) if the OSC was not the service center with control of the Partner's tax returns, the OSC forwarded the agreement package to the appropriate I.R.S. service center, which in turn computed and assessed the tax deficiency and interest based at the rate under former 26 U.S.C. § 6621(c).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 5th day of November, 2001.

Jerry Gossett
Appeals Officer
I.R.S. ID No. 33-07813

## BASIS OF UNDERSTANDING

The Commissioner of Internal Revenue (the "Commissioner") issued Notices of Final Partnership Administrative Adjustment ("FPAA"), as provided in sections 6223(a)(2) and (d)(2),[1] for the taxable years 1984, 1985, and 1986, to the partnerships identified in Exhibit A attached hereto (collectively, the "Partnerships").

Each of the petitioners identified in Exhibit B attached hereto (collectively, the "Petitioners"), timely filed a Petition for Readjustment of Partnership Items with the United States Tax Court (the "Tax Court") (all of such proceedings are referred to collectively as the "Court Cases").

The Court Cases are now pending before the Tax Court.

The Commissioner and the undersigned counsel for the Petitioners (collectively, the "Parties"), desire to resolve and settle the Court Cases in accordance with and pursuant to the terms of this Basis of Understanding.

Although this Basis of Understanding does not represent an offer of settlement by the Commissioner to

[1] All references to sections herein are to sections of the Internal Revenue Code of 1986, as amended, ("Code") unless otherwise indicated.

EXHIBIT A

any partner of any of the Partnerships, it is intended by the Parties as, and will be, the basis and terms under which such an offer will be made to the partners of the Partnerships. The Parties agree that execution of this Basis of Understanding will not commence the running of the one-year statute of limitations on assessment pursuant to section 6229(f).

1. Procedure. The Parties shall, pursuant to Rule 248(b) of the Tax Court's Rules of Practice and Procedure, take such steps as are required or appropriate to seek the entry of decisions by the Tax Court in each of the Court Cases. If it proves not possible to proceed under Rule 248(b), the Parties agree to proceed via individual settlement agreements ("Settlement Agreements") under Rule 248(c). If decisions are to be entered under Rule 248(b), an accompanying stipulation will be filed covering all relevant points of this Basis of Understanding that are not part of the decisions by the Tax Court. If Settlement Agreements are utilized, such Settlement Agreements will incorporate the relevant points of this Basis of Understanding.

2. Designation of Partnerships and Tax Rates. The FPAAs issued to the Partnerships are classified herein in four separate groupings in order to apply the

terms of this Basis of Understanding to each of the Partnerships, as follows:

(a) 1986 Partnerships. The Partnerships identified on Exhibit C attached hereto are referred to hereinafter as the "1986 Partnerships." The only taxable year of the 1986 Partnerships pending before the Tax Court is the taxable year 1986, the first year of the 1986 Partnerships' existence.

(b) 1985 Partnerships. The Partnerships identified on Exhibit D attached hereto are referred to hereinafter as the "1985 Partnerships." The only taxable year of the 1985 Partnerships pending before the Tax Court is the taxable year 1985, the first year of the 1985 Partnerships' existence.

(c) 1984 Partnerships. The Partnerships identified on Exhibit E attached hereto are referred to hereinafter as the 1984 Partnerships. The taxable years of the 1984 Partnerships pending before the Tax Court are the taxable years 1984 and 1985, the first and second years of the 1984 Partnerships' existence.

(d) Miscellaneous Partnerships. The Partnerships identified on Exhibit F attached hereto are referred to hereinafter as the "Miscellaneous Partnerships."

(e) Applicable Tax Rates.

| Calendar Year | Maximum Individual Rate |
|---|---|
| 1985 | 50% |
| 1986 | 50% |
| 1987 | 38.5% |
| 1988 | 33% |
| 1989 | 33% |
| 1990 | 33% |
| 1991 | 31% |
| 1992 | 31% |
| 1993 | 39.6% |
| 1994 | 39.6% |
| 1995 | 39.6% |
| 1996 | 39.6% |

3. 1986 Partnerships. The following provisions shall apply in determining the adjustments to the partnership items of the 1986 Partnerships:

(a) In the FPAAs issued to the 1986 Partnerships, the Commissioner increased each such 1986 Partnership's ordinary income for the taxable year 1986. The total amount of such adjustments is reflected on the Schedule of Adjustments attached to the FPAA issued to each such Partnership as "Total Adjustments to Ordinary Income."

(b) The amount of the Total Adjustments to Ordinary Income shall be reduced by amounts, if any, included therein as ordinary income or loss from other partnerships. The resulting amount, the "Net Ordinary Income Adjustments," shall be taken into account as provided in subparagraph (c) of this paragraph 3.

Income or loss from other partnerships is, to the extent provided therein, separately taken into account in accordance with the provisions of subparagraph (d) of this paragraph 3.

(c) The amount of the Net Ordinary Income Adjustments shall be multiplied by 72%.

(d) Certain 1986 Partnerships claim, on their U.S. Partnership Return of Income (Form 1065) ("Partnership Return") for the taxable year 1986, a distributive share of partnership loss from another partnership (a "Pass-Through Partnership").

(i) Where such Pass-Through Partnership is a Partnership listed on Exhibit A, such a 1986 Partnership's distributive share of loss from any Pass-Through Partnership shall be redetermined pursuant to the amount of the Pass-Through Partnership's income or loss as determined in accordance with the provisions of this Basis of Understanding.

(ii) Where such Pass-Through Partnership is not a Partnership listed on Exhibit A, the loss will, except as set forth in paragraph 3(d)(iii), be allowed as claimed in its entirety.

(iii) In the case of the 1986 taxable years of Agri-Cal Venture Associates and Western Agricultural Venture Associates, losses claimed with