No. 03-2028 T
(Judge Francis M. Allegra)

(Consolidated with 04-907 T)

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

KENNETH C. KEENER,

Plaintiff

v.

THE UNITED STATES,

Defendant

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINT

EILEEN J. O'CONNOR
Assistant Attorney General

STEVEN I. FRAHM
BART D. JEFFRESS
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
(202)307-6496
(202)514-9440 (facsimile)

**PAGE**

**TABLE OF CONTENTS**


Defendant's reply brief in support of its motion for partial dismissal . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Preliminary Matter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Plaintiffs' Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. Period of Limitations: A challenge to a partner's assessment based on the untimeliness of an FPAA is a challenge that must be brought in a partnership level proceeding. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. Tax Motivated Interest: An undisturbed FPAA determination that a partnership transaction is a sham supports the assessment of tax motivated interest. . . . . . . 10

1. Partial or Comprehensive Settlements . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

a. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

b. The Materials plaintiffs rely on show the IRS believed, albeit incorrectly, the AMCOR settlements were comprehensive, but disregard their counsel's successful efforts that established they were only partial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

c. As a result of the work of plaintiffs' counsel, the IRS' former belief in the comprehensiveness of AMCOR partnership settlements was ruled incorrect. . . . . . . . . . . . . . . . . . . . . . . . . . 15

2. "Attributable to" Nexus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

3. Individual Profit Motive is irrelevant to imposition of interest under former § 6621(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

a. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

b. An individual's profit motive is irrelevant in determining whether a transaction was tax motivated within the meaning of § 6621(c)(3)(A)(v). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

c. Reliance on Fifth Circuit decisions is misplaced. . . . . . . . . . . . . 31

d. Plaintiffs' policy objection to tax motivated interest. . . . . . . . . . 34

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Page**

## TABLE OF AUTHORITIES

**Statues:**

Taxpayer Relief Act of 1997, Pub. L. 105-34, § 1239(b), 111 Stat. 1027-1028 . . . . . . . . . . . . . . 9
Title 26, U.S.C.:[1]
§ 183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31, 35
§ 1092 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27
§ 6224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14, 17-18
§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12-13
§ 6229 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4-9
§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 7, 12
§ 6501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 6621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22, 24-35
§ 7422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

**Regulations:**

Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) . . . . . . . . . . . . . . . . . . . . . 12-13, 16-18, 21-23
Temp. Treas. Reg. § 301.6224(c)-3T(b) (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Temp. Treas. Reg. § 301.6621-2T, A-4(1) (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29, 31, 35

**Cases:**

AD Global Fund, LLC v. United States, 67 Fed. Cl. 657 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 4
Agri-Cal Venture Assocs. v. Commissioner, T.C. Memo. 2000-271, 2000 WL 1211147 (U.S. Tax Ct. Aug. 28, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Andantech, L.L.C. v. Commissioner, 331 F.3d 972 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . 4, 5
Anderson v. Commissioner, 62 F.3d 1266 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30
C-99 Ltd., M. La Rue Harcourt, Tax Matters Partner v. Commissioner, 66 T.C.M. (CCH) 1485 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Chakales v. Commissioner, 79 F.3d 726 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 29-30, 32
Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 31-33
Cinema '84 v. Commissioner, 294 F.3d 432 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 13, 17
Commissioner v. Brown, 380 U.S. 563 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Conway v. U.S., 326 F.3d 1268 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

---

[1] All statutory references to Title 26 of the United States Code are to the Internal Revenue Code of 1986, as in effect for the taxable year at issue or as in effect otherwise with respect to the facts of the present cases. Internal Revenue Code sections are referenced throughout the brief as "§ [section]."

Copeland v. Commissioner, 290 F.3d 326 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 27, 32, 35
Cuyahoga Metropolitan Hous. Auth. v. United States, 65 Fed. Cl. 534 (2005) . . . . . . . . . . . . . 21
DeMartino v. Commissioner, 51 T.C.M. (CCH) 1278 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Durrett v. Commissioner, 71 F.3d 515 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31-33
Esposito v. United States, - - Fed. Cl. - -, 2006 WL 800757 (Mar. 27, 2006) . . . . . . . . . . . . . . . 24
Exxon Mobil Corp. v. U.S., 244 F.3d 1341 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Forseth v. Commissioner, 50 T.C.M. (CCH) 111 (1985), aff'd, 845 F.2d 746 (7th Cir. 1988) . . 26
Frank Lyon Co. v. U.S., 435 U.S. 561 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Hill v. Commissioner, 204 F.3d 1214 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 27-29, 35
Johnson v. U.S., 529 U.S. 694 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Kennedy v. Commissioner, 876 F.2d 1251 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 33-34
Kraemer v. United States, No. CIV. H-00-2948, 2002 WL 575791 (S.D.Tex. Feb. 13, 2002) . . 18
Lukens v. Commissioner, 945 F.2d 82 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31-33
Lockheed Martin Corp. v. U.S., 210 F.3d 1366 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 8
Pasternak v. Commissioner, 990 F.2d 893 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 33-34
Prochorenko v. United States, 243 F.3d 1359 (Fed. Cir. 2001) (2-1 decision) . . . . . . . . . . . . . . . . 2
Public Citizen v. Dept. of Justice, 491 U.S. 440 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533 (2000) (reviewed opinion), appeal dismissed and remanded, 249 F.3d 175 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . 9
Thomas v. United States, 166 F.3d 825 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . 27, 29-30, 33-35
Thompson v. United States, 223 F.3d 1206 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 29-30, 35
Trauma Serv. Group v. United States, 104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . 16
United States v. Fior D'Italia, Inc., 536 U.S. 238 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
United States v. Janis, 428 U.S. 433 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 7
Weiner v. United States, 389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22-23
Weiner v. United States, 255 F. Supp. 624 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Weiner v. United States, 255 F. Supp. 663 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 30

**Miscellaneous:**

H.R. Conf. Rep. No. 99-841 (1986), reprinted in 1986-3 C.B. (vol. 4) . . . . . . . . . . . . . . . . . . 26, 29
H.R. Conf. Rep. No. 105-220 (1997), reprinted in 1997-4 C.B. (Vol. 2) . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2028 T

Judge Francis M. Allegra

(Consolidated with 04-907 T)

KENNETH C. KEENER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINTS

**INTRODUCTION**

Defendant, the United States, respectfully submits this reply in support of its motion for partial dismissal.

In our opening brief, we explained that the Court lacks jurisdiction pursuant to § 7422(h) over Keener's and Smith's allegations regarding the untimely assessment of tax attributable to partnership items and the propriety of the assessment of tax motivated interest under former § 6621(c). We explained that plaintiffs' claim that the assessment was untimely boils down to a challenge to the timeliness of the issuance of FPAAs to AVII, AVF, RGA, and DHV, see Mot. [Doc. #22] at 16-17 and n.13, but that, in accord with four published opinions of different federal circuit courts of appeal and one of the Court of Federal Claims, such a challenge is not permitted

in a partner level proceeding like the present one. Rather, any challenge to the timeliness of an assessment of tax attributable to partnership items on grounds that an FPAA was untimely must be raised and litigated in an entity level action challenging the FPAA's adjustments. We explained that any other conclusion would eviscerate the dual purposes of economy and consistency underlying Congress' enactment of unified audit, examination, and litigation provisions in TEFRA, and instead promote multiplicity of partner proceedings and inconsistent determinations. Finally, as suggested by the Federal Circuit's decision in Prochorenko v. United States, 243 F.3d 1359, 362-63 (Fec. Cir. 2001) (2-1 decision), we explained that the judicial path to preventing a challenge to the timeliness of an FPAA in a partner level proceeding may be by holding the FPAA period of limitations in § 6229(a) to be a partnership item as defined in § 6231(a)(3). Such a challenge is not entirely dependent on unique partner factual circumstances but concerns the issuance of an FPAA to a partnership, a partnership factual matter with respect to which a decision affects the tax liability of every partner.

Regarding tax motivated interest, plaintiffs claim that they are not liable by attacking the FPAA determinations that the transactions underlying their disallowed partnership deductions were shams. We explained in our motion, however, that the tax motivated nature of a partnership transaction is a partnership item for purposes of interest under former § 6621(c)(1), (c)(3)(A)(v). Thus, once determined in an FPAA and not readjusted by judicial decision or altered by settlement, a sham transaction determination constitutes a valid basis for assessment and cannot be litigated in the present partner level proceeding. We explained further that plaintiffs' allegations to the contrary lack merit: The fact that the FPAA sham determinations were not covered by their settlement agreements means only that those determinations did not

convert to nonpartnership items. Therefore, they remained valid bases for assessment of tax motivated interest. Similarly, under TEFRA's scheme for litigating partnership items, it is of no moment that one FPAA determination supports imposition of tax motivated interest but another does not, where at least one that does has not been readjusted or altered. Finally, we explained that evidence of individual partner motive is irrelevant to imposition of tax motivated interest under former 26 U.S.C. § 6621(c)(3)(A)(v), and therefore Keener and Smith are not permitted to litigate whether their underpayments were attributable to tax motivated transactions on that basis.

In opposing our motion, plaintiffs Keener and Smith have responded with a multitude of arguments regarding both untimely assessment and tax motivated interest. Each is addressed infra under the applicable heading, after attention to a preliminary matter.

## I. Preliminary Matter

Plaintiffs have submitted approximately six pages of additional asserted facts they consider relevant to resolution of our motion. See Resp. [Doc. #36] at 1-6. Many are unsubstantiated and are presented without any citation at all. Others are asserted with citations, but the citations do not substantiate the assertion made. Still others are irrelevant to the resolution of our motion. We address these assertions throughout our brief. To the extent we do not specifically address any factual assertion made by plaintiffs, our silence is not acquiescence, but represents our view that the assertion is irrelevant to the resolution of our motion.

## II. Plaintiffs' Arguments

### A. Period of Limitations: A challenge to a partner's assessment based on the untimeliness of an FPAA is a challenge that must be brought in a partnership level proceeding.

Plaintiffs contend that a challenge to the timeliness of an assessment of tax attributable to partnership items never contests a "partnership item," as that term is defined in § 6231(a)(3). They claim their's is a plain language reading of the statute, and refer specifically to the location of provisions affecting a partner's assessment in Subtitle F of the Internal Revenue Code instead of Subtitle A. In addition, they argue that to hold a challenge to a partner's assessment can contest a partnership item would violate the constitutional rights of all partners for taxable years ending before August 5, 1997. Plaintiffs' contentions are wholly without merit.

Before turning to plaintiffs' contentions, we must correct the imprecise discussion in plaintiffs' briefing regarding assessment of tax attributable to partnership items. Plaintiffs strenuously avoid characterizing their challenge as one against the timely issuance of an FPAA. Instead they attempt to frame the question as a challenge to the assessment of tax based on partnership items as being outside the individual partner's period of assessment. While plaintiffs are correct that the "FPAA period of limitations" in §§ 6229(a), (b), (d) is not technically a period of limitations, see Mot. [Doc. #22] at 12 n.8;[2] see Andantech, L.L.C. v. Commissioner, 331 F.3d 972, 976-78 (D.C. Cir. 2003), it is part of the statutory scheme for the assessment of tax attributable to partnership items against partners. A challenge to the FPAA limitations period must be contested in a partnership level proceeding, because it concerns factual circumstances

[2] After we filed our motion on November 4, 2005, an interlocutory appeal was taken of the decision at AD Global Fund, LLC v. United States, 67 Fed. Cl. 657 (2005), which we cited in footnote 8 of our motion.

applicable to the entire partnership and therefore has the potential to affect the timeliness of an IRS' assessment with respect to every partner.[3] By contrast, as pointed out by plaintiffs, other provisions in the same assessment scheme focus solely on individual factual circumstances and therefore can affect only the assessment of an individual partner. For example, § 6229(d) provides that the assessment period of limitations is suspended by the mailing of a FPAA until one year after the deadline for filing a petition contesting the FPAA, or, if a petition is filed, until one year after a final decision by the court in which the petition was filed. The one-year provision of § 6229(d) can affect only individual partners because, once the partnership level determinations in an FPAA become un-adjustable, the IRS has one year to assess each partner. Whether the IRS is successful is determined only by reference to IRS' actions with respect to each individual partner. Thus, a challenge to the one-year assessment period would be litigated in a partner level proceeding, and thus could, if made here, be examined.

Plaintiffs, however, raise no partner-specific issues regarding the IRS's assessment of partnership taxes after they entered their settlement agreements. Under the undisputed facts of this case (and, to defendant's knowledge, all AMCOR cases), taxpayers' challenge depends solely on whether the IRS issued FPAAs to their partnerships within the time prescribed in §§ 6501(a), 6229(a), (d), including any valid extensions thereof pursuant to § 6229(b)(1)(B). See Mot. [Doc. #22] at 16-17 and n.13. Plaintiffs concede that, if a timely FPAA had been

[3] Taxes, as a general rule, must be assessed within three years after the return is filed, except in cases of false returns or willful attempt to defeat or evade taxes, cases where no return was filed, and cases of agreed extension of the statute. §§ 6501(a) & (c)(1) - (4). If an FPAA is timely, the IRS can assess taxes attributable to partnership items against all partners, even if the three-year return filing period of limitation provided in § 6501(a) has expired. If an FPAA is untimely, the IRS can still assess additional taxes against any partner with respect to whom that period remains open. See Andantech, 331 F.3d at 976-78.

issued to their partnerships within that time period, the assessments by the IRS against them in March of 1998 and 2000 would have been timely pursuant to §§ 6229(d), (f). See Resp. [Doc. #36] at 18-19.[4] Yet Keener and Smith persist in the sophistry of conflating that partnership wide issue with other code provisions that relate solely to an individual partner's particular circumstances. Plaintiffs' treat them as a monolithic whole and fail to distinguish between a challenge to an assessment against a partner based on the alleged untimeliness of an FPAA and one based on the failure of the IRS to assess within the one-year period specified in §§ 6229(d), (f) (or some such other deadline relevant only to an individual partner).

The proper analysis, however, is to recognize that the statutory scheme for assessing tax attributable to partnership items encompasses some provisions that solely relate to partnership facts and others that solely relate to partner facts. Only the former are raised in this partner proceeding, where jurisdiction over them is precluded.

Moving to plaintiffs' primary contention, they urge that the prohibition against refund suits "attributable to partnership items" in § 7422(h) is inapplicable, because the period of

---

[4] Indeed, were the Court to deny the United States' motion, Keener and Smith would move for summary judgment on the grounds that their assessment periods ended prior to the timely issuance of FPAAs. See e.g. Isler v. United States, Fed. Cl. No. 01-344 T, Br. [Doc. #57]; Weiner v. United States, 255 F. Supp. 624, 645-654 (S.D. Tex. 2002); Weiner v. United States, 255 F. Supp. 663, 665-67 (S.D. Tex. 2002). For 1984, plaintiffs will argue that the FPAA was untimely issued because "[t]he IRS never attempted to get extensions from Keener, Smith, or their TMP." Resp. [Doc. #36] at 18. Our response would include the counter that the FPAA was timely because plaintiffs' partnerships' 1984 partnership returns were invalid and therefore never triggered the three year period in which an FPAA must be issued. See § 6229(a); see e.g. Weiner, 255 F.Supp. at 651. For 1985, plaintiffs will argue that the FPAA was untimely issued because "[the IRS] did try to get extensions from the [tax matters partner], but those were invalid." Resp. [Doc. #36] at 19. Our response would include the counter that the FPAA was timely issued pursuant to valid extensions signed by plaintiffs' partnerships' tax matters partner. See e.g. Weiner, 255 F.Supp. at 651-52.

assessment for tax attributable to partnership items does not satisfy the requirements of § 6231(a)(3). Plaintiffs principally rely on the fact that §§ 6229(a) and (d) are procedural provisions contained in Subtitle F, not subtitle A of the Internal Revenue Code.

We addressed this argument in detail in our opening brief. We discussed the statutory scheme at issue, the relevant case law, and issues associated with the statutory definition of "partnership item." See Mot. [Doc. #22] at 11-27. It should be sufficient in this reply to recall that four federal circuit courts of appeal and one decision of the Court of Federal Claims have rejected the relief plaintiffs seek here. To permit a partner level challenge to the timely issuance of an FPAA would completely eviscerate the very purposes for which Congress enacted TEFRA. No court is permitted to tear down what Congress obviously intended. See e.g. Commissioner v. Brown, 380 U.S. 563, 571 (1965) ("Unquestionably the courts, in interpreting a statute, have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results . . . or would thwart the obvious purpose of the statute.") (quotations omitted).[5] Congress had two goals in enacting unified audit, examination, and litigation provisions in TEFRA: 1) to ensure equal treatment of partners; and

---

[5]See also e.g. Johnson v. U.S., 529 U.S. 694, 707 n. 9 (2000) ("As Justice Scalia remarks, in relying on an uncommon sense of the word, we are departing from the rule of construction that prefers ordinary meaning.... But this is exactly what ought to happen when the ordinary meaning fails to fit the text and when the realization of clear congressional policy ... is in tension with the result that customary interpretive rules would deliver.") (citation omitted); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242-43 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. ... In such cases, the intention of the drafters, rather than the strict language, controls.") (quotations and citation omitted). The Federal Circuit has recognized this principle of statutory construction. See Exxon Mobil Corp. v. U.S., 244 F.3d 1341, 1347 (Fed. Cir. 2003)(citing Commissioner v. Brown, 380 U.S. 563, 571 (1965) and Public Citizen v. Dept. of Justice, 491 U.S. 440, 454-55 (1989)).

2) to avoid multiple, duplicative audits and lawsuits by numerous partners of a single partnership.

Permitting partner level challenges conflicts with both goals. If, as plaintiffs claim, the timeliness of an FPAA is a non-partnership item, then there would be no jurisdiction in the entity level proceeding to address it, and all partners would be permitted to challenge assessments based on untimely FPAAs in thousands of individual refund suits in a variety of different judicial forums. This result would return partnership litigation to the inefficient and unequal pre-1982 pre-TEFRA state Congress explicitly sought to rectify.

Finally, plaintiffs raise a constitutional due process claim:

> a holding that Keener and Smith could raise the § 6229(a) element of their limitations defense to assessment *only* in the partnership-level cases would be an improper taking or conversion of their limitations defense and violate the substantive and procedural due process rights of all partners in all partnerships for tax years prior to 1997 because it would deny them *any* forum of competent jurisdiction to assert their entire limitations defense to assessment.

Resp. [Doc. #36] at 24 (emphasis in original). Plaintiffs' constitutional claims are shotgun in nature and not well formed, making it difficult to respond to them. As an initial matter, these claims were not raised in Keener's and Smith's refund claims, see Mot. [Doc. #22] Apps. C, D, and therefore cannot be litigated here pursuant to the doctrine of variance, see e.g. Lockheed Martin Corp. v. U.S., 210 F.3d 1366, 1371-72 (Fed. Cir. 2000). In addition, their assertion is based on two false premises. Each derives from an erroneous picture of partnership litigation prior to amendments to TEFRA effective for tax years ending after August 5, 1997.

First, as for tax years ending prior to August 5, 1997, so for tax years ending thereafter, there is no right in the TEFRA statutory scheme of a partner to litigate her "entire limitations defense to assessment" in one proceeding. Tellingly, plaintiffs point to none. Rather,

partnership level issues such as untimely issuance of an FPAA outside of the limit in § 6229(a) must be raised in a partnership proceeding. And, partner level issues, such as untimely assessment outside the one year limit in § 6229(d), may be litigated in a partner proceeding after conclusion of the partnership proceeding. Every assessment claim may be litigated - no more process is due.

Second, plaintiffs argue that former § 6226(b)(1)(B) barred any partner in a partnership proceeding from asserting a partnership level defense to assessment on the grounds that the period for assessing a partner's tax attributable to partnership items expired prior to timely issuance of a valid FPAA. Plaintiffs cite no case so holding. Such a holding would, of course, make little sense, as a court always has the inherent power to determine whether or not it has jurisdiction over a person or case. A court would exercise that power by determining if in fact an FPAA was timely issued prior to or after expiration of a partner's assessment period. If prior, former § 6226(b)(1)(B) would pose no bar; if after, it would and the partner or partners would be dismissed from suit after the Court's determination. Not surprisingly, long before the 1997 amendments, the Tax Court allowed challenges to the timely issuance of an FPAA as being subsequent to expiration of the partners' assessment period. See e.g. Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 535 (2000) (reviewed opinion), appeal dismissed and remanded, 249 F.3d 175 (3d Cir. 2001); C-99 Ltd., M. La Rue Harcourt, Tax Matters Partner v. Commissioner, 66 T.C.M. (CCH) 1485 (1993); Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562, 564 (1989). Indeed, the legislative history underlying the addition of the final sentence of § 6226(d)(1)(B) by the Taxpayer Relief Act of 1997, Pub. L. 105-34, § 1239(b), 111 Stat. 1027-1028, which explicitly allows a partner to participate in a partnership

action solely to assert expiration of the partner's assessment period, states only that the law in this regard was unclear before the amendment, see H.R. Conf. Rep. No. 220, 105th Cong., 1st Sess. 249, 685-86, reprinted in 1997-4 C.B. (Vol. 2) 1719-1720, 2155-56. Thus, the 1997 amendments merely ratified the Tax Court's understanding of the law as it existed prior to the amendment, and clarified it, if necessary, for other jurisdictions.

Moreover, the facts of the present case relegate plaintiffs' due process argument to the theater of the bizarre. In fact, plaintiffs were a part of a Tax Court partnership level case filed in 1991 that explicitly challenged the timely assessment of partnership tax based on the untimely issuance of FPAAs. That tax court proceeding addressed tax years from the mid-1980s, and ultimately resulted in a full and exhaustive ruling on the merits of the challenge. See Agri-Cal Venture Assocs. v. Commissioner, T.C. Memo. 2000-271, 2000 WL 1211147 (U.S. Tax Ct. Aug. 28, 2000). And here plaintiffs would be permitted to raise any partner specific assessment challenges. They have not been deprived of due process.

### B. Tax Motivated Interest: An undisturbed FPAA determination that a partnership transaction is a sham supports the assessment of tax motivated interest.

#### 1. Partial or Comprehensive Settlements

##### a. Introduction

In our opening brief, we explained as a factual matter that plaintiffs' settlement agreements were partial, because they did not settle every determination made in or related to the FPAAs. The IRS and plaintiffs did not reach any agreement on the period of limitations challenge to the timeliness of the issuance of the FPAAs raised by petitions for readjustment in

the Tax Court, or on the determinations of the FPAAs that plaintiffs' partnerships' activities were shams. See Mot. [Doc. #22] at 3, 7, 9. These facts are reflected in plaintiffs' own complaints and attached exhibits, including copies of their settlement agreements. See id. (citing references); see e.g., Compl. (Keener) ¶ 12A ("The Form 870-P(AD), did not waive the statute of limitations.") (emphasis in original), ¶ 12C ("There was no agreement that the adjustments resulted from tax motivated transactions as defined in §6621(c) or the relevant regulations.").

The limited nature of the settlements demonstrates, as we explained in our opening brief, that plaintiffs' settlements had left the FPAA sham determinations undisturbed and had not touched the period of limitations issue. Contrary to plaintiffs' present claim, the partialness of the settlement was not argued as a reason to bind plaintiffs by the decisions in *Agri-Venture-II*, *Agri-Venture-Fund*, *Richgrove*, and *Desert Highland*, see Mot. [Doc. #22] at 4, 8, (although that result would certainly obtain, see id. at 33-34, and is argued in our opposition to plaintiffs' motion for partial summary judgment). Thus, because the FPAA sham determination was undisturbed, it remained within the TEFRA partnership statutory scheme a valid basis on which the IRS could assess tax motivated interest.

In opposition to our motion, plaintiffs now contend that their settlement agreements were comprehensive and settled all partnership items of their partnerships, even though the agreements do not explicitly cover the FPAA sham determinations. They argue that the agreements only show those items that were adjusted, not all the items that were settled as a matter of law. They then make the audacious and unsupported claim that any items not adjusted in the agreements were settled in accordance with how the partnerships originally reported them on their partnership returns.

**b. The materials plaintiffs rely on show the IRS once believed, albeit incorrectly, that the AMCOR settlements were comprehensive, but disregard their counsel's successful efforts that established they were only partial.**

While difficult at times to decipher, plaintiffs rely on IRS representations to the Tax Court, Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987), and an IRS letter dated January 15, 1999 to AMCOR partners who had not entered into settlements as of that date. See Resp. [Docs. ##43-1-6] at E145-E209. On the basis of these sources, plaintiffs conclude that their settlements were comprehensive and resolved all partnership items. Plaintiffs are incorrect. Before explaining why, we turn to a summary of what the materials provided by plaintiffs reveal.

The materials reveal that the IRS once believed settlement agreements substantially similar if not identical to Keener's April 28, 1997 agreements and to Smith's April 9, 1999 agreements were comprehensive. In sum, the materials reveal two waves of AMCOR partner settlement agreements, all substantially similar. The first wave, of which Keener's settlement agreements are a part, were believed by the IRS to be comprehensive original settlements pursuant to § 6224(c)(1). That statute relates to "[a] settlement agreement between the Secretary ... and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year...." IRS attorneys maintained to the Tax Court that the § 6224(c)(1) settlements were comprehensive. They stated that the settling partners were no longer parties to the Tax Court proceedings pursuant to § 6226(d)(1)(A), and that statute precludes partners from participating in judicial proceedings after all their partnership items convert to nonpartnership items via § 6231(b)(1)(C).

The second wave, of which Smith's settlement agreements are a part, were believed by the IRS to be comprehensive consistent settlements pursuant to § 6224(c)(2), which mirrored the

original settlements of the first wave. Section 6224(c)(2) directs the IRS "to offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in" a previous settlement agreement between the IRS and a partner regarding partnership items for that taxable year. Thus, the IRS believed the original settlements of the first wave gave rise to consistent settlement rights for partners in the second. Often, the IRS' belief in the consistent settlement nature of second wave agreements is made explicit where, as with Smith's agreement, the IRS stamped them "consistent agreement." Like the original settlements, IRS attorneys maintained in the Tax Court that the § 6224(c)(2) consistent agreements were comprehensive. They also represented that the settling partners were no longer parties to the Tax Court proceedings pursuant to § 6226(d)(1)(A).

The IRS' position was consistent with the then governing regulations. Prior to January 26, 1999, a date somewhere in the middle of the second wave of AMCOR settlements, Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) defined the type of original settlement that gave rise to consistent settlement rights under § 6224(c)(2). As relevant here, the original settlement had to be "comprehensive" in settling all partnership items. See Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) ("Consistent settlement terms are those based on the same determinations with respect to partnership items. . . . Settlements shall be comprehensive, that is, a settlement may not be limited to selected items."); Cinema '84 v. Commissioner, 294 F.3d 432, 437 (2d Cir. 2002). Even after Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) was amended effective January 26, 1999 to regulate both comprehensive and partial settlements, the amended regulation still required "[c]onsistent agreements . . . be identical to the original settlement (that is, the settlement upon which the offered settlement terms are based)." Temp. Treas. Reg.

§ 301.6224(c)-3T(b) (1999). Thus, the IRS' view that the original first wave § 6224(c)(1) AMCOR settlements were comprehensive led the IRS under the regulations to offer the same comprehensive terms in § 6224(c)(2) settlements during the second wave.

The IRS' view also was revealed in a letter sent to certain AMCOR partners. Prior to the end of the second wave of settlements, the IRS mailed a letter dated January 15, 1999, to AMCOR partners who had not yet settled out of the various Tax Court cases still proceeding as of that date. In the letter, the IRS Office of Chief Counsel re-opened the period for partners to request settlements consistent with earlier original settlements, informing the partners that the letter "does not involve a new settlement offer, rather, it merely lengthens the time period for requesting settlement consistent with one previously offered" and settling "would avoid further litigation and penalties." The letter thus informed partners who, as of January 1999, had not yet asserted their consistent settlement rights, that doing so would result in their obtaining the same comprehensive terms the first wave AMCOR partners received. Tellingly, the letter provides a glimpse into the IRS' understanding of the terms of the comprehensive settlements, including that settling partners would agree to the imposition of tax motivated interest:

> A request for consistent settlement terms received by February 11, 1999, may result in the concession of the above penalties [additions to tax under 26 U.S.C. §§ 6653 or 6661]by the Government (<u>aside from the increased rate of interest under section 6621 of the Internal Revenue Code</u>).

<u>See</u> <u>e.g.</u> Resp. App. E [Doc. #43-4] at 6 or E180 (emphasis added).

Plaintiffs seize upon the IRS' representations and the cited regulations, and assert that they mandate concluding their (and other AMCOR partners') settlements were in fact comprehensive not partial. Accordingly, plaintiffs reason that no settling AMCOR partner is bound by any decision in Tax Court partnership litigation, and therefore they are not bound by

the July 19, 2001 decisions that the transactions were shams in *Agri-Venture-II*, *Agri-Venture-Fund*, *Richgrove*, and *Desert Highland*, see Mot. [Doc. #22] at 4, 8. See Resp. [Doc. #36] at 28-30. Going further, to the point of absurdity, plaintiffs claim that any settled item not explicitly mentioned in a Form 870-P(AD) settlement agreement must have been settled with "no change," id. at 13, by which plaintiffs apparently mean no change from the manner in which reported on the relevant partnership return.

Plaintiffs' reliance on the IRS' beliefs at the time suffers from fundamental flaws. Whether a settlement agreement actually is comprehensive or partial is a legal and factual determination that can only be determined by a two step process, first ascertaining what partnership items were at issue in the FPAAs and Tax Court litigation and second reviewing the settlement agreements to see whether all such items were settled. The IRS' belief that the settlements were comprehensive is not surprising for it sincerely held that view until plaintiffs' counsel successfully defeated it in 2002 when two federal courts held that AMCOR partners had not agreed to the assessment of tax motivated interest.

**c. As a result of the work of plaintiffs' counsel, the IRS' former belief in the comprehensiveness of AMCOR partnership settlements was ruled incorrect.**

Plaintiffs' (and AMCOR partners') settlement agreements either settled all partnership items or did not. Plaintiffs have admitted they did not, and this admission is consistent with their settlement agreements. As recounted in our opening briefing, the FPAAs included a determination that the loss deductions claimed by plaintiffs' partnerships were not allowable because the partnerships' activities constituted a series of sham transactions. Plaintiffs agree that a sham determination with respect to a partnership activity is a partnership item. See Resp.

[Doc. #36] at 34 n.71. Next, partners petitioned the FPAA adjustments to the Tax Court, specifically including the sham determinations.

Plaintiffs then entered into settlement agreements, covering some matters, but they did not settle the sham determinations being contested in the Tax Court. The agreements, which constitute plaintiffs' offers to settle certain partnership items, say nothing about the sham determinations or plaintiffs' liability for tax motivated interest, and only purport to specify the amounts of certain partnership items to which the IRS and plaintiffs agreed. For example, the settlement agreements disallowed a portion of the partnership losses disallowed by the FPAAs. In addition, the agreements explicitly cabin themselves to the determinations set forth in the schedule of adjustments attached to the agreements, and the schedules on their face make no claim to comprehensiveness but merely set forth the amounts of certain partnership items to be adjusted. See e.g. PE:14 [Doc. #37] at B54 (". . . the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items . . . shown on the attached schedule of adjustments."), B55. Since the contracts, on their face, reveal no mutual intent to contract or an unambiguous offer and acceptance of a contract on the sham issue, as a matter of law, none exists. See e.g. Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed. Cir. 1997); see generally Dismore, Fed. Cl. 04-1787, Reply [Doc. #31] at 3-4. Thus, if, as we maintained in our opening brief, the FPAA sham determination is a partnership item, plaintiffs' settlement agreements were partial and not comprehensive, as conceded by plaintiffs.

But, among other things, plaintiffs say Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) mandates that their agreements were comprehensive. They claim that Keener's original settlement, to give rise to consistent settlements, and Smith's consistent settlement, to be a

consistent settlement, had to be comprehensive pursuant to Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987). However, the regulation merely defined the type of settlement that, prior to January 26, 1999, gave rise to a right under § 6224(c)(2) of another partner to enter a settlement consistent with the defined settlement. See Cinema '84 v. Commissioner, 294 F.3d 432, 437 (2d Cir. 2002). The regulation had no power to make a partial settlement comprehensive. Rather it informed the IRS when it was required to offer terms consistent with a settlement to another partner. The IRS had to exercise judgment in deciding whether an original settlement satisfied the regulation's criteria. This leads us to a historical picture of how the IRS viewed AMCOR settlements.

The IRS view of the AMCOR settlements was that they were comprehensive and covered all partnership items and more. This view, laid out in full, is on file with the Court, see Scuteri, Fed. Cl. 01-358T, Resp. [Doc. #60] App. A at A1-A75, and is discussed in part in Dismore, Fed. Cl. 04-1787 T, Reply [Doc. #31] at 7-8. The IRS believed that the partners agreed to pay tax motivated interest on tax underpayments resulting from disallowed partnership deductions. Jerry Gossett, an IRS appeals officer who negotiated the AMCOR partnership settlements, explains:

> 11. As part of the basis for settlement, the Commissioner agreed to concede that no additions to tax under 26 U.S.C. §§ 6653 or 6661 would be assessed. However, because the Service had determined that the purported farming transactions were shams and the AMCOR Partnerships' activities lacked economic substance, the Commissioner agreed to concede the additions to tax and penalties at the partner level only if the taxpayers conceded that tax motivated interest under 26 U.S.C. § 6621(c) would apply to any deficiency in income taxes at the individual partner level.
>
> . . .
>
> 14. The LNAO decided to use Form 870-P(AD) as the means by which individual partners could offer to settle, in accordance with the Basis of Understanding, their partnership items and affected items.

See Scuteri, Fed. Cl. 01-358 T, Resp. [Doc. #60] App. A at A6, A7.[6] The IRS' belief that the settlements were comprehensive explains why their attorneys repeatedly represented to the Tax Court that they were, and why the IRS would have considered consistent settlement rights under § 6224(c)(2) to have been triggered by first wave AMCOR partnership settlements, as such original settlements would have been thought to have been defined in Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987).

Gossett also responds directly to plaintiffs' claim that the IRS' agreement to reduce the disallowed losses determined in the FPAA means it agreed the losses were not generated by sham transactions. He explains why the IRS believed plaintiffs and all other AMCOR partners were agreeing, as a term of settlement, to pay tax motivated interest on resulting underpayments and at the same time be allowed some of the partnership deductions the FPAAs totally disallowed. The answer is one of administrative efficiency not tax substance: the IRS, in calculating the adjustments it set forth in the schedules attached to the Form 870-P(AD) settlement agreements, offset the FPAA's total disallowance of first year partnership losses by an amount that credited partners for taxes they had already paid on partnership income for years

[6] The Gossett declaration is also attached as part of Exhibit 1 to our Statement of Uncontroverted Facts filed with our opposition to plaintiffs' motion for partial summary judgment. As set forth in the Declaration of Inocentes A. Tecala preceding the Gossett Declaration, the Gossett Declaration was filed originally by the Government in United States District Court (S.D. Tex.) in Kraemer v. United States, No. 03-20176. The Kraemer case was part of the nationwide AMCOR litigation. See Kraemer v. United States, No. CIV. H-00-2948, 2002 WL 575791 (S.D.Tex. Feb. 13, 2002); Weiner v. United States, 389 F.3d 152 (5th Cir. 2004). Gossett, now retired, remains available to testify, if necessary. We understand that the original, signed declaration is on file with the district court in the Southern District of Texas. While defendant would be unable directly to provide the Court with the original (see RCFC Gen. Order 42A, VIII.29.), we presume that the district court would be able to assist the Court if it seeks confirmation regarding the declaration.

succeeding the first year - because such income merely recaptured pursuant to §§ 447/481 deductions taken in the first year that were being disallowed under the settlements. From an administrative standpoint, this allowed the IRS to avoid opening and adjusting multiple years of partnership returns, and reviewing thousands of refund claims from partners for multiple years. Partners benefitted too. They would not have to claim, and would not receive, refunds for the later income years. In the IRS' view, the offset was an administrative tool and did not prevent attributing the un-offset disallowed portion of losses to sham partnership transactions. See Scuteri, Fed. Cl. 01-358 T, Resp. [Doc. #60] App. A at A8-A10 ¶¶ 19-21.

Gossett's explanation is bolstered and confirmed by the documents plaintiffs have provided to the Court. From the January 15, 1999 letter from the IRS to AMCOR partners who had not yet settled out of Tax Court litigation, plaintiffs point to the statement that partners who opted for a consistent settlement would avoid future litigation. Such statement is wholly consistent with the IRS' former view that the settlements were comprehensive. Plaintiffs tellingly neglect to point out that in the very same letter, the IRS set forth some of the content it believed part of the comprehensive settlement, namely, that partners would pay tax motivated interest on their underpayments:

> A request for consistent settlement terms received by February 11, 1999, may result in the concession of the above penalties [additions to tax under 26 U.S.C. §§ 6653 or 6661]by the Government (aside from the increased rate of interest under section 6621 of the Internal Revenue Code).

See e.g. Resp. App. E [Doc. #43-4] at 6 or E180 (emphasis added). As plaintiffs' submissions show, the letter was filed, at least three times, with the Tax Court in an effort to permit Thomas Redding's late responding clients the opportunity to enter into a consistent settlement. See id. at 1-18 or E175-E192. Thus, contemporaneous to other representations, the IRS continued to

present a consistent representation to the Tax Court that it believed the settlements were comprehensive.

Consistent with its beliefs and representations to the Tax Court and AMCOR partners, the IRS, soon after entering settlement agreements with plaintiffs, provided them with tax calculations, explaining how the adjustments agreed to in the settlement agreements affected their respective tax liability. In every case where a deficiency greater than $1,000 resulted, the calculations included an amount due from taxpayers for tax motivated interest on the entire deficiency. See Resp. App. E [Doc. #41-3] at 1-12, E9-E20; [Doc. #41-6] at 4-11, E57-E64; [Doc. #43-6] at 1-10, E210-E219. Corresponding assessments followed within one year of the settlements.

The IRS' belief that the settlements were comprehensive, and included tax motivated interest, continued for some time, until rejected by judicial decisions. In fact, in early AMCOR filings in the Court of Federal Claims, the United States asserted as a defense to AMCOR partners' claims for tax motivated interest that they were barred from such relief as a result of their settlement agreements. See e.g. Wood, Fed. Cl. No. 02-56 T, Answer [Doc. #11] at ¶ 16. At the urging of plaintiffs' counsel, two decisions from the Southern District of Texas held that such settlements did not include any agreement on tax motivated interest. See Dismore, Fed. Cl. No. 04-1787, Reply [Doc. #31] at 6-8.

Faced with the realization, as urged by plaintiffs' counsel, that the AMCOR partnership agreements were partial, the IRS was forced to ask what legal result obtained with respect to tax motivated interest from an agreement that did not settle the FPAA sham determination being litigated in the Tax Court. As explained in our opening briefing, in such situation, the TEFRA

statutory scheme dictates that the FPAA sham determinations, which have never been disturbed, remained after settlement a valid basis upon which the IRS was permitted to assess tax motivated interest (even though, at the time of assessment, the IRS believed the settlement agreement provided the basis for it).[7]

Thus, plaintiffs' and AMCOR partners' agreements were partial. Temp. Treas. Reg. § 301.6224(c)-3T(b) and the IRS' representations to the Tax Court do not make them comprehensive, particularly given that plaintiffs' counsel's effort on behalf of AMCOR partners led to the reevaluation of the representations and the IRS' position. The agreements themselves did not include any agreement as to whether disallowed deductions were attributable to sham transactions, a determination the FPAAs made and a partnership item. Not only is such

[7] In light of the historical discussion set forth supra, plaintiffs' assertions of judicial estoppel are ludicrous. Plaintiffs' counsel are the very individuals who urged the Courts to reject the IRS' old representations to their clients and the Tax Court - - representations that the settlements were comprehensive, including tax motivated interest. Plaintiffs, having won that battle, should not be heard to argue that the settlements are comprehensive and that the IRS is estopped from advocating the proper tax law result of partial settlements that do not mention such interest. Under these circumstances, the Court should invoke its discretion to refrain from invoking the equitable doctrine. See Cuyahoga Metropolitan Hous. Auth. v. United States, 65 Fed. Cl. 534, 553-60 (2005). The IRS is not playing fast and loose with the courts; rather, having had its original legal theory rejected, it has attempted to arrive at the correct legal conclusion given the changed landscape. It was plaintiffs' counsel, acting on behalf of AMCOR partners, that brought about the change in landscape - - a landscape they now wish to contradict. Moreover, the IRS did not succeed in persuading a court to accept its view that the settlments were comprehensive. Where litigated, it was rejected. With respect to the Tax Court, it is arguable whether the IRS' representations constitute successful urging of a particular position, where they were not opposed or litigated. In addition, no unfair advantage is imposed on plaintiffs by treating the settlements as partial - - it was their counsel's (successful) position in the district court. Finally, several principles regarding application of the doctrine against the United States suggest that it cannot be applied here: there was no knowing assault upon the integrity of the judicial system; applying the doctrine here would compromise the IRS in enforcing the tax law; and there has been here, at the behest of plaintiffs' counsel, a change in essential facts.

agreement not stated in the settlement agreements, it is also clear from the historical context summarized above that the IRS and the partners had no meeting of the minds on the issue of tax motivated interest, and thus, as a matter of law, the settlements could not have been comprehensive. See Dismore, Fed. Cl. No. 04-1787, Reply [Doc. #31] at 3-4.[8]

**2. "Attributable to" Nexus**

Plaintiffs' second argument regarding tax motivated interest was addressed in our opening brief. See Mot. [Doc. #22] at 33-35 and n.25. Plaintiffs focus on the requirement of former § 6621(c) that their underpayments be "attributable to tax motivated transactions," and rely on Weiner v. United States, 389 F.3d 152, 159-63 (5th Cir. 2004). As we explained in our opening brief, these contentions do not help plaintiffs. The Weiner appellate panel relied on cases that do not arise from the TEFRA context, and did not address the issue now raised by the United States. In their summary judgment motion, plaintiffs discuss Weiner and related

---

[8] As explained in our opening brief, as partial agreements, the FPAA sham determinations never converted to nonpartnership items via settlement, and thus stood as a valid basis for the assessment of tax motivated interest. See Mot. [Doc. #22] at14-15, 32-34.

As an aside, even if plaintiffs were correct that the settlements were comprehensive, inquiry would still be necessary into how the settlements dealt with terms not mentioned in them. Plaintiffs say, in that case, the settlement agreements should be read as adjusting the partnership items explicitly set forth in the Forms 870-P(AD) and leaving unadjusted any partnership items not so mentioned. By unadjusted, plaintiffs apparently mean the settlement left unmentioned items as reported by the partnerships. Plaintiffs make no attempt to substantiate their claim other than to cite Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987). But that regulation says nothing in support of plaintiffs' position. It merely defines what type of settlement gives rise to consistent settlement rights. It does not purport to metamorphose a partial settlement agreement into a comprehensive one and then deem all terms not explicitly dealt with as resolved in favor of the partnership. Thus, if plaintiffs were correct, the result is a mystery settlement with no way to fill in the missing terms. Presumably, in such case, the Court would look to the intent of the parties. As set forth above, the IRS intent is clear: partners agreed to tax motivated interest.

Although not pressed to the same extent, plaintiffs make the same comprehensive settlement argument in the context of their period of limitations arguments. Such argument should be rejected on the same grounds it should be rejected in the tax motivated interest area.

arguments at length, and mention them just passingly in response to our motion to dismiss. They opted here instead to attack the partialness of their settlement agreements by use of Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987). Accordingly, we direct the Court's attention to the arguments regarding Weiner and related points in our opposition to plaintiffs' summary judgment motion. See Defendant's Opposition Part IV.

Here, we preview that the above historical discussion answers plaintiffs' repeated charge that the IRS must have conceded the sham issue in the settlements, because AMCOR partners were permitted to take some partnership loss deductions, even though the FPAAs had totally disallowed them. As shown by the Gossett declaration (and attached materials), the IRS January 15, 1999 letter provided by plaintiffs, the IRS' post-settlement calculations provided to partners and corresponding assessment of tax motivated interest, and the IRS' litigating position up until 2002, the IRS never believed it had conceded the sham issue. Rather, the IRS believed the settlement provided an offset to the total disallowance of the FPAAs to compensate for the recapture income already and to be reported by partners in years following the year of the claimed deductions. Thus, although the IRS settled partnership item amounts and thereby disturbed the treatment of those partnership items under the FPAA, the IRS in no way ever conceded the independent partnership item FPAA sham determinations. The IRS believed it had settled the sham issue with no change in its favor and that the deductions disallowed under the settlement were still governed by it - in the absence of such settlement, however, the sham issue remained unsettled apart from any settled amounts and therefore provided an alternative basis for the assessment of tax motivated interest.

Finally, we note that plaintiffs' Weiner argument improperly attempts to shift the burden

to us to prove that their underpayments were attributable to sham transactions. Although we have explained that the FPAA determinations validly attribute plaintiffs' underpayments to tax motivated transactions, in the present refund suits, it is plaintiffs' burden to show that they overpaid their tax liabilities, here, that their underpayments were not so attributable. See e.g. United States v. Janis, 428 U.S. 433, 440 (1976); Conway v. U.S., 326 F.3d 1268, 1278 (Fed. Cir. 2003). The assessment of tax motivated interest against plaintiffs is entitled to a presumption of correctness. See e.g. United States v. Fior D'Italia, Inc., 536 U.S. 238, 243 (2002) ("An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. It is well established in the tax law than an assessment is entitled to a legal presumption of correctness - - a presumption that can help the Government prove its case against a taxpayer in court."); Conway, 326 F.3d at 1278 ("The ruling of the Commissioner of Internal Revenue enjoys a presumption of correctness and a taxpayer bears the burden of proving it to be wrong"); see also Esposito v. United States, - - Fed. Cl. - -, 2006 WL 800757, at *4 (Mar. 27, 2006) (citing cases). Thus, plaintiffs have the task of demonstrating the assessment of tax motivated interest incorrect. Under TEFRA, however, they cannot meet that burden in a partner level proceeding, because they would have to prove that the FPAA was incorrect in determining that their partnership deductions (and corresponding underpayments) were attributable to sham transactions, and such partnership level determinations are beyond the jurisdictional scope of the present proceeding.

**3. Individual Profit Motive is irrelevant to imposition of interest under former § 6621(c).**

Plaintiffs argue further that, if the Court denies their "attributable to" argument, then, although the Court will not have jurisdiction over the nature of a partnership transaction, it will

have jurisdiction to make any partner fact-specific determinations needed with respect to the imposition of tax motivated interest. The sole partner fact specific determination pointed to by plaintiffs is their motivation for investing in their partnerships. We addressed this anticipated argument in our opening brief. See Mot. [Doc. #22] at 35-39. We agree with plaintiffs that the sham nature of a partnership transaction is a partnership item over which the Court lacks jurisdiction.[9] We also agree generally that there are partnership fact specific determinations and partner fact specific determinations that can comprise an analysis of § 6621(c) in the TEFRA context. Our disagreement lies in identifying any partner fact specific determination relevant to this case. The sole one identified by plaintiffs is their profit motive for investing in their partnership. In support of their claim that this is relevant to former § 6621(c), plaintiffs rely on the judicial doctrine of economic substance/sham transaction (starting with Frank Lyon Co. v. U.S., 435 U.S. 561 (1978) and moving forward into divergent appellate progeny), and Fifth Circuit precedent in the context of § 6621(c).

We now respond to the particulars of plaintiffs' partner motivation argument as revealed in their response to our motion. The fundamental flaw underlying their argument and the Fifth Circuit case law is the failure to address the meaning of tax motivated transaction under former § 6621(c) and instead conflating that statute and its applicable scheme with general judicial

[9] Plaintiffs mischaracterize our opening brief when they say "The government's *sole* authority for the proposition that this Court lacks jurisdiction over § 6621(c) refund claims is the Ninth Circuit's decision in *River City*." Resp. [Doc. #36] at 32. Nowhere in our opening brief do we argue that the Court lacks jurisdiction over former § 6621(c). We cited River City solely for the proposition that the sham nature of a partnership transaction for purposes of § 6621(c) is a partnership item. Thus, as we explained in our opening brief, the Court lacks jurisdiction over that component of § 6621(c) but not over other components that clearly require partner fact specific determinations. See Mot. [Doc. #22] at 38-39.

economic substance doctrine. The general doctrine is inapplicable to assessment of tax motivated interest under former § 6621(c) and, to the extent the Fifth Circuit case law suggests otherwise, it is incorrect, and the Sixth, Eighth, and Tenth Circuits should be followed.

**a. Introduction**

By its terms, § 6621(c)(1) as in effect for the years in issue required the imposition of additional interest on underpayments "attributable to tax motivated transactions." Section 6621(c)(3)(A) of the Internal Revenue Code of 1986 defined a "tax motivated transaction" as follows:

> (i) any valuation overstatement (within the meaning of section 6659(c)),
>
> (ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),
>
> (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092),
>
> (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and
>
> (v) any sham or fraudulent transaction.[10]

Section 6621(c)(3)(B) authorized the Secretary of the Treasury to specify by regulations

---

[10] Section 6621(c)(3)(A)(v), at issue here, added sham or fraudulent transactions to the definition of "tax motivated transactions" in 1986 to reverse the Tax Court decisions in DeMartino v. Commissioner, 51 T.C.M. (CCH) 1278 (1986), and Forseth v. Commissioner, 50 T.C.M. (CCH) 111 (1985), aff'd, 845 F.2d 746 (7th Cir. 1988). Those cases had held that "sham transactions that would be subject to this special interest rate were they not shams are not subject to this special interest because they are shams." H.R. Conf. Rep. No. 99-841 at II-796 (1986), reprinted in 1986-3 C.B. (vol. 4) v, 796. Congress considered it "anomalous that a genuine transaction (lacking the proper profit motive) would be subject to a higher interest rate, while a sham transaction, which is significantly more abusive, would escape the higher interest rate simply because it is a sham." Congress ended this anomaly by enacting § 6621(c)(3)(A)(v). Ibid.

other types of transactions which would be treated as tax motivated for purposes of § 6621(c)(3). Under this regulatory authority, the Secretary promulgated Temp. Treas. Reg. § 301.6621-2T, A-4(1) (1984), which created a sixth category of tax motivated transactions - "an activity engaged in by an individual . . . that is not engaged in for profit." See Copeland v. Commissioner, 290 F.3d 326, 332 (5th Cir. 2002).

As set forth infra, the statutory language, the legislative history, and the case law support the conclusion that in the case of a sham transaction, as with other tax motivated transactions, the increased rate of interest applies regardless of the taxpayer's motive for entering into the transaction.

**b. An individual's profit motive is irrelevant in determining whether a transaction was tax motivated within the meaning of § 6621(c)(3)(A)(v).**

The definition of a tax motivated transaction contains no reference to an individual taxpayer's motives. See § 6621(c)(3)(A); Thomas v. United States, 166 F.3d 825, 832 (6th Cir. 1999) ("On its face I.R.C. § 6621(c) has no motive requirement"). As the Ninth Circuit has recognized, the "'tax motivated transactions' set out in § 6621(c)(3)(A) show a legislative pattern established by Congress which treats violations of certain code sections as implicit violations of § 6621(c)," without regard to an individual taxpayer's intent. Hill v. Commissioner, 204 F.3d 1214, 1220 (9th Cir. 2000). The Ninth Circuit explained that an individual taxpayer's intent is irrelevant with respect to the tax motivated transactions specified in §§ 6621(c)(3)(A)(i) and (ii) (id.):

> Section 6621(c)(3)(A)(i) imposes increased interest on "any value overstatement (within the meaning of section 6659(c))." Section 6659(c) defines a value overstatement as any time the claimed value or adjusted basis of property is 150% or more of the actual value or adjusted basis. Section 6621 requires no inquiry

> into the subjective state of mind of the individual making the claim or any requirement that there be something more than the mere violation of § 6659(c).
>
> Similarly, § 6621(c)(3)(A)(ii) imposes the increase on any loss disallowed under § 465(a) or any credit disallowed under § 46(c)(8). Section 465 limits the amount of possible deductions to the amount an individual has at risk in the venture. The calculations under § 465 look solely to the transaction itself . . . and not to the individual's subjective state as to whether he thinks he's at risk. Section 46(c)(8) limits the value of certain investment credits so that a credit cannot be had on that portion of an "investment" which is comprised of nonrecourse debt. Again, § 6621 operates to impose the penalty without consideration of anything beyond the bare requirements of the referenced code sections.

Similarly, the tax motivated transaction described in § 6621(c)(3)(A)(iii) contains no reference to a taxpayer's motivation. That subsection requires the imposition of increased interest with respect to any tax underpayment attributable to any "straddle," as defined in § 1092(c). Section 1092 defines the term "straddle" as "offsetting positions with respect to personal property." § 1092(c)(1). As with §§ 6621(c)(3)(A)(i) and (ii), § 6621(c)(3)(A)(iii) "operates to impose the penalty without consideration of anything beyond the bare requirements of the referenced code sections." Hill, 204 F.2d at 1220.

Section 6621(c)(3)(A)(iv) identifies as a "tax motivated transaction" "any use of an accounting method specified in regulations . . . as a use which may result in a substantial distortion of income. . . ." Again, the imposition of additional interest does not include any inquiry into the state of mind of the person using the prohibited accounting method.

Like §§ 6621(c)(3)(A)(i) to (iv), § 6621(c)(3)(A)(v) on its face contains no reference to a taxpayer's motivation. It simply classifies "any sham or fraudulent transaction" as a "tax motivated transaction." I.R.C. § 6621(c)(3)(A)(v). Just as taxpayer's motivations are irrelevant in applying the definitions of "tax motivated transaction" contained in §§ 6621(c)(3)(A)(i) through (iv), the taxpayer's motives are also irrelevant in applying the definition of "tax

motivated transaction" contained in § 6621(c)(3)(A)(v). See Chakales v. Commissioner, 79 F.3d 726, 728 (8th Cir. 1996) ("[t]here is no basis for reading a separate state of mind requirement into the application of the sham test for purposes of section 6621(c)(3)(A)(v)").

This conclusion is supported by the legislative history of § 6621(c)(3)(A)(v), which shows that Congress intended to treat sham transactions similarly to the tax motivated transactions identified in §§ 6621(c)(3)(A)(i) - (iv). H.R. Conf. Rep. No. 99-841 at II-796, reprinted in 1986-3 C.B. (vol. 4) at 796.

It is also supported by the Secretary's promulgation of Temp. Treas. Reg. § 301.6621-2T, A-4(1) (1984). Under the regulation, "an activity engaged in by an individual . . . that is not engaged in for profit" was treated as a "tax motivated transaction" when the Commissioner had disallowed a deduction under § 183. The Secretary's addition of a sixth category of tax motivated transaction under which a profit motive is relevant supports the conclusion that profit motive was not relevant under any of the tax motivated transactions identified in § 6621(c)(3).

Three appellate courts that have addressed the question agree that § 6621(c)(3)(A)(v), by its terms, authorizes the assessment of additional interest against a taxpayer participating in any sham transaction, regardless whether the taxpayer personally had a profit motive in participating in the transaction. Thompson v. United States, 223 F.3d 1206, 1212-13 (10th Cir. 2000); Thomas, 166 F.3d at 832-34; Chakales, 79 F.3d at 727-28; Anderson v. Commissioner, 62 F.3d 1266, 1274 (10th Cir. 1995). See also Hill, 204 F.3d at 1219-20 (taxpayer's individual motivation was irrelevant in determining liability for § 6621(c) interest based on Temp. Treas. Reg. § 301.6621-2T (1984)).

For example, in Thompson, 223 F.3d at 1212-13, the taxpayers conceded that the

transaction was a sham, but proposed a jury instruction that, if the jury found that they had invested in the transaction expecting to make a profit, the jury must find § 6621(c) inapplicable. The trial court gave the requested instruction over the Government's objection. The jury returned a verdict in taxpayers' favor, apparently finding that the taxpayers had a profit motive.

The Tenth Circuit reversed. In holding the jury instruction erroneous, the Tenth Circuit stated that taxpayers' "'argument [of profit motive] might have some merit if the statute made the taxpayer's motivation for entering into the transaction a determining factor. However, where the "tax motivated transaction" is a "sham or fraudulent transaction," the taxpayer's motivation is irrelevant.'" Thompson, 223 F.3d at 1212 (quoting Anderson, 62 F.3d at 1274). The court concluded that "section 6621(c) simply leaves no room for consideration of the individual taxpayer's motivation when the taxpayer concedes the transaction was a sham." Thompson, 223 F.3d at 1212.

These cases, as well as the plain statutory language, demonstrate that an individual taxpayer's motivation is irrelevant to the imposition of § 6621(c) interest in cases involving sham transactions. Plaintiffs attempt, as did the district court in Weiner, 255 F. Supp. 2d at 679 n.9, to distinguish Thompson, 223 F.3d 1206 and Thomas, 166 F.3d 825 on the grounds that the partners in those cases conceded the relevant partnership transactions were shams, while plaintiffs made no such concession in their settlement agreements. This distinction lacks merit. For purposes of § 6621(c)(3)(A)(v), it is immaterial whether a transaction is a sham because the taxpayer so concedes (Thompson, Thomas, Anderson), whether it is a sham because a court so finds (Chakales and, as set forth in our opposition to plaintiffs' motion for partial summary judgment, the July 19, 2001 Tax Court decisions relevant to this case), or, as here, whether it is a

sham because so determined in an FPAA unaffected by settlement and upheld by the Tax Court. In any such situation, the taxpayer is subject to the imposition of additional interest under § 6621(c)(3)(A)(v).

**c. Reliance on Fifth Circuit Decisions is misplaced**

As noted in our opening brief, plaintiffs rely on the Fifth Circuit's decisions in Durret, Chamberlain, Lukens, and Heasley, to argue that a taxpayer's profit motive is relevant to liability for § 6621(c) interest.[11] Plaintiffs' reliance on these cases is misplaced. As explained in our opening brief, none of the four cases arise from a TEFRA unified partnership proceeding context or construe the plain language of § 6621(c)(3)(A)(v). See Mot. [Doc. #22] at 36 n.26. We augment our discussion there with the following comments.

In Heasley, the attempted imposition of § 6621 interest was based on Temp. Treas. Reg. § 301.6621-2T, Q-4 (1984), rather than on § 6621(c)(3)(A)(v), which is at issue here. Under Temp. Treas. Reg. § 301.6621-2T, A4(1) (1984), "an activity engaged in by an individual . . . that is not engaged in for profit" was treated as a "tax motivated transaction" when the Commissioner had disallowed a deduction under I.R.C. § 183. The express language of Temp. Treas. Reg. § 301.6621-2T thus made an individual's profit motive relevant, as did § 183, to which the regulation refers.[12] In the context of these provisions, the Fifth Circuit observed that "the tax court also should have considered the Heasleys' intent when determining whether the

---

[11] Durrett v. Commissioner, 71 F.3d 515 (5th Cir. 1996), Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995), Lukens v. Commissioner, 945 F.2d 82 (5th Cir. 1991), and Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990)

[12] Section § 183 provides, "In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed. . . ."

Heasleys did not engage in the transaction for profit." 902 F.2d at 386. Because Heasley did not involve a sham transaction determination under § 6621(c)(3)(A)(v), at issue here, plaintiffs' reliance on it is misplaced. See Chakales, 79 F.3d at 728.

Plaintiffs' reliance on Lukens, Chamberlain, and Durrett is also misplaced. In each case, the Tax Court upheld § 6621(c) interest because the taxpayer had participated in a sham transaction. On appeal, each taxpayer contended that he had a profit motive and that, therefore, the additional interest was improper. The Fifth Circuit rejected the contention in each case because the Tax Court had found that the taxpayer did not have a profit motive, and this finding was not clearly erroneous. Durrett, 71 F.3d at 517; Chamberlain, 66 F.3d at 732; Lukens, 945 F.2d at 99-100. The Fifth Circuit accordingly affirmed the imposition of § 6621(c) interest in all three cases. Thus, these cases do not hold that a sham transaction is not tax motivated for purposes of § 6621(c) unless the taxpayer individually lacked a profit motive; for they merely affirmed the findings of the Tax Court that the taxpayers did not in fact have a bona fide profit motive.[13]

To be sure, the cases contain dicta suggesting that § 6621(c) interest should not be imposed in a case involving a sham transaction if the taxpayer had a profit motive. For example, in Lukens, the Fifth Circuit stated, "A sham or fraudulent transaction includes transactions that

---

[13] In Copeland v. United States, 290 F.3d 326 (5th Cir. 2002), which postdates Durrett, Chamberlain, and Lukens, the Fifth Circuit characterized those cases in a manner that supports the suggested reading here. The appellate court noted each opinion "rested [its] affirmance of the imposition of the I.R.C. § 6621(c) interest rate at least in part on the recognition of the Tax Court's factual finding that the individual Taxpayers lacked a profit motive." Copeland, 290 F.3d at 338. Durrett, Chamberlain, and Lukens thus did not decide the question whether § 6621(c) interest could be imposed upon a taxpayer who had a profit motive but participated in a sham partnership transaction.

were not entered into for profit and are without economic substance." 945 F.2d at 99. We explained in our opening brief that this definition of sham transaction resulted from conflating two different tax motivated transaction definitions and thus tainted Chamberlain and Durrett, both of which relied on the Lukens definition. Also for example, in Chamberlain, the Fifth Circuit, after reiterating the conflated definition, observed, "In determining a profit motive we focus on the intent of the taxpayer, not that of the underlying entity or activity." Chamberlain, 66 F.3d at 732 & n.13.

Sixth Circuit decisions predating Thomas v. United States, 166 F.3d 825, contained similar statements. In Pasternak v. Commissioner, 990 F.2d 893, 904 (6th Cir. 1993), the Sixth Circuit stated, "Because the Tax Court correctly determined that petitioners' motives for investing in the leasing transactions were to reduce their tax liability rather than to reap a profit, the section 6621(c) penalty must also be sustained." Similarly, in Kennedy v. Commissioner, 876 F.2d 1251, 1256 (6th Cir. 1990), the Sixth Circuit reasoned:

> Whatever motives drove GFTD investors to participate, there is little doubt that tax motives were predominant. Because investments entered into primarily for tax benefits are not profit motivated, . . . petitioners cannot avoid the Tax Court's increased interest assessment authorized by IRC § 6621(c).

Relying on Kennedy and Pasternak, the District Court in Thomas held that the taxpayer's profit motive is relevant in determining his liability for § 6621(c) interest.

The Sixth Circuit reversed. It characterized the district court's reading of Pasternak and Kennedy as "misguided," stating that those cases "focused on the taxpayer's motive as part of the analysis in deciding whether the transactions were shams." Thomas, 166 F.3d at 832, 833. It concluded that "Pasternak and Kennedy impose[d] no separate motive requirement to sustain an interest rate increase under I.R.C. § 6621(c)." Id. at 833. It then followed the other courts in

holding that "by its plain language I.R.C. § 6621(c) imposes no inquiry into the taxpayer's investment motive when the transaction is found to be a sham." Id. at 834.

As was the district court's view in Thomas, plaintiffs' reading of Fifth Circuit appellate decisions can be understood as "misguided." Thomas, 166 F.3d at 832. The Fifth Circuit decisions, as the Sixth Circuit understood Pasternak and Kennedy, "impose no separate motive requirement to sustain an interest rate increase under I.R.C. § 6621(c)." Ibid. Thus, the Fifth Circuit cases can be harmonized with the Sixth, Eighth, and Tenth Circuit holdings that "by its plain language I.R.C. § 6621(c) imposes no inquiry into the taxpayer's investment motive when the transaction is found to be a sham." Id. at 834. To the extent the Court disagrees with this reading of the Fifth Circuit precedent, we also rely on our opening brief critique of it.

**d. Plaintiffs' policy objection to tax motivated interest.**

Plaintiffs also oppose the imposition of tax motivated interest by assuming plaintiffs were innocent dopes of the partnership in which they invested, and, with that assumption, by making the following policy argument: "passive investors who were in no way personally at fault for the disqualification of the relevant deductions and who are required by § 6222 to report consistently with the partnership's return should not be subject to a potentially huge 'no fault' penalty." Resp. [Doc. #36] at 39. This argument has no merit. As set forth supra, passive limited partners, even if they were not personally at fault, are subject to § 6621(c) interest under the circumstances specified in §§ 6621(c)(3)(A)(i) through (v) without regard to their motives. For example, if partnership benefits are based on a valuation overstatement, passive limited partners are liable for § 6621(c) interest regardless whether they had a profit motive or were personally at fault. See I.R.C. § 6621(c)(3)(A)(i). In addition, the Tenth Circuit responded directly to this

argument:

> '[I]t might well be more just that taxpayers who unwittingly enter into sham transactions in hopes of making a profit should not be treated as harshly as taxpayers who do so knowing full well that they are engaging in a sham. Unfortunately, this is not the law, which is dictated here by the inflexible terms of § 6621(c) and the law defining "sham transactions."'

Thompson, 223 F.3d at 1213 (quoting Thomas, 166 F.3d at 834-35 (Boggs, J., concurring)). In sum, as the Ninth Circuit stated in Hill, 204 F.3d at 1220, "Section 6621 requires no inquiry into the subjective state of mind of the individual."[14]

**III. Conclusion**

For the foregoing reasons, the Court should grant our motion and dismiss the remaining active claims of Keener's and Smith's complaints - - allegations regarding untimely assessment of tax attributable to partnership items and regarding the propriety of the assessment of tax motivated interest.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*

[14] In Copeland v. United States, 290 F.3d 326, 336-37 (5th Cir. 2002), the Fifth Circuit criticized Hill for not interpreting Temp. Treas. Reg. § 301.6621-2T, A-4(1) to require that a deduction must be disallowed directly under § 183, but did not disagree with the Ninth Circuit's view that an individual's profit motive or lack thereof is irrelevant for purposes of imposition of additional interest under § 6621(c)(3)(A). The correctness of the Ninth Circuit's application of § 301.6621-2T, A-4, in Hill is not at issue here.

*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Acting Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

May 10, 2006