No. 03-2028 T
(Judge Francis M. Allegra)

(Consolidated with 04-907 T)

---

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

KENNETH C. KEENER,

Plaintiff

v.

THE UNITED STATES,

Defendant

REPLY BRIEF IN SUPPORT OF ADDITIONAL/ALTERNATIVE GROUND FOR DISMISSAL OF PLAINTIFFS' TAX MOTIVATED INTEREST CLAIMS

EILEEN J. O'CONNOR
Assistant Attorney General

STEVEN I. FRAHM
BARD D. JEFFRESS
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
(202)307-6496
(202)514-9440 (facsimile)

**PAGE**

**TABLE OF CONTENTS**

Defendant's reply brief in support of additional/alternative ground . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. The two year period of § 6511(a) cannot apply to plaintiffs' claims for refunds of tax motivated interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. As valid Treasury Regulations and binding Federal Circuit precedent provide, tax motivated interest is a computational adjustment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. Plaintiffs' due process and other contentions lack merit. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV. Relationship of Additional/Alternative Ground to Original Motion . . . . . . . . . . . . . . . . . 18

V. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Page**

## TABLE OF AUTHORITIES

**Statutes:**

Tax Reform Act of 1986, Pub. L. No. 99-514, § 1875(d)(2)(A, C), 100 Stat. 2085, 2896, *reprinted in* 1986-3 C. B. 1, at 813. . . . . . . . . . 4
Title 26, U.S.C.:[1]
§ 6226 . . . . . . . . . . 15
§§ 6211-6216 . . . . . . . . . . 4
§ 6230 . . . . . . . . . . 1-8, 10-14, 16, 19
§ 6231 . . . . . . . . . . 3, 8, 10
§ 6511 . . . . . . . . . . 2, 3, 5-7, 12, 13, 15, 16
§ 6601 . . . . . . . . . . 8, 9
§ 6621 . . . . . . . . . . 5, 9, 12, 19
§ 7422 . . . . . . . . . . 12, 19

**Regulations:**

Treas. Reg. § 301.6221-1 (c, d) (2001) . . . . . . . . . . 16
Treas. Reg. § 301.6226(f)-1(a) (2001) . . . . . . . . . . 16
Temp. Treas. Reg. § 301.6231(a)(6)-1T(b) (1987) . . . . . . . . . . 2, 8

**Cases:**

*Brookstone Corp. v. United States*, Civ. A. No. H-91-3467, 1994 WL 621576 (S.D. Tex. 1994) . . . . . . . . . . 4, 5, 6

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992) . . . . . . . . . . 7

*Field v. United States*, 328 F.3d 58 (2nd Cir. 2003) . . . . . . . . . . 12

*Field v. United States*, 381 F.3d 109 (2d Cir. 2004) . . . . . . . . . . 9

*Gitlitz v. Commissioner*, 531 U.S. 206 (2001) . . . . . . . . . . 7

[1] All statutory references to Title 26 of the United States Code are to the Internal Revenue Code of 1986, as in effect for the taxable year at issue or as in effect otherwise with respect to the facts of the present cases. Internal Revenue Code sections are referenced throughout the brief as "§ [section]."

*N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741 (1987) . . . . . . . . . . . . . . . . . . . . 6

*Odend'Hal v. Commissioner*, 95 T.C. 617 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Olson v. United States*, 37 Fed. Cl. 727 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Olson v. United States*, 172 F.3d 1311 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . 2, 4, 8, 9

*Russello v. United States*, 464 U.S. 16 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Woody v. Commissioner*, 95 T.C. 193 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Miscellaneous:**

Conf. Rep. No. 97-760 (1982), *reprinted in* 1982-2 C. B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
1989 IRS NSAR 9164, 1989 WL 1173044 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2028 T

Judge Francis M. Allegra

(Consolidated with 04-907 T)

KENNETH C. KEENER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

REPLY BRIEF IN SUPPORT OF ADDITIONAL/ALTERNATIVE GROUND FOR DISMISSAL OF PLAINTIFFS' TAX MOTIVATED INTEREST CLAIMS

Defendant, the United States, respectfully submits this reply to plaintiffs' opposition to defendant's alternative/additional ground in support of its motion to dismiss plaintiffs' tax motivated interest claims.[2]

## INTRODUCTION

In our additional/alternative ground, *see Br.* [Doc. #54], we explained that the Court lacks jurisdiction over plaintiffs' claims for tax motivated interest, because they did not file claims for refund with the Internal Revenue Service within the jurisdictional deadline set forth in § 6230(c)(2)(A). Under that provision, when the Internal Revenue Service makes a

[2] The captioned case, *Keener*, has been consolidated for briefing with *Smith v. United States* (Fed. Cl. No. 04-907), and references in this reply are therefore to plaintiffs.

computational adjustment to apply to a partner a settlement of partnership items, the partner has six months from the date the IRS mails the notice of adjustment to file a claim for refund, disputing the IRS' computation.

The Federal Circuit has held that the imposition of tax motivated interest is indeed a computational adjustment. *See Olson v. United States*, 172 F.3d 1311, 1315 n.1, 1318 and n.2 (Fed. Cir. 1999); *see also* Temp. Treas. Reg. § 301.6231(a)(6)-1T(b) (1987). Thus, plaintiffs' challenge to the imposition of tax motivated interest is a challenge to a computational adjustment, and a six month period to file a refund claim applies. Plaintiffs did not file their claims for refund within that period.

We went on to explain why the time to file a refund claim for tax motivated interest is not governed by the general period of limitation set forth in § 6511(a) – i.e., that a claim for refund must be filed within two years of the payment of tax. If the two year period could apply, the specific TEFRA six month period of limitation to contest a computational adjustment would be meaningless. Indeed, § 6230(d)(6) forbids such a perverse result. That statute, for the taxable years at issue in this case, explicitly precluded application of the two year period of § 6511(a) to claims for refund of affected items. Plaintiffs, in accord with Tax Court precedent, have already conceded that tax motivated interest is an affected item. Therefore, plaintiffs' claims for refund of tax motivated interest fall within the plain language of § 6230(d)(6), and the two year limitations period has no application to this case.

In their opposition, plaintiffs nevertheless argue that the two year, not the six month, statute of limitations applies. On that basis, they conclude that their claims for refund of tax motivated interest are timely. As explained below, plaintiffs are disregarding binding Federal

Circuit precedent, unambiguous statutory language, and valid treasury regulations. Likewise, in arguing that their approach protects their due process rights, plaintiffs ignore their own facts and instead pose hypothetical fact patterns that are not before the Court.

**I. The two year period of § 6511(a) cannot apply to plaintiffs' claims for refunds of tax motivated interest.**

As summarized *supra*, § 6230(d)(6) explicitly precludes the application of the two year period of § 6511(a) to claims for refunds of affected items, which includes plaintiffs' refund claims for tax motivated interest. Plaintiffs, however, insist that § 6230(d)(6) only bars application of the two year period to computational affected items, not "substantive affected items," that is, "affected items which require partner level determinations," § 6230(a)(2)(A)(i). Contending that tax motivated interest is a substantive affected item, plaintiffs conclude that the two year period may apply to their refund claims.

The term "affected item" is defined to mean "any item to the extent such item is affected by a partnership item." § 6231(a)(5). The definition is all encompassing - it does not distinguish between different types of affected items.

Likewise, § 6230(d), as in effect for the taxable years at issue, unambiguously barred application of the two year period of § 6511(a) to refund claims contesting *any* affected item:

> Subchapter B of chapter 66 (relating to limitations on credit or refund) shall not apply to any credit or refund of an overpayment attributable to a partnership item (or an affected item).

§ 6230(d)(6). "Subchapter B of chapter 66" includes the two year period, and § 6230(d)(6) uses the all encompassing term "affected item," without qualification.

The history underlying the statutory scheme highlights that Congress was quite deliberate in using the term "affected item" without limitation in § 6230(d)(6). After enacting § 6230(d)(6)

in 1982 as part of TEFRA, Congress amended § 6230(a) in 1986, via technical correction.[3] The amendment to § 6230(a) singled out substantive affected items for special treatment in connection with deficiency procedures, which are not at issue here. *See* § 6230(a)(2)(A)(i).[4]

Congress, however, made no corresponding amendment to § 6230(d)(6), leaving intact the all inclusive term "affected item" for purposes of the limitations period. The deliberate contrast within a single section of a unified statutory scheme can only mean that an "affected item" in § 6230(d)(6) refers to all affected items, not just computational ones. *See e.g. Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotation omitted).

Plaintiffs row against this statutory scheme. They argue instead that this Court should follow a district court decision in Texas, *Brookstone Corp. v. United States*, Civ. A. No. H-91-3467, 1994 WL 621576, at *4-5 (S.D. Tex. 1994).

This Court need not follow the district court's decision in Brookstone. The district court did not hold that tax motivated interest is a substantive affected item, or that the two year statute

---

[3] *See* Tax Reform Act of 1986, Pub. L. No. 99-514, § 1875(d)(2)(A), 100 Stat. 2085, 2896, *reprinted in* 1986-3 C. B. 1, at 813. The amendment applies as if included in TEFRA in 1982. *See id.* § 1875(d)(2)(C).

[4] In § 6230(a)(2)(A)(i), substantive affected items are "affected items which require partner level determinations" and are subject to deficiency procedures. Accordingly, the Federal Circuit, among others, has recognized two types of affected items in relation to deficiency procedures (but not the limitations period): 1) computational affected items that are not subject to the deficiency procedures of subchapter B of chapter 63, §§ 6211-6216; and 2) substantive affected items, those that require a non-computational factual determination at the partner level and thus are subject to those deficiency procedures. *See Olson*, 172 F.3d at 1317-18.

applies to a claim for tax motivated interest. The opinion in *Brookstone* makes no mention of tax motivated interest or former § 6621(c), much less rules that tax motivated interest is a substantive affected item. Thus, plaintiffs' repeated characterization of the holding of the case is inaccurate: "The *Brookstone* court further held that claims for refund of §6621(c) penalty interest are not subject to the §6230(c)(2)(A)(i) six-month period of limitations for filing a §6230(c)(1)(A)(i) claim, but are subject to the standard period for filing refund claims set out in §6511(a)." *Resp.* [Doc. #58] at 2; *see also id.* at 14, 15 ("The *Brookstone* court also agreed that the plaintiff's §6621(c) claims in that case were based on substantive affected items and did not challenge the IRS's computation of the change in tax liability as a result of the settlement and were, consequently not subject to the §6230(c)(2)(A)(i) six-month period for filing a refund claim."). Similarly, plaintiffs' intimation that the Fifth Circuit's affirming *Brookstone* endorsed the trial court's view of § 6230(d)(6) is forced. *See id.* at 14. The appellate disposition was a one word affirmance without opinion of the lower court's judgment in favor of the United States. *See Brookstone Corp. v. United States*, 58 F.3d 637 (Table) (5th Cir. 1995).

Rather, the far more limited holding of the district court in *Brookstone* was that § 6230(d)(6) applies only to computational affected items. Even that less expansive conclusion is faulty. The opinion fails to recognize that, while Congress singled out substantive affected items for special treatment with respect to deficiency notice procedures, it did not do so in § 6230(d)(6), when it addressed the applicable limitations period. As noted above, § 6230(d)(6) applies to *all* affected items. The court instead leaped from the fact that substantive affected items are subject to normal deficiency procedures to the unsupported conclusion that therefore the normal refund claim provisions must apply:

> Just as a substantive affected item is subject to the non-TEFRA deficiency procedure set out in section 6230(a), so the non-TEFRA refund procedure must also apply. To hold otherwise would be to treat a substantive affected item as a "computational adjustment" within section 6230(c)(1)(A), which the courts and Code have rejected. *See, e.g., Woody*, 95 T.C. at 202; *N.C.F. Energy*, 89 T.C. at 744.

*Brookstone*, 1994 WL 621576, at *5. The court's premise is false and not supported by the Tax Court's decisions in *Woody* or *N.C.F. Energy*. Those decisions simply note, in accord with Congress' statutory scheme, that deficiency procedures apply to substantive affected items but not computational ones. Contrary to the *Brookstone* court's view, maintaining the same refund claim procedures for both does nothing to collapse this distinction for purposes of deficiency procedures. To the contrary, it upholds Congress' design: affected items are governed by the same refund claim procedures, and substantive affected items are also governed by standard deficiency procedures.

Moreover, the premise of *Brookstone* – that § 6511(a) should apply to substantive affected items because non-TEFRA deficiency procedures applied – does not apply here. As plaintiffs concede, tax motivated interest is not subject to non-TEFRA deficiency procedures. *See Resp.* [Doc. #58] at 17.

There also is no basis to treat plaintiffs' claim for tax motivated interest as a substantive affected item, rather than a computational affected item. The tax motivated interest at issue in this case is not a substantive affected item, but a computational one. *See Br.* [Doc. #54] at 4-5 n.3. No non-computational, factual determinations at the partner level were necessary to assess tax motivated interest against plaintiffs. Once it was determined (at the partnership level) that the partnership transactions giving rise to plaintiffs' disallowed partnership deductions were shams, the IRS needed only to compute the resulting tax underpayment, note whether it

exceeded $1,000, and, if so, compute interest at the higher tax motivated rate. Contrary to plaintiffs' position, the partner's individual profit motive is irrelevant here. *See Reply* [Doc. #49] at 24-35.

Finally, plaintiffs also point to a vague passage of legislative history, which they claim "clearly contemplated that refund claims would be filed after payment of TEFRA related tax deficiencies pursuant to the standard §6511(a) refund period." *See Resp.* [Doc. #58] at 16. As there is nothing ambiguous about the statutory scheme discussed above, there is no need to even resort to this legislative history. *See Gitlitz v. Commissioner*, 531 U.S. 206, 220 (2001); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). § 6230(d)(6) clearly precludes application of § 6511(a) to refund claims contesting affected items. In any event, the passage cited by plaintiffs is difficult to understand, and they offer no analysis; just the conclusory statement just quoted. The passage may be understood as permitting a partner to raise a tax return item that is untouched by a computational adjustment, but which, had the effects of the computational adjustment been known at the time the partner filed the return, could have been used to reduce the partner's tax liability for that year. *See* Conf. Rep. No. 97-760, at 611 (1982), *reprinted in* 1982-2 C. B. 600, at 668. It seems odd to interpret the passage, as plaintiffs do, to permit challenges to a computational adjustment, as such challenges are already provided for by TEFRA provisions, including § 6230(c).[5]

---

[5] Plaintiffs overstate the content of an IRS' 1989 non docketed service advice review (which, in any event, may not be used or cited as precedent). Plaintiffs say the document concluded that tax motivated interest is "subject to the standard §6511(a) period for filing a refund claim. . . ." *Resp.* [Doc. #58] at 19. Rather, the document was not so firm: "we now think that the taxpayer may be able to pursue a refund claim as to the assessed and paid interest pursuant to . . . sections 6511 and 7422," and footnoted the statement with the proviso "[e]ven if (continued...)

## II. As valid Treasury Regulations and binding Federal Circuit precedent provide, tax motivated interest is a computational adjustment.

In their effort to avoid the six-month limitations period, plaintiffs contend that neither interest nor tax motivated interest is a "computational adjustment" as defined in § 6231(a)(6). They argue that the contrary view of the treasury regulations impermissibly broadens the statutory definition of the term. They also argue that the Federal Circuit's contrary holding in *Olson* is dicta. Having unburdened themselves of these contrary authorities, plaintiffs conclude that their tax motivated interest claims do not fit within § 6230(c)(1)(A)(ii) as claims that the IRS "erroneously computed any computational adjustment necessary to apply . . . a settlement . . . ." According to plaintiffs, § 6230(c)(1)(A)(ii) encompasses only mathematical errors and not their claim "that the IRS improperly applied the §6621(c) rate at all." *Resp.* [Doc. #58] at 7.

Temp. Treas. Reg. § 301.6231(a)(6)-1T(b) (1987), applicable here, unambiguously includes any interest charge within the statutory definition of a "computational adjustment": "A computational adjustment includes any interest due with respect to any underpayment or overpayment of tax attributable to adjustments to reflect properly the treatment of partnership items." Plaintiffs are simply wrong when they assert that such inclusions fell outside the scope of regulatory power. § 6231(a)(6) defines "computational adjustment" as "the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item." By statute, the phrase "tax liability" also means § 6601 "interest liability." *See* § 6601(e)(1) ("Any reference in this title . . . to any tax imposed by this title shall be deemed also

---

[5] (...continued)
it is determined that the taxpayer may not be able to pursue a refund claim as to the assessed and paid interest under section 6621(c). . . ." *See* 1989 IRS NSAR 9164, 1989 WL 1173044.

to refer to interest imposed by this section on such tax."). And § 6621(c) tax motivated interest is § 6601 interest due with respect to an underpayment. *See* § 6621(c) (1988) (repealed); *Field v. United States*, 381 F.3d 109, 111-12 (2d Cir. 2004); *Odend'Hal v. Commissioner*, 95 T.C. 617, 620 (1990). In other words, the regulation simply reflects the statute.

Relying on the regulation, the Federal Circuit in *Olson* held that interest, including tax motivated interest, is a "computational adjustment." The question before the appellate court was whether the IRS improperly assessed tax, interest, and penalties without first issuing notices of deficiency. *See Olson*, 172 F.3d at 1316 ("On appeal the taxpayers argue solely that the Court of Federal Claims erred because, without notices of deficiency, the tax, interest and penalties were improperly assessed and should therefore have been refunded."). The interest at issue was interest assessed at the higher tax motivated rate. The Court concluded that, because the tax, interest, and penalties resulted from computational adjustments, "no notices of deficiency were required. . . ." *Id.* at 1319. In so holding, the Federal Circuit addressed each item one by one, interest first, penalties second, and tax third. *See id.* at 1318. With respect to interest:

> We are not persuaded that any form of non-computational determination was required to determine the amount of taxes, interest, and penalties to be assessed for these earlier and later years. As an initial matter, the regulations set forth that interest is to be included as a computational adjustment,[2] *see* Temp. Treas. Reg. § 301.6231(a)(6)-1T(b). . . .
>
> [2] No doubt, that is why the Court of Federal Claims vacated that part of its decision of April 21, 1997, to the contrary. *See* note 1, *ante*.
>
> [1] The Court of Claims's April opinion stated that, absent a waiver, a notice of deficiency is required to assess interest under I.R.C. § 6621(c). . . . On May 7, 1997, however, the court granted the government's motion to delete that part of the opinion making that assertion. . . .

*Olson*, 172 F3d. at 1318 and n.2, 1315 n.1. Thus, the Federal Circuit asked whether a notice of deficiency must issue prior to the assessment of tax motivated interest. It answered in the

negative on the grounds that interest is a computational adjustment. There is no basis to characterize the appellate court's opinion in this regard as dicta.

Having established that tax motivated interest is a computational adjustment as defined in § 6231(a)(6), the next step is to ask how a taxpayer challenges a computational adjustment made to apply a partnership item determination. The answer is supplied by § 6230(c)(1)(A)(ii), which permits a refund claim where the IRS:

> erroneously computed any computational adjustment necessary to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228. . . .

§ 6230(c)(1)(A)(ii). Plaintiffs wish to cabin the language to allow only challenges to mathematical errors, such as created by a slip of the finger on a calculator. But the language Congress used is not so limited. Had Congress intended plaintiffs' interpretation, it would have employed language such as "mathematical error" or "correction," as it did just one subsection before to connote such meaning. *See* § 6230(b)(1) ("Section 6225 shall not apply to any adjustment necessary to correct a mathematical or clerical error (as defined in section 6213(g)(2)) appearing on the partnership return.").

Rather, the language is broad enough to encompass not only mathematical and clerical errors, but also non-math based errors made in computing "computational adjustments" to apply a partnership item determination to a partner. As discussed above, a "computational adjustment" is defined as "the change in the tax [or interest] liability of a partner which properly reflects the treatment under this subchapter of a partnership item" and includes interest at the regular or tax motivated rate. The language of § 6230(c)(1)(A)(ii) therefore permits refund claims on the grounds that the IRS erroneously computed the change in the interest liability of a partner,

because the change did not reflect the treatment of a partnership item at the partnership level, for example, disallowance of partnership losses. An interest computation that properly reflects a partnership item determination can include more than mechanical calculations. If, for example, partnership losses are disallowed at the partnership level because derived from sham transactions, the subsequent partner level computation, to properly reflect such disallowance, must first compute the partner's tax underpayment, and, if such underpayment exceeds $1,000, must second compute interest on the underpayment at the tax motivated rate. Any other computation would be error, as it would not properly reflect the treatment of partnership losses at the partnership level.[6]

§ 6230(c)(1)(A)(ii) fits plaintiffs' claims like a glove. They challenge the IRS' use of the higher tax motivated interest rate (instead of the regular interest rate) to compute the interest owed on tax underpayments attributable to partnership item settlement agreements. They claim

---

[6] The Court of Federal Claims, at the trial level in *Olson*, reached a similar conclusion regarding the breath of the language in § 6230(c)(1)(A)(ii). In view was a hypothetical fact pattern, under which the IRS, when applying a partnership level disallowance of a credit, misidentifies a partner level carryback or carryover arising from the credit. The partner is assessed tax in a carryback or carryover year, even though the disallowed carryback or carryover had nothing to do with the disallowed partnership credit. The Court of Federal Claims explained that, in this context (which does not include mathematical error), the taxpayer's remedy lies under § 6230(c)(1)(A)(ii):

> This equity based-argument overlooks what are, in fact, the existing procedures under TEFRA regarding computational errors committed by the IRS in making computational adjustments to a partner's return. Under § 6230(c), a partner may file a refund claim on the grounds that the IRS 'erroneously computed any computational adjustment' necessary to apply a partnership-level determination to the partner. This standard is broad enough to encompass situations in which a taxpayer alleges that the IRS has incorrectly identified the source of a disputed carryback or carryforward.

*Olson v. United States*, 37 Fed. Cl. 727, 735-36 (1997).

the IRS erred in using the higher rate because their settlement agreements do not support it. Specifically, they claim that their settlement agreements do not attribute the losses disallowed in them to sham transactions, and thus that there is no basis for assessing tax motivated interest on any underpayment resulting from the disallowance. In sum, plaintiffs claim that the IRS erroneously computed the change in their interest liability, because use of the tax motivated rate did not reflect the treatment of their partnership losses under their settlements. This claims falls squarely within § 6230(c)(1)(A)(ii).

It is noteworthy that no other refund claim provision fits (as set forth above, § 6511(a) cannot apply), and no deficiency notice is required to assess tax motivated interest. No doubt this scheme was intentional, as §§ 6230(c)(1)(A)(ii), (c)(2)(A) provide plaintiffs and others similarly situated with an adequate avenue of redress. As noted in our opening brief, if a taxpayer really did not agree to the assessment of tax motivated interest in a settlement agreement, six months is ample time to recognize the erroneous assessment and protest. Plaintiffs failed to satisfy the threshold six month requirement.[7]

---

[7] Plaintiffs also rely on *Field v. United States*, 328 F.3d 58, 59 n.2 (2nd Cir. 2003) to contend that their tax motivated interest claims do not fall under § 6230(c). In *Field*, the Second Circuit held that tax motivated interest assessed under former § 6621(c) is not a partnership item - a holding with which we agree - and therefore that a refund suit for its recovery was not barred by § 7422(h). It remarked in a footnote that the taxpayers did not seek a refund pursuant to one of the exceptions to the bar of § 7422(h), namely, § 6230(c). Given the holding, the remark was irrelevant. For if the interest was not a partnership item, then, according to the Second Circuit, § 7422(h) presented no bar to the claim. Thus, whether an exception to the bar applied was irrelevant. The truncated and irrelevant nature of the remark make it an insufficient basis on which to conclude tax motivated interest claims fall outside the purview of § 6230(c).

(We note that the Second Circuit also did not address whether a refund suit for tax motivated interest would be barred by § 7422(h), if it was based in particular on changing a partnership item determination, for example, if the suit sought a change in a partnership item component of a tax motivated interest analysis.).

**III. Plaintiffs' due process and other contentions lack merit.**

Plaintiffs contend that due process is offended, if the six month limitations period of § 6230(c)(2)(A) applies to a refund claim to contest the assessment of tax motivated interest when computing adjustments to apply partnership level determinations. To support their thesis, plaintiffs propound two hypothetical fact patterns at odds with the record facts before the Court. We address each in turn.

First, plaintiffs conjecture, because the six month period of § 6230(c)(2)(A) runs from "the day on which the Secretary mails the notice of computational adjustment" and the IRS only must assess interest within the time permitted for collecting the underlying tax liability, the IRS could delay the actual assessment of tax motivated interest until after the six month period has ended. Plaintiffs conclude from this hypothetical that the two year from tax paid period of § 6511(a) must apply to an erroneous assessment of tax motivated interest.

There is no factual support for plaintiffs' first hypothetical. The IRS did not assess tax motivated interest after expiration of the six month period. The IRS mailed Keener notices that his underpayments were subject to interest computed at the higher tax motivated rate in November 1997, and, within six months thereof, assessed tax motivated interest in March 1998. *See Resp.* [Doc. #51] ¶¶ 24, 27, 52, 55 (and documents cited therein). The IRS mailed Smith notices that two of his underpayments were subject to interest computed at the higher tax motivated rate in November 1999, and, within six months thereof, assessed tax motivated interest in March 2000. *See Resp.* [Doc. #51] ¶¶ 81, 88, 114, 117 (and documents cited therein).[8]

---

[8] In addition, plaintiffs' legal conclusion appears to be based on a faulty assumption. Plaintiffs assume that the six-month period for filing a refund claim based on an erroneous

(continued...)

Second, plaintiffs hypothesize that six months is an insufficient period of time for most to liquidate assets and pay assessed tax motivated interest before filing a refund claim. Plaintiffs emphasize the difficulty increases in severity to the extent the interest assessment follows commencement of the six month period. Plaintiffs' second hypothetical also lacks any factual support here. Keener paid off all assessments, tax and interest at the higher rate, prior to expiration of the six month period (whether calculated from date of November 1997 notices or March 1998 assessments). Indeed, he did so with cash bonds posted years in advance of the assessments. Keener paid the March 1998 assessments with cash bonds posted to his tax accounts in October 1995. *See Resp.* [Doc. #51] ¶¶ 16, 27, 45, 55 (and documents cited therein).

Smith paid off the vast majority of all assessments prior to expiration of the six month period. He also used remittances posted well in advance of the assessments. And he offers no evidence that his failure to pay a small amount of the assessments prior to expiration of the

---

[8] (...continued)
computation of a computational adjustment is triggered solely by the IRS' mailing of a Form 4549 or some similar equivalent. But the plain language of the statute suggests a broader view: that while mailing of the form or equivalent is a prerequisite to trigger the period, it is not necessarily sufficient and an actual assessment may also be required. As in effect for the taxable years at issue, the six month period reads:

> Any claim under paragraph (1)(A) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.

§ 6230(c)(2)(A). "[T]he notice of computational adjustment" is not defined, and a court could certainly conclude that the concept of notice includes a fixed sum payable and challengeable by a taxpayer. Thus, under a plain language reading, a court might conclude that statutory notice combines 1) the mailed notice informing a taxpayer that an underpayment is subject to a higher interest rate and 2) the ultimate assessment of the interest. Such interpretation would preclude the possibility of an interest assessment after expiration of the six month period. Be that as it may, the Court need not resolve this question, as even if the six month period runs from the assessments dates relevant here, plaintiffs' claims were untimely.

period resulted from a cash liquidity problem. Smith paid the vast majority of the March/April 2000 assessments with advance remittances posted to his tax accounts in November 1995 and February 1999. *See Resp.* [Doc. #51] ¶¶ 74, 84, 85, 87, 88, 89, 108, 117, 118 (and documents cited therein).[9]

In addition to lack of factual support, plaintiffs' liquidity argument lacks legal merit. The statutory scheme at issue evinces no intent on Congress' part for inability to pay to constitute a basis for tolling the six month period. Indeed, where Congress permits equitable considerations to override jurisdictional deadlines, it does so explicitly. *See e.g.* § 6226(e) (jurisdictional deposit requirement subject to cure where good faith attempt and timely correction); § 6511(h) (1998) (suspension of refund claim periods of § 6511(a-c) during period taxpayer is "financially disabled").

Moreover, plaintiffs' attempt to distinguish a short refund claim period for tax motivated interest claims from those for other purposes is unconvincing. Plaintiffs say paying significant tax and interest liabilities and filing a refund claim within a six month period is different than paying the liabilities that result from a mathematical error and filing a refund claim in the same time. Plaintiffs offer no basis for this assumption. Indeed, a mathematical error could result in a liability as large, or even larger, than liabilities arising for other reasons. Plaintiffs also say that the six month period for filing a refund claim for erroneous imposition of penalties, additions to tax, and additional amounts (in effect for partnership tax years ending after August 5, 1997) is

---

[9] Smith did, in June 2000, make up a shortfall of approximately $750 with respect to his 1985 tax account. *See id.* at ¶ 118 (and documents cited therein). This payment falls outside the six month period if the period is measured from mailing of the November 1999 notice, but falls within the six month period if the period is measured from the March/April 2000 assessments, *see supra* note 8.

distinguishable, because in a prior partnership proceeding a partner could have raised "a partner's defenses." *See Resp.* [Doc. #58] at 20. But plaintiffs' distinction is based on a false premise. A partner may not raise individual partner defenses in a prepayment partnership proceeding. Rather, a partner may only raise such defenses in a partner level proceeding following the partnership level one. *See* § 6230(c)(4); *see also e.g.* Treas. Reg. § 301.6221-1 (c, d) (applicable to partnership taxable years beginning on or after October 4, 2001), § 301.6226(f)-1(a) (same).

Finally, plaintiffs also assert a more general due process argument. They take issue with the Forms 4549 by which the IRS notified them that their underpayments were subject to interest computed at the higher tax motivated rate. *See Br.* [Doc. #54] at 3 (citing documents). They complain that the forms "do not provide actual notice of the amount of interest that is eventually assessed," because the ultimate interest assessed was less than the interest computations in the forms suggested it would be. *See Resp.* [Doc. #58] at 21-22. Plaintiffs contend that the difference can be deceptive and lull taxpayers into believing interest was not assessed at the tax motivated rate and therefore no refund claim need be filed. *See id.*[10]

The Smiths, however, do not claim that the assessments of interest in March/April 2000 led them to believe the IRS did not assess tax motivated interest. Indeed, their March 8, 2002, Forms 843 all seek refunds of such interest. Moreover, the combination of the interest computations in the IRS' Forms 4549 and the ultimate assessments could not have created such a

[10] Plaintiffs link this argument with the claim that the two year period of § 6511(a) should, in addition to the six month period of § 6230(c)(2)(A), be applicable to partner's claims contesting tax motivated interest computations. There is, however, no linkage. If an assessment deceived a taxpayer into thinking no tax motivated interest was assessed, the taxpayer would not file a refund claim for the interest, whether six months or two years was available to do so.

misunderstanding. The forms covering the 1981 and 1985 tax returns explicitly informed Smith that the tax underpayments calculated therein were subject to interest assessed at the higher tax motivated rate, and the interest subsequently assessed exceeded the forms' computed "estimates" of regular interest.[11]

Keener also does not claim that the assessments of interest in March 1998 led him to believe the IRS did not assess tax motivated interest. Indeed, his December 1999 Forms 843 seek refunds of interest at the tax motivated rate. *See Resp.* [Doc. #51] ¶¶ 28, 56 (and documents cited therein). Moreover, it is unlikely that the combination of the interest computations in the IRS' November 1997 Forms 4549 and the ultimate March 1998 assessments could have created

---

[11] The specifics are as follows (*see Resp.* [Doc. #51] ¶¶ 80, 81, 84, 87, 88, 90, 91, 108, 114, 117, 118, 120 (and documents cited therein)): On November 9, 1999, the IRS sent Smith Forms 4549, explaining how partnership item settlements affected Smith's 1981, 1984, and 1985 tax returns. The form covering the 1981 tax return computed to February 23, 1999 regular interest in the amount of $3,295.14 and tax motivated interest in the amount of $1,339.96. The form covering the 1985 tax return computed to November 23, 1999 regular interest in the amount of $5,340.40 and tax motivated interest in the amount of $2,111.07. Both forms explained that Smith's tax underpayments were attributable to tax motivated transactions and subject to interest assessed at the higher tax motivated rate. The forms cautioned, however, that the "enclosed interest computation is for your convenience. It is only an Estimate, and it does not include any payments on your account." Thus, the forms' computations did not take into account the advance remittances posted to Smith's 1981 and 1985 accounts in November 1995 and February 1999. On March 16, 2000, the IRS assessed interest at the tax motivated interest rate in the amount of $3,698.16 for 1981 and in the amount of 6,352.70 for 1985 (both assessments exceed the prior computations of regular interest). The difference between the IRS' "estimates" and the assessments apparently derives from taking into account that Smith's advance remittances stopped the accrual of interest in part or in whole. On March 8, 2002, the Smiths filed Forms 843 claiming, among other things, a refund of the tax motivated interest portion of the assessed 1981 interest of $3,698.16 and 1985 interest of $6,200.11.

The form covering the 1984 tax return did not include a computation of tax motivated interest, did not state that the computed tax underpayment was attributable to tax motivated transactions, and did not otherwise indicate that interest would be assessed at the tax motivated rate. Indeed, with respect to the 1984 tax year, interest was not assessed against Smith at the tax motivated rate.

such a misunderstanding. While the forms computed regular interest and tax motivated interest separately through December 3, 1997, and the ultimate interest assessments were slightly less than the regular interest computation, *see id.* ¶¶ 24, 27, 52, 55 (and documents cited therein), Keener had no basis to believe (and nowhere claims to have believed) that the interest was not assessed at the tax motivated rate. Rather, the forms explicitly notified Keener that interest would be assessed at the tax motivated rate on the tax underpayments computed therein. *See id.* ¶¶ 24, 52 (and documents cited therein). In addition, Keener must have been aware that the November 1997 forms' computations were too high: the computations ran through December 1997, but Keener had posted cash bonds to his tax accounts in October 1995, explicitly , in his own words, "as a deposit in the nature of a cash bond in accordance with Revenue Procedure 84-58 . . . to stop the accrual of interest . . . ." *See App.* [Doc. #37] at B52; *App.* [Doc. #38] at B138. Not surprisingly, the interest ultimately assessed in March 1998 approximates the interest computations in the November 1997 Forms 4549, after subtraction of the forms' interest computations for months beginning in/after late 1995.[12] Thus, plaintiffs' characterization of the assessments as "actively deceptive," and suggestion that Keener was a tax layman, who would have assumed the interest was not assessed at the tax motivated rate, *see Resp.* [Doc. #58], are without merit.

## IV. Relationship of Additional/Alternative Ground to Original Motion

Plaintiffs incorrectly assert that our additional/alternative ground for dismissal of their tax motivated interest claims is "mutually exclusive" to our original motion to dismiss. *See*

[12] An exact subtraction is not possible, because the forms' computations group July through December 1995, and Keener's cash bonds were posted in October of that year. *See App.* [Doc. #37] at B65; *App.* [Doc. #38] at B150.

*Resp.* [Doc. #58] at 3. Plaintiffs' assertion is based on the false premise that, in our motion, "the government asserted this court lacks jurisdiction over Plaintiffs' §6621(c) refund claims because §6621(c) is a partnership item." *See id.* We did not assert that tax motivated interest is a partnership item. To the contrary, in our original motion, we explicitly stated that "tax motivated interest as a whole may be an 'affected item'. . . or simply a computational adjustment . . . ." *See Br.* [Doc. #22-1] at 38. Our motion (in conjunction with our opposition to plaintiffs' summary judgment motion and other filings) is based on the simple proposition that § 7422(h) bars plaintiffs' tax motivated interest claims, because, to be granted, the Court would have to change partnership item sham determinations made in FPAAs and Tax Court decisions. While such determinations are components of an analysis of a partner's liability for tax motivated interest, they must be determined at the partnership level. A Court is prohibited by § 7422(h) from changing them in a partner level proceeding.[13] If, however, our additional ground is correct in characterizing plaintiffs' tax motivated interest claims as challenges to computational adjustments under § 6230(c), then the arguments for dismissal under § 7422(h) remain valid, albeit pursuant to a different statutory hook, § 6230(c)(4). This is because, although challenges brought pursuant to § 6230(c) are explicitly excepted from the bar of § 7422(h), § 6230(c)(4) also explicitly precludes such challenges from contesting prior partnership item determinations (such as determinations in an FPAA or Tax Court decision that a partnership's transactions were shams). We noted the contents of this paragraph in our additional/alternative ground. *See Br.*

[13] Plaintiffs concede this general principle. *See Resp.* [Doc. #58] at 18 ("While the underlying partnership item determinations necessary to apply the §6621(c) penalty rate must necessarily be proposed in the FPAA before the IRS can apply that rate, the actual decision to apply the rate is not and should not be included in the FPAA.").

[Doc. #54] at 7 n.4.

## V. Conclusion

For the reasons detailed in our briefing to date before this Court, plaintiffs' claims for tax motivated interest should be dismissed.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

October 17, 2006